Peter Strojnik, 006464
3030 North Central Avenue, Suite 1401
Phoenix, Arizona 85012
Telephone: 602-524-6602
Facsimile: 602-296-0135
e-mail: *ps@strojnik.com*
Attorney for Ms. Sahakian

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| DIANE SAHAKIAN, a single woman, | ) NO. CV-08-241-PHX-HRH |
| Plaintiff, | ) **MOTION TO AMEND FIRST AMENDED COMPLAINT** |
| vs. | ) |
| STATS ChipPAC, Inc., a foreign corporation; STATS ChipPAC, Ltd., a foreign corporation, | ) |
| Defendants. | ) |

## SUMMARY OF MOTION

On October 23, 2008, Ms. Sahakian's previous counsel filed a Motion to Withdraw as attorney of record. Current counsel made his appearance on November 5, 2008.

Through subsequent discovery current counsel learned that Defendant Stats ChipPAC is owned 83% by a Singaporean company Singapore Technologies Semiconductors Private LTD ("STS") which is in turn wholly owned by Temasek Holdings ("Temasek"). Counsel's initial review of the facts discloses that STS and/or Temasek control STATS and, therefore, both STS and Temasek may be liable to Sahakian under the theories outlined in *Gatecliff v. Great Republic Life Insurance Co.*, 821 P.2d 725 (Ariz. 1991) and *Watson v. Gulf & W. Indus.*, 650 F.

2nd 990, 993 (9th Cir. 1981) Therefore, in late November counsel drafted a Motion to Amend to add STS and Temasek as party defendants.

    Ms. Sahakian's current counsel has sufficient experience and knowledge relating to Chinese culture in general and Singaporean business culture in particular to know that allegations of sexual misconduct and retaliatory firing are sometimes handled in private in order to avoid the stigma to both parties. *See* Exhibit 1, Declaration of Counsel. Therefore, counsel engaged in confidential discussions with counsel's Singaporean contacts to determine the appropriate manner of bringing this matter to the attention of STS and Temasek. Counsel was confidentially advised to communicate about this matter directly with Temasek's president, Madam Ho Chin, the wife of the Singaporean current prime minister. Counsel was confidentially advised under Madam Ho Chin's guidance, Temasek takes a dim view of sexual and retaliatory counsel misconduct. It was confidentially suggested to counsel to communicate with Madam Ho Chin directly in an attempt to avoid any unintended consequences to STS's, Temasek's and indeed Singapore's business reputations. Id.

    On January 12, 2009, Temasek declined to discuss the matter privately. Counsel decided to file the present motion without delay.

    There has been no (1) undue delay; (2) bad faith or dilatory motives on the part of the movant; (3) repeated failure to cure deficiencies by previous amendments; (4) undue prejudice to the opposing party; or (5) futility of the proposed amendment. This Motion is more fully supported by the following memorandum of Points and Authorities that is by this reference incorporated herein.

# MEMORANDUM OF POINTS AND AUTHORITIES

**1) ALLEGATIONS IN THE [PROPOSED] SECOND AMENDED COMPLAINT RELATING TO THE RELATIONSHIP BETWEEN STATS, STS AND TEMASEK.**

Ms. Sahakian Diane Sahakian is a single mother currently residing in Phoenix. Defendants STATS ChipPAC, Inc. and STATS ChipPAC, Ltd. (collectively as "Stats ChipPAC") are foreign corporations. Temasek Holdings Private Limited ("Temasek") is a Singaporean corporation with its principal place of business in the Country of Singapore. Temasek is the parent corporation of Singapore Technologies Semiconductors Private Limited. Temasek is a private entity owned and operated by the Singaporean Government.

STS owns approximately 83% of the outstanding shares of Stats ChipPAC. Stats ChipPAC has seven directors. Jimmy Phoon has been a Director of Stats ChipPAC since August 2007. Mr. Phoon previously was the Senior Managing Director and Chief Investment Officer at Temasek Holdings Pte. Ltd. Prior to Temasek, Mr. Phoon was a Deputy Director in the Ministry of Finance for the nation of Singapore. Peter Seah Lim Huat has been a Director of Stats ChipPAC since July 2002. He has been a member of the Temasek Advisory Panel since January 1, 2005. Upon information and belief, Messrs. Phoon and Huat receive their instructions directly from Temasek. Temasek and STS are liable for the acts alleged because they so dominate and control Defendants Stats ChipPAC such that Stats ChipPAC is an instrumentality, alter ego, and adjunct to Temasek and STS pursuant *to Walker v. Southwest Mines Dev. Co.*, 52 Ariz. 403 (1938) and *Gatecliff v. Great Republic Life Insurance Co.*, 821 P.2d 725 (Ariz. 1991) and their progeny.

