Peter Strojnik 006464
THE LAW FIRM OF PETER STROJNIK
3030 North Central Avenue, Suite 1401
Phoenix, Arizona 85012
Telephone: 602-524-6602
Facsimile: 602-296-0135
e-mail: *Strojnik@aol.com*
Attorney for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| DIANE SAHAKIAN, a single woman, <br><br> Plaintiff, <br><br> vs. <br><br> STATS ChipPAC, Inc., a foreign corporation; <br> STATS ChipPAC, Ltd., a foreign corporation, <br><br> Defendants. | NO. CV-08-241-PHX-HRH <br><br> **REPLY TO DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO AMEND COMPLAINT** |

**I. INTRODUCTION**

Defendants argue on their own behalf and on behalf of proposed new parties Temasek and STS, that Plaintiff's Motion to Amend should be defeated for the following reasons: (1) undue delay; (2) bad faith; (3) futility of the amendment; (4) subject-matter jurisdiction; (5) Temasek and STS are not Plaintiff's employer; and, (6) personal jurisdiction. Each argument is addressed in summary as follows.

**First**, Defendants' undue delay argument omits several relevant points: (1) Plaintiff's new counsel only appeared in this case in November 2008; (2) Plaintiff attempted to resolve her controversy with Temasek prior to filing the Motion; and, (3) Plaintiff desired Rule 7(b) certainty in her research and investigation before having her counsel set down his signature.

**Second**, Defendants argue that Plaintiff is acting in bad faith because her counsel – in response to Stats' threat of a bar complaint - seeks to exercise his 1st Amendment free speech rights pursuant to *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 111 S.Ct. 2720, 115 L.Ed.2d 888 (1991) and *Gertz v.*

*Robert Welch, Inc.*, 418 U.S. 323, 41 L. Ed. 2d 789, 94 S. Ct. 2997 (1974). The exercise of constitutionally guaranteed rights cannot, as a matter of policy, constitute "bad faith". No other evidence is set forth to support a showing of a conscious doing of a wrong for a dishonest purpose, which is required for bad faith.

**Third**, Plaintiff's Motion is not futile because the lodged Second Amended Complaint properly sets forth a short and plain statement demonstrating why Temasek and STS are liable to Plaintiff – alter ego, instrumentality, unity of control – with sufficient facts in support. Further, notwithstanding Stats' lack of standing to assert personal and subject-matter jurisdiction defenses on behalf of Temasek and STS, the non-parties are subject to personal jurisdiction because Stats jurisdiction is imputed upon them. Also, even though the non-parties were not named in the EEOC charges, the non-parties are still subject to suit due to their anticipation of Title VII suit and pursuant to the "substantial identity" exception.

## II. REPLY

### A. There Is No Undue Delay, Bad Faith Or Futility Present.

A Court may deny leave to amend due to "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, and futility of amendment." *Leadsinger, Inc. v. BMG Music Publ'g.*, 512 F.3d 522, 532 (9th Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962). There can be no disagreement Plaintiff has not failed to cure previous deficiencies.

### i. There Was No Undue Delay.

Undue delay consists of "fail[ing] to take advantage of earlier opportunities to amend." *Lozano v. Ocwen Fed. Bank, FSB*, 489 F.3d 636, 644 (5th Cir. 2007). "Mere passage of time need not result in refusal of leave to amend; on the contrary, it is only undue delay that forecloses amendment." *Dussuoy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981). The term is *undue* delay.

Here, Plaintiff was diligent in taking the first reasonable opportunity to amend. Plaintiff did not have insider knowledge regarding Temasek's and STS's day-to-day control of Stats operations prior to the discovery of this control by counsel; it was not until current counsel addressed the issue in November that a possibility of a cause of action arose, and counsel spent several months of research and attempted to resolve the dispute informally with Temasek and STS before using the Court's time and resources. Indeed, it was only after Temasek's local agent rejected offers of compromise on January 12, 2009 (Exhibit 1) that Plaintiff had a reasonable opportunity to amend. Plaintiff did so the next day. Plaintiff should be lauded for her attempts to resolve matters informally and for fully investigating and researching the matter before filing the present Motion.

### a. Good Cause Is Shown By Plaintiff.

"A pretrial order controls the subsequent course of action unless modified 'upon a showing of good cause." *ElHakem v. BJY Inc.*, 415 F.3d 1068, 1077 (9th Cir. 2005) (quoting *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002). Document 13 states "pleadings [are to] be amended only upon leave of court and for good cause shown." The good cause standard requires "the party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension." 6A Charles Alan Wright et al., Federal Practice and Procedure § 1522.1 (2d ed. 1990). Four factors are used to determine good cause: "(1) the explanation for the failure timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *Southwestern Bell Telephone Co. v. City of El Paso*, 346 F.3d 541, 547 (5th Cir. 2003).

