Peter Strojnik, 006464
3030 North Central Avenue, Suite 1401
Phoenix, Arizona 85012
Telephone: 602-524-6602
Facsimile: 602-296-0135
e-mail: *ps@strojnik.com*
Attorney for Ms. Sahakian

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| DIANE SAHAKIAN, a single woman, | NO.  CV-08-241-PHX-HRH |
| Plaintiff, | **FIRST AMENDED NOTICE OF DEPOSITION** |
| vs. | **30(B)(6)** |
| STATS ChipPAC, Inc., a foreign corporation; STATS ChipPAC, Ltd., a foreign corporation, | **WITH REQUEST FOR PRODUCTION OF DOCUMENTS** |
| Defendants. | |

**ENTITY TO DE DEPOSED:**          Defendant STATS ChipPAC

**DATE AND TIME OF DEPOSITION:** February 12, 2009, @ 9:00 a.m.

**PLACE OF DEPOSITION:**          3030 North Central Avenue, Suite 1401, Phoenix, Arizona 85012

**MANNER OF RECORDING:**          Audio, Audiovisual and/or Stenographic Means

**DESCRIPTION OF MATTERS FOR EXAMINATION**

-1-

**1) Background**

  a)  Organizational structure of Defendants.

  b)  Defendants' affiliation and or relationship with Singapore Technologies Semiconductors Pte. LTD. (hereinafter "STS"), including:

    i)  Current and past commonality of officers, directors, lawyers, accountants, employees, contractors, consultants, agents, salespersons, or any of other person.

    ii)  Current and past commonality of office and/or industrial space, telephone lines, computer servers, or any other instrumentality used in business.

    iii) Current and past common ownership or use of any property.

    iv) Current and past use of same or similar internal policies, rules and regulations.

    v)  Any other communality.

  c)  Defendants' affiliation and relationship with Temasek Holdings Private Limited (hereinafter "Temasek"), including:

    i)  Current and past commonality of officers, directors, lawyers, accountants, employees, contractors, consultants, agents, salespersons, or any of other person.

    ii)  Current and past commonality of office and/or industrial space, telephone lines, computer servers, or any other instrumentality used in business.

    iii) Current and past common ownership or use of any property.

–2–

iv) Current and past use of same or similar internal policies, rules and regulations.

v) Control of Defendants activities by Temasek, including, without limitation, Temasek's control over Defendants' publicly traded status.

vi) Any other communality.

d) The differences, if any, between the rules, regulations, policies embodying Defendants' general corporate culture regarding employment relations governing Defendants' business in Singapore and in the United States, including without limitation the disparity in bonus policy between American employees and Singaporean employees.  Please be ready to discuss the differences in employee handbooks.

**2) Plaintiff's employment with Defendant.**

a) Initial interviews.

b) Position and responsibilities during employment.

c) Plaintiff's communications (orally, in writing or electronically) with her supervisors regarding any matter.

d) BJ Han's opinion of Plaintiff.

e) Plaintiff's performance and performance evaluations.

f)  Plaintiff's reports to Defendant regarding male subordinates', including one Eric Israel Gongora, actions regarding Plaintiff.

g) The identify or the persons who placed ketchup on Plaintiff's chair on or about April 9, 2007, and Defendants' actions in response to this act.

h) Matters relating to BJ Han's response to the ketchup incident "Drink a beer and have a good sleep.  It will be OK."

i) The propriety of BJ Han's response to the ketchup incident "Drink a beer and have a good sleep.  It will be OK."

j) Defendants' acknowledgement that ketchup incident was harassment.

k) The investigation into the ketchup incident.

l) The findings of the investigation relating to the ketchup incident.

m) The disciplinary action taken against the persons responsible, directly or by acquiescence, for the ketchup incident.

n) Plaintiff's 30 day leave under the Family Medical Leave Act.

o) The reason for BJ Han's company-wide announcement demoting and removing Plaintiff from her supervisory position and her replacement into a new position – "Special Project" at the bottom of the organization chart, and her removal as of the title Vice President following Plaintiff's FMLA leave.

p) The fact of and the reasons for various assignments given to Plaintiff following the return from FMLA leave.

q) Defendants' knowledge that Plaintiff was ostracized, omitted from meetings and conferences she previously attended; omitted from relevant communications; and

placed in a dead-end position removing virtually all of her job duties and responsibilities.

r) Defendants' knowledge of the hostile work environment.

s) Plaintiff's demotion following the return from the FMLA leave.

t) Defendants' reaction to Plaintiff's filing the charges of discrimination and retaliation against Defendants.

u) The details of Defendants' investigations and actions taken in response to Plaintiff's filing the charges of discrimination and retaliation against Defendants.

v) Defendants' tolerance of sexually and racially inappropriate behavior of its managers and employees.

w) Defendants' culture of racism and sexism.

