L. Eric Dowell, SBN 011458
Caroline Larsen, SBN 022547
Monique Young, SBN 025121
Ogletree, Deakins, Nash, Smoak & Stewart, P.C., SBN 00504800
2415 East Camelback Road, Suite 800
Phoenix, Arizona 85016
Telephone:  (602) 778-3700
Facsimile:   (602) 778-3750
Eric.Dowell@ogletreedeakins.com
Caroline.Larsen@ogletreedeakins.com
Monique.Young@ogletreedeakins.com
Attorneys for Defendants

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Diane Sahakian, a single woman,<br><br>Plaintiff,<br><br>vs.<br><br>STATS ChipPAC, Inc., a foreign corporation; STATS ChipPAC Ltd, a foreign corporation; Temasek Holdings Private Limited, a foreign corporation; Singapore Technologies Semiconductors Private Limited, a foreign corporation,<br><br>Defendants. | CV08-241-PHX-HRH<br><br>**MOTION FOR ORDER FOR PLAINTIFF'S PSYCHOLOGICAL EXAMINATION AND REQUEST FOR SANCTIONS**<br><br>(Assigned to the Hon. H. Russel Holland ) |

Defendants STATS ChipPAC, Inc. and STATS ChipPAC, Ltd. (collectively, "STATS ChipPAC"), by and through undersigned counsel, hereby move the Court for an order directing Plaintiff Diane Sahakian ("Plaintiff" or "Sahakian") to submit to a mental examination pursuant to Rule 35(a), Fed. R. Civ. P.  Plaintiff has placed her mental state into controversy in this action by claiming to have suffered, and continuing to suffer, a wide array of alleged physical and emotional injuries as a result of Defendants' alleged discrimination and retaliation.  Accordingly, STATS ChipPAC has good cause for requesting a mental examination of Plaintiff.

In addition, STATS ChipPAC requests sanctions against Plaintiff and/or her counsel, pursuant to Fed. R. Civ. P. 37(b)(2)(C), for Plaintiff's abuse of the discovery process. Specifically, Defendants seek reimbursement for their costs and attorneys' fees incurred in scheduling an earlier examination of Plaintiff that she unreasonably refused to attend at the last minute.

This Motion is supported by the following Memorandum of Points and Authorities.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Plaintiff Diane Sahakian filed a two-count Complaint against STATS ChipPAC alleging a sexually hostile work environment and retaliation in violation of Title VII. Plaintiff alleges that as a result of her work environment, she suffered, and continues to suffer, mental and emotional distress, pain and suffering, anger, depression, and anxiety, among other things. (Seconded Amended Complaint, Doc. 61, at ¶¶ 38, 45). In addition, Plaintiff attributes such physical symptoms as teeth grinding, muscle aches, neck and back pain, insomnia, hair loss, weight gain, and elevated blood pressure to her work environment at STATS ChipPAC. (*See* Declaration of Caroline Larsen in Support of Defendants' Motion for Order for Psychological Examination and Request for Sanctions, attached as Exhibit 1, at ¶ 12; Letter from Peter Strojnik dated February 3, 2009, p. 20). Plaintiff has identified some treating physicians, Drs. David Mickus, Paul Thomas, and David Warman, to testify regarding her alleged emotional distress and accompanying physical ailments. (*See* Plaintiff's Initial Disclosure Statement, attached as Exhibit 2.)

STATS ChipPAC denies that any distress Plaintiff allegedly experienced was the result of any conduct by STATS ChipPAC. To support its defense, STATS ChipPAC has sought production of Plaintiff's medical and psychiatric records. In addition, the parties agreed that Plaintiff would submit to a psychological examination. Plaintiff, however, reneged on her agreement to submit to the examination and failed to attend the examination at the noticed date and time. (*See* Exhibit 1, at ¶¶ 13-18).

To help prepare its defense, STATS ChipPAC seeks an order requiring Plaintiff to submit to an examination by Dr. C. Brady Wilson. Dr. Wilson has had a general clinical psychological practice in Arizona for over thirty years. As reflected in his curriculum vitae, Dr. Wilson is both a practicing psychologist and an expert in conducting independent psychological examinations. (*See* Exhibit 1, at ¶ 7). Dr. Wilson is undeniably a "suitably licensed or certified examiner," as required by Rule 35. Due to Plaintiff's failure and refusal to appear at her examination at the date and time initially agreed to by the parties, STATS ChipPAC also seeks reimbursement for the costs and fees it unnecessarily incurred due to Plaintiff's and her counsel's misconduct.

