# Exhibit 1

1  L. Eric Dowell, SBN 011458
2  Caroline Larsen, SBN 022547
   Monique Young, SBN 025121
3  Ogletree, Deakins, Nash, Smoak & Stewart, P.C., SBN 00504800
   2415 East Camelback Road, Suite 800
4  Phoenix, Arizona 85016
   Telephone:    (602) 778-3700
5  Facsimile:    (602) 778-3750
6  Eric.Dowell@ogletreedeakins.com
   Caroline.Larsen@ogletreedeakins.com
7  Monique.Young@ogletreedeakins.com

8
   Attorneys for Defendants
9

10
                    **UNITED STATES DISTRICT COURT**
11
                     **FOR THE DISTRICT OF ARIZONA**
12

13  Diane Sahakian, a single woman,          CV08-241-PHX-HRH

14                 Plaintiff,                 **DECLARATION OF CAROLINE
                                             LARSEN IN SUPPORT OF
15         vs.                                DEFENDANTS' MOTION FOR ORDER
                                             FOR PLAINTIFF'S PSYCHOLOGICAL
16  STATS ChipPAC, Inc., a foreign           EXAMINATION AND REQUEST FOR
    corporation; STATS ChipPAC Ltd, a        SANCTIONS
17  foreign corporation; Temasek Holdings
    Private Limited, a foreign corporation;  (Assigned to the Hon. H. Russel Holland)
18  Singapore Technologies Semiconductors
    Private Limited, a foreign corporation,
19

20                 Defendants.

21

22         I, Caroline Larsen, make the following declaration:

23         1.      I am an attorney with Ogletree, Deakins, Nash, Smoak and Stewart, P.C.,

24  the law firm retained to represent Defendants STATS ChipPAC, Inc. and STATS

25  ChipPAC Ltd. (collectively "STATS ChipPAC") in this litigation.

26         2.      I am over the age of 18 and am competent to testify as to all matters set

27  forth herein and will so testify if called upon to do so.  I make the following statements

28  based on my personal knowledge.

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
2415 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016

3.    On January 14, 2009, at approximately 2:55 p.m., I left a voicemail message for Plaintiff's counsel, Peter Strojnik, proposing dates for Dr. C. Brady Wilson to conduct a psychological examination of Plaintiff Diane Sahakian in connection with the above-captioned litigation.

4.    On January 16, 2009, having received no response to my voicemail, I emailed Plaintiff's counsel, Peter Strojnik and Peter K. Strojnik, reiterating the dates that Dr. Wilson was available to conduct Plaintiff's examination - January 21, 23, 26 or 27. *See* Exh. 1, attached.

5.    On January 21, 2009, Mr. Strojnik responded to my email.  Disregarding the dates I had proposed for Plaintiff's examination, he asked whether Dr. Wilson was available the week of February 9, just eight days before the deadline for Defendants to disclose an expert report in this action.  Mr. Strojnik also requested a copy of Dr. Wilson's curriculum vitae and asked how Dr. Wilson would record his interview of Plaintiff. *See* Exh. 2, attached.

6.    I responded to Mr. Strojnik's email the same day, pointing out that scheduling Plaintiff's examination the week of February 9 would not allow Dr. Wilson sufficient time to review the results of the examination and prepare a report by the deadline for Defendants to disclose an expert report.  I again asked whether Plaintiff could be available for examination on January 23, 26 or 27. *See* Exh. 3, attached.

7.    Later that same day, I emailed Dr. Wilson's curriculum vitae to Mr. Strojnik and advised him that Dr. Wilson would video record his interview of Plaintiff.  I reminded Mr. Strojnik that I had been trying to schedule Plaintiff's examination for a week and asked him to confirm, by the close of business on January 22, the date Plaintiff could be available for examination. *See* Exh. 4, attached.

8.    On January 22, 2009, Mr. Strojnik sent me an email repeating his request that Defendants schedule Plaintiff's medical examination for the week of February 9, 2009. *See* Exh. 5, attached.

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
2415 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016

9.    On January 26, 2009, I sent an email to Mr. Strojnik advising that Defendants could accommodate his request to schedule Plaintiff's examination for the week of February 9, if Plaintiff would stipulate to extend the time for Defendants to disclose their expert report. I provided Mr. Strojnik with a proposed stipulation and form of order, and asked him to let me know what time Plaintiff would be at Dr. Wilson's office on February 9 for her examination. *Id.*

10.    On January 28, 2009, having received no response to my voicemail, I again emailed the stipulation and form of order to Plaintiff's counsel and asked them to advise what time Plaintiff would be at Dr. Wilson's office on February 9 for her examination. I advised Plaintiff's counsel that, if I did not receive their response by the close of business on January 29, STATS ChipPAC would file a motion with the Court for an order for Plaintiff's examination. *See* Exh. 6, attached.

11.    Mr. Strojnik responded with his consent to the stipulation to extend the deadline for Defendants to disclose their expert report, but he still did not confirm when Plaintiff would be at Dr. Wilson's office on February 9 for her examination. I emailed Mr. Strojnik again requesting that he confirm the time of the examination and, upon finally receiving his response, I filed the Notice of Examination pursuant to Rule 35, Federal Rules of Civil Procedure. *See* Exhs. 7 and 8, attached.

12.    I heard nothing further from Mr. Strojnik on this topic until February 4, 2009, just three business days before the scheduled examination, when he emailed a letter to me setting forth numerous restrictions he sought to impose on Dr. Wilson's examination. *See* Exh. 9, attached. Mr. Strojnik had not previously given any indication that Plaintiff's agreement to submit to examination was subject to any limitations.

13.    On February 6, 2009, I responded Mr. Strojnik's letter. I confirmed that Dr. Wilson would be conducting a psychological examination of Plaintiff, not a medical examination, but that Defendants would not otherwise agree to restrict or direct the manner in which Dr. Wilson conducted his examination. I advised Mr. Strojnik that Defendants expected Plaintiff to appear at the scheduled place and time for her

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
2415 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016

3

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
2415 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016

1   examination and that Dr. Wilson would not limit his examination according to the

2   instructions set forth in Mr. Strojnik's February 4, 2009 letter. *See* Exh. 10, attached.

3          14.    Mr. Strojnik responded later that day (Friday) that he would allow Plaintiff

4   to be examined only on the terms of his February 4, 2009 correspondence. Mr. Strojnik

5   further stated that he would accompany Plaintiff to her examination "to ensure that Dr.

6   Wilson stays within the bounds of his expertise and the issues in the case." *See* Exh. 11,

7   attached.

8          15.    I responded to Mr. Strojnik the same day, pointing out that his interruption

9   of the examination to interject his personal opinions of Dr. Wilson's "expertise and the

10  issues in the case" would disrupt the independent nature of the examination. I advised

11  Mr. Strojnik that, if he had indicated at any time in the three-and-a-half weeks since

12  STATS ChipPAC had asked to schedule Plaintiff's examination that he intended to

13  interfere with the examination process, STATS ChipPAC would have moved the Court

14  for an Order for Plaintiff's examination in accordance with the Federal Rules of Civil

15  Procedure.   I advised Mr. Strojnik that STATS ChipPAC would not agree to his

16  restrictions on Plaintiff's examination. I further advised that, if Plaintiff did not appear at

17  Dr. Wilson's office for her examination at the noticed date and time, and permit Dr.

18  Wilson to conduct a one-on-one examination without interference from Plaintiff's

19  counsel, STATS ChipPAC would move the Court for an order to set a second

20  examination and seek reimbursement for the amount billed by Dr. Wilson for the futile

21  first examination attempt. *Id.*

22         16.    On Saturday, February 7, Mr. Strojnik emailed a letter to counsel for

23  STATS ChipPAC, stating that STATS ChipPAC would need to reschedule Plaintiff's

24  examination in light of the disagreement between the parties regarding the scope and

25  purpose of the examination. *See* Exh. 12, attached.

26         17.    On Sunday, February 8, counsel for STATS ChipPAC responded to Mr.

27  Strojnik's correspondence, indicating that STATS ChipPAC still expected Plaintiff to

28

appear for the examination at the scheduled date and time.  Counsel for STATS ChipPAC further advised Mr. Strojnik not to disrupt the examination.  *See* Exh. 13, attached.

18.    Mr. Strojnik responded the same day, less than 24 hours before the scheduled examination, telling Dr. Wilson not to expect Plaintiff to appear for her examination.  *See* Exh. 14, attached.  As Mr. Strojnik stated, Plaintiff did not appear for her examination on February 10.

Pursuant to the laws of the State of Arizona, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 16th day of February 2009 at Phoenix, Arizona.

_____
Caroline Larsen

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
2415 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016

# Exhibit 1

**Larsen, Caroline**

| | |
|---|---|
| **From:** | Larsen, Caroline |
| **Sent:** | Friday, January 16, 2009 3:16 PM |
| **To:** | 'PksEsq@aol.com'; 'Strojnik@aol.com' |
| **Cc:** | Dowell, L. Eric |
| **Subject:** | Sahakian v. STATS ChipPAC - independent medical examination |
| **File:** | 0 |

Gentlemen,

I left a message on Wednesday afternoon regarding scheduling Plaintiff's IME in this action. As I advised, our expert, Dr. Brady Wilson, is available on January 21, 23, 26 or 27. He can be flexible as to the start time for the exam, which he estimates will take six hours.

Please advise at your earliest notice which date(s) work for Ms. Sahakian, and I will issue the appropriate notice.

Thank you for your prompt response.

Caroline Larsen
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
2415 East Camelback Road, Suite 800
Phoenix, Arizona 85016
Email: caroline.larsen@ogletreedeakins.com
Direct Dial: 602-778-3756
Main Telephone Number: 602-778-3700
Fax: 602-778-3750

# Exhibit 2

**Larsen, Caroline**

| | |
|---|---|
| **From:** | strojnik [strojnik@aol.com] |
| **Sent:** | Wednesday, January 21, 2009 12:44 PM |
| **To:** | Larsen, Caroline; PksEsq |
| **Cc:** | Dowell, L. Eric |
| **Subject:** | Re: Sahakian v. STATS ChipPAC - independent medical examination |

Dear Ms. Larsen:

Is Dr. Wilson available the week of February 9? Also, can you please forward to me his CV? Lastly, please specify the manner of recording the personal interview.

Thank you in advance for your courtesy.

Peter Strojnik
**PETER STROJNIK, P.C.**
3030 North Central Avenue, Suite 1401
Phoenix, Arizona 85012
Telephone: 602-524-6602
Facsimile: 602-296-0135
e-mail ps@strojnik.com

**Confidentiality Notice:** The information contained in this electronic e-mail and any accompanying attachment(s) is intended only for the use of the intended recipient and may be confidential and/or privileged. If any reader of this communication is not the intended recipient, unauthorized use, disclosure or copying is strictly prohibited, and may be unlawful. If you have received this communication in error, please immediately notify the sender by return e-mail, and delete the original message and all copies from your system. Thank you.

In a message dated 01/16/09 15:16:23 US Mountain Standard Time, Caroline.Larsen@ogletreedeakins.com writes:

> Gentlemen,
>
> I left a message on Wednesday afternoon regarding scheduling Plaintiff's IME in this action. As I advised, our expert, Dr. Brady Wilson, is available on January 21, 23, 26 or 27. He can be flexible as to the start time for the exam, which he estimates will take six hours.
>
> Please advise at your earliest notice which date(s) work for Ms. Sahakian, and I will issue the appropriate notice.
>
> Thank you for your prompt response.
>
> Caroline Larsen
> Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
> 2415 East Camelback Road, Suite 800
> Phoenix, Arizona 85016

Email: caroline.larsen@ogletreedeakins.com
Direct Dial: 602-778-3756
Main Telephone Number: 602-778-3700
Fax: 602-778-3750

**A Good Credit Score is 700 or Above. <u>See yours in just 2 easy steps!</u>**

# Exhibit 3

**Larsen, Caroline**

| | |
|---|---|
| **From:** | Larsen, Caroline |
| **Sent:** | Wednesday, January 21, 2009 1:09 PM |
| **To:** | 'strojnik'; 'PksEsq' |
| **Cc:** | Dowell, L. Eric |
| **Subject:** | RE: Sahakian v. STATS ChipPAC - independent medical examination |
| **File:** | 0 |

Mr. Strojnik,

Scheduling the examination the week of February 9 will not allow Dr. Wilson sufficient time to review the results of his examination and prepare a report by Defendants' disclosure deadline. Can Ms. Sahakian be available for examination on January 23, 26 or 27?

I have left a message for Dr. Wilson to confirm how he will record Ms. Sahakian's interview, and I will forward his CV shortly.

Caroline Larsen

**From:** strojnik [mailto:strojnik@aol.com]
**Sent:** Wednesday, January 21, 2009 12:44 PM
**To:** Larsen, Caroline; PksEsq
**Cc:** Dowell, L. Eric
**Subject:** Re: Sahakian v. STATS ChipPAC - independent medical examination

Dear Ms. Larsen:

Is Dr. Wilson available the week of February 9? Also, can you please forward to me his CV? Lastly, please specify the manner of recording the personal interview.

Thank you in advance for your courtesy.

Peter Strojnik
**PETER STROJNIK, P.C.**
3030 North Central Avenue, Suite 1401
Phoenix, Arizona 85012
Telephone: 602-524-6602
Facsimile: 602-296-0135
e-mail ps@strojnik.com

**Confidentiality Notice:** The information contained in this electronic e-mail and any accompanying attachment(s) is intended only for the use of the intended recipient and may be confidential and/or privileged. If any reader of this communication is not the intended recipient, unauthorized use, disclosure or copying is strictly prohibited, and may be unlawful. If you have received this communication in error, please immediately notify the sender by return e-mail, and delete the original message and all copies from your system. Thank you.

In a message dated 01/16/09 15:16:23 US Mountain Standard Time, Caroline.Larsen@ogletreedeakins.com writes:

Gentlemen,

I left a message on Wednesday afternoon regarding scheduling Plaintiff's IME in this action.  As I advised, our expert, Dr. Brady Wilson, is available on January 21, 23, 26 or 27. He can be flexible as to the start time for the exam, which he estimates will take six hours.

Please advise at your earliest notice which date(s) work for Ms. Sahakian, and I will issue the appropriate notice.

Thank you for your prompt response.

Caroline Larsen
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
2415 East Camelback Road, Suite 800
Phoenix, Arizona 85016
Email: caroline.larsen@ogletreedeakins.com
Direct Dial: 602-778-3756
Main Telephone Number: 602-778-3700
Fax: 602-778-3750

**A Good Credit Score is 700 or Above. <u>See yours in just 2 easy steps!</u>**

# Exhibit 4

**Perkins, Debra A.**

| | |
|---|---|
| **From:** | Larsen, Caroline |
| **Sent:** | Wednesday, January 21, 2009 6:51 PM |
| **To:** | 'strojnik'; 'PksEsq' |
| **Cc:** | Dowell, L. Eric |
| **Subject:** | RE: Sahakian v. STATS ChipPAC - independent medical examination |
| **Attachments:** | 1972_001.pdf |
| **File:** | 0 |

Mr. Strojnik,

Attached is Mr. Wilson's C.V. He will record the interview on video. As you are aware, I have been trying to schedule Ms. Sahakian's examination for the last week. In light of your client's claims of emotional distress as a result of the discrimination she claims to have experienced, Defendants' right to the examination should not be an issue. We cannot further delay scheduling her examination, in light of the pending deadline for Defendants to disclose their expert report. Please confirm when Ms. Sahakian can be available for examination by the close of business tomorrow, January 22. I am hopeful that you will be reasonable and cooperative to avoid the unnecessary expenditure of fees, however, if I do not receive a response, Defendants will proceed to move the Court for an order for Ms. Sahakian's examination.

Please call me if you would like to discuss this matter.

Caroline Larsen

---

**From:** Larsen, Caroline
**Sent:** Wednesday, January 21, 2009 1:09 PM
**To:** 'strojnik'; 'PksEsq'
**Cc:** Dowell, L. Eric
**Subject:** RE: Sahakian v. STATS ChipPAC - independent medical examination

Mr. Strojnik,

Scheduling the examination the week of February 9 will not allow Dr. Wilson sufficient time to review the results of his examination and prepare a report by Defendants' disclosure deadline. Can Ms. Sahakian be available for examination on January 23, 26 or 27?

I have left a message for Dr. Wilson to confirm how he will record Ms. Sahakian's interview, and I will forward his CV shortly.

Caroline Larsen

---

**From:** strojnik [mailto:strojnik@aol.com]
**Sent:** Wednesday, January 21, 2009 12:44 PM

2/13/2009

**To:** Larsen, Caroline; PksEsq
**Cc:** Dowell, L. Eric
**Subject:** Re: Sahakian v. STATS ChipPAC - independent medical examination

Dear Ms. Larsen:

Is Dr. Wilson available the week of February 9? Also, can you please forward to me his CV?  Lastly, please specify the manner of recording the personal interview.

Thank you in advance for your courtesy.

Peter Strojnik
**PETER STROJNIK, P.C.**
3030 North Central Avenue, Suite 1401
Phoenix, Arizona 85012
Telephone:  602-524-6602
Facsimile: 602-296-0135
e-mail ps@strojnik.com

**Confidentiality Notice:** The information contained in this electronic e-mail and any accompanying attachment(s) is intended only for the use of the intended recipient and may be confidential and/or privileged. If any reader of this communication is not the intended recipient, unauthorized use, disclosure or copying is strictly prohibited, and may be unlawful. If you have received this communication in error, please immediately notify the sender by return e-mail, and delete the original message and all copies from your system. Thank you.

In a message dated 01/16/09 15:16:23 US Mountain Standard Time, Caroline.Larsen@ogletreedeakins.com writes:

> Gentlemen,
>
> I left a message on Wednesday afternoon regarding scheduling Plaintiff's IME in this action.  As I advised, our expert, Dr. Brady Wilson, is available on January 21, 23, 26 or 27. He can be flexible as to the start time for the exam, which he estimates will take six hours.
>
> Please advise at your earliest notice which date(s) work for Ms. Sahakian, and I will issue the appropriate notice.
>
> Thank you for your prompt response.
>
> Caroline Larsen
> Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
> 2415 East Camelback Road, Suite 800
> Phoenix, Arizona 85016
> Email: caroline.larsen@ogletreedeakins.com
> Direct Dial: 602-778-3756
> Main Telephone Number: 602-778-3700
> Fax: 602-778-3750

**A Good Credit Score is 700 or Above. See yours in just 2 easy steps!**

9316 Raintree Drive          **C. BRADY WILSON, PH.D.**          Phone (480) 778-0202
Suite 130                    PSYCHOLOGIST • CONSULTANT          FAX (480) 778-0204
Scottsdale, Arizona 85260                                       cbradywilson@yahoo.com

CURRICULUM VITAE

## PART I. PERSONAL DATA

A.   Name:          Charles Brady Wilson

B.   Education:

| Degree | University | Year |
|--------|------------|------|
| Ph.D. | Boston University Graduate School | 1978 |
| Th.M. | Boston University School of Theology | 1973 |
| B.A. | Anderson University | 1970 |

C.   Clinical Training

1974 - 1976     Two year pre doctoral internship
                Judge Baker Guidance Center Brookline, Mass.

1975 - 1976     One year pre doctoral internship
                Albert V. Danielson Counseling Center
                Boston University, Boston, Mass.

1976 - 1979     Two Year Post Doctoral Internship
                Interfaith Pastoral Counseling Service
                Scottsdale, Arizona

D.   Scholarships, Fellowships and Awards:

1995     Karl F. Heiser Award - Presented by the
         American Psychological Association

1995     Presidential Citation, Arizona Psychological Association

1993     Presidential Citation, Arizona Psychological Association

1989     Certificate of appreciation, Scottsdale Psychological Society

1975 - 1976     Albert V. Danielson Fellow
                Boston University Graduate School

1973 - 1976     Graduate Teaching/Research Fellowship
                Boston University Graduate School

E.    Licensure:

    1985            Licensed as a Psychologist in the State of Arizona, # 1213.

F.    Professional Experience:

    1980 - Present    Psychologist, Consultant in Private Practice in Scottsdale, Arizona. Practice based upon direct and professional referrals from physicians, corporations and attorneys. General psychological practice with specialties in psychological assessment, social/psychological assessment of toxic environments, brief therapy and acute psychological care, fitness for work evaluations, occupational forensic psychology, industrial medicine and litigation support for civil and criminal proceedings.

    2006    Present    Vice President and Director or Research and Development for Advanced Psychological Examinations, LLC

    1999 - Present    Co-founder; Wilson & Ellis Consultants, and Research Specialists, LLC, Consultants to Business and Industry on Organizational Communication, Organizational Development, Industrial and Organizational Psychology, Focus Group and Market Research

    1994 - 1999    President, PsyNet, An IPC psychologist panel providing assessment and intervention to business and health service purchasers including Mayo Clinic, Arizona.

G.    Forensic Experience:
    Has provided expert testimony on injury induced stress disorders, professional standards, sexual harassment, discrimination and hostile environment elements in civil proceedings, in County, Superior Court and U.S. District court, by deposition, affidavit and written report

H.    Consulting:
    Has provided consultation to business and industry on risk reduction through policy capturing, employee screening, selection and training approaches. Has provided training to attorneys, USEEOC investigators, and Human Resource Professionals on Workplace Dynamics, Sexual Harassment and Discrimination, and Distress Claims. Has provided in-service training to physicians on acute and chronic stress, work related injury claims, Has provided consultation to and litigation support to attorneys and law firms in the determination of class certification, determination of claim status, sexualization of work environments, and other opinion issues in employment litigation.

I.    Memberships:    Member American Psychological Association
                Member American Psychology - Law Society
                Member Arizona Psychological Association
                Member Society for Industrial and Organizational Psychology

J.    Additional and Continuing Education:
                Personal Injury Evaluations; Ethics, Practice & Case Law
                Assessment of Response Style in Forensic Contexts
                Developmental Pathways to Antisocial and Aggressive Behavior
                Psychological Independent Medical Evaluations: Clinical, Ethical & Practical Issues
                Mental Health Expert Training, Superior Court of Arizona
                Brewing a Jury; Scientific & Practical Perspectives
                Treating PTSD: Cognitive Behavioral Strategies
                Critical Incident Stress Debriefing for Mental Health Clinicians
                Consultation to Corporations and Business
                Violence and Criminality

PART II.        CONSULTING

    1.    The Boeing Company, Mesa, Arizona Rotorcraft Division - Cultural
       Assessment
          One year contract to assess for gender/minority status as it relays to
          management practices.

    3.    Virgo Publishing, Inc. - Management Selection
          Made assessment of existing Management for efficient factors -
          designed assessment process for new Management Candidates

    4.    Three Five Systems - Management Selection
          Pre Employment Screening of potential Management Candidates

    5.    Motorola Phoenix - Efficiency Training (10X Coordination)
          Provided selection/identification process for Management

    6.    USEEOC - Keynote Address - Responding to Harassment Claims

    7.    Arizona Law Center - Sexual Harassment Training

    8.    Intermountain Health Care (Salt Lake City) - Diversity and Gender Role
       Training

    9.    Virgo Publishing, Inc. - Executive Coaching and In-House Consultation

    10.   Arizona Law Enforcement Coordinating Committee - Responding to
       Harassment Complaints

    11.   CALMAT - Risk Reduction
          Risk Assessment for Management

    12.   USEEOC - Skills Training / Risk Reduction in the Employment Setting

PART III.       ACCOMPLISHMENTS

A.      Evidence of Publications and Presented Creative Endeavors:

Publications

    1.    "The Role of the Psychologist in Civil Proceedings", Published by the Arizona Bar,
       AZBA Proceedings, Invited address Presented to the Arizona Bar Association, 1994

    2.    "U.S. Businesses Suffer from Workplace Trauma", The Personnel Journal, Vol. 70 (7),
       July, 1991.

    3.    "Privileged Communications", Arizona Issues; Perspectives for Arizona Women, Vol. 1,
       (1), 1994.

Other Publications and Unpublished Works

    1.    "A Clinical Consideration of Psychic Workplace Stress; The Cumulative Effects
       of Employment Induced Psychological Strain"

    2.    "The Heuristics of Attributional Search and Examiner Bias in the Determination of
       Emotional Distress Claims"

Presentations/Courses
To the Academic Community

    1.    University of Phoenix "Assessment and Treatment of Trauma and Stress Disorders"

    2.    Arizona State University - MBA for Executives Program "Risk Reduction for Sexual
       Harassment and Related Issues"

    3.    Arizona State University - MBA for Executives Program Distinguished Guest Lecturer;
       "Diversity in the Workplace"

4.    Arizona State University - School of Architecture    "Environmental cues and Architectural Science"

5.    Adjunct Faculty, Union School of Professional Psychology

6.    Adjunct Faculty, Arizona State University

To the Legal Community

1.    "Stress: The Next Disability: What it means under ADA Worker's Comp. Sorting through Stress Claims" Law Seminars International.

2.    "Plaintiff Characteristics in Employment Law", Presentation to NELA (National Employment Lawyers Association), American Bar Association.

3.    "Conducting Sexual Harassment Investigations: Avoiding False Negatives and False Positive", Training provided to the United States Equal Employment Opportunity Commission in Phoenix, AZ.

4.    United States Equal Employment Opportunity Commission - Training to Attorneys & Investigators "Sex-Role Stereotyping, Gender Differences, and Wrong Assumptions in Employment Investigations"

5.    Arizona Bar Association, 1998 "The Psychologist Role as Plaintiff's Expert"

6.    Arizona Bar Association, 1996 "The Psychologist Role in Employment Litigation"

7.    Legal Education Institute Training for Attorneys, "The expert Witness in Employment Litigation; Role Issues, Current Research and Case Law Summary"

8.    American Bar Association - NELA  "Sensitivity to Evolving Gender Issues and Roles in the Workplace"

9.    Arizona Bar Association, 1994 "The Psychologist/Consultant's Role in Civil Suits; Examiner, Expert, Opinion"

10.   Department of Public Safety Policy Planners; the Las Vegas, Nevada Police Academy and Training Cent  "Writing Policy to Prevent Sexual Harassment in Conventionally Male Professions"

11.   Phoenix District Office USEEOC  Park City Skills Training  - Keynote Speaker "Sexual Harassment Dynamics and ADA Reasonable Accommodation"

12.   Legal Education Institute - Using the Psychologist as Expert

To the Psychological Community

1.    Arizona Psychological Association  - Mock Trial and Psychologist Training for Adversary Process

2.    Arizona Psychological Association  "Post Traumatic Stress Disorder and other Trauma and Stress Reactions: DSM-IV Developments and Related Issues"

3.    California Psychological Association  "Post Traumatic Stress Disorder: Directions in the evaluation of Trauma and Stress Reactions"

4.      New Mexico Training Institute "Post Traumatic Stress Disorder and other Trauma and Stress Reactions: DSM-IV Developments and Related Issues"

To the Medical Community

1.      Mayo Clinic Scottsdale, Internal Residents Program, Grand Rounds, "Gender Differences and the Practice of Medicine"

2.      St. Lukes Hospital, Behavioral Health unit, "DSM-IV and New Development regarding Stress and Trauma Disorders"

3.      St. Josephs Hospital, Family Practice Residents Program, "Diagnosis and Screening for Stress and Depressive diagnoses among High Medical Utilizers"

4.      Scottsdale Samaritan Behavioral Health Center, Public Information Program, "Organizational Specific Stress related Symptoms and Symptom Presentation"

5.      Mayo Clinic Scottsdale, Internal Residents Program, Grand Rounds, "Avoiding the New Sexual Harassment Case: Implicit Sexual Contact in the Medical Setting"

6.      St. Josephs Hospital, Family Practice Residents Program, "Physician Burnout"

7.      Scottsdale Samaritan Behavioral Health Center, Staff Workshop, "Workplace Violence"

# Exhibit 5

**Perkins, Debra A.**

| | |
|---|---|
| **From:** | Larsen, Caroline |
| **Sent:** | Monday, January 26, 2009 3:00 PM |
| **To:** | 'strojnik'; 'PksEsq' |
| **Cc:** | Dowell, L. Eric |
| **Subject:** | RE: Sahakian v. STATS ChipPAC - independent medical examination |
| **Attachments:** | STATS ChipPAC_Sahakian - Joint Stipulation to Extend Deadline for Expert Testimony.DOC; STATS ChipPAC_Sahakian Order re_ stipulation to extend expert report deadline.DOC |
| **File:** | 0 |

Mr. Strojnik,

We can accommodate your request to schedule the IME for the week of February 9, so long as you will stipulate to extend the time for Defendants to disclose their expert report by three weeks, to allow Dr. Wilson sufficient time to review the results of the examination and prepare his report. A proposed stipulation and form of order is attached.

Please advise whether I have your permission to sign the stipulation on your behalf and file, and let me know what time Ms. Sahakian can be at Dr. Wilson's office on February 9 for the examination.

Thank you,

Caroline Larsen
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
2415 East Camelback Road, Suite 800
Phoenix, Arizona 85016
Email: caroline.larsen@ogletreedeakins.com
Direct Dial: 602-778-3756
Main Telephone Number: 602-778-3700
Fax: 602-778-3750

**From:** strojnik [mailto:strojnik@aol.com]
**Sent:** Thursday, January 22, 2009 4:54 AM
**To:** Larsen, Caroline; PksEsq
**Cc:** Dowell, L. Eric
**Subject:** Re: Sahakian v. STATS ChipPAC - independent medical examination

Dear Ms. Larsen:

As I indicated below, please try to schedule the IME for the week of February 9, 2009. I hope that you will be reasonable and cooperative in scheduling the IME. Thank you for your anticipated courtesy.

Peter Strojnik
**PETER STROJNIK, P.C.**
3030 North Central Avenue, Suite 1401
Phoenix, Arizona 85012
Telephone: 602-524-6602

2/13/2009

Facsimile: 602-296-0135
e-mail ps@strojnik.com

**Confidentiality Notice:** The information contained in this electronic e-mail and any accompanying attachment(s) is intended only for the use of the intended recipient and may be confidential and/or privileged. If any reader of this communication is not the intended recipient, unauthorized use, disclosure or copying is strictly prohibited, and may be unlawful. If you have received this communication in error, please immediately notify the sender by return e-mail, and delete the original message and all copies from your system. Thank you.

In a message dated 01/21/09 18:51:29 US Mountain Standard Time, Caroline.Larsen@ogletreedeakins.com writes:

> Mr. Strojnik,
>
> Attached is Mr. Wilson's C.V. He will record the interview on video. As you are aware, I have been trying to schedule Ms. Sahakian's examination for the last week. In light of your client's claims of emotional distress as a result of the discrimination she claims to have experienced, Defendants' right to the examination should not be an issue. We cannot further delay scheduling her examination, in light of the pending deadline for Defendants to disclose their expert report. Please confirm when Ms. Sahakian can be available for examination by the close of business tomorrow, January 22. I am hopeful that you will be reasonable and cooperative to avoid the unnecessary expenditure of fees, however, if I do not receive a response, Defendants will proceed to move the Court for an order for Ms. Sahakian's examination.
>
> Please call me if you would like to discuss this matter.
>
> Caroline Larsen
>
> ---
>
> **From:** Larsen, Caroline
> **Sent:** Wednesday, January 21, 2009 1:09 PM
> **To:** 'strojnik'; 'PksEsq'
> **Cc:** Dowell, L. Eric
> **Subject:** RE: Sahakian v. STATS ChipPAC - independent medical examination
>
> Mr. Strojnik,
>
> Scheduling the examination the week of February 9 will not allow Dr. Wilson sufficient time to review the results of his examination and prepare a report by Defendants' disclosure deadline. Can Ms. Sahakian be available for examination on January 23, 26 or 27?
>
> I have left a message for Dr. Wilson to confirm how he will record Ms. Sahakian's interview, and I will forward his CV shortly.
>
> Caroline Larsen

**From:** strojnik [mailto:strojnik@aol.com]
**Sent:** Wednesday, January 21, 2009 12:44 PM
**To:** Larsen, Caroline; PksEsq
**Cc:** Dowell, L. Eric
**Subject:** Re: Sahakian v. STATS ChipPAC - independent medical examination

Dear Ms. Larsen:

Is Dr. Wilson available the week of February 9? Also, can you please forward to me his CV?  Lastly, please specify the manner of recording the personal interview.

Thank you in advance for your courtesy.

Peter Strojnik
**PETER STROJNIK, P.C.**
3030 North Central Avenue, Suite 1401
Phoenix, Arizona 85012
Telephone:  602-524-6602
Facsimile: 602-296-0135
e-mail ps@strojnik.com

**Confidentiality Notice:** The information contained in this electronic e-mail and any accompanying attachment(s) is intended only for the use of the intended recipient and may be confidential and/or privileged. If any reader of this communication is not the intended recipient, unauthorized use, disclosure or copying is strictly prohibited, and may be unlawful. If you have received this communication in error, please immediately notify the sender by return e-mail, and delete the original message and all copies from your system. Thank you.

In a message dated 01/16/09 15:16:23 US Mountain Standard Time,
Caroline.Larsen@ogletreedeakins.com writes:

> Gentlemen,
>
> I left a message on Wednesday afternoon regarding scheduling Plaintiff's IME in this action.  As I advised, our expert, Dr. Brady Wilson, is available on January 21, 23, 26 or 27.  He can be flexible as to the start time for the exam, which he estimates will take six hours.
>
> Please advise at your earliest notice which date(s) work for Ms. Sahakian, and I will issue the appropriate notice.
>
> Thank you for your prompt response.
>
> Caroline Larsen
> Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
> 2415 East Camelback Road, Suite 800
> Phoenix, Arizona 85016
> Email: caroline.larsen@ogletreedeakins.com
> Direct Dial: 602-778-3756
> Main Telephone Number: 602-778-3700

Fax: 602-778-3750

**A Good Credit Score is 700 or Above. See yours in just 2 easy steps!**

**A Good Credit Score is 700 or Above. See yours in just 2 easy steps!**

# Exhibit 6

**Perkins, Debra A.**

| | |
|---|---|
| **From:** | Larsen, Caroline |
| **Sent:** | Wednesday, January 28, 2009 5:21 PM |
| **To:** | 'strojnik'; 'PksEsq' |
| **Cc:** | Dowell, L. Eric |
| **Subject:** | FW: Sahakian v. STATS ChipPAC - independent medical examination |
| **Attachments:** | STATS ChipPAC_Sahakian - Joint Stipulation to Extend Deadline for Expert Testimony.DOC; STATS ChipPAC_Sahakian Order re_ stipulation to extend expert report deadline.DOC |
| **File:** | 0 |

Mr. Strojnik,

I am following up on the below request. We have been more than reasonable in accommodating your request regarding scheduling Ms. Sahakian's independent medical examination. I have contacted you repeatedly since January 14 regarding scheduling and, two weeks later, we still do not have a confirmed date and time.

Please advise whether I have your permission to sign the attached stipulation to extend the time for Defendants to disclose their expert report by three weeks, to allow Dr. Wilson sufficient time to review the results of the examination and prepare his report on your behalf and file. In addition, I am awaiting your response regarding what time Ms. Sahakian will be at Dr. Wilson's office on February 9 for her examination. If I do not receive your response by the close of business tomorrow, Defendants will file a motion with the Court for an order for Ms. Sahakian's examination on Friday, attaching all correspondence on this matter as exhibits to explain why Court intervention is necessary.

Caroline Larsen
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
2415 East Camelback Road, Suite 800
Phoenix, Arizona 85016
Email: caroline.larsen@ogletreedeakins.com
Direct Dial: 602-778-3756
Main Telephone Number: 602-778-3700
Fax: 602-778-3750

**From:** Larsen, Caroline
**Sent:** Monday, January 26, 2009 3:00 PM
**To:** 'strojnik'; 'PksEsq'
**Cc:** Dowell, L. Eric
**Subject:** RE: Sahakian v. STATS ChipPAC - independent medical examination

Mr. Strojnik,

We can accommodate your request to schedule the IME for the week of February 9, so long as you will stipulate to extend the time for Defendants to disclose their expert report by three weeks, to

allow Dr. Wilson sufficient time to review the results of the examination and prepare his report. A proposed stipulation and form of order is attached.

Please advise whether I have your permission to sign the stipulation on your behalf and file, and let me know what time Ms. Sahakian can be at Dr. Wilson's office on February 9 for the examination.

Thank you,

Caroline Larsen
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
2415 East Camelback Road, Suite 800
Phoenix, Arizona 85016
Email: caroline.larsen@ogletreedeakins.com
Direct Dial: 602-778-3756
Main Telephone Number: 602-778-3700
Fax: 602-778-3750

**From:** strojnik [mailto:strojnik@aol.com]
**Sent:** Thursday, January 22, 2009 4:54 AM
**To:** Larsen, Caroline; PksEsq
**Cc:** Dowell, L. Eric
**Subject:** Re: Sahakian v. STATS ChipPAC - independent medical examination

Dear Ms. Larsen:

As I indicated below, please try to schedule the IME for the week of February 9, 2009. I hope that you will be reasonable and cooperative in scheduling the IME. Thank you for your anticipated courtesy.

Peter Strojnik
**PETER STROJNIK, P.C.**
3030 North Central Avenue, Suite 1401
Phoenix, Arizona 85012
Telephone: 602-524-6602
Facsimile: 602-296-0135
e-mail ps@strojnik.com

**Confidentiality Notice:** The information contained in this electronic e-mail and any accompanying attachment(s) is intended only for the use of the intended recipient and may be confidential and/or privileged. If any reader of this communication is not the intended recipient, unauthorized use, disclosure or copying is strictly prohibited, and may be unlawful. If you have received this communication in error, please immediately notify the sender by return e-mail, and delete the original message and all copies from your system. Thank you.

In a message dated 01/21/09 18:51:29 US Mountain Standard Time, Caroline.Larsen@ogletreedeakins.com writes:

Mr. Strojnik,

Attached is Mr. Wilson's C.V. He will record the interview on video. As you are aware, I have been trying to schedule Ms. Sahakian's examination for the last week. In light of your

client's claims of emotional distress as a result of the discrimination she claims to have experienced, Defendants' right to the examination should not be an issue. We cannot further delay scheduling her examination, in light of the pending deadline for Defendants to disclose their expert report. Please confirm when Ms. Sahakian can be available for examination by the close of business tomorrow, January 22. I am hopeful that you will be reasonable and cooperative to avoid the unnecessary expenditure of fees, however, if I do not receive a response, Defendants will proceed to move the Court for an order for Ms. Sahakian's examination.

Please call me if you would like to discuss this matter.

Caroline Larsen

---

**From:** Larsen, Caroline
**Sent:** Wednesday, January 21, 2009 1:09 PM
**To:** 'strojnik'; 'PksEsq'
**Cc:** Dowell, L. Eric
**Subject:** RE: Sahakian v. STATS ChipPAC - independent medical examination

Mr. Strojnik,

Scheduling the examination the week of February 9 will not allow Dr. Wilson sufficient time to review the results of his examination and prepare a report by Defendants' disclosure deadline. Can Ms. Sahakian be available for examination on January 23, 26 or 27?

I have left a message for Dr. Wilson to confirm how he will record Ms. Sahakian's interview, and I will forward his CV shortly.

Caroline Larsen

---

**From:** strojnik [mailto:strojnik@aol.com]
**Sent:** Wednesday, January 21, 2009 12:44 PM
**To:** Larsen, Caroline; PksEsq
**Cc:** Dowell, L. Eric
**Subject:** Re: Sahakian v. STATS ChipPAC - independent medical examination

Dear Ms. Larsen:

Is Dr. Wilson available the week of February 9? Also, can you please forward to me his CV? Lastly, please specify the manner of recording the personal interview.

Thank you in advance for your courtesy.

Peter Strojnik
**PETER STROJNIK, P.C.**
3030 North Central Avenue, Suite 1401
Phoenix, Arizona 85012
Telephone: 602-524-6602
Facsimile: 602-296-0135

2/13/2009

e-mail ps@strojnik.com

**Confidentiality Notice:** The information contained in this electronic e-mail and any accompanying attachment(s) is intended only for the use of the intended recipient and may be confidential and/or privileged. If any reader of this communication is not the intended recipient, unauthorized use, disclosure or copying is strictly prohibited, and may be unlawful. If you have received this communication in error, please immediately notify the sender by return e-mail, and delete the original message and all copies from your system. Thank you.

In a message dated 01/16/09 15:16:23 US Mountain Standard Time, Caroline.Larsen@ogletreedeakins.com writes:

Gentlemen,

I left a message on Wednesday afternoon regarding scheduling Plaintiff's IME in this action. As I advised, our expert, Dr. Brady Wilson, is available on January 21, 23, 26 or 27. He can be flexible as to the start time for the exam, which he estimates will take six hours.

Please advise at your earliest notice which date(s) work for Ms. Sahakian, and I will issue the appropriate notice.

Thank you for your prompt response.

Caroline Larsen
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
2415 East Camelback Road, Suite 800
Phoenix, Arizona 85016
Email: caroline.larsen@ogletreedeakins.com
Direct Dial: 602-778-3756
Main Telephone Number: 602-778-3700
Fax: 602-778-3750

A Good Credit Score is 700 or Above. See yours in just 2 easy steps!

A Good Credit Score is 700 or Above. See yours in just 2 easy steps!

# Exhibit 7

**Perkins, Debra A.**

| | |
|---|---|
| **From:** | Larsen, Caroline |
| **Sent:** | Thursday, January 29, 2009 12:31 PM |
| **To:** | 'strojnik'; 'PksEsq' |
| **Cc:** | Dowell, L. Eric |
| **Subject:** | RE: FW: Sahakian v. STATS ChipPAC - independent medical examination |
| **File:** | 0 |

Mr. Strojnik,

Before we submit the stipulation, we need to confirm when Dr. Wilson can examine Ms. Sahakian. For the third time, please let me know what time Ms. Sahakian will be at Dr. Wilson's office on February 9 for the examination so that I can issue the notice.

Caroline Larsen

**From:** strojnik [mailto:strojnik@aol.com]
**Sent:** Thursday, January 29, 2009 12:13 PM
**To:** Larsen, Caroline; PksEsq
**Cc:** Dowell, L. Eric
**Subject:** Re: FW: Sahakian v. STATS ChipPAC - independent medical examination

Dear Counsel:

This confirms my consent to your signing my name on the stipulation. Thank you for your continued courtesy in this matter.


Peter Strojnik
**PETER STROJNIK, P.C.**
3030 North Central Avenue, Suite 1401
Phoenix, Arizona 85012
Telephone: 602-524-6602
Facsimile: 602-296-0135
e-mail ps@strojnik.com

**Confidentiality Notice:** The information contained in this electronic e-mail and any accompanying attachment(s) is intended only for the use of the intended recipient and may be confidential and/or privileged. If any reader of this communication is not the intended recipient, unauthorized use, disclosure or copying is strictly prohibited, and may be unlawful. If you have received this communication in error, please immediately notify the sender by return e-mail, and delete the original message and all copies from your system. Thank you.

In a message dated 01/28/09 17:21:40 US Mountain Standard Time, Caroline.Larsen@ogletreedeakins.com writes:

Mr. Strojnik,

I am following up on the below request. We have been more than reasonable in

accommodating your request regarding scheduling Ms. Sahakian's independent medical examination. I have contacted you repeatedly since January 14 regarding scheduling and, two weeks later, we still do not have a confirmed date and time.

Please advise whether I have your permission to sign the attached stipulation to extend the time for Defendants to disclose their expert report by three weeks, to allow Dr. Wilson sufficient time to review the results of the examination and prepare his report on your behalf and file. In addition, I am awaiting your response regarding what time Ms. Sahakian will be at Dr. Wilson's office on February 9 for her examination. If I do not receive your response by the close of business tomorrow, Defendants will file a motion with the Court for an order for Ms. Sahakian's examination on Friday, attaching all correspondence on this matter as exhibits to explain why Court intervention is necessary.

Caroline Larsen
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
2415 East Camelback Road, Suite 800
Phoenix, Arizona 85016
Email: caroline.larsen@ogletreedeakins.com
Direct Dial: 602-778-3756
Main Telephone Number: 602-778-3700
Fax: 602-778-3750

**From:** Larsen, Caroline
**Sent:** Monday, January 26, 2009 3:00 PM
**To:** 'strojnik'; 'PksEsq'
**Cc:** Dowell, L. Eric
**Subject:** RE: Sahakian v. STATS ChipPAC - independent medical examination

Mr. Strojnik,

We can accommodate your request to schedule the IME for the week of February 9, so long as you will stipulate to extend the time for Defendants to disclose their expert report by three weeks, to allow Dr. Wilson sufficient time to review the results of the examination and prepare his report. A proposed stipulation and form of order is attached.

Please advise whether I have your permission to sign the stipulation on your behalf and file, and let me know what time Ms. Sahakian can be at Dr. Wilson's office on February 9 for the examination.

Thank you,

Caroline Larsen
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
2415 East Camelback Road, Suite 800
Phoenix, Arizona 85016
Email: caroline.larsen@ogletreedeakins.com

2/13/2009

Direct Dial: 602-778-3756

Main Telephone Number: 602-778-3700

Fax: 602-778-3750

**From:** strojnik [mailto:strojnik@aol.com]
**Sent:** Thursday, January 22, 2009 4:54 AM
**To:** Larsen, Caroline; PksEsq
**Cc:** Dowell, L. Eric
**Subject:** Re: Sahakian v. STATS ChipPAC - independent medical examination

Dear Ms. Larsen:

As I indicated below, please try to schedule the IME for the week of February 9, 2009. I hope that you will be reasonable and cooperative in scheduling the IME. Thank you for your anticipated courtesy.

Peter Strojnik
**PETER STROJNIK, P.C.**
3030 North Central Avenue, Suite 1401
Phoenix, Arizona 85012
Telephone:  602-524-6602
Facsimile: 602-296-0135
e-mail ps@strojnik.com

**Confidentiality Notice:** The information contained in this electronic e-mail and any accompanying attachment(s) is intended only for the use of the intended recipient and may be confidential and/or privileged. If any reader of this communication is not the intended recipient, unauthorized use, disclosure or copying is strictly prohibited, and may be unlawful. If you have received this communication in error, please immediately notify the sender by return e-mail, and delete the original message and all copies from your system. Thank you.

In a message dated 01/21/09 18:51:29 US Mountain Standard Time,
Caroline.Larsen@ogletreedeakins.com writes:

> Mr. Strojnik,
>
> Attached is Mr. Wilson's C.V.  He will record the interview on video.  As you are aware, I have been trying to schedule Ms. Sahakian's examination for the last week. In light of your client's claims of emotional distress as a result of the discrimination she claims to have experienced, Defendants' right to the examination should not be an issue.  We cannot further delay scheduling her examination, in light of the pending deadline for Defendants to disclose their expert report.  Please confirm when Ms. Sahakian can be available for examination by the close of business tomorrow, January 22.  I am hopeful that you will be reasonable and cooperative to avoid the unnecessary expenditure of fees, however, if I do not receive a response, Defendants will proceed to move the Court for an order for Ms. Sahakian's examination.
>
> Please call me if you would like to discuss this matter.
>
> Caroline Larsen

2/13/2009

**From:** Larsen, Caroline
**Sent:** Wednesday, January 21, 2009 1:09 PM
**To:** 'strojnik'; 'PksEsq'
**Cc:** Dowell, L. Eric
**Subject:** RE: Sahakian v. STATS ChipPAC - independent medical examination

Mr. Strojnik,

Scheduling the examination the week of February 9 will not allow Dr. Wilson sufficient time to review the results of his examination and prepare a report by Defendants' disclosure deadline.  Can Ms. Sahakian be available for examination on January 23, 26 or 27?

I have left a message for Dr. Wilson to confirm how he will record Ms. Sahakian's interview, and I will forward his CV shortly.

Caroline Larsen

**From:** strojnik [mailto:strojnik@aol.com]
**Sent:** Wednesday, January 21, 2009 12:44 PM
**To:** Larsen, Caroline; PksEsq
**Cc:** Dowell, L. Eric
**Subject:** Re: Sahakian v. STATS ChipPAC - independent medical examination

Dear Ms. Larsen:

Is Dr. Wilson available the week of February 9? Also, can you please forward to me his CV?  Lastly, please specify the manner of recording the personal interview.

Thank you in advance for your courtesy.

Peter Strojnik
**PETER STROJNIK, P.C.**
3030 North Central Avenue, Suite 1401
Phoenix, Arizona 85012
Telephone:  602-524-6602
Facsimile: 602-296-0135
e-mail ps@strojnik.com

**Confidentiality Notice:** The information contained in this electronic e-mail and any accompanying attachment(s) is intended only for the use of the intended recipient and may be confidential and/or privileged. If any reader of this communication is not the intended recipient, unauthorized use, disclosure or copying is strictly prohibited, and may be unlawful. If you have received this communication in error, please immediately notify the sender by return e-mail, and delete the original message and all copies from your system. Thank you.

In a message dated 01/16/09 15:16:23 US Mountain Standard Time, Caroline.Larsen@ogletreedeakins.com writes:

Gentlemen,

I left a message on Wednesday afternoon regarding scheduling Plaintiff's IME in this action. As I advised, our expert, Dr. Brady Wilson, is available on January 21, 23, 26 or 27. He can be flexible as to the start time for the exam, which he estimates will take six hours.

Please advise at your earliest notice which date(s) work for Ms. Sahakian, and I will issue the appropriate notice.

Thank you for your prompt response.

Caroline Larsen
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
2415 East Camelback Road, Suite 800
Phoenix, Arizona 85016
Email: caroline.larsen@ogletreedeakins.com
Direct Dial: 602-778-3756
Main Telephone Number: 602-778-3700
Fax: 602-778-3750

A Good Credit Score is 700 or Above. See yours in just 2 easy steps!

A Good Credit Score is 700 or Above. See yours in just 2 easy steps!

A Good Credit Score is 700 or Above. See yours in just 2 easy steps!

# Exhibit 8

**Notices**
2:08-cv-00241-HRH Sahakian v. STATS ChipPAC, Inc. et al
PROTO, STD


### U.S. District Court

### DISTRICT OF ARIZONA

#### Notice of Electronic Filing

The following transaction was entered by Larsen, Caroline on 1/29/2009 at 2:33 PM MST and filed on 1/29/2009

| | |
|---|---|
| **Case Name:** | Sahakian v. STATS ChipPAC, Inc. et al |
| **Case Number:** | 2:08-cv-241 |
| **Filer:** | STATS ChipPAC, Inc. |
| | STATS ChipPAC, Ltd. |

**Document Number:** 46

**Docket Text:**
**Notice re Independent Medical Examination of Plaintiff Diane Sahakian by STATS ChipPAC, Inc., STATS ChipPAC, Ltd. (Larsen, Caroline)**


**2:08-cv-241 Notice has been electronically mailed to:**

Caroline Kathleen Larsen    caroline.larsen@ogletreedeakins.com, debra.perkins@ogletreedeakins.com, trish.simon@ogletreedeakins.com

Leigh Eric Dowell    eric.dowell@ogletreedeakins.com, glenda.ready@ogletreedeakins.com

Monique DeAnne Young    monique.young@ogletreedeakins.com

Peter Strojnik    strojnik@aol.com

Peter Kristofer Strojnik    pksesq@aol.com

**2:08-cv-241 Notice will be sent by other means to those listed below if they are affected by this filing:**

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1096393563 [Date=1/29/2009] [FileNumber=3661986-0
] [12fc8e292b217aabbdc69bd14a9dc1f097aef4b409bd0bff63467db644b15ee8010
5cc04d4e3c7fdd5fd1fcd076ed92663b37a3363236d6aeeec5216261e6dcc]]

1  L. Eric Dowell, SBN 011458
2  Caroline K. Larsen, SBN 022547
   Monique D. Young, SBN 025121
3  Ogletree, Deakins, Nash, Smoak & Stewart, P.C., SBN 00504800
4  2415 East Camelback Road, Suite 800
   Phoenix, Arizona 85016
5  Telephone:   (602) 778-3700
   Facsimile:   (602) 778-3750
6  Eric.Dowell@ogletreedeakins.com
7  Caroline.Larsen@ogletreedeakins.com
   Monique.Young@ogletreedeakins.com
8  Attorneys for Defendants

9

10              UNITED STATES DISTRICT COURT

11              FOR THE DISTRICT OF ARIZONA

12

13  Diane Sahakian, a single woman,          CV08-241-PHX-HRH

14              Plaintiff,                    NOTICE OF INDEPENDENT MEDICAL
                                             EXAMINATION OF PLAINTIFF DIANE
15      vs.                                  SAHAKIAN

16  STATS ChipPAC, Inc., a foreign
    corporation; STATS ChipPAC Ltd, a
17  foreign corporation,                     (Assigned to the Hon. H. Russel Holland )

18              Defendants.

19

20      **YOU ARE HEREBY NOTIFIED** that, pursuant to Rule 35, Federal Rules of

21  Civil Procedure, Plaintiff will appear for an independent medical examination at the time

22  and place stated below, pursuant to agreement by the parties.

23      **PERSON TO BE EXAMINED:**            Diane Sahakian.

24      **DATE AND TIME OF EXAMINATION:**     Monday, February 9, 2009
                                             at 9:30 a.m.
25

26      **PLACE OF EXAMINATION:**             C. Brady Wilson, Ph.D.
                                             9316 E. Raintree, Suite 130
27                                           Scottsdale, AZ  85260

28

*(left margin, rotated)* OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C. 2415 EAST CAMELBACK ROAD, SUITE 800 PHOENIX, ARIZONA 85016

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DATED this 29th day of January, 2009.

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.

By: s/ Caroline Larsen
    L. Eric Dowell
    Caroline K. Larsen
    Monique D. Young
    2415 East Camelback Road, Suite 800
    Phoenix, Arizona 85016
    Attorneys for Defendants

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
2415 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016

2

1

## CERTIFICATE OF SERVICE

2       I hereby certify that on January 29, 2008, I electronically transmitted the attached

3   document to the Clerk's Office using the CM/ECF System for filing and transmittal of a

Notice of Electronic Filing to the following CM/ECF registrants:

4

5   Peter Strojnik

Peter Strojnik, P.C.

6   3030 North Central Avenue, Suite 1401

Phoenix, Arizona 85012

7   Attorney for Plaintiff

8

s/ Debra A. Perkins

9

6924586.1 (OGLETREE)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
2415 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016

3

# Exhibit 9

**Perkins, Debra A.**

| | |
|---|---|
| **From:** | Larsen, Caroline |
| **Sent:** | Friday, February 06, 2009 10:09 AM |
| **To:** | Perkins, Debra A.; Simon, Trish L. |
| **Subject:** | FW: Sahakian v. STATS |
| **Attachments:** | 02-04-09 to Larsen and Wilson.pdf |
| **File:** | 0 |

FYI and file.

Caroline Larsen

**From:** strojnik [mailto:strojnik@aol.com]
**Sent:** Wednesday, February 04, 2009 11:12 AM
**To:** Larsen, Caroline; Dowell, L. Eric
**Cc:** Diane Sahakian
**Subject:** Sahakian v. STATS

Dear Counsel:

Please see attached.  A copy of this letter is being forwarded to Dr. Wilson directly; however, to ensure that he gets it, can please e-mail it on to him as well?

Thank you in advance for your continued courtesy.

Great Deals on Dell Laptops. Starting at $499.

2/13/2009

THE LAW FIRM OF

# PETER STROJNIK

ATTORNEY AT LAW



February 3, 2009

Caroline Kathleen Larsen, Esq. *by e-mail only*
*caroline.larsen@ogletreedeakins.com*
Leigh Eric Dowell, Esq. *by e-mail only*
*eric.dowell@ogletreedeakins.com*
Ogletree Deakins Nash Smoak & Stewart PC
2415 E Camelback Rd, Ste 800
Phoenix , Arizona 85016

C. Brady Wilson, Ph.D
9316 East Raintree, Suite 130
Scottsdale, Arizona 85260
by First Class Mail

Re:    1. *Sahakian v. STATS ChipPAC, Inc. et al* 2:08-cv-00241-HRH

Dear Ms. Larsen, Mr. Dowell, Ms. Young and Dr. Wilson:

The Medical Examination of my client is scheduled for Monday, February 9, 2009 at 9:30 in the offices of Dr. Wilson.   The purpose of this letter is to clearly delineate Dr. Wilson's role in this litigation.

Dr. Wilson holds himself out as providing "litigation support"; according to Dr. Wilson's Curriculum Vitae, his practice consists of "occupational forensic psychology, industrial medicine and litigation support for civil and criminal proceedings".   Generally, a psychologist who provides "litigation support" is not an independent examiner; he is hired to advocate his client's position. "Litigation support" testimony is usually not designated to reach a true and complete medical evaluation, but to advance a particular position.   My understanding is that Dr. Wilson is being paid for his contribution in this litigation matter.

With respect to Dr. Wilson's expertise in the area of Forensic Psychology, I note that Dr. Wilson "has provided expert testimony on …sexual harassment, discrimination and hostile work elements in civil proceedings … by deposition, affidavit and written report."   We request that Dr. Wilson provide copies of the depositions, affidavits and written reports referenced in his resume.

Dr. Wilson's role in this proceeding is defined by Rule 35, Federal Rules of Civil Procedure.  Rule 35 limits Dr. Wilson's role to a "physical or mental examination" of my client. Since Dr., Wilson is not a medical doctor but a doctor of philosophy, he must not conduct any "physical" examination.

There are some psychologists who undertake to assess a patient's credibility. There is no science of credibility assessment. The psychologists who engage in this practice attempt to advance their client's position with voodoo science. Such actions are unethical and inappropriate.  The Arizona Supreme Court has made it clear that credibility assessments are strictly and uniquely the province of the jury. See *Estate of Reinen v. N. Ariz. Orthopedics, Ltd.*, 198 Ariz. 283, ¶ 12, 9 P.3d 314, 318 (2000) (evaluating the credibility of witnesses is particularly within the province of the jury).

We are confident that Dr. Wilson will steer clear of any such misconduct.  We insist that Dr. Wilson *not* employ any test, assessment, communication or any other psychological method the sole, primary, or secondary effect of which relates in any manner to a patient's credibility. This includes the administration of any test with undisclosed internal credibility evaluations.

Likewise, Dr. Wilson's role in this matter is not to examine my client's personality. My client's personality is not in issue here.  Therefore, any personality test, including without limitation the Minnesota Multiphasic Personality Inventory in any of its versions shall not be administered.

This medical examination is not designed to determine the facts underlying Plaintiff's cause of action. It is designed for examination of the patient's medical condition. The fact finding process for the underlying facts is specifically set forth in the Federal Rules of Civil Procedure, Rule 26 *et seq.*  The Rules provide for taking of depositions, exchange of documentation, exchange of interrogatories and other vehicles for determining the allegations of the Plaintiff and the defenses by the Defendant.

I am confident that Ms. Larsen has forwarded the allegations – including the allegations in Addendum A – to Dr. Wilson. The examination of my client is to be conducted in light of these allegations. Dr. Wilson is not authorized to accept some allegations and reject others; he is to accept all allegations as true for the purposes of his examination. Otherwise, we will view his opinion as paid for advocacy.

Dr. Wilson "has provided expert testimony on …sexual harassment, discrimination and hostile work elements in civil proceedings … by deposition, affidavit and written report". It is my assumption that Dr. Wilson is familiar with psychological concepts of "mobbing" and "bullying"[1]. We are confident that Dr. Wilson is familiar with Dr. Heinz Leymann's ground breaking work on "psychological terror" involving "hostile and unethical communication directed in a systematic way by one or a few individuals mainly towards one individual."[2] Addendum A and the following narrative must be considered by Dr. Wilson in his examination of the effects of mobbing and bullying on my client:

    a) BJ Han referring to Americans as "fat", "stupid" and "lazy".

    b) BJ Han referring to American employees as a "monkeys".

    c) Statement by BJ Han that every American employee is an "idiot".

---

[1] Although mobbing and bullying behaviors overlap, mobbing denotes a "ganging up" by the leader--organization, superior, co-worker, or subordinate--who rallies others into systematic and frequent "mob-like" behavior. In contrast to bullying, mobbing is clearly a group behavior. Bullying, on the other hand, denotes a one-on-one harassment. In a mobbing, management is often tacitly involved. This is why, in such a case, a victim rarely can find recourse. Because the organization ignores, condones or even instigates the behavior, it can be said that the victim, seemingly helpless against the powerful and many, is indeed "mobbed." The result is always injury -- physical or mental distress or illness, social misery, and often, but not always, expulsion from the workplace. And sadly, the victims did not have a reputation of not performing well, not meeting organizational standards, or who could not get along with others to begin with. Quite the contrary, more often than not, the targets had been esteemed members of the organization.

[2] Leymann identified some 45 typical mobbing behaviors such as withholding information, isolation, badmouthing, constant criticism, circulation of unfounded rumors, ridicule, yelling, etc.

d) BJ Han referring to Plaintiff in particular as "fat".

e) Referring to American employees by Lay Koon as, "You fat people" and "You Americans are fat".

f) BJ Han's statement to Defendant's employee of Indian ancestry that he (BJ Han) "doesn't like Indians".

g) BJ Han's comment to an employee of Indian ancestry– in response to flight crew announcement beginning with, "Ladies and Gentlemen" – "This announcement is not for you".

h) Kenny Lee's comment to an employee of Indian ancestry that "You should get yourself a pretty girlfriend, not an Indian girl, but a pretty one."

i) BJ Han's comment to an employee of Chinese ancestry that Japanese and Korean were superior races, followed by Taiwan, China and India.

j) BJ Han's statement to an employee of Chinese ancestry that Chinese are a third world country compared to Korean and Japanese.

k) Lay Koon's raising his voice to American employees.

l) Sexual pass made against Plaintiff in Palo Alto by BK Sohn in or about 2004, and BJ Han's advice to BK Sohn to leave Plaintiff alone.

m) Sexual pass made against Plaintiff by Doug Matthews in San Francisco during a semiconductor show in or about 2005.

n) The details of posting Plaintiffs likeness on the Defendants' Tempe server database with a man groping her breast.

o) The details of Eric Gongora's inappropriate sexual remarks about Plaintiff's breasts, etc)

p) Eric Gongora's distribution of a photo of women w/ large breasts from his former place of employment..

q) Gail in HR's reference to a complainant as a drama queen and dysfunctional and useless person.

Peter Strojnik                          Page 5                          2/4/2009

I am looking forward to Dr. Wilson's report and, if necessary, his subsequent deposition.

                                        Sincerely,

                                        Peter Strojnik

PS: pjs
CC:
*Client by e-mail only*

# ADDENDUM A

## 1) FACTUAL BACKGROUND

### a) The Parties

Sahakian is a 47- year old single mother who began her employment with STATS in August 1999. Plaintiff received her Bachelor of Science degree in Mechanical Engineering from the University of California Santa Barbara. Prior to her employment by Defendants, she successfully worked in various engineering capacities for several semiconductor companies.

Defendant STATS ChipPAC Ltd. ("STATS") provides assembly and testing solutions to customers within the semiconductor industry. Corporate headquarters are located in Singapore. The Company has manufacturing, design, testing and customer support operations throughout Asia and the United States. The Company's customer support offices are centered in the United States, including Phoenix where Sahakian was employed. It is Sahakian's position that she was employed by a wholly-owned subsidiary, STATS ChipPac Inc. (a California corporation), as well as STATS ChipPAC Ltd.

Sahakian was hired as a Product Engineering Manufacturer in August 1999 and was promoted to the position of Senior Product Engineer Manager in May 2001. She received two interim promotions and due to her exemplary job performance, was again promoted to the position of Vice President of Emerging Technology ("ET") in April 2006. As a Vice President in Defendant's Technology Development organization,
Sahakian was one of the very few female executives in the companies. She managed a technical group of approximately seven employees in Phoenix who were responsible for generating the corporate technology roadmaps and emerging technology strategies, and engaging customers in emerging technologies.

Sahakian reported to her supervisor, Dr. Han Byung Joon a/k/a BJ Han ("Han"), Chief Technology Officer, who is employed by Defendant STATS ChipPAC Ltd. and based in Singapore. In September 2004, Scott Jewler, Chief Strategy Officer, became Sahakian's supervisor. As a result of reorganization, Han became Sahakian's supervisor again in August 2006.

Sahakian's personnel file contains her job performance evaluations, bonuses and awards, which demonstrate that she has always been considered a stellar performer by

STATS until the events which led to this lawsuit. In Sahakian's 2005 and 2006 performance reviews, it is important to note that during the oral review period, Tan Lay Koon, Chief Executive Officer of STATS, verbally commended Sahakian on her ability to manage a difficult group and advised her to keep doing what she was doing. In both review periods, Sahakian received satisfactory ratings.

### b) Sahakian Reports Problems Being Created by Subordinate Employees

#### i) Eric Gongora

The hostile work environment created by Sahakian's peers began soon after Eric Gongora, a director subordinate to Sahakian, began to create a clique of male employees in 2006. Gongora had been transferred into her department in November 2004. Soon after the transfer, Scott Jewler, CSO and Senior Vice President and then Sahakian's manager, asked her several times if Gongora was behaving, because he had a reputation for being a trouble maker; Jewler had terminated Gongora at their former company. Sahakian assured Jewler there were no problems at the time, but she soon learned that Gongora was a master at manipulating people and situations for his own gain. Gongora constantly came to Sahakian's office seeking advice on personal situations, his ex-wife, divorce, road rage problems and anger management training by the police and made inappropriate remarks which Sahakian dismissed out of embarrassment; he also bad-mouthed many co-workers and managers, pitting people against others for his own personal gain.

In July 2006, Sahakian began reporting to management insubordination, attendance and performance issues with Gongora. Jewler and Han both acknowledged Gongora was a troublemaker. Jewler suggested "not to waste time on the guy... and to move him to the side or out." Gongora pitted other employees (Dunlap, Gooch, Schraeder, and possibly others) against Sahakian. In August 2006, Sahakian sent emails to Han complaining about Gongora's attitude and work ethics and reported to Han that she was giving Gongora a verbal warning on August 23, 2006. On September 6, 2006, Sahakian sent an email to her team informing them that she was taking the day off to have her air conditioning installed. She also sent an email to the managers who worked under her, including Gongora, telling them that she was not impressed with the work ethics in Tempe and asked them to set a better example, because Gongora was taking advantage of Sahakian not being in the office. Subsequently, on September 19, 2006, Sahakian sent an email directly to Gongora in which she criticized him for coming in after 9:00 **am,** taking two-hour lunches and leaving between 4:30-5:00 p.m.' Gongora responded with an attacking email to Sahakian, his supervisor.

Sahakian forwarded Gongora's emails to Han and asked that Gongora be made an individual contributor while she documented him, since he was not able to set a good example for others and he was pitting the employees who reported to him against Sahakian. She complained that he had been insubordinate on several occasions and told Han that Jewler did not want her wasting any more time with Gongora. On September 20, 2006, Han recommended Sahakian to "not react on what he does...not to reorganize based on a person and advised her of the steps to take, which began with verbal and written warnings leading to a 90 day action plan with specific expectations." Han specifically stated: "you have to make a very fair and long process."[3] Han's instructions were difficult to decipher and contradictory. When Sahakian informed Han of the troubles she was having with Gongora on September 20, 2006, Han responded in email: "You survived a cancer and everybody call you for BJ. [sic] What are you afraid of now?" In September, Gongora aggressively stated he would tell his group (Dunlap and Gooch) how to behave toward Sahakian. This email was sent because Gongora would disappear without notice, employees were complaining about his whereabouts and that he was not responsive or meeting commitments. Sahakian rightfully believed she needed action to correct the situation.

This statement stands in stark contrast to the total absence of "process" before Sahakian was demoted in August 2007, without prior notice, warning or progressive discipline.

Soon thereafter, while Sahakian was documenting Gongora and giving him verbal warnings, Jewler called her, asking to transfer a resource from ET to Product Line Management ("PLM") since he didn't feel ET could justify 3 employees with SiP (System in Package) expertise. He asked for one employee (Scott Gooch) to transfer but Sahakian didn't want to transfer him at that time. Jewler then said he would take Gongora and Sahakian agreed, but she warned Jewler that Gongora was acting up and that he needed disciplining. Consequently, Gongora leaving Sahakian's group was due to the request of Jewler.

Notwithstanding the transfer to PLM, Sahakian was required to continue sending Han emails criticizing Gongora because his behavior continued to be disruptive and damaging in the Tempe office. His work area cube was just outside of Sahakian's office and he would talk loudly, whistle loudly and engage in conduct to annoy Sahakian in her office. Han repeatedly requested Sahakian to focus on her

---

[3] This is a "fair and long process" that was not afforded Ms. Sahakian in her demotion and subsequent termination.

work and ignore Gongora, despite her warning Han that he was damaging her reputation, working relationships, and creating a hostile work environment. Sahakian informed her management on multiple occasions that if the harassment/collusion didn't stop, it would eventually destroy her career at STATS ChipPAC, which it did. On March 3, 2007, Sahakian sent an email to senior management requesting Gongora be officially warned about his disruptive behavior. Incredibly, Gongora's new manager, Mr. Cindy Palar, Vice President Corporate Planning in the PLM group, forwarded that email to Gongora.

## ii) Brett Dunlap

In March 2007, Flynn Carson and Sahakian gave Brett Dunlap, a SiP Product Manager in her group, his performance evaluation for the first quarter of 2007. Prior to the review, Sahakian had complained to Han about Dunlap's attitude issues and work ethic. Upon receiving the review, Dunlap became hostile toward Sahakian and enlisted Gongora's assistance. The two of them complained to many employees in the Tempe and Fremont offices, with a one-sided story about how unfair the review was and criticizing Sahakian. Dunlap complained to Han about the rating system and Sahakian's review. Han supported Sahakian in an email to Dunlap and reminded him that others also concurred with Sahakian's review and that Dunlap misunderstood the performance appraisal scoring system. Dunlap created a Powerpoint presentation regarding his negative perception of Sahakian and accused her of making racial comments to him and others. Dunlap's accusations were self-serving and no one in the Tempe office other than Dunlap or Gongora would support his false accusations.

Sahakian requested repeatedly that Gongora stay out of confidential, private matters such as Dunlap's performance review. Human Resources told her that Gongora was advised to "shut up." Sahakian requested Human Resources to write up Gongora for his actions, Human Resources agreed it should happen, but it never issued any warning.

Ultimately, Han thought it would be best for Dunlap to transfer and "granted" Dunlap's wish to transfer to the PLM group, which was done on April 16, 2007. Once Gongora, Dunlap and Gooch (see below) were removed from the ET group, Sahakian's group worked very well.

## c) The Ketchup Incident

On or about April 9, 2007, an employee put ketchup on Sahakian desk chair on a day she was wearing white pants, making it appear that Sahakian had an "accident." Sahakian immediately notified Han and Gail Uy, Human Resources Manager
in Fremont, California of the incident. Sahakian told Uy that Vice President Mike Schraeder, Brett Dunlap and Gongora were the only employees near her office at the time the ketchup was put on her chair. Uy conducted some telephonic interviews on April 9 and April 12 and some of the people she interviewed suspected that Gongora was responsible for the incident, although no one actually saw him put ketchup on Sahakian's chair; of course, Gongora denied that he did it. Gongora and Dunlap lied about their whereabouts at the time of the incident, saying they were not present; Han and Human Resources acknowledged that someone in Tempe was lying about the incident. Yet, no one was disciplined.

Sahakian was humiliated by this incident which she considered vindictive, mean, embarrassing and very humiliating. Upon informing Han how humiliated she was, his nonchalant, inappropriate response was: "Drink a beer and have a good sleep. It will be ok". But the e-mails from the Human Resources department confirm that it considered this act to be harassment, not horseplay. Another manager (VP of Sales) confirmed to Sahakian that the "PLM" boys, *i.e.,* Gongora, Dunlap, Schrader were "messing with her mind

Sahakian did not feel a proper investigation was conducted. In fact, she was promised Gongora and Scott Dunlap's offices would be moved away from hers; that did not happen until approximately one month after the ketchup incident, and then only upon Sahakian's insistence. Sahakian was unhappy because she knew that if no one was held accountable, the harassment would continue. For over a year, no disciplinary action taken against any of her former subordinates who were creating the hostile work environment.

   d) Scott Gooch

In February 2007, Scott Gooch, Director of SiP, who was part of Sahakian's ET group, sent an email to Han indicating that he thought his job function would be best suited for the PLM group. Han sent an email to Sahakian stating he "smell politics" from PLM and agreed to support the transfer to PLM. Subsequently, on June 6, 2007, Gooch resigned from STATS to join a start up company. Gooch was very close with Gongora and Brett Dunlap, who pitted others against Sahakian.

On June 22, Sahakian called in sick for a meeting. Immediately thereafter, Han informed Sahakian that an employee (Gooch) had complained about her. Han was vague, refusing to tell Sahakian the identity of the employee. Although he sent her an email concerning how she should modify her behavior, Han acknowledged the alleged complaint by an "exiting" employee was not substantiated. By this time, Sahakian was exhausted, depressed and overly stressed by Han not acknowledging and addressing her complaints. As a result of the increasing stress experienced by Sahakian in the work environment, on June 22, 2007, she started a thirty-day leave under the Family Medical Leave Act.

e) <u>STATS Human Resources Interview Some of Sahakian's Subordinates and One States: "She is one of the best managers they have ever had."</u>

While Sahakian was on FMLA leave, Nehal Patel of the STATS Human Resources Department in Fremont, California interviewed a couple of people who worked closely with Sahakian. The two employees who were interviewed stated they had **no** problems with Sahakian and respected her as a manager and that she was very candid friendly and open. Although they did have a few criticisms of Sahakian's management style, one of the employees stated to Patel: **"she is one of the best managers they have ever had and they really respect her management style. They said that she works hard to help those who have potential to grow to become winners."** Patel conducted these interviews based upon a phone call with Gail Uy of Human Resources and Kaw Jik Hoon, Human Resources in Singapore.

In an email reporting the results of her interviews, it was Patel's recommendation that "...it sounds like Diane may need to attend a training/seminar on managing people or communication." There is absolutely **no** recommendation that she be removed as a supervisor, nor could there have been based upon the reports to Human Resources by these subordinates. This email demonstrates no intent to demote by Human Resources and confirms Sahakian's conversation with Gail Uy after the August demotion (see Section 6, *infra*) during which Uy stated she had **no** prior knowledge of the demotion. It is absolutely incredible that a long-term Vice President, with an exceeds-expectations performance review, would be demoted, without notice, warning and without the approval of Human Resources. Most significantly, Mr. Kelly Priest, former STATS Vice President of Sales, was laid off in late August 2008. Priest has advised Sahakian that Gail Uy, the Human Resources person who investigated the ketchup incident, told Priest and others that Han totally mishandled Sahakian's demotion.

f) <u>Plaintiff is Demoted from Vice President of ET to a Non-Supervisory,
   Non-Descript "Special Projects" Position at the Bottom of the
   Organizational Chart.</u>

Prior to Sahakian's return from FMLA leave, in early July she emailed Han and
requested a face-to-face meeting with him and Tan Lay Koon, CEO in Singapore;
Sahakian knew enormous amounts of money was being spent by STATS sending
employees to, from and around Asia for internal meetings. Sahakian volunteered to
fly, during her FMLA, from Japan to Singapore to save on expense. She finally
agreed to wait a month until Han and Tan were in the United States. After multiple
attempts to get Han to agree to this meeting, she was promised a three-way meeting
which never happened. Sahakian had hoped to arrive at a mutual, amicable
solution of her issues.

Plaintiff returned from her FMLA leave in late July. As of August 5, Sahakian
was the Vice President of ET and on Han's staff. On August 7, 2007, Han and
Sahakian had a telephone call, during which he yelled at her for approximately three
hours. The conversation quickly turned to the "complaint" made by Gooch. Han
became extremely upset when Sahakian stated she did not feel that her
subordinates should have been interviewed while she was on FMLA leave,
especially since she was not having any issues with her group because the
troublemakers were gone. She stated this undermined her authority. Han began
screaming, saying "if you don't agree, then quit!". Sahakian could not understand
why she always needed to be on the defensive, why false claims were not being
challenged, etc. Han told Sahakian to go to the CEO if she had issues. Sahakian
was told if she did not apologize within one hour for not agreeing with Han's action
to interview her reports, he would take action against her. Han repeatedly yelled he
was "D-O-N-E" with her, that she should sue him, etc. One hour later, Sahakian
received an official "complaint" via email. Sahakian informed the CEO of Han's
comments on Friday, August 10, 2007.

On August 12, without any prior notification, warning or any type of progressive
discipline, Sahakian was demoted, removed from Han's staff permanently and
removed as Vice President of ET. On the Organizational Chart, she relocated to the
bottom right corer of the page with a bold line inside a box labeled "Special Projects, "
with her Vice President titled removed. This was followed by a totally denigrating
announcement of the demotion, with no acknowledgement or appreciation of
Sahakian's prior accomplishments or requests of others to support her in her new role.

This announcement was a total deviation from prior announcements made when other employees left the company or changed their positions.

On August 15, 2007, Executive Vice President of Human Resources TG Ng, asked Gail Uy, Human Resources, to call Sahakian to see how she was doing. Uy stated that Human Resources was surprised by Han's actions and thought it was "hasty" and that Sahakian should talk to the CEO.

'Sahakian requested a three way meeting between Tan and Han several times to discuss and amicable solution. On August 29, 2007, Sahakian finally met with Tan in Fremont, California. He was unwilling to reverse the decision Han had made to demote Sahakian so as to not undermine Han in front of the company. Tan stated he would like Sahakian to stay in the company and asked her what she desired to do. He said the "stigma" surrounding the demotion was only in Sahakian's head and there was no reason why she could not continue working at STATS. Tan asked whether she was still interested in working at STATS, and she replied affirmatively. He also asked Sahakian whether she could still work for Han and again she replied affirmatively. Tan asked Sahakian to work with Han to come up with a new role.

Although Han was to discuss Sahakian's new "special project" with her, he avoided telling her what it would be. Han repeatedly said he didn't see the point of telling Sahakian about a position if she did not have a passion for it. He left it up to her to define her new role and would see if there was a fit with other managers. If not, Sahakian was told she would have to work hard to come up to technical speed to remain in Han's group as an individual contributor, but that she would not be allowed to be a manager under him. Han kept asking what Sahakian's "passion" was and it was obvious he did not have a role in mind for her. When Sahakian asked Han, 'what's happened between them', Han responded, 'You changed, sometime after your cancer surgery or promotion…I'm not sure which.

On the following day, Sahakian sent a "special project" proposal that she was "passionate" about to the CEO. That proposal was rejected on September 4, 2007, suggesting that Sahakian "help in bridging the gap between technology and market applications." Han called to discuss Sahakian's new role while walking into the Financial Health meeting. All she got out of this discussion was "There are multiple things to be done." Sahakian and Han discussed her new role later that day, but nothing was accomplished.

On September 5, 2007, Sahakian requested clarification from Han on the "multiple things to be done" in writing from Han. He responded aggressively and she responded that she agreed with the role the CEO had proposed. He replied with "mission impossible" to set Sahakian up for failure. On the following day, Sahakian requested clarification from Han about who she reported to and why. Han replied that Sahakian "made her choice not to purse any existing role in any existing organization..." and pushed for a timeline. In fact, this was not the case. Sahakian's responses to Han's questions are as follows in a September 6 email:

> 1. Please answer me if you want to do something else in the existing organization. The answer is yes or no. **YES**
> 2. If the answer is yes, let me know which organization it is. I will check the possibility and get back to you. If possible, you will be transferred. **I am open to whatever function head this role, 'bridging the gap between technology and market applications', should report to.**
> 3. If not possible or the answer to #1 is no, I will give you specific assignment instantly and your special project starts. There is no need for you to propose anything.

On September 5, Han sent Sahakian an assignment which could not be accomplished in a vacuum. He would not permit her to have a role which required interacting with others and wanted her to work in complete isolation as an independent contributor. The project assigned was impossible to do in isolation.

By September 7, Sahakian was permanently removed from the Executive Overview posted on the corporate website. On September 11, 2007, Sahakian requested a job description and long term career path. Han provided a three-line job description and pushed for a timeline again.

Although Han was to discuss Sahakian's new "special project" with her, he avoided telling her what it would be. Han repeatedly said he didn't see the point of telling her about a position if she did not have a passion for it. Han left it up to Sahakian to define her new role and would see if there was a fit with other managers. If not, she was told she would have to work hard to come up to technical speed to remain in Han's group as an individual contributor, but she would not be allowed to be a manager. Han stated that the demotion was due to insubordination for not replying to him twice: once prior to her FMLA leave (about Gooch who had left the company and one time when he threatened her to respond/apologize or he would take action).[5]

g) Sahakian Files an EEOC Charge in September 2007, a Lawsuit in February 2008 and the Parties Engage in Settlement Negotiations.

After the demotion, on September 18, 2007, Sahakian filed a charge of discrimination and retaliation with the EEOC. Since her demotion, Sahakian has been given assignments with no real possibility of completing them as assigned by Han. She has been ostracized and basically isolated, she has been omitted from meetings, conferences, and training she previously attended, did no further business travel and went from receiving over 100 email communications per day to approximately 3-4 per day. Sahakian was deliberately placed in a dead-end position removing virtually all of her job duties and responsibilities, in a blatant attempt to force her resignation of employment. Tan (CEO) told a new hire VP, a former peer of Sahakian, "she is not working out for us." Obviously having been in the industry for more than two decades and earning significant compensation, Sahakian had no intention of resigning from her employment.

On January 18, 2008, STATS gave Sahakian's name to a recruiter who contacted her regarding a position on the East Coast.

Soon thereafter, Eric Dowell and Caroline Larsen of Ogletree Deakins substituted in as counsel for Defendants and on May 13, 2008 advised that the prior settlement offer of $250,000.00 would be "off the table" on May 16, 2008. Sahakian did not respond to Eric Dowell's email and the settlement offer lapsed.

Six weeks later, on July 1, 2008, Defendants terminated Sahakian's employment. The reasons given by BJ Han were Sahakian's performance on the "special projects" and her "disengaging" from the company. On July 17, 2008, the undersigned sent an email to Dowell noting that the termination of Sahakian's employment exponentially increased her potential economic losses and that an additional charge of retaliation would be filed. Reiterating Ms. Creta's notion that the parties would expend significant monies in discovery including several dozen depositions, Sahakian reduced her prior settlement demand from $985,000 to $885,000. Dowell's vitriolic and unprofessional attack upon Sahakian and Sahakian's former counsel, Mr. Schleier, on July 23, 2008 followed. On July 29, 2008, Sahakian filed another charge of retaliation as a result of the termination of her employment and requested an immediate Notice of Right to Sue. The parties then agreed to proceed with mediation.

2) **LEGAL CLAIMS**

Sahakian has brought discrimination and retaliation claims based upon Title VII of the Civil Rights Act of 1964, as amended. Legally, Diane's retaliation claims are strong.

To establish a *prima facie* case of retaliation, a plaintiff must show that: "(1) she engaged in a protected activity, such as the filing of a complaint alleging racial discrimination, (2) the [defendant] subjected her to an adverse employment action, and (3) 'a causal link exists between the protected activity and the adverse action.' *See Manatt v. Bank of America, NA,* 339 F.3d 792, 800 (9th Cir. 2003) (quoting *Ray v. Henderson,* 217 F.3d 1234, 1240 (9th Cir. 2000)) (footnotes omitted). The quantum of evidence needed to establish a *prima facie* case is "minimal" and less than a preponderance of the evidence. Once a *prima facie* case is established, the defendant must offer "a legitimate, nondiscriminatory reason for the adverse employment action." *Fonseca v. Sysco Food Serv. of Arizona, Inc.,* 374 F.3d 840, 849 (9th Cir. 2004). If a legitimate reason is provided, the plaintiff must then show that the reason given is pretextual. *See Pottenger v. Potlach Corp.,* 329 F.3d 740, 746 (9th Cir. 2003). "[A] plaintiff can prove pretext either (1) indirectly, by showing that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer." *Lyons v. England,* 307 F.3d 1092, 1113 (9th Cir. 2002) (internal quotation marks omitted). The evidence used to establish the plaintiff's *prima facie* case may be sufficient to rebut a defendant's evidence and show that the defendant's proffered reason for the adverse action is a pretext. *Chuang v. Univ. of Cal. Davis, Bd. of Trustees,* 225 F.3d 1115, 1127 (9th Cir. 2000). "Temporal proximity between the protected activity and an adverse employment action can by itself constitute sufficient circumstantial evidence of retaliation in some cases." *Bell v. Clackamas County,* 341 F.3d 858, 864 (9th Cir. 2003).

In this case, it is beyond question that Sahakian can establish a *prima facie* case of retaliation in connection with her demotion and ultimate termination from employment. As to the demotion in August 2007, Sahakian engaged in protected activity when she complained about the hostile work environment created by Gongora and her complaints to Human Resources of harassment in connection with the ketchup placed on her chair on April 9, 2007 by one of the subordinate employees in the Tempe office. Informal complaints to supervisors constitute statutorily protected expression. *See Holifield v. Reno,* 115 F.3d 1555, 1566 (11th Cir. 1997); *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1308 (2nd Cir. 1995). The documents produced by STATS clearly demonstrate the Company considered the

ketchup incident to be harassment and was not simply "horseplay." When Sahakian returned from her FMLA leave in early August 2007, she was demoted from her supervisory position as leader of the ET group into a dead-end "special projects" position at the bottom of the organizational chart, with no clearly defined job description or duties and responsibilities. It is clear that the demotion from Vice President of ET to "special projects" altered the terms and conditions of Sahakian's employment in a negative way. She suffered significantly diminished material responsibilities in the "special projects" job and the new organizational chart is the best evidence demonstrating the effect of the demotion. Consequently, the temporal proximity between her protected activity in April 2007 and the adverse employment action in August 2007, coupled with Sahakian's continuing protests about how the Company handled the situation in May and June 2007, establish a *prima facie* case of retaliation in connection with her demotion.

Sahakian can also establish a *prima facie* case of retaliation in connection with the termination of her employment on July 1, 2008. It cannot be disputed that Sahakian's filing of her charge of discrimination in September 2007 and the filing of her lawsuit against Defendants in February 2008 are considered to be protected activity. Title VII provides protection against retaliation for those who oppose discrimination or participate in Title VII processes:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment. because he has opposed any practice made an unlawful employment practice by this title, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this title. 42 U.S.C. § 2000(e)-3(a).

A complainant's activity is protected under the participation clause if such activity takes place in the context of a Title VII "proceeding," such as an EEOC investigation or Title VII lawsuit. *See Jowers v. Lakeside Family and Children's Servs.*, 2005 WL 3134019, at *4 (S.D.N.Y.2005); *EEOC v. Total System Services, Inc.*, 221 F.3d 1171 (2000); *Walters v. City of Atlanta*, 803 F.2d 1135, 1144 (11th Cir. 1986) (affirming the district court's finding of retaliation). Other circuits have similarly recognized that filing a lawsuit for Title VII violations in Federal district Court constitutes protected activity. *See generally Johnson v. Sullivan.* 945 F.2d 976 (7th Cir. 1991) ("[Plaintiff] engaged in protected activity by pursuing his lawsuit against the agency."); *Greenwood v. Ross*, 778 F.2d 448 (8th Cir. 1985); *Womack v. Munson*, 619 F.2d 1292 (8th Cir. 1980) ("access to the EEOC and federal courts by

filing charges is clearly conduct protected from employer retaliation by § 704(a). Filing a lawsuit alleging a former employer violated Title VII is protected activity.").

Furthermore, since alleging discrimination and retaliation constitutes protected activity, negotiating and attempting to secure a settlement that resolves such allegations likewise constitutes protected activity. *See Miller v. Fairchild Indus., Inc.,* 797 F.2d 727, 731-2 (9th Cir. 1986) (causal connection for *prima facie* case established, in part, by the fact that plaintiffs' layoffs occurred less than two months after they negotiated EEOC settlement agreements). Other courts have also concluded that settlement is protected activity. *See Gallimore-Wright v. Long Island R. Co.,* 354 F.Supp.2d 478, 490 (S.D.N.Y. 2005) (indicating that the maintenance of the Title VII action until it was settled is protected activity); *Sprott v. Franco,* 1997 WL 79813, at * 13 (S.D.N.Y 1997) (engaging in settlement negotiations constitutes protected activity). The extremely close proximity between Sahakian's rejection of STATS' settlement offer in late May 2008 and her termination on July 1, 2008 is extremely powerful evidence of retaliation.

STATS' has contended in its position statement to the EEOC that Sahakian was demoted because of her deteriorating relationship with her subordinates and she was advised by Han when he terminated her that she was being fired due to her job performance on "special projects" and her "disengaging" from the Company. However, there is significant evidence that the legitimate, non-discriminatory reasons proffered by STATS are pretextual. Most significantly, Mr. Kelly Priest, former STATS Vice President of Sales, was laid off in late August 2008. Priest has advised Sahakian that Gail Uy, the Human Resources person who investigated the ketchup incident, told him and others that Han totally mishandled Sahakian's demotion; this will be a powerful admission against STATS. Most significantly, STATS interviewed two of Sahakian's remaining subordinates who stated she was one of the best managers they ever had and the only recommendation by Human Resources was possible management and/or communication training. One month later, Sahakian is demoted. Likewise, Sahakian's prior performance evaluations are powerful evidence that Han's demotion of her was pretextual. Indeed, in April 2008, Sahakian received a **merit increase.** *See, Padilla v. Metro-North Commuter RR.,* 92 F.3d 117, 123 (2nd Cir. 1996) (holding that reasonable jury could have found defendant demoted plaintiff in retaliation for protected activity when plaintiff had received favorable performance reviews prior to engaging in protected activity).

Consequently, Sahakian is very confident, as is her counsel, that she will survive STATS' inevitable Motion for Summary Judgment and this matter will be tried to a jury.

### 3) DAMAGES

As a result of Defendants' actions/inaction, Plaintiff has sustained damages as follows: Plaintiff has suffered humiliation, embarrassment and damaged reputation in the semiconductor industry where she has spent 25 years to establish herself. Sahakian will argue that she may recover for reputational injury under Title VII if such injury causes harm to her future earning capacity. Title VII authorizes compensatory damages for a plaintiff's "future pecuniary losses." 42 U.S.C. 1981a(b)(3). The Seventh Circuit has held that injury to an employee's reputation is compensable under Title VII where such injury negatively impacts the employee's "lost future earnings." *Williams v. Pharmacia, Inc.,* 137 F.2d 944, 954 (7th Cir. 1997). According to *Williams,* an award for reputational damages "compensates [the plaintiff] for a lifetime of diminished earnings resulting from the reputational harm she suffered" as a result of the employer's unlawful conduct. Thus, where an employee like Sahakian can expect to encounter increased difficulty in finding comparable employment due to "injury to [her] professional standing" caused by an employer's unlawful conduct, the employee may recover for the added difficulty in the form of compensatory damages. Sahakian will present evidence at trial that her demotion was publicized and highly visible within the semiconductor industry which will negatively affect her ability to secure future employment. Indeed, it is certainly reasonable to anticipate that while interviewing for jobs after her termination, Sahakian will be asked repeatedly about the circumstances of her separation from STATS and probably asked about her lawsuit.

Significantly, in light of STATS' termination of Sahakian's employment, she is now in a position to claim lost wages and the value of lost benefits. Sahakian has commenced the job search by contacting industry contacts and submitting her resume to companies, but as of this time and in light of the dismal state of the economy, it is not surprising that she remains unemployed as of the date of this correspondence. It is anticipated that the present day value of Sahakian's economic losses will range in seven figures.

Furthermore, as a result of a hostile environment, retaliation, humiliation, unjustified, demeaning demotion, being blackballed, alienation, complete

disrespect, and a manager who completely dismissed all complaints, Plaintiff's health has been affected as follows:

➢ Teeth grinding, resulting in cracked molars (several crowns replaced. Fitted with a mouth guard.)

➢ Muscle aches, neck and back pain, knots (massage therapy, medication, chiropractor)

➢ Sleeplessness and insomnia (medication)

➢ Abdominal pain (many cysts)

➢ Diarrhea, constipation (medication)

➢ Uncontrollable crying at work, on the way to work, during interactions with friends and family and alone (medication)

➢ Feeling sick to her stomach

➢ Hair loss

➢ Skin breakouts and circles under the eyes

➢ Heart palpitations and escalated blood pressure (medication)

➢ Weight gain

➢ Exhaustion, lack of energy (increased vitamins)

➢ Socially withdrawn

➢ Strain on relationships (family and friends)

➢ Low self-esteem

➢ Forgetfulness

➢ Confusion

➢ Inability to concentrate

➢ Burnout

➢ Nightmares

4) **STRENGTHS AND WEAKNESSES**

   a) <u>Strengths</u>

      i) One of the greatest strengths of Sahakian's case is Sahakian herself. She is extremely knowledgeable about the facts and circumstances surrounding this case, has excellent recall and memory about the events and will make an excellent witness on her own behalf. This assessment is confirmed as Sahakian was deposed in a significant patent case filed against STATS in the Northern District of California and she was selected to be deposed on behalf of STATS. We have email evidence from the attorney who represented her in the deposition as to a superior job she did during her deposition. Conversely, based upon my conversations with Sahakian, we anticipate Han will be a very poor witness, his communication skills are limited and he will not be well-received by a jury.

      ii) A very significant hurdle for STATS will be the email documenting the Human Resources interviews conducted in July 2007. Gongora, Dunlap and Gooch had all been removed from the ET group and the remaining group was working well together. The reports from the subordinates commending Sahakian as a manager will stand in stark contradiction to Han's actions just one month later in demoting Sahakian and removing her supervisory duties and responsibilities into an ill-defined, career-ending position. This is especially true in light of Human Resources' admissions to other executives that Han's actions were inappropriate and its lack of prior knowledge that he was going to demote Sahakian.

      iii) From a legal perspective, in light of the timing of STATS actions, the undersigned is confident Sahakian will survive the inevitable motion for summary judgment. The temporal proximity between Sahakian's protected activity and the adverse employment actions will be sufficient to establish causation under applicable

Ninth Circuit Title VII law. In light of the termination of her employment, Sahakian's damages rose exponentially from a statutory cap of $300,000 compensatory damages under Title VII to seven figures in light of her anticipated economic losses over her career. Fortunately, there is ample insurance coverage.

iv)        There are several former employees and executives who have contacted Sahakian and advised that they will be supportive witnesses if they are deposed. Many of these witnesses will confirm the anti-American corporate culture of STATS, racist comments made by its executives (including Han) and that Sahakian was treated unfairly. They will also be very critical of Han's management style, confusing and incomprehensible instructions, etc.

v) Sahakian's years of excellent performance, her promotions, merit increases and bonuses will be powerful evidence that she has never been anything but an exemplary employee.

b) <u>Weaknesses</u>

i)  None.


**END**

# Exhibit 10



**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**

*Attorneys at Law*

Esplanade III
2415 East Camelback Road
Suite 800
Phoenix, AZ 85016
Telephone: 602.778.3700
Facsimile: 602.778.3750
www.ogletreedeakins.com

Caroline Larsen
Direct: (602) 778-3756
Caroline.Larsen@ogletreedeakins.com

February 6, 2009

**VIA FACSIMILE (602-296-0135 AND 602-264-1441) AND E-MAIL (STROJNIK@AOL.COM AND PKSESQ@AOL.COM )**

Peter Strojnik
Peter K. Strojnik
3030 North Central Avenue, Suite 1401
Phoenix, Arizona 85012

Re:      *STATS ChipPAC Ltd. et al. adv. Sahakian – Plaintiff's Independent Medical Examination*

Dear Messrs. Strojnik,

We have reviewed your letter to Dr. Wilson, dated February 4, 2009. Parts of your letter – concerning the fact that Dr. Wilson conducts examinations and evaluations for the purposes of litigation and the fact he is being compensated on an hourly basis for the time he spends in this action -- are patently ridiculous and does not warrant response.

As for copies of Dr. Wilson's depositions, affidavits or reports from prior civil proceedings in which he has testified, it is not Defendants' responsibility to provide these materials to you.

You correctly state that Dr. Wilson's expertise is not as a medical provider. He will not be conducting a physical examination of Ms. Sahakian. He will be conducting a psychological examination only.

As you may recall, I first contacted you on January 14, 2009, to schedule an independent examination of Ms. Sahakian. I was completely cooperative regarding your requests regarding scheduling, despite the fact that I had to contact you no less than five times before you finally provided a date and time that your client would appear for her examination. I provided you with Dr. Wilson's curriculum vitae on January 21, almost three weeks ago. Needless to say, I was quite surprised to receive your correspondence, just three business days before the date of the examination, attempting to impose a variety of limitations on the scope of the examination and Dr. Wilson's analysis. Your efforts to dictate the methodologies that Dr. Wilson may use, what he can or cannot analyze in the scope of his examination, and what allegations he must assume as true undermines the very purpose of obtaining an independent medical examination.

If you wish to control how Ms. Sahakian is examined or how the examiner analyzes the result of the examination, you need to retain your own examiner and have him or her examine Ms. Sahakian, with the understanding that Defendants will be entitled to receive a copy of any such report, pursuant to Federal

Peter K. Strojnik
February 6, 2009
Page 2



Rule of Civil Procedure 35(b)(3). If you want to attack Dr. Wilson's methodologies, the impartiality of his opinion, his analysis and/or the facts and allegations that he considers when preparing his report, the proper avenue for doing so is via his deposition and cross-examination at the trial in this matter.

We expect Ms. Sahakian to appear at Dr. Wilson's office for her examination on Monday, February 9, 2009 at 9:30 a.m., as agreed by the parties and per the Notice filed January 29, 2009. By this letter, we are advising Dr. Wilson to disregard the limitations and instructions set forth in your February 4, 2009 letter and proceed with Ms. Sahakian's examination according to his professional judgment and standard examination methods.

Sincerely,

Caroline Larsen

cc: Dr. C. Brady Wilson, PhD

7002339.1 (OGLETREE)

Peter K. Strojnik
February 6, 2009
Page 3



Bcc: Janet T. Taylor, STATS ChipPAC Ltd.
Tom McNaughton, STATS ChipPAC Inc.

7002339.1 (OGLETREE)

```
                    ************************
                    ***   TX REPORT   ***
                    ************************


    TRANSMISSION OK

    TX/RX NO                0825
    DEPT. ID
    RECIPIENT ADDRESS       914807780204#8093
    DESTINATION ID
    ST. TIME                02/06 17:22
    TIME USE                00'43
    PAGES SENT              3
    RESULT                  OK
```

# Ogletree Deakins

**OGLETREE, DEAKINS, NASH,**
**SMOAK & STEWART, P.C.**

*Attorneys at Law*

Esplanade Center III
2415 East Camelback Rd, Suite 800
Phoenix, AZ 85016

Phone:   602.778.3700
Fax:      602.778.3750
www.ogletreedeakins.com

## FACSIMILE TRANSMITTAL

| | | | |
|---|---|---|---|
| **DATE:** | February 6, 2009 | **TOTAL PAGES:** | 3 (includes cover page) |
| **TO:** | C. Brady Wilson, Ph.D. | **FROM:** | Caroline Larsen |
| **COMPANY:** | | **PHONE:** | 602-778-3700 |
| **FAX:** | 480-778-0204 | **CLIENT/MATTER NO.:** | 017899-000001 |
| **PHONE:** | | **PHONE CODE:** | |

Original to follow in mail:      Yes  ☐           No  ☐

If problems arise with receipt of this transmission, please contact:     **Debra Perkins  602-778-3731**

```
                    ********************
                    ***   TX REPORT   ***
                    ********************


        TRANSMISSION OK

        TX/RX NO              0823
        DEPT. ID
        RECIPIENT ADDRESS     916022960135#4082
        DESTINATION ID
        ST. TIME              02/06 17:13
        TIME USE              01'15
        PAGES SENT            3
        RESULT               OK
```

# Ogletree Deakins

**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**

*Attorneys at Law*

Esplanade Center III
2415 East Camelback Rd, Suite 800
Phoenix, AZ 85016

Phone:   602.778.3700
Fax:      602.778.3750
www.ogletreedeakins.com

## FACSIMILE TRANSMITTAL

| | | | |
|---|---|---|---|
| **DATE:** | February 6, 2009 | **TOTAL PAGES:** | 3 (includes cover page) |
| **TO:** | Peter K. Strojnik | **FROM:** | Caroline Larsen |
| **COMPANY:** | The Law Firm of Peter K. Strojnik | **PHONE:** | 602-778-3700 |
| **FAX:** | 602-296-0135<br>602-264-1441 | **CLIENT/MATTER NO.:** | 017899-000001 |
| **PHONE:** | | **PHONE CODE:** | |

Original to follow in mail:    Yes  ☒        No  ☐

If problems arise with receipt of this transmission, please contact:    **Debra Perkins  602-778-3731**

```
                    ***********************
              ***      TX REPORT     ***
                    ***********************


         TRANSMISSION OK

         TX/RX NO              0824
         DEPT. ID
         RECIPIENT ADDRESS     916022641441#1875
         DESTINATION ID
         ST. TIME              02/06 17:15
         TIME USE              01'18
         PAGES SENT               3
         RESULT                OK
```

# Ogletree Deakins

**OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.**

*Attorneys at Law*

Esplanade Center III
2415 East Camelback Rd, Suite 800
Phoenix, AZ 85016

Phone:   602.778.3700
Fax:     602.778.3750
www.ogletreedeakins.com

## FACSIMILE TRANSMITTAL

| | | | |
|---|---|---|---|
| **DATE:** | February 6, 2009 | **TOTAL PAGES:** | 3 (includes cover page) |
| **TO:** | Peter K. Strojnik | **FROM:** | Caroline Larsen |
| **COMPANY:** | The Law Firm of Peter K. Strojnik | **PHONE:** | 602-778-3700 |
| **FAX:** | 602-296-0135 602-264-1441 | **CLIENT/MATTER NO.:** | 017899-000001 |
| **PHONE:** | | **PHONE CODE:** | |

Original to follow in mail:    Yes  ☒          No  ☐

If problems arise with receipt of this transmission, please contact:    Debra Perkins  602-778-3731

# Exhibit 11

**Perkins, Debra A.**

| | |
|---|---|
| **From:** | Larsen, Caroline |
| **Sent:** | Friday, February 06, 2009 6:16 PM |
| **To:** | 'strojnik' |
| **Cc:** | Dowell, L. Eric |
| **Subject:** | RE: STATS ChipPAC Ltd., et al. adv. Sahakian |
| **File:** | 0 |

Mr. Strojnik,

Your attendance at the examine, combined with you stated intent to disrupt the examination to interject your personal opinions of Dr. Wilson's "expertise and the issues in the case," negates the independent nature of the examination. *See Warrick v. Brode*, 46 F.R.D. 427, 428 (D. Del. 1969) ("[A]n examination should be divested as far as possible of any adversary character. The examining doctor is, in effect, an 'officer of the court' performing a non-adversary duty. The very presence of a lawyer for the examined party injects a partisan character into what should otherwise be a wholly objective inquiry. If the attorney desires to be present to control the examination that would invade the province of the physician. If he desires his observations to be the basis for possible contradiction of the doctor, he is in effect making himself a witness . . ..")

If you had indicated, at any time in the last three-and-a-half weeks since we advised you that we were scheduling Ms. Sahakian's examination, that you intended to impose constraints and interfere with the examination process, we would have moved the Court for an order for Ms. Sahakian's examination in accordance with the Rules. We are not required to agree to your arbitrary restrictions on the scope of Ms. Sahakian's examination. If your client does not appear at Dr. Wilson's office for her examination at the noticed date and time, and permit him to conduct a one-on-one examination according to his professional judgment and standard examination methods, we will move the Court for an order to set a second examination and seeks reimbursement for the amount billed by Dr. Wilson for the futile first examination attempt as sanctions.

Caroline Larsen
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
2415 East Camelback Road, Suite 800
Phoenix, Arizona 85016
Email: caroline.larsen@ogletreedeakins.com
Direct Dial: 602-778-3756
Main Telephone Number: 602-778-3700
Fax: 602-778-3750

**From:** Strojnik [mailto:strojnik@aol.com]
**Sent:** Friday, February 06, 2009 5:16 PM
**To:** Perkins, Debra A.
**Subject:** Re: STATS ChipPAC Ltd., et al. adv. Sahakian

Dear Ms. Perkins:

Please relate to Ms. Larsen that we will allow the examination of Ms. Sahakian on the terms of my previous correspondence. I will accompany Ms. Sahakian on Monday to ensure that Dr. Wilson stays within the bounds of his expertise and the issues in the case.

Peter Strojnik
**PETER STROJNIK, P.C.**
3030 North Central Avenue, Suite 1401
Phoenix, Arizona 85012
Telephone: 602-524-6602
Facsimile: 602-296-0135
e-mail ps@strojnik.com

**Confidentiality Notice:** The information contained in this electronic e-mail and any accompanying attachment(s) is intended only for the use of the intended recipient and may be confidential and/or privileged. If any reader of this communication is not the intended recipient, unauthorized use, disclosure or copying is strictly prohibited, and may be unlawful. If you have received this communication in error, please immediately notify the sender by return e-mail, and delete the original message and all copies from your system. Thank you.

In a message dated 02/06/09 17:08:13 US Mountain Standard Time, Debra.Perkins@ogletreedeakins.com writes:

<<STATS ChipPAC - Dr. Wilson.pdf>>
Mr. Strojnik,

Attached please find correspondence from Caroline Larsen in reference to Dr. Brady.

Regards,

*Debra Perkins*
*Secretary to Michelle H. Ganz and Caroline Larsen*
*Ogletree, Deakins, Nash, Smoak & Stewart*
*2415 E. Camelback Road, Suite 800*
*Phoenix, Arizona 85016*
*(Tel) 602.778.3731*
*(Fax) 602.778.3750*

# Exhibit 12

## Perkins, Debra A.

| | |
|---|---|
| **From:** | Larsen, Caroline |
| **Sent:** | Friday, February 13, 2009 3:55 PM |
| **To:** | Perkins, Debra A. |
| **Subject:** | FW: STATS ChipPAC Ltd., et al. adv. Sahakian |
| **Attachments:** | 02-07-09 TO LARSEN RE DISCOVERY.pdf |
| **File:** | 0 |

---

**From:** strojnik [mailto:strojnik@aol.com]
**Sent:** Saturday, February 07, 2009 11:06 AM
**To:** Larsen, Caroline
**Cc:** Dowell, L. Eric
**Subject:** Re: STATS ChipPAC Ltd., et al. adv. Sahakian

Dear Ms. Larsen:

Thank you for the below e-mail. I suggest a Rule 37 conference in my office next Thursday, February 12, 2009, as formally requested in the attached correspondence.

Peter Strojnik
**PETER STROJNIK, P.C.**
3030 North Central Avenue, Suite 1401
Phoenix, Arizona 85012
Telephone: 602-524-6602
Facsimile: 602-296-0135
e-mail ps@strojnik.com

**Confidentiality Notice:** The information contained in this electronic e-mail and any accompanying attachment(s) is intended only for the use of the intended recipient and may be confidential and/or privileged. If any reader of this communication is not the intended recipient, unauthorized use, disclosure or copying is strictly prohibited, and may be unlawful. If you have received this communication in error, please immediately notify the sender by return e-mail, and delete the original message and all copies from your system. Thank you.

In a message dated 02/06/09 18:16:37 US Mountain Standard Time, Caroline.Larsen@ogletreedeakins.com writes:

> Mr. Strojnik,
>
> Your attendance at the examine, combined with you stated intent to disrupt the examination to interject your personal opinions of Dr. Wilson's "expertise and the issues in the case," negates the independent nature of the examination. *See Warrick v. Brode*, 46 F.R.D. 427, 428 (D. Del. 1969) ("[A]n examination should be divested as far as possible of any adversary character. The examining doctor is, in effect, an 'officer of the court' performing a non-adversary duty. The very presence of a lawyer for the examined party injects a partisan character into what should otherwise be a wholly objective inquiry. If the attorney desires to be present to control the examination that would invade the province of the physician. If

he desires his observations to be the basis for possible contradiction of the doctor, he is in effect making himself a witness . . ..")

If you had indicated, at any time in the last three-and-a-half weeks since we advised you that we were scheduling Ms. Sahakian's examination, that you intended to impose constraints and interfere with the examination process, we would have moved the Court for an order for Ms. Sahakian's examination in accordance with the Rules. We are not required to agree to your arbitrary restrictions on the scope of Ms. Sahakian's examination. If your client does not appear at Dr. Wilson's office for her examination at the noticed date and time, and permit him to conduct a one-on-one examination according to his professional judgment and standard examination methods, we will move the Court for an order to set a second examination and seeks reimbursement for the amount billed by Dr. Wilson for the futile first examination attempt as sanctions.

Caroline Larsen
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
2415 East Camelback Road, Suite 800
Phoenix, Arizona 85016
Email: caroline.larsen@ogletreedeakins.com
Direct Dial: 602-778-3756
Main Telephone Number: 602-778-3700
Fax: 602-778-3750

**From:** Strojnik [mailto:strojnik@aol.com]
**Sent:** Friday, February 06, 2009 5:16 PM
**To:** Perkins, Debra A.
**Subject:** Re: STATS ChipPAC Ltd., et al. adv. Sahakian

Dear Ms. Perkins:

Please relate to Ms. Larsen that we will allow the examination of Ms. Sahakian on the terms of my previous correspondence. I will accompany Ms. Sahakian on Monday to ensure that Dr. Wilson stays within the bounds of his expertise and the issues in the case.

Peter Strojnik
**PETER STROJNIK, P.C.**
3030 North Central Avenue, Suite 1401
Phoenix, Arizona 85012
Telephone: 602-524-6602
Facsimile: 602-296-0135
e-mail ps@strojnik.com

**Confidentiality Notice:** The information contained in this electronic e-mail and any accompanying attachment(s) is intended only for the use of the intended recipient and may be confidential and/or privileged. If any reader of this communication is not the intended recipient, unauthorized use, disclosure or copying is strictly prohibited, and may be unlawful. If you have received this communication in error, please immediately notify the sender by return e-mail, and delete the original message and all copies from your system. Thank you.

2/13/2009

In a message dated 02/06/09 17:08:13 US Mountain Standard Time,
Debra.Perkins@ogletreedeakins.com writes:

<<STATS ChipPAC - Dr. Wilson.pdf>>
Mr. Strojnik,

Attached please find correspondence from Caroline Larsen in reference to Dr. Brady.

Regards,

*Debra Perkins*
*Secretary to Michelle H. Ganz and Caroline Larsen*
*Ogletree, Deakins, Nash, Smoak & Stewart*
*2415 E. Camelback Road, Suite 800*
*Phoenix, Arizona 85016*
*(Tel) 602.778.3731*
*(Fax) 602.778.3750*

Great Deals on Dell Laptops. Starting at $499.



THE LAW FIRM OF
# PETER STROJNIK
ATTORNEY AT LAW

February 7, 2009

Caroline Kathleen Larsen, Esq. *by e-mail only*
*caroline.larsen@ogletreedeakins.com*
Leigh Eric Dowell, Esq. *by e-mail only*
*eric.dowell@ogletreedeakins.com*
Ogletree Deakins Nash Smoak & Stewart PC
2415 E Camelback Rd, Ste 800
Phoenix , Arizona 85016

      Re:   1. *Sahakian v. STATS ChipPAC, Inc. et al* 2:08-cv-00241-HRH

Dear Ms. Larsen and Mr. Dowell:

Thank you for your letters received yesterday, Friday, February 6, 2009.  Thank you, Ms. Larsen, for the subsequent e-mail received later on in the evening. In light of the discovery disputes raised in our communications, I request a Rule 37(a)(1) conference in my office on Thursday, February 12, 2009 beginning at 10:00 a.m. this will give us the opportunity to discuss and resolve discovery matters in person prior to filing my anticipated discovery motions. Rule 37, provides, in relevant part:

> Rule 37. **Failure to Make Disclosures or to Cooperate in Discovery; Sanctions**
>
> (a) Motion for an Order Compelling Disclosure or Discovery.
>
> **(1) In General.**
>
> On notice to other parties and all affected persons, a party may move for an

order compelling disclosure or discovery. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action.

This is my second request for a Rule 37 conference. The first was sent to you on 11-06-09 where I stated:

Lastly, I am in receipt of Mr. Dowell's letter dated November 4, 2008, to Mr. Schleier. I would like to meet with Mr. Dowell in person in my office and discuss the discovery issues that have arisen, resolve them all, and enter into a stipulation regarding the same. I would like to discuss the responses to discovery produced by your office, and the timing of depositions for the following persons listed in Defendants' Disclosure Statement:

      a)  Jerry Almeida;
      b)  Flynn Carson;
      c)  Brett Dunlap;
      d)  Ng Tiong Gee;
      e)  Eric Gongora;
      f)  Scott Gooch;
      g)  Dr. Han Byung Joon;
      h)  Jeff Howell;
      i)  Scott Jewler;
      j)  Tan Lay Koon;
      k)  Cindy Palar;
      l)  Nehal Patel;
      m)  Ram Ramakrishna;
      n)  Mike Schraeder;
      o)  Chris Shea;
      p)  Gaul Uy;
      q)  Jeff Yang;
      r)  30(b)(6) of STATS ChipPac, Inc.;
      s)  30(b)(6) of STATS ChipPac, LTD;
      t)  All witnesses listed by Plaintiff.

Beginning November 24, I should be available for depositions through the end of the year. I do have various court appearances in late November and in December, but nothing longer than an hour. I also have oral arguments in the North Dakota Supreme Court in December, but the date has not yet been set. In addition, during December I am on call for travel abroad on an unrelated matter. However, for purposes of scheduling depositions, I suggest we consider the entire month of December open and, if a contingency comes up, we can reschedule.

I would like to meet and discuss the adequacy of Defendants' Disclosure Statement; Defendants' Response to Plaintiff's First Request for Production of Documents; Defendants' Response to Plaintiff's Second Request for Production

of Documents; and any other discovery issues that may arise. I am available in the afternoon of November 17, all of November 18 and all of November 20.

There are other obvious issues that need to be addressed: The adequacy of Defendants' Disclosure Statement; the issues relating to the 30(b) (6) deposition of Defendants; and the latest issue regarding the investigation by Dr. Wilson.

We seem to disagree whether Dr. Wilson is acting in his "litigation support" capacity – hired and paid for to prepare a report favoring Defendants' position - or whether he is acting as an "independent" medical examiner.

Ms. Larsen correctly points out that where the investigator is "independent" of either party's interest, the presence of an attorney is not warranted during such investigation. However, when the investigator acts in his capacity as "litigation support" for a party, all such semblance of "independence" disappears. In such case, the investigator is no more that an advocate. His primary duty runs to a party. He is not concerned with substantial justice, independence, and the appearance of bias. In such instance, it is important that during the investigation – which in many cases takes on the semblance of a deposition – the interests of the other party be fully protected.

Dr. Wilson is not "independent". Dr. Wilson has been retained to provide "litigation support" for a fee. As I previously noted:

> Dr. Wilson holds himself out as providing "litigation support"; according to Dr. Wilson's Curriculum Vitae, his practice consists of "occupational forensic psychology, industrial medicine and litigation support for civil and criminal proceedings". Generally, a psychologist who provides "litigation support" is not an independent examiner; he is hired to advocate his client's position. "Litigation support" testimony is usually not designated to reach a true and complete medical evaluation, but to advance a particular position. My understanding is that Dr. Wilson is being paid for his contribution in this litigation matter.

> With respect to Dr. Wilson's expertise in the area of Forensic Psychology, I note that Dr. Wilson "has provided expert testimony on …sexual harassment, discrimination and hostile work elements in civil proceedings … by deposition, affidavit and written report." We

request that Dr. Wilson provide copies of the depositions, affidavits and written reports referenced in his resume.

Dr. Wilson's role in this proceeding is defined by Rule 35, Federal Rules of Civil Procedure.   Rule 35 limits Dr. Wilson's role to a "physical or mental examination" of my client. Since Dr., Wilson is not a medical doctor but a doctor of philosophy; he must not conduct any "physical" examination.

In response, Ms. Larsen noted that:

> As for copies of Dr. Wilson's depositions, affidavits or reports from prior civil proceedings in which he has testified, it is not Defendants' responsibility to provide these materials to you.

This may be true where the examiner is acting in his "litigation support" capacity, but not where he is acting in his capacity as a Rule 35 examiner:

> (B) *Written Report*. Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report — prepared and signed by the witness — if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony. The report must contain:
>
> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
>
> (ii) the data or other information considered by the witness in forming them;
>
> (iii) any exhibits that will be used to summarize or support them;
>
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
>
> **(v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and**
>
> (vi) a statement of the compensation to be paid for the study and testimony in the case.

I do not see that we can resolve these issues prior to Monday at 9:30 a.m.  We need to continue the litigation support examination by Dr. Wilson to a new time and date to be agreed to at the requested Rule 37 conference.

I selected Thursday for our in person conference because Thursday had been set aside for the Rule 30(b) (6) deposition of your clients and, hopefully, you still have

Peter Strojnik                          Page 5                                    2/7/2009

the open slot. If this time slot is not available, please give me a time Friday, Saturday or Sunday to meet and confer as required by the Rules.

Thank you in advance for your continued courtesy.

Sincerely,

Peter Strojnik

PS: pjs
CC:
*Client by e-mail only*

# Exhibit 13

**Perkins, Debra A.**

| | |
|---|---|
| **From:** | Larsen, Caroline |
| **Sent:** | Friday, February 13, 2009 3:56 PM |
| **To:** | Perkins, Debra A. |
| **Subject:** | FW: STATS ChipPAC Ltd., et al. adv. Sahakian |
| **File:** | 0 |

**From:** Dowell, L. Eric
**Sent:** Sunday, February 08, 2009 10:01 AM
**To:** 'Strojnik@aol.com'; Larsen, Caroline
**Subject:** Re: STATS ChipPAC Ltd., et al. adv. Sahakian

Peter:
Caroline and I will set a time to meet and confer with you this week to discuss the disclosures and written discovery. As for the IME, it will proceed tomorrow. If Ms Sahakian fails to appear and/or you disrupt the exam, I promise you I will seek sanctions against you and your client.
Eric

**From:** strojnik
**To:** Larsen, Caroline
**Cc:** Dowell, L. Eric
**Sent:** Sat Feb 07 13:06:18 2009
**Subject:** Re: STATS ChipPAC Ltd., et al. adv. Sahakian

Dear Ms. Larsen:

Thank you for the below e-mail. I suggest a Rule 37 conference in my office next Thursday, February 12, 2009, as formally requested in the attached correspondence.

Peter Strojnik
**PETER STROJNIK, P.C.**
3030 North Central Avenue, Suite 1401
Phoenix, Arizona 85012
Telephone: 602-524-6602
Facsimile: 602-296-0135
e-mail ps@strojnik.com

**Confidentiality Notice:** The information contained in this electronic e-mail and any accompanying attachment(s) is intended only for the use of the intended recipient and may be confidential and/or privileged. If any reader of this communication is not the intended recipient, unauthorized use, disclosure or copying is strictly prohibited, and may be unlawful. If you have received this communication in error, please immediately notify the sender by return e-mail, and delete the original message and all copies from your system. Thank you.

In a message dated 02/06/09 18:16:37 US Mountain Standard Time, Caroline.Larsen@ogletreedeakins.com writes:

Mr. Strojnik,

Your attendance at the examine, combined with you stated intent to disrupt the examination to interject your personal opinions of Dr. Wilson's "expertise and the issues in the case," negates the independent nature of the examination. *See Warrick v. Brode*, 46 F.R.D. 427, 428 (D. Del. 1969) ("[A]n examination should be divested as far as possible of any adversary character. The examining doctor is, in effect, an 'officer of the court' performing a non-adversary duty. The very presence of a lawyer for the examined party injects a partisan character into what should otherwise be a wholly objective inquiry. If the attorney desires to be present to control the examination that would invade the province of the physician. If he desires his observations to be the basis for possible contradiction of the doctor, he is in effect making himself a witness . . ..")

If you had indicated, at any time in the last three-and-a-half weeks since we advised you that we were scheduling Ms. Sahakian's examination, that you intended to impose constraints and interfere with the examination process, we would have moved the Court for an order for Ms. Sahakian's examination in accordance with the Rules. We are not required to agree to your arbitrary restrictions on the scope of Ms. Sahakian's examination. If your client does not appear at Dr. Wilson's office for her examination at the noticed date and time, and permit him to conduct a one-on-one examination according to his professional judgment and standard examination methods, we will move the Court for an order to set a second examination and seeks reimbursement for the amount billed by Dr. Wilson for the futile first examination attempt as sanctions.

Caroline Larsen
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
2415 East Camelback Road, Suite 800
Phoenix, Arizona 85016
Email: caroline.larsen@ogletreedeakins.com
Direct Dial: 602-778-3756
Main Telephone Number: 602-778-3700
Fax: 602-778-3750

**From:** Strojnik [mailto:strojnik@aol.com]
**Sent:** Friday, February 06, 2009 5:16 PM
**To:** Perkins, Debra A.
**Subject:** Re: STATS ChipPAC Ltd., et al. adv. Sahakian

Dear Ms. Perkins:

Please relate to Ms. Larsen that we will allow the examination of Ms. Sahakian on the terms of my previous correspondence. I will accompany Ms. Sahakian on Monday to ensure that Dr. Wilson stays within the bounds of his expertise and the issues in the case.

Peter Strojnik
**PETER STROJNIK, P.C.**
3030 North Central Avenue, Suite 1401
Phoenix, Arizona 85012
Telephone: 602-524-6602

Facsimile: 602-296-0135
e-mail ps@strojnik.com

**Confidentiality Notice:** The information contained in this electronic e-mail and any accompanying attachment(s) is intended only for the use of the intended recipient and may be confidential and/or privileged. If any reader of this communication is not the intended recipient, unauthorized use, disclosure or copying is strictly prohibited, and may be unlawful. If you have received this communication in error, please immediately notify the sender by return e-mail, and delete the original message and all copies from your system. Thank you.

In a message dated 02/06/09 17:08:13 US Mountain Standard Time,
Debra.Perkins@ogletreedeakins.com writes:

<<STATS ChipPAC - Dr. Wilson.pdf>>
Mr. Strojnik,

Attached please find correspondence from Caroline Larsen in reference to Dr. Brady.

Regards,

*Debra Perkins*
*Secretary to Michelle H. Ganz and Caroline Larsen*
*Ogletree, Deakins, Nash, Smoak & Stewart*
*2415 E. Camelback Road, Suite 800*
*Phoenix, Arizona 85016*
*(Tel)  602.778.3731*
*(Fax) 602.778.3750*

Great Deals on Dell Laptops. Starting at $499.

2/13/2009

# Exhibit 14

**Perkins, Debra A.**

| | |
|---|---|
| **From:** | Larsen, Caroline |
| **Sent:** | Friday, February 13, 2009 3:56 PM |
| **To:** | Perkins, Debra A. |
| **Subject:** | FW: STATS ChipPAC Ltd., et al. adv. Sahakian |
| **File:** | 0 |

**From:** Dowell, L. Eric
**Sent:** Sunday, February 08, 2009 10:50 AM
**To:** 'Strojnik@aol.com'
**Cc:** Larsen, Caroline
**Subject:** Re: STATS ChipPAC Ltd., et al. adv. Sahakian

I will advise Dr. Wilson accordingly. And I will be filing a motion for sanctions. I am quite comfortable with our record of attempts to schedule Ms Sahakian's IME over the last four weeks and to resolve your eleventh hour, unreasonable "conditions." If you wish to personally discuss it further, please call me on my cell phone anytime today (602-769-8890). As for the other discovery issues, Caroline and I will meet with you this week although not at your office. Perhaps we can meet at Park Central or a coffee shop someplace equidistant from our offices?
You have a great day too Peter.
Eric

**From:** Strojnik
**To:** Dowell, L. Eric
**Cc:** Diane Sahakian ; pksesq@aol.com
**Sent:** Sun Feb 08 12:08:43 2009
**Subject:** Re: STATS ChipPAC Ltd., et al. adv. Sahakian

Dear Mr. Dowell:

Thank you for your e-mail. I suggest you advise Dr. Wilson not to expect Ms. Sahakian. You may file whatever motions you wish; of course, unless you engage in good faith attempt to resolve these issues - as you have failed to do since last November - we will file countermotions. The time has been scheduled for my office next Thursday. See you then.

Enjoy the rest of Sunday.

Peter Strojnik
**PETER STROJNIK, P.C.**
3030 North Central Avenue, Suite 1401
Phoenix, Arizona 85012
Telephone: 602-524-6602
Facsimile: 602-296-0135
e-mail ps@strojnik.com

**Confidentiality Notice:** The information contained in this electronic e-mail and any accompanying attachment(s) is intended only for the use of the intended recipient and may be confidential and/or privileged. If any reader of this communication is not the intended recipient, unauthorized use, disclosure or copying is strictly prohibited, and may be unlawful. If you have received this communication in error, please immediately notify the sender by return e-mail, and delete the original message and all copies from your system. Thank you.

In a message dated 02/08/09 10:01:36 US Mountain Standard Time, Eric.Dowell@OgletreeDeakins.com writes:

> Peter:
> Caroline and I will set a time to meet and confer with you this week to discuss the disclosures and written discovery. As for the IME, it will proceed tomorrow. If Ms Sahakian fails to appear and/or you disrupt the exam, I promise you I will seek sanctions against you and your client.
> Eric

**From:** strojnik
**To:** Larsen, Caroline
**Cc:** Dowell, L. Eric
**Sent:** Sat Feb 07 13:06:18 2009
**Subject:** Re: STATS ChipPAC Ltd., et al. adv. Sahakian

Dear Ms. Larsen:

Thank you for the below e-mail.  I suggest a Rule 37 conference in my office next Thursday, February 12, 2009, as formally requested in the attached correspondence.

Peter Strojnik
**PETER STROJNIK, P.C.**
3030 North Central Avenue, Suite 1401
Phoenix, Arizona 85012
Telephone: 602-524-6602
Facsimile: 602-296-0135
e-mail ps@strojnik.com

**Confidentiality Notice:** The information contained in this electronic e-mail and any accompanying attachment(s) is intended only for the use of the intended recipient and may be confidential and/or privileged. If any reader of this communication is not the intended recipient, unauthorized use, disclosure or copying is strictly prohibited, and may be unlawful. If you have received this communication in error, please immediately notify the sender by return e-mail, and delete the original message and all copies from your system. Thank you.

In a message dated 02/06/09 18:16:37 US Mountain Standard Time, Caroline.Larsen@ogletreedeakins.com writes:

> Mr. Strojnik,
>
> Your attendance at the examine, combined with you stated intent to disrupt the examination to interject your personal opinions of Dr. Wilson's "expertise and the issues in the case," negates the independent nature of the examination. *See Warrick v. Brode*, 46 F.R.D. 427, 428 (D. Del. 1969) ("[A]n examination should be divested as far as possible of any adversary character.  The examining doctor is, in effect, an 'officer of the court' performing a non-adversary duty.  The very presence of a lawyer for the examined party injects a partisan character into what should otherwise be a wholly objective inquiry.  If the attorney desires to be present to control the examination that would invade the province of the physician.  If he desires his observations to be the basis for possible contradiction of the doctor, he is in effect making himself a witness . . ..")

If you had indicated, at any time in the last three-and-a-half weeks since we advised you that we were scheduling Ms. Sahakian's examination, that you intended to impose constraints and interfere with the examination process, we would have moved the Court for an order for Ms. Sahakian's examination in accordance with the Rules. We are not required to agree to your arbitrary restrictions on the scope of Ms. Sahakian's examination. If your client does not appear at Dr. Wilson's office for her examination at the noticed date and time, and permit him to conduct a one-on-one examination according to his professional judgment and standard examination methods, we will move the Court for an order to set a second examination and seeks reimbursement for the amount billed by Dr. Wilson for the futile first examination attempt as sanctions.

Caroline Larsen

Ogletree, Deakins, Nash, Smoak & Stewart, P.C.

2415 East Camelback Road, Suite 800

Phoenix, Arizona 85016

Email: caroline.larsen@ogletreedeakins.com

Direct Dial: 602-778-3756

Main Telephone Number: 602-778-3700

Fax: 602-778-3750

---

**From:** Strojnik [mailto:strojnik@aol.com]
**Sent:** Friday, February 06, 2009 5:16 PM
**To:** Perkins, Debra A.
**Subject:** Re: STATS ChipPAC Ltd., et al. adv. Sahakian

Dear Ms. Perkins:

Please relate to Ms. Larsen that we will allow the examination of Ms. Sahakian on the terms of my previous correspondence. I will accompany Ms. Sahakian on Monday to ensure that Dr. Wilson stays within the bounds of his expertise and the issues in the case.

Peter Strojnik

**PETER STROJNIK, P.C.**

3030 North Central Avenue, Suite 1401

Phoenix, Arizona 85012

Telephone: 602-524-6602

Facsimile: 602-296-0135

e-mail ps@strojnik.com

**Confidentiality Notice:** The information contained in this electronic e-mail and any accompanying attachment(s) is intended only for the use of the intended recipient and may be confidential and/or privileged. If any reader of this communication is not the intended recipient, unauthorized use, disclosure or copying is strictly prohibited, and may be unlawful. If you have received this communication in error, please immediately notify the sender by return e-mail, and delete the original message and all copies from your system. Thank you.

In a message dated 02/06/09 17:08:13 US Mountain Standard Time,

Debra.Perkins@ogletreedeakins.com writes:

<<STATS ChipPAC - Dr. Wilson.pdf>>
Mr. Strojnik,

Attached please find correspondence from Caroline Larsen in reference to Dr.
Brady.

Regards,

*Debra Perkins*
*Secretary to Michelle H. Ganz and Caroline Larsen*
*Ogletree, Deakins, Nash, Smoak & Stewart*
*2415 E. Camelback Road, Suite 800*
*Phoenix, Arizona 85016*
*(Tel)  602.778.3731*
*(Fax) 602.778.3750*

Great Deals on Dell Laptops. Starting at $499.