Peter Kristofer Strojnik, SBN: 026082
THE LAW FIRM OF PETER K. STROJNIK
3030 North Central Avenue, Suite 1401
Phoenix, Arizona 85012
Telephone: 602-297-3019
Facsimile: 602-264-1441
e-mail: *pksesq@aol.com*
Attorney for Plaintiff

### UNITED STATES DISTRICT COURT
### DISTRICT OF ARIZONA

| | |
|---|---|
| DIANE SAHAKIAN, a single woman, | ) NO.  CV-08-241-PHX-HRH |
| | ) |
| Plaintiff, | ) **PLAINTIFF'S RESPONSE TO DEFENDANT** |
| | ) **STATS CHIPPAC'S RULE 35 MOTION AND** |
| vs. | ) **MOTION FOR SANCTIONS** |
| | ) |
| STATS ChipPAC, Inc., a foreign corporation; | ) |
| STATS ChipPAC, Ltd., a foreign corporation; | ) |
| TEMASEK HOLDINGS PRIVATE LIMITED, a foreign corporation; | ) |
| SINGAPORE TECHNOLOGIES SEMICONDUCTORS PRIVATE LIMITED, a foreign corporation. | ) |
| | ) |
| Defendants. | ) |
| | ) |

### SUMMARY OF RESPONSE

Defendants seek relief for a matter that has been resolved during the parties' "sincere efforts", see LRCiv. 7.2(j) to resolve their discovery disputes in "good faith" as required by FRCP 37(a)(1). *See* Doc. 66-5 confirming the discovery agreement permitting Defendants to take Plaintiffs medical Examination and Doc 66-6, cover letter to Doc 66-5, a portion of which is reproduced here:

> Thank you for a constructive discovery conference. Plaintiff agreed to all your requests (we schedule Ms. Sahakian's Deposition; we will supplement Interrogatory 11 Responses; we will provide you with Medical Release Forms; we have given you complete control over the timing and scheduling of depositions; we agreed for the medical examination by Dr. Wilson as Defendants Litigation Support witness). Conversely, you declined to permit

the Rule 30(b)(6) deposition of Defendants and you declined to provide the documents requested pursuant to Rule 30(b)(2).

Defendant's unnecessary Rule 35 Motion arrives on the heels of Plaintiff's Motion to Compel Defendants to permit a Rule 30(b)(6) Deposition of Defendants, and a request by Plaintiff that Defendant provide dates – at their choosing – for taking numerous depositions that need to be taken.

Plaintiff has bent over backwards to comply with each of Defendant's requests and to schedule depositions according to Defendant's schedules. In fact, in Plaintiff's great effort to abide by the congested schedules of Defense counsel, Counsel Strojnik Sr. will be missing his son's (Counsel Strojnik Jr.) wedding reception in California and has cut short his 33rd wedding anniversary vacation with his wife in order to schedule Ms. Sahakian's deposition for March 17, 2009. Plaintiff has attempted several times to meet and confer with Defense counsel only to receive angry emails in response: "You don't get it. I will not be appearing in your office this Friday. I have no desire to eat with you or otherwise 'socialize' with you… " (Exhibit 1). Defendants have also referred to Plaintiff's counsel as "certifiable" (Exhibit 2). Plaintiff requests sanctions against Defendants' counsel pursuant to 28 U.S.C. § 28-1927.

This Response is more fully supported by the Declaration of Peter Strojnik (Doc 66-2), the entire filing in Doc 66 relating to Plaintiff's Motion to Compel <u>Discovery and for Sanctions</u>, and the following Memorandum of Points and Authorities that is by this reference incorporated herein.

**MEMORANDUM OF POINTS AND AUTHORITIESI.  STATEMENT OF FACTS**

Plaintiff agreed to submit herself to an examination by Dr. C. Brady Wilson. Docs 66-5, 6. Dr. Wilson is a doctor of philosophy who designates himself as "litigation support" (Wilson CV, Exhibit 3).

**II.  APPLICABLE LAW**

### A. The Standard As Expressed in U.S. Supreme Court Decision of *Schlagenhauf v. Holder*

The Court in *Schlagenhauf v. Holder*, 379 U.S. 104, at 118 (1964) explained the "good cause" and "in controversy" requirements for a Rule 35 examination best:

> The courts of appeals in other cases have also recognized that Rule 34's good-cause requirement is not a mere formality, but is a plainly expressed limitation on the use of that Rule. This is obviously true as to the 'in controversy' and 'good cause' requirements of Rule 35. They are not met by mere conclusory allegations of the pleadings – nor by mere relevance to the case – but require an affirmative showing by the movant that each condition as to which the examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination. Obviously, what may be good cause for one type of examination may be not be so for another. The ability of the movant to obtain the desired information by other means is also relevant. Rule 35, therefore, requires discriminating application by the trial judge, who must decide, as an initial matter in every case, whether the party requesting a mental or physical examination or examinations has adequately demonstrated the existence of the Rule's requirements.

### B. Plaintiff's Mental Status Is Not In Controversy

The intent of the "in controversy" requirement is to balance the "plaintiff's right to avoid the invasion of a mental examination … against the defendant's right to a fair trial…" *Greenhorn v. Marriott Intern., Inc.*, 216 F.R.D. 649, 651 (D. Kan. 2003); *Lowe v. Philadelphia Newspapers, Inc.*, 101 F.R.D. 296, 298 (E.D. Pa. 1983). "[The] decision as to whether such showing was made, and thus that an examination is warranted, ultimately lies in the sound discretion of the trial court." *Gattegno v. Pricewaterhousecoopers, LLP*, 204 F.R.D. 228, 230 (D. Conn. 2001). Although the "in controversy" requirement diverges among the federal courts, most courts agree the lawsuit must demonstrate "more than 'garden variety' emotional distress allegations that are part and parcel of the plaintiff's underlying claim." *Greenhorn*, 216 F.R.D. at 651; *Gattegno*, 204 F.R.D. at 232; *Smith v. J.I. Case Corp.*, 163 F.R.D., 163 F.R.D. 229, 231 (E.D. Pa. 1995); *Sabree v. United Broth. of Carpenters & Joiners*, 126 F.R.D. 422, 426 (D. Mass. 1989); *Robinson v. Jacksonville Shipyards, Inc.*, 118 F.R.D. 525, 531 (M.D. Fla. 1988). Courts have found a mental condition is in controversy when emotional distress is alleged

and one or more of the following factors is present: (1) a cause of action for intentional or negligent infliction of emotional distress; (2) an allegation of a specific mental or psychiatric injury or disorder; (3) a claim of unusually severe emotional distress; (4) plaintiff's offer of expert testimony to support a claim of emotional distress; and, (5) plaintiff's concession that her mental condition is "in controversy." *Turner v. Imperial Stores*, 161 F.R.D. 89, 97-98 (S.D. Cal. 1995); *Sarko v. Penn-Del Directory Co.*, 170 F.R.D. 127, 131 (E.D. Pa. 1997); *O'Sullivan v. State of Minnesota*, 176 F.R.D. 325, 328 (D. Minn. 1997).

### i. There Is No Infliction of Emotional Distress Count.

Plaintiff has not alleged a cause of action for intentional infliction of emotional distress or negligent infliction of emotional distress. Plaintiff's sole causes of action arise under Title VII.

### ii. Plaintiff Has Not Alleged A Specific Mental or Psychiatric Disorder.

In the First and Second Amended Complaint, Plaintiff merely alleges that she has suffered emotional distress, pain and suffering, anger, humiliation and embarrassment. Plaintiff has not alleged post-traumatic stress disorder or any other type of cognitive disorder.

### iii. Plaintiff's Claims of Emotional Distress Are Not Unusually Severe.

There is no indication or allegation that Plaintiff's Claims of Emotional Distress are Unusually Severe.

### iv. Plaintiff Does Not Intend To Provide Expert Testimony On Plaintiff's Mental State.

Even if Plaintiff did intend on hiring an expert to testify as to her mental state, the deadline for providing expert witness reports is within two weeks. There simply is not enough time to retain an expert, examine Plaintiff, and draft a report by that date. In support of Plaintiff's emotional distress claims, Plaintiff simply intends of providing into evidence the medical records.

     v.     **Plaintiff Does Not Concede Her Mental State Is In Controversy.**

Even though Plaintiff does not offer her concession, she has offered Defendant to allow their litigation support specialist to examine her at any time.

     vi.     **"Plaintiff's right to avoid the invasion of a mental examination … against the defendant's right to a fair trial."** *Greenhorn*, 216 F.R.D. at 651.

Without Dr. Wilson's examination of Plaintiff, the parties would be on an equal footing and fairness at trial would be achieved. Currently, Plaintiff's emotional distress has been diagnosed and treated by fair and impartial physicians in the normal course of physician-patient diagnosis/treatment who have not been paid by Plaintiff's counsel or Defendant's counsel. Plaintiff does not intend to or desire to provide testimony from an expert on Plaintiff's mental state. If Plaintiff does desire to offer additional evidence other than that proffered by the medical records, she will simply subpoena the treating physicians – this is something Defendant can fairly and just as easily do.

This, of course, is assuming Plaintiff did not permit Dr. Wilson to examine Plaintiff, which she did permit as a litigation support specialist. Indeed, if the Court put its stamp of approval on Dr. Wilson's mental examination of Plaintiff, the balance of fairness would tip in favor of Defendant. Plaintiff is ready and willing to execute a stipulation to the following effect: **Plaintiff and Defendant agree that Dr. C. Brady Wilson, as Defendant's litigation support specialist, may examine Plaintiff.**

**C. Defendant Stats ChipPAC Has Not Demonstrated Good Cause**

The party seeking the examination bears the burden of demonstrating good cause. *See, e.g. In re Chambers Development Co.*, 148 F.3d 214, 228 (3d Cir. 1998); *Ziemann v. Burlington County Bridge Comm'n*, 155 F.R.D. 497, 501 (D.N.J. 1994); *Pearson v. Norfolk-Southern Railway Co.*, 178 F.R.D. 580, 582 (M.D. Ala. 1998). "Good cause requires a showing that the examination could adduce

specific facts relevant to the cause of action and is necessary to the defendant's case." *Womack v. Stevens Transport, Inc.*, 205 F.R.D. 445, 447 (E.D. Pa. 2001). While it is true the "good cause" and "in controversy" requirements are related, there may be situations where good cause is lacking even if the mental state is in controversy. *See, e.g. Pearson v. Norfolk-Southern Railway Co.*, 178 F.R.D. 580, 582 (M.D. Ala. 1998). The benchmark for good cause therefore is not whether the mental state is in controversy, but whether the examination is "relevant" and "necessary to defendant's case." *Womack*, 205 F.R.D. at 447.

Defendant would have this Court believe that if Plaintiff's mental state is in controversy, there is good cause. Such argument is fallacious (see above). To establish Defendant's burden of demonstrating good cause, they set forth three reasons: (1) "[T]o analyze the existence of the emotional distress that Plaintiff claims to have experienced…" (Motion), (2) "[T]o determine what other factors could have affected Plaintiff's emotional well being." (Motion); and, (3) "STATS ChipPAC would be unfairly prejudiced if it could not obtain independent evidence of Plaintiff's mental state and had to rely on self-serving testimony from Plaintiff and cross-examination of her personal physicians."

Plaintiff and Defendant are on equal footing. Plaintiff's "personal physicians" carries an implication of bias, which there is none. Plaintiff sought diagnosis and treatment from medical providers who must abide by the canons set forth by the Arizona Medical Board. Counsel did not retain these physicians. Rather, Plaintiff, in need of treatment, sought out professional, independent, unbiased physicians who would diagnose and treat her conditions in the normal course.

The other factors that could have affected Plaintiff's emotional well-being can be determined by two other means without invading her privacy: (1) Defendant's astute counsel could simply ask the treating physicians on cross-examination or deposition: "Sir, are there "other factors [that] could have

affected Plaintiff's emotional well-being?"; or, (2) Defendant's litigation support specialist can review all of Plaintiff's medical records since January 2003 (Plaintiff provided Defendant with executed medical release forms dating back to that date, which is several years prior to the subject incident) and set forth what he believes in his litigation-support opinion are other factors that could have affected Plaintiff's emotional well-being.  Indeed, an examination by the litigation-support specialist is not necessary to ascertain the factors contributing to Plaintiff's distress.

**D.  Sanctions against Plaintiff Are Completely Unwarranted. Sanctions against Defense Counsel ursuant to 28 U.S.C. § 1927[1] Are Appripriate.**

Defendants' request for attorney's fees is odd indeed.  Defendants and Plaintiffs agreed to have Dr. Wilson conduct an examination of Plaintiff.  After agreement, Defendants file a Motion to permit the very same examination that has already been agreed upon pursuant to LRCiv 7.2(j) and FRCP 37(a)(1). Defendants' filing of the Motion represents an act of bad faith designed to unnecessarily increase the costs of this litigation.

### IV.  CONCLUSION

For the foregoing reasons, Plaintiff respectfully request Defendant's Rule 35 Motion and Motion for Sanctions be denied.  Plaintiff will stipulate to an examination by Dr. C. Brady Wilson in his capacity as a "litigation support specialist."  Plaintiff requests sanctions pursuant to 28 U.S.C. § 1927.

---

[1] Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

THE LAW FIRM OF PETER STROJNIK

_____
Peter Strojnik