Temasek and STS caused the voluntary delistment of Stats ChipPAC from the NASDAQ in their attempt to become completely privatized. Temasek and STS are also attempting to cause the delistment of Stats ChipPAC from the Singapore Exchange. Temasek and STS control the operations and day to day functions of Stats ChipPAC.

**2) FACTUAL ALLEGATIONS IN THE SECOND AMENDED COMPLAINT**

Ms. Sahakian began her employment with Stats ChipPAC in August 1999. As a Vice President in the Technology Development organization, Ms. Sahakian was one of the few female executives in the companies. Ms. Sahakian managed a technical group responsible for generating the corporate technology roadmaps and emerging technology strategies, and engaging customers in emerging technologies. Ms. Sahakian reported to her supervisor, Dr. Han Byung Joon, who is employed by Defendant Stats ChipPAC, Ltd. as the Executive Vice President and Chief Technology Officer (commonly referred to as "BJ Han"), and she has always received good performance evaluations.

Beginning in 2006 and through April 2007, Ms. Sahakian reported to her management and human resources department that certain subordinate male employees, including, but not limited to, Eric Israel Gongora, who, on information and belief, is a convicted felon and has been referred to within Stats ChipPAC as a "troublemaker", were undermining her authority within her group, her reputation in the company, and were creating a hostile work environment. As a result of her complaints, Ms. Sahakian's supervisor, BJ Han, became increasingly hostile towards her and undermined her further within her group notwithstanding BJ Han's prior reference to this group of subordinate employees as a group of "monkeys." BJ Han has referred

to Ms. Sahakian and Americans in general as "fat" and "lazy" and to Ms. Sahakian individually as "fat".

On or about April 9, 2007, with the implied assurance of impunity from BJ Han, male employees put ketchup on Ms. Sahakian's office chair on a day that Ms. Sahakian was wearing white pants, making it appear that Ms. Sahakian had an "accident" relating to her female gender. Ms. Sahakian was humiliated by this incident and reported it to her supervisor, BJ Han, and the human resources department. In response to Ms. Sahakian's complaints, BJ Han told her: "Drink a beer and have a good sleep. It will be OK." Stats ChipPAC acknowledged the ketchup incident was harassment and not merely horseplay.

Stats ChipPAC employee handbook reads as follows: "The Company will not tolerate unlawful harassment of any type" and "Sexual or other unlawful harassment includes any conduct that has the purpose or effect or unreasonably interfering with an individual's work performance or creating an intimidating, hostile or offensive work environment".

On June 22, 2007, Ms. Sahakian started a thirty-day leave under the Family Medical Leave Act due to the stress she experienced as a result of the hostile work environment created and maintained at Stats ChipPAC by, among others, BJ Han. When Ms. Sahakian returned from her FMLA leave, BJ Han, without notification, made a company-wide announcement demoting and removing Ms. Sahakian from her supervisory position. She was given a new position – "Special Project" at the bottom of the organization chart, and her title as Voce President was removed.

Since that time, Ms. Sahakian has been given assignments with no real possibility of completing them as assigned by BJ Han. Ms. Sahakian was ostracized, omitted from meetings

and conferences she previously attended; omitted from relevant communications; and placed in a dead-end position removing virtually all of her job duties and responsibilities, all in a blatant attempt to force her resignation from employment. Despite Ms. Sahakian's complaints, no disciplinary action was taken against the male employees who undermined her authority within her group and her reputation within the company, and created a hostile work environment. Ms. Sahakian was demoted when she complained to her management and human resources department and upon her return from FMLA leave.

After the demotion, on September 18, 2007, Ms. Sahakian filed a charge of discrimination and retaliation with the EEOC. On December 11, 2007, Defendants Stats ChipPAC, through their attorneys, made a settlement offer to Ms. Sahakian to resolve her legal claims against Defendants Stats ChipPAC, in exchange for Ms. Sahakian's resignation from employment. Ms. Sahakian rejected Defendants' settlement offer and on January 24, 2008 made a counteroffer, which was not accepted by Defendants.

Having received a Notice of Right to Sue from the EEOC relative to Ms. Sahakian's first charge of discrimination and retaliation, on February 6, 2008, Ms. Sahakian filed her Complaint in this lawsuit in federal court. On April 11, 2008, Defendants Stats ChipPAC, through their attorneys, made a settlement offer in exchange for a complete release of claims and Ms. Sahakian's resignation from employment. Defendants Stats ChipPAC, through their attorneys, subsequently advised that its settlement offer would be "off the table" on May 16, 2008. Ms. Sahakian did not accept Defendants' settlement offer, which lapsed.

On or about May 30, 2008, Sahakian inquired about a STATS-Tempe in-house job posting. After several inquiries, Defendant STATS informed Sahakian that this posting was

unavailable to Sahakian because it was an 'artificial' posting to process a green card for one GS Kim, a non-citizen of the United States. On July 1, 2008, Defendants Stats ChipPAC terminated Ms. Sahakian's employment.

**3) THE PROPRIETY OF THE AMENDMENT**

Motions to Amend are governed by Rule 15(a) of the Federal Rules of Civil Procedure, which provides that, under the circumstances in this case, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a).

In deciding a Motion to Amend, the Court is guided by the principle that matters be decided on the merits rather than on technicalities. *Foman v. Davis*, 371 U.S. 178, 182 (1962) ("Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded" (quoting Fed. R. Civ. P. 15(a))). "'[A] court must be guided by the underlying purpose of Rule 15 -- to facilitate decision on the merits, rather than on the pleadings or technicalities.'" *Eldridge v. Block*, 832 F.2d 1132, 1135 (9th Cir. 1987) (quoting *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981)). The liberal policy of granting leave to amend is "not dependent on whether the amendment will add causes of action or parties." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987). "Thus, a motion to make an '[a]mendment is to be liberally granted where from the underlying facts or circumstances, the plaintiff may be able to state a claim.'" Id. (citing *McCartin v. Norton*, 674 F.2d 1317, 1321 (9th Cir. 1982)).

Plaintiff recognizes that the liberal policy in favor of amendments is subject to some limitations. The United States Supreme Court has established that motions to amend should be

granted unless the district court determines that there has been a showing of: (1) undue delay; (2) bad faith or dilatory motives on the part of the movant; (3) repeated failure to cure deficiencies by previous amendments; (4) undue prejudice to the opposing party; or (5) futility of the proposed amendment. *Foman*, 371 U.S. at 182. But see *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). "Generally, this determination should be performed with all inferences in favor of granting the motion." Griggs v. Pace Am. Group, Inc., 170 F.3d 877, 880 (9th Cir. 1999) (citing *DCD Programs*, 833 F.2d at 186). Significantly, the party opposing the amendment bears the burden of showing prejudice, futility, or one of the other permissible reasons for denying a motion to amend. See *DCD Programs*, 833 F.2d at 187; *Richardson v. United States*, 841 F.2d 993, 999 (9th Cir. 1988) (stating that leave to amend should be freely given unless the opposing party makes "an affirmative showing of either prejudice or bad faith"). The crucial factor is prejudice to the opposing party. *United States v. Pend Oreille Pub. Util. Dist. No. 1*, 926 F.2d 1502, 1511 (9th Cir. 1991).

Although this matter was filed in February of 2008 (Doc 1), other than the exchange of written discovery, no depositions have been taken and no other significant discovery commenced. The facts are – or should be – largely undisputed.  The events in this matter are matters of public record and written exchanges of e-mails and other communications. Plaintiff has retained an economist to review the extent of damages and forwarded the economist's report to Defendants on December 5, 2008 (doc 40, see also Exhibit 2).   Plaintiff has also requested deposition dates from Defendant, Exhibit 3, but no actual dates have been provided and no notices of depositions issued.  The discovery shall not close until June 1, 2008. (Doc 38)

**4) IN THE ABSENCE OF THE AMENDMENT, THE CLAIMS AGAINST STS AND TEMASEK SHALL BE FOREVER LOST**

Unlike other cases, the addition of a party defendant in a Title VII case is particularly compelling since Plaintiff has no right to initiate a new action against the new proposed Defendants. In a title VII action, suit must be commenced not more than ninety days after receipt of the right to sue letter. See 42 U.S.C. § 2000e-5(f)(1). Here, the right to sue letters were issued on January 25, 2008 and September 9, 2008. While the Second Amended Complaint would relate back to the filing of the original Complaint, See Rule 15(c)(1) – thereby preserving the cause of action – a new action would not.

## CONCLUSION AND PRAYER FOR RELIEF

For the foregoing reasons Plaintiff respectfully requests that the Court grant her Motion to Amend. Proposed Second Amended Complaint is appended hereto.

RESPECTFULLY SUBMITTED this 13th day of January, 2009.

**PETER STROJNIK, P.C.**

_____
Peter Strojnik
Attorney for the Ms. Sahakian