First, Plaintiff could not timely move to amend prior to the court's deadline because she was unaware of the extent of control Temasek and STS had over Stats. Defendants assume Plaintiff has the same level of knowledge as Stats' officers and directors, which she does not. Surely such control by

foreign corporations would not be entrusted to lower-level employees. Even if she did have such knowledge, she, a single mother with no legal education, cannot reasonably be asked to spot the legal issues which make Temasek and STS liable to her.

Second, the amendment is critical for Plaintiff because she has been terminated from a $100K ++ job, and she has not found employment since. Temasek's and STS's management and direction to weed persons such as Plaintiff out of the Stats company cannot be tolerated. Plaintiff would be without redress against these foreign corporations that use domestic companies to discriminate against the American worker. *See also, Lynch v. Stats ChipPAC*, Alameda County (California) Superior Court Cause No. RG08-420202 (Discrimination and wrongful termination based on California worker's physical disability).

Third, there is no prejudice to Stats. In terms of discovery, Stats has not even taken Ms. Sahakian's deposition notwithstanding the year-old status of this case. In actuality, this amendment may benefit Stats as liability may be joint and several or deflected onto Temasek and STS. As for the non-parties, any depositions of Temasek and STS directors and officers would be conducted in their home state of Singapore[1]. Temasek has already secured Arizona counsel. Furthermore, even though this case is a year old, it still remains in its infancy because no depositions have been taken, no summary judgment motions have been filed, and the amended complaint was filed a mere 5 months ago.

Finally, assuming prejudice is present, which it is not, the non-parties and Stats could always request the Court for a continuance on discovery deadlines, which seems likely regardless of whether this Motion is granted because Defendants have not even taken the time to depose Plaintiff or notice such deposition.

---

[1] This matter may become an issue: Singapore may not grant Plaintiff's counsel visa to visit Singapore. Alternatively, Plaintiff's counsel's freedom may be endangered by traveling to Singapore. Depositions could be taken by written questions or by videoconferencing or telephone.

Plaintiff has been diligent.

ii.     **Enforcement Of First Amendment Rights Is Never Bad Faith.**

In *United States v. Manchester Farming Partnership*, 315 F.3d 1176 (9th Cir. 2003), the Court adopted the 11th Circuit's definition of bad faith as follows: "not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity…it contemplates a state of mind affirmatively operating with furtive design or ill will." *Manchester Farming Partnership*, 315 F.3d at 1183.

Plaintiff's counsel filed a declaratory judgment action against Stats, STS, Temasek and Singapore. It is common knowledge that Temasek – the owner of STS and Stats – is owned by the Singaporean Government. It is headed by Madam Ho Chin, the wife to Singaporean prime minister. It is likewise well known that Singapore's laws are designed to oppress, intimidate, harass, punish, cane, imprison and mistreat anyone who disagrees with the Singaporean oligarchy. *See* Decl. Judgment Complaint. But counsel has experience with these types of terror states. As alleged in Paragraph 30 of the Declaratory Judgment Complaint:

> Plaintiff comes from a long line of conscientious opposition to dictatorial governments who seek to impose limits on liberty: (i) Plaintiff's father Dr. Aleš Strojnik was imprisoned in Mussolini's Fascist hostage camp[2] at Gonars during WWII for his beliefs; (ii) Plaintiff's uncle Štefan Pogačar was killed by Hitler's Nazi's during WWII for his beliefs; (iii) Plaintiff was persecuted by Tito's Communists during the late 1960's for his religious beliefs; (iv) Plaintiff was detained by Tito's Communists for voicing his opinion; and (iv) Plaintiff's best friend's mother, S. L. was imprisoned in Dachau during WWII for her religious affiliation.

Defendants' argument that the exercise of counsel's fundamental freedoms amounts to "bad faith" is, frankly, embarrassing. Counsel's declaratory judgment action does not rise to the level of

---

[2] Hostage Camp at Gonars was used by Mussolini to imprison Slovenian population during WWII; if Slovenian freedom fighters harmed an occupying soldier during the occupation, the Fascists would randomly select prisoners from the Gonars hostage camp and execute them.

"conscious doing of a wrong because of dishonest purpose" *Manchester Farming Partnership*, 315 F.3d at 1183. No more needs to be said about this.

### iii. The Motion Is Not Futile.

The futility of a Motion to Amend addresses whether the proposed amendment states a claim upon which relief could be granted. Rule 8 requires a short and plain statement.

The lodged Amendment alleges Temasek and STS' ownership of Stats. *See also*, Exhibit 2. The lodged amendment is clear in its notice to Temasek and STS: You are being sued under an alter ego and related theories because you control the day to day operations of Stats. The lodged amendment alleges alter ego, instrumentality, and unity of control sufficient to state a cause of action against the non-parties. Even if the lodged amendment's allegations are not sufficient by themselves to state a claim, there is no question there are facts that could be inserted that would state a claim, which would be supported by former Stats' employees. This control has become even more conspicuous with Stats' arguments on behalf of Temasek and STS in the present moving papers. *See also*, Exhibit 1.

### B. Subject Matter Jurisdiction

The "failure to name the party in the original [EEOC] charges is not dispositive." *Equal Employment Opportunity Commission v. National Education Association*, 422 F.3d 840, 846 (9th Cir. 2005). There are several exceptions including the "anticipation" exception, and the "substantial identity" exception.

### i. Temasek/STS Should Have Anticipated Being Named In This Title VII Suit.

"The law of this circuit is that Title VII charges can be brought against persons not named in an E.E.O.C. complaint as long as ... the EEOC or defendants themselves 'should have anticipated' that the claimant would name those defendants in a Title VII suit, the court has jurisdiction over those

defendants even though they were not named in the EEOC charge." *Id.*; see also, *Ortez v. Washington County*, 88 F.3d 804, 808 (9th Cir. 1996); *Sosa v. Hiraoka*, 920 F.2d 1451, 1458-59 (9th Cir. 1990).

Temasek and STS should have anticipated being named in this Title VII suit for two separate reasons: First, Plaintiff communicated to Stats, Temasek and STS prior to this amendment her desire to add Temasek and STS to the lawsuit. Second, Temasek and STS, as controlling parents of Stats, should have anticipated from their internal knowledge and control of Stats their inclusion in this suit.

### a. Plaintiff's Attempts To Mediate Prior To Amendment.

In November, Plaintiff made her initial contact with Stats concerning Temasek's and STS' control and ownership of Stats. In December, Plaintiff communicated with Madam Ho Ching, president and CEO of Temasek, her desire to resolve this current controversy without the use of court proceedings. In December and January, Plaintiff's counsel and Temasek's local counsel also attempted informal resolution. Plaintiff repeatedly communicated to Temasek her desire to have her wrongs redressed by Temasek and STS due to her belief that these non-parties control the daily operations of Stats. Surely, Temasek and STS should have known they would be subject to this Title VII lawsuit when they rejected Plaintiff's settlement offers on January 12, 2009.

### b. Temasek and STS Should Have Anticipated At The Time The EEOC Charge Was Filed Against Stats Because Of Their Ownership, Control and Direction Of Stats.

Plaintiff alleges in her lodged proposed Second Amended Complaint that Temasek and STS control the day to day operations of Stats; the daily operations of a company of course include the hiring, termination, and general employment practices. In light of Temasek and STS' substantial control and direction as alleged, said non-parties surely could have anticipated that once charges were filed against Stats, it would be only a matter of time before Plaintiff discovered Temasek and STS' relationship. Of course, at the time these horrendous charges of which Stats is accused occurred,

Plaintiff was unaware of the extent and control Temasek and STS exerted over Stats. It was not until counsel investigated the Temasek and STS control that Plaintiff became aware.

If Stats desires Plaintiff to file an EEOC charge against Temasek and STS, Plaintiff would be glad to do so but the purpose of such charge – mediation – has already been attempted by the non-parties and such action will only delay these proceedings further. Also, Plaintiff's time to file the EEOC charge extinguished months ago.

### ii. The Substantial Identity Exception.

Another exception to the failure to name a defendant in an EEOC charge is the substantial-identity exception. *Mayes v. Moore*, 419 F. Supp. 2d 775, 783 (M.D.N.C. 2006).

> This exception allows unnamed respondents in the EEOC charge to be held liable in civil actions where they have been given adequate notice by the administrative charge. Factors for determining substantial identity are as follows: 1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint; 2) whether, under the circumstances, the interests of a named [party] are so similar as the unnamed party's that for the purposes of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; 3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; 4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

*McDaniel v. Greyhound Lines, Inc.*, No. 3:08-cv-130-FDW (W.D.N.C. 2008) (quoting *Mayes*, 419 F.Supp.2d at 783. First, Temasek's and STS's role at the time of filing the EEOC charges could not have been ascertained through a reasonable effort because Plaintiff does not have the legal resources or investigation and research skills an attorney has. Plaintiff could not know the extent and control Temasek and STS exerted over Stats. While it is true there were widely-known rumors within Stats' company that STS was attempting a takeover of Stats, Plaintiff could not have known several Temasek officers had been planted as directors at Stats at the same time. Even if Plaintiff was aware of the

control, one cannot reasonably hold her to the standard of an attorney who, unlike her, is aware of agency, unity of control, and alter ego law. A layman would not think twice about such control.

Second, Stats, Temasek's and STS's interests are very much aligned: Of course STS desires the profitability of Stats due to its 83% ownership of the latter. Of course Temasek desires STS and its holdings to obtain profits because the former wholly owns the latter. This alignment is demonstrated by STS' delistment of Stats from the Nasdaq and attempt to delist Stats from the Singapore Exchange.

Third, Stats, who apparently is acting as Temasek's and STS's agent by making several arguments on behalf of said Singaporean corporations, *see* Exhibit 1, does not offer any amount of prejudice for Temasek and STS by not being named in the EEOC charges. The purpose of the EEOC charges are notice and mediation, both of which have been already achieved. Other prejudice arguments are presented supra.

Finally, while Temasek or STS has not represented that Plaintiff communicate through Stats to communicate with them, Stats' local agents have not only advocated on behalf of Temasek and STS in their Responsive Memorandum, but they have also threatened counsel and Plaintiff on behalf of Temasek and STS. Temasek and STS, through their local agents, Stats, are attempting to communicate to Plaintiff that there is no subject matter jurisdiction, personal jurisdiction, or any cause of action against Temasek or STS sufficient to state a cause of action.

### iii.  Whether Temasek and STS Were Plaintiff's Employer Is Irrelevant Because They Are Being Sued Under An Alter Ego Theory.

The Second Amended Complaint is clear in its allegations that Temasek and Stats are being sued under the alter ego, instrumentality, and unity of control theories of law. To argue that such parties cannot be included is, by example, to argue a primary tortfeasor's directing principal cannot be sued.

### iv.  Temasek and STS Do Not Have Standing To Assert Subject Matter Jurisdiction Defenses.

Rule 12(b)(1) states: "[A] *party* may assert the following defenses by motion: (1) lack of subject-matter jurisdiction." (Emphasis Supplied). Temasek and STS are not parties to this action, yet, through their local agents, they are attempting to argue a subject-matter jurisdiction defense. *See,* Exhibit 1.

### C. Stats' Personal Jurisdiction Is Imputed Upon Temasek and STS – Unity of Control

"A parent corporation's relationship with its subsidiary may confer personal jurisdiction over the parent if the subsidiary is acting as the parent company's alter ego, 'so as to justify disregard of the corporate entity…" *American Telephone & Telegraph Co. v. Lambert*, 94 F.3d 586, 596 (9th Cir. 1996); *see also, Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1393 (9th Cir. 1984). To survive a *Motion to Dismiss* on these grounds, a prima facie showing that "(1) there is such unity of interest and ownership that the separate personalities of [the parent and subsidiary] no longer exist and (2) that failure to disregard their separate identities would result in fraud or injustice." *American Telephone & Telegraph Co.*, 94 F.3d at 596.

Plaintiff alleges in the Lodged Second Amended Complaint (Doc. 42) that STS and Temasek are parents of Stats. Doc. 42, ¶¶3-4. Plaintiff alleges Temasek and STS control the day to day operations of Stats, Doc. 42, ¶12, Temasek and STS are attempting to cause the delistment of Stats from the Singapore Exchange, Doc. 42, ¶11, Temasek and STS caused the delistment of Stats from NASDAQ, Doc. 42, ¶10, and two directors on the Stats board have ties to Temasek, Doc. 42, ¶¶8-9. Finally, Plaintiff alleges Defendants are liable to her based on the unity of control, instrumentality and alter ego theories of law. The allegations are sufficient to confer personal jurisdiction pursuant to the parent-subsidiary alter ego theory. Of course, if they are not, Plaintiff would be happy to add several factual allegations in a separate lodged proposed amended Complaint, although such may circumvent Rule 8 requirements.

Assuming the above is not sufficient, Defendants' baseless factual arguments relating to Temasek's and STS's lack of contacts with the State of Arizona lacks foundation. Defendants' counsel are not counsel for Temasek or STS. Defendants do not provide the evidence supporting the lack of contacts. Defendants do not even provide a sworn statement from Madam Ho Ching (CEO of Temasek and wife of Singapore prime minister) testifying to Temasek's and STS's lack of contacts. The verbose discourse on personal jurisdiction law in the federal courts has no basis in reliable fact. Alternatively, Plaintiff seeks leave to conduct jurisdictional discovery.

### v. Temasek and STS Do Not Have Standing To Assert Personal Jurisdiction Defenses.

Rule 12(b)(2) states: "[A] *party* may assert the following defenses by motion: (2) lack of personal jurisdiction." (Emphasis Supplied). Temasek and STS are not parties to this action, yet, through their local agents, they are attempting to argue a personal jurisdiction defense. *See*, Exhibit 1.

### III. CONCLUSION

For the foregoing reasons, and those reasons set forth in Doc. 41, Plaintiff respectfully requests the Motion to Amend be granted and whatever else this Court deems proper.

RESPECTFULLY SUBMITTED this 9th Day of February, 2009

**PETER STROJNIK, P.C.**

_____
Peter Strojnik
Attorney for the Plaintiff