**3) Particular Incidents, Events and Occurrences.**

a) BJ Han referring to Americans as "fat", "stupid" and "lazy".

b) BJ Han referring to American employees as a "monkeys".

c) Statement by BJ Han that every American employee is an "idiot".

d) BJ Han referring to Plaintiff in particular as "fat".

e) Referring to American employees by Lay Koon as, "You fat people" and "You Americans are fat".

f) BJ Han's statement to Defendant's employee of Indian ancestry that he (BJ Han) "doesn't like Indians".

g) BJ Han's comment to an employee of Indian ancestry– in response to flight crew announcement beginning with, "Ladies and Gentlemen" – "This announcement is not for you".

h) Kenny Lee's comment to an employee of Indian ancestry that "You should get yourself a pretty girlfriend, not an Indian girl, but a pretty one."

i) BJ Han's comment to an employee of Chinese ancestry that Japanese and Korean were superior races, followed by Taiwan, China and India.

j) BJ Han's statement to an employee of Chinese ancestry that Chinese are a third world country compared to Korean and Japanese.

k) Lay Koon's raising his voice to American employees.

l) Sexual pass made against Plaintiff in Palo Alto by BK Sohn in or about 2004, and BJ Han's advice to BK Sohn to leave Plaintiff alone.

m) Sexual pass made against Plaintiff by Doug Matthews in San Francisco during a semiconductor show in or about 2005.

n) The details of posting Plaintiffs likeness on the Defendants' Tempe server database with a man groping her breast.

o) The details of Eric Gongora's inappropriate sexual remarks about Plaintiff's breasts, etc)

p) Eric Gongora's distribution of a photo of women w/ large breasts from his former place of employment.

q) Gail in HR's reference to a complainant as a drama queen and dysfunctional and useless person.

r) The reason for the departure of Regina Liew and Maria Huang from Defendants' employ.

s) Any complaints regarding Defendants' employees, supervisors or agents acting in a derogatory, demeaning or otherwise inappropriate behavior.

t) Defendants listing and delistment from SGX-ST securities market**.**

**4) Complaints and Policy**

a) Any and all sexual harassment complaints against Defendants, STS or Temasek Holdings Private Limited for the past 10 years.

b) Defendants' policy on Singaporean, Korean and Chinese drunken supervisors making sexual advances on an American woman.

c) Defendants' policies, rules and regulations relative to employee's complaints against co-employees, and the grievance procedure.

d) Defendants, STS's and Temasek's destruction of or inability to retrieve documents, including documents relative to pending litigation matters.

e) Defendants, STS's and Temasek's production of documents in pending litigation matters.

f) Defendants, STS's and Temasek's acts of destruction of documents, destruction of evidence and spoliation of evidence in this and other litigation matters.

g) Allegations of spoliation of evidence or destruction of documents in any matter in which Defendants, STS or Temasek, or their predecessors or successors in interest are/were a party or witness, such as that experienced in the Tessera, Inc. patent litigation.

h) Detailed disclosure of the destruction all documents or other tangible thing relating to any judicial matter pending anywhere in the world by Defendants, STS or Temasek in the last 10 years.

i) Details of the destruction, spoliation and/or non-production of documents relating to the Tessera litigation.

j) Details of the destruction or non-availability of any documents relating to the above captioned litigation.

k) Defendants', STS's and Temasek's policies on employing non-US workers for US based employment.

l) Defendants' policy with respect to hiring minorities and women.

m) Statistical breakdown of women and minority held positions in Defendants', STS's and Temasek's organizations for the past 10 years.

n) Statistical breakdown of women and minorities whose employment with Defendants terminated within the last 10 years.

**5) Mitigation.**

– 8 –

a) The details of the Defendants' Tempe job posting about which Plaintiff inquired on or about May 30, 2008, and to which Defendants responded that the posting was unavailable to Sahakian because it was an 'artificial' posting to process a green card for one GS Kim, a non-citizen of the United States.

b) The employment of GS Kim.

c) Immigration matters relating to GS Kim.

d) Statistical breakdown of Defendants' employment of foreign nationals for the past 10 years.

e) Defendants' policy with respect to hiring foreign nationals.

f) The disparity in employment compensation between an employee of foreign nationality and an American employee for the same or similar employment position.

1. The employment by Defendants of the following:

   a. Jerry Almeida;
   b. Flynn Carson;
   c. Brett Dunlap;
   d. Ng Tiong Gee;
   e. Eric Gongora;
   f. Scott Gooch;
   g. Dr. Han Byung Joon;
   h. Jeff Howell;
   i. Scott Jewler;
   j. Tan Lay Koon;
   k. Cindy Palar;
   l. Nehal Patel;
   m. Ram Ramakrishna;
   n. Mike Schraeder;

o. Chris Shea;
p. Gaul Uy;
q. Jeff Yang;
r. Jeff Osmun
s. Raj Pendse
t. Maria Huang
u. Regina Liew
v. Janet Taylor

2. All matters raised, referenced or relating to the facts described in the November 6, 2008, correspondence from counsel for Plaintiff to counsel for Defendant.

## REQUEST FOR PRODUCTION OF DOCUMENTS

1. Please produce each and every document consulted or reviewed by any person, including documents reviewed by attorneys, in preparation for this deposition.

2. Please produce each document as kept in the normal course of business relating to any of the above subject matters, arranged by subject matter.

RESPECTFULLY SUBMITTED this 23rd day of January, 2009.

**PETER STROJNIK, P.C.**

_____

Peter Strojnik
Attorney for the Ms. Sahakian

-10-