## II. STATS ChipPAC IS ENTITLED TO AN ORDER REQUIRING PLAINTIFF TO SUBMIT TO A RULE 35(a) EXAMINATION.

Rule 35(a), Federal Rules of Civil Procedure, provides:

(1) *In General.* The court where the action is pending may order a party whose mental or physical condition . . . is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner. . . .

(2) *Motion and Notice; Contents of the Order.* The order:

(A) may be made only on motion for good cause and on notice to all parties and the person to be examined; and

(B) must specify the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it.

Fed. R. Civ. P. 35(a).

A party seeking a mental examination pursuant to this Rule must show only that the mental condition of the party to be examined is in controversy and that good cause exists for ordering the examination. *Schlagenhauf v. Holder*, 379 U.S. 104, 119 (1964). The "in controversy" and "good cause" requirements are necessarily related, so that if the moving party shows that the mental condition of the party to be examined genuinely is in controversy, the good cause requirement is very often met as well. *Id*. (holding that "[a] plaintiff in a negligence action who asserts mental or physical injury places that mental or

physical injury clearly in controversy and provides the defendant with good cause for an examination to determine the existence and extent of such asserted injury").

"One of the purposes of Rule 35 is to level the playing field between parties in cases in which a party's physical or mental condition is in issue. Granting a request for a psychiatric examination pursuant to Rule 35 is to preserve the equal footing of the parties to evaluate the plaintiff's mental state." *Ragge v. MCA/Universal Studios*, 165 F.R.D. 605 (C.D. Cal. 1995). Courts have held that Rule 35(a) "should be construed liberally in favor of granting discovery." *In re Certain Asbestos Cases*, 112 F.R.D. 427, 432 (N.D. Tex. 1986); *see also Cody v. Marriott*, 103 F.R.D. 421, 422 (D. Mass. 1984).

A. <u>Plaintiff Put Her Mental Condition in Controversy by Claiming Severe and Unusual Emotional Distress.</u>

Courts generally will find that a plaintiff's mental condition is in controversy, and thus good cause exists for ordering a Rule 35 mental examination, when the Plaintiff alleges ongoing mental injury as a component of damages. *Gattegno v. Pricewaterhousecoopers, LLP*, 204 F.R.D. 228 (D. Conn. 2001) (citing *Turner v. Imperial Stores*, 161 F.R.D. 89 (S.D. Cal. 1995)) (holding that plaintiff put her condition in controversy and provided good cause for a mental exam by alleging that she suffered and continued to suffer mental anguish, physical and emotional distress, humiliation and embarrassment and by seeking compensatory damages for harm to her psyche); *Ragge*, 165 F.R.D. at 608-609 (finding that a Rule 35 examination was proper because plaintiff placed her mental state in controversy by claiming damages for pain and suffering and for emotional distress related to sexual harassment, discrimination and retaliation in Title VII case); *Lahr v. Fulbright & Jaworski, LLP*, 164 F.R.D. 196 (N.D. Tex. 1995) (ordering mental examination of plaintiff in employment discrimination case because the plaintiff's use of psychiatric testimony in support of her claims supported a finding that plaintiff had placed her mental condition in controversy).

Moreover, when a plaintiff alleges that a defendant's misconduct filled her with such stress that she required the care of a physician, the plaintiff puts her mental

4

condition in controversy and gives the defendant good cause for a Rule 35 examination. *Cauley v. Ingram Micro, Inc.*, 216 F.R.D. 245, 247 (W.D.N.Y. 2003) (holding that employer was entitled to seek a mental evaluation where plaintiff alleged that she was placed under the care of physician as a result of her alleged discriminatory termination). Similarly, when a plaintiff claims emotional distress more severe than that which routinely accompanies such an action, the plaintiff has placed her mental condition in controversy. *Anson v. Fickel*, 110 F.R.D. 184, 186 (N.D. Ind. 1986) ("If the nature and seriousness of the emotional distress experienced by plaintiff are important issues in the lawsuit, the mental condition of the plaintiff is in controversy.").

In the present action, Plaintiff alleged that she suffered, and continues to suffer, a wide array of ongoing emotional injuries, with an accompanying array of physical symptoms, as a result of STATS ChipPAC's alleged discrimination. (Complaint at ¶¶ 38 & 45; Exhibit 1, at ¶ 13). Plaintiff has expressly stated in her discovery responses that she was "exhausted, depressed and overly stressed" by STATS ChipPAC's alleged failure to acknowledge and address her complaints. (*See* Plaintiff's Response to Defendant's First Set of Non-Uniform Interrogatories, Interrogatory No. 2, attached as Exhibit 3). Indeed, Plaintiff claims that she required a 30-day leave of absence due to the increasing stress she experienced during her employment with STATS ChipPAC. *Id*. Plaintiff claims she sought, and is still receiving, treatment for her emotional injuries. *See* Exhibit 2. Plaintiff has disclosed her treating physicians, Drs. David Mickus, Paul Thomas, and David Warman, as witnesses to testify at trial regarding her physical and mental condition. *Id.* Moreover, Plaintiff seeks damages for her emotional distress, pain, and suffering. (Complaint at ¶¶ 39 & 46; Exhibit 3, Response to Interrogatory No. 10).

Based on the foregoing, Plaintiff has unequivocally placed her emotional condition "in controversy." Plaintiff attributes her alleged ongoing physical and mental injuries to the alleged conduct of STATS ChipPAC. Plaintiff's emotional condition, and the cause of any emotional distress she claims to have experienced, is an issue of dispute between the parties, and clearly is in controversy in this action.

### B. If a Plaintiff Puts Her Mental Condition in Controversy, Good Cause for a Mental Examination Exists.

As mentioned above, courts merge the "in controversy" and "good cause" requirements of Rule 35 when a plaintiff claims an ongoing mental injury. *Ragge*, 165 F.R.D. 605, 609; *Jansen v. Packaging Corp. of N. Am.*, 158 F.R.D. 409, 410 (N.D. Ill. 1994) ("There is no question that by advancing such intangible harms (that plaintiff suffered and continues to suffer ongoing emotional distress due to alleged sexual harassment and retaliation by her former supervisor) as a component of her damages claim [plaintiff] has not only placed her mental condition in controversy but has confirmed the existence of good cause for an examination"). By claiming an ongoing psychological injury, the plaintiff places her mental state in controversy, which in turn constitutes good cause for ordering a psychological examination. *Ragge*, 165 F.R.D. at 609. Where the defendant has no other method to discover relevant information regarding Plaintiff's mental state, the motion for mental examination should be granted. *Id.*

STATS ChipPAC has good cause for requesting a mental examination of Plaintiff. STATS ChipPAC needs an independent examination to analyze the existence of the emotional distress that Plaintiff claims to have experienced and to determine what other factors could have affected Plaintiff's emotional well being. STATS ChipPAC would be unfairly prejudiced if it could not obtain independent evidence of Plaintiff's mental state and had to rely solely on self-serving testimony from Plaintiff and cross-examination of her personal physicians. STATS ChipPAC is entitled to have an independent mental examination performed to "preserve the equal footing of the parties" in regards to evidence concerning Plaintiff's mental state. Accordingly, good cause exists for the Court to issue an order for Plaintiff's mental examination.

### III. PROPOSED TIME, PLACE, MANNER, CONDITIONS AND SCOPE OF EXAMINATION.

STATS ChipPAC proposes that C. Brady Wilson, Ph.D conduct Plaintiff's Rule 35 examination. The examination will be conducted within 30 days of the Court's ruling

on this Motion, on a date and time mutually agreeable to the parties, at Dr. Wilson's office in Scottsdale, Arizona. The examination will last up to seven (7) hours and will include a one-on-one interview of Plaintiff by Dr. Wilson, as well as an evaluative testing component, which may include the Minnesota Multiphasic Personality Inventory-2 and the Millon Clinical Inventory to assess Plaintiff's mental status and attitude toward evaluation. (*See* Explanation of Dr. Wilson's Methodology, attached as Exhibit 4.) STATS ChipPAC further requests that no attorneys be present at Plaintiff's examination. *See Warrick v. Brode*, 46 F.R.D. 427 (D. Del. 1969) (holding that plaintiff was not entitled to have attorney present at examination because the presence of the attorney creates a potential ethical problem since the attorney becomes a possible witness); *Hertenstein v. Kimberly Home Health Care*, 189 F.R.D. 620, 629 (D. Kan. 1999) (holding that plaintiff had no right to have attorney present at examination because attorney's presence risks the integrity of the examination and its results); *accord Tomlin v. Holecek*, 150 F.R.D. 628, 631-633 (D. Minn. 1993).

## IV. THE COURT SHOULD IMPOSE SANCTIONS AGAINST PLAINTIFF AND/OR HER COUNSEL FOR ABUSES OF THE DISCOVERY PROCESS

The Federal Rules of Civil Procedure empower this Court to impose sanctions for abuses of the discovery process. Rule 37 authorizes the Court to order a party, the attorney advising the party, or both to pay reasonable expenses, including attorneys' fees, caused by the party's failure to comply with an order under Rule 35(a). A violation of a formal order compelling discovery is not required to seek sanctions under Rule 37. *See Quela v. Payco-General Am. Credibility, Inc.*, 2000 WL 656681, at *6-8 (N.D. Ill. May 18, 2000).

The Court in *Quela v. Payco-General American Credibility, Inc.* provided an instructive discussion of the court's authority under Rule 37:

> Although the language of Rule 37 requires a violation of a judicial order in order to impose sanctions, a formal, written order to comply with discovery is not required. Courts can broadly interpret what constitutes an order for purposes of imposing sanctions. *Brandt v. Vulcan, Inc.*, 30 F.3d 752, 756

n. 7 (7th Cir. 1994); . . . *see also Metropolitan Life Ins. Co. v. Cammon*, No. 88 C 5549, 1989 WL 153558, at *3 (N.D. Ill. Nov. 7, 1989) (formal order not necessary where a party has adequate notice regarding scheduled discovery procedures and fails to comply).

The court went on to say:

> Because all litigants are presumed to know that contumacious conduct of this sort is absolutely unacceptable, we can properly, consider the sanctions available under Rule 37. *See United States v. Golden Elevator Inc*., 27 F.3d 301, 302 (7th Cir. 1994) ("Lawyers and litigant who decide that they will play by their own invention will find that the game cannot be won."); *Hal Commodity Cycles Management v. Kirsh*, 825 F.2d 1136, 1139 (7th Cir. 1987) ("The Federal Rules of Civil Procedure . . . give ample notice to litigants of how to properly conduct themselves.").

*Quela* at *6. Thus, this Court has authority under Rule 37 to subject Plaintiff and her attorney to sanctions for Plaintiff's failure to appear at her previously-scheduled examination.

Counsel for STATS ChipPAC first contacted Plaintiff's counsel, Peter Strojnik, to schedule Plaintiff's mental examination on January 14, 2009. (*See* Exhibit 1, at ¶ 3). Counsel for STATS ChipPAC had to contact Strojnik no less than five times before Strojnik provided a date and time Plaintiff could be examined. Counsel for STATS ChipPAC was completely cooperative regarding Plaintiff's scheduling requests. *Id*. at ¶¶ 4-11. Plaintiff agreed that to appear for her examination on February 9, 2009, at Dr. Wilson's office; she did not request any conditions or limitations be placed on the examination. *Id*. at ¶ 11. On February 4, 2009, however – just three (3) business days before the scheduled examination – Strojnik sent an e-mail setting forth numerous, unreasonable demands and restrictions on the scope of the examination, including that he, Strojnik, intended to sit-in on the examination. *Id*. at ¶ 12. Plaintiff's counsel insisted on severely restricting the methodologies that Dr. Wilson could use, made demands regarding what Dr. Wilson could and could not analyze, and insisted that Dr. Wilson accept as true all of Plaintiff's allegations. *Id*. When counsel for STATS ChipPAC denied Strojnik's last-minute demands, Strojnik notified STATS ChipPAC that Plaintiff

would not attend the examination. *Id*. at ¶¶ 13-18. Counsel for STATS ChipPAC responded to Mr. Strojnik's February 4, 2009 correspondence on February 8, 2009, indicating that STATS ChipPAC still expected Plaintiff to appear for the examination at the scheduled date and time. *Id*. at ¶ 17. Counsel for STATS ChipPAC further advised Mr. Strojnik not to disrupt the examination. *Id*. Less than 24 hours before the scheduled examination, Strojnik responded by telling Dr. Wilson not to expect Plaintiff to appear for her examination. *Id*. at ¶ 18. Plaintiff, in fact, did not appear for her examination, and STATS ChipPAC will have to compensate Dr. Wilson for the wasted time he scheduled for the examination.

Because of Plaintiff's flagrant discovery abuses, reasonable sanctions are appropriate to compensate STATS ChipPAC for the value of the time set aside for the examination. Dr. Wilson's costs for the unused examination time are $1,650.00.

## V. CONCLUSION

Based on the foregoing, STATS ChipPAC requests that the Court order Plaintiff Diane Sahakian to undergo a mental examination pursuant to Rule 35(a). In addition, STATS ChipPAC requests sanctions against Plaintiff for the reasonable value of time it set aside for the February 9, 2009 medical examination that Plaintiff refused to attend.

DATED this 18th day of February 2009.

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.


By: s/ Caroline Larsen
    L. Eric Dowell
    Caroline Larsen
    Monique Young
    2415 East Camelback Road, Suite 800
    Phoenix, Arizona 85016
    Attorneys for Defendants

**CERTIFICATE OF SERVICE**

I hereby certify that on the 18th day of February 2009, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Peter Strojnik
Peter Strojnik, P.C.
3030 North Central Avenue, Suite 1401
Phoenix, Arizona 85012
Attorney for Plaintiff


s/ Debra Perkins


7020223.1 (OGLETREE)

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
2415 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016