**THE LAW FIRM OF PETER STROJNIK**
ATTORNEYS AT LAW
SUITE 1401
**3030 North Central Avenue**
**Phoenix, Arizona 85012**
**(602) 297-3019**

Peter Kristofer Strojnik AZBN 026082 CABN 242728
pksesq@aol.com
Attorney for Plaintiffs

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| DIANE SAHAKIAN, a single woman, | ) NO.  2:08-cv-241-PHX-HRH |
| | ) |
| Plaintiff, | ) **PLAINTIFF'S RESPONSE IN OPPOSITION** |
| | ) **TO DEFENDANTS' TEMASEK HOLDINGS** |
| vs. | ) **PRIVATE LIMITED AND SINGAPORE** |
| | ) **TECHNOLOGIES SEMICONDUCTORS** |
| STATS ChipPAC, Inc., a foreign | ) **PRIVATE LIMITED'S MOTION TO** |
| corporation; STATS ChipPAC, Ltd., a | ) **DISMISS SECOND AMENDED** |
| foreign corporation; TEMASEK | ) **COMPLAINT** |
| HOLDINGS PRIVATE LIMITED, a | ) |
| foreign corporation; SINGAPORE | ) |
| TECHNOLOGIES SEMICONDUCTORS | ) |
| PRIVATE LIMITED, a foreign | ) |
| corporation. | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

## I.  SUMMARY OF RESPONSE

Defendants Temasek Holdings Private Limited and Singapore Technologies Semiconductors Private Limited (cumulatively "Temasek") seek to dismiss this case for perceived (1) lack of personal jurisdiction (insufficiency of *alter ego* allegations); (2) lack of subject matter jurisdiction based (exhaustion of EEOC remedies); and (3) failure to allege that Temasek was Plaintiff's "employer" subject to this Title VII cause of action.

All issues raised by Temasek are resolved by addressing the corporate, alter ego and agency relationship between STATS ChipPAC ("STATS") and Temasek. In its Annual Report filed with the Securities and Exchange Commission STATS admits to being under complete and unyielding control of Temasek on matters of management, policy, strategic decisions, legal and capital structure and day-to-day operations (Exhibit 1). ("The actions of Temasek … can affect our strategic decisions, our legal and capital structure and our day-to-day operations") Therefore, as to the question of personal jurisdiction, STATS is Temasek's "alter ego" subject to jurisdiction in Arizona. As to the question of subject matter jurisdiction, Temasek, as the controlling entity for STATS, "should have anticipated" being named in this lawsuit.[1]  Lastly, as to the question of Temasek's status as Plaintiff's "employer", no such allegation is necessary where Plaintiff advances alter ego and control allegations against the parent company.

This response is more fully supported by the following Memorandum of Points and Authorities that is by this reference incorporated herein.

## II.  MEMORANDUM OF POINTS AND AUTHORITIES

**1)  Personal Jurisdiction**

   **a)  Jurisdictional Facts**

On March 3, 2009, Defendant STATS issued its Annual Report effective December 28, 2008 for Foreign Private Issue, SEC Form 20-F with the US Securities and Exchange

---

[1] Temasek should have *also* anticipated this lawsuit due to the months of pre-litigation resolution attempts initiated by Plaintiff with Temasek and its local counsel.

Commission (Exhibit 1). There, STATS descirbes its relationship with Temasek and STS after

Temasek's purchase in May of 2007 as follows:

**Temasek controls our Company and its interests may conflict with the interests of our other shareholders.**

***

Specifically, Temasek and STSPL have disclosed in their Amendment No. 17 to the Schedule 13D filed with the SEC on October 16, 2007 that they may seek to cause our Company to voluntarily delist our ordinary shares from the SGX-ST and to deregister under the Exchange Act if it becomes eligible to do so. In addition, Temasek and STSPL have disclosed in their Schedule 13D that they and their affiliates may from time to time hold discussions with our management or directors or other parties regarding any or all of the following, and STSPL and Temasek have specifically reserved the right to change their intention with respect to any or all of such matters:

- the acquisition by any person of additional securities of our Company, or the disposition of securities of our Company;

- an extraordinary corporate transaction, such as a merger, reorganization or liquidation, involving our Company or any of our subsidiaries;

- a sale or transfer of a material amount of assets of our Company or any of our subsidiaries;

- **any change in our** present Board of Directors or **management of our Company**, including plans or proposals to change the number or term of directors or to fill any existing vacancies on our Board of Directors;

- any material change in the present capitalization or dividend policy of our Company;

- any other material change in our Company's business or corporate structure;

- changes in our Company's charter or bylaws or other actions which may impede the acquisition of control of our Company by any person;

- causing a class of securities of our Company to be delisted from a national securities exchange or to cease to be authorized to be quoted in an inter-dealer quotation system of a registered national securities association;

- causing a class of equity securities of our Company to become eligible for termination of registration pursuant to Section 12(g)(4) of the Exchange Act; or

- any action similar to any of those enumerated above.

**The actions of Temasek and STSPL,** particularly through the election of directors and subsequent selection of management by those directors, **can affect our strategic decisions, our legal and capital structure and our day-to-day operations.** This concentration of ownership may also delay, deter or prevent acts that would result in a change of control which may be against the interests of holders of our ordinary shares, or reduce the liquidity of our ordinary shares and adversely affect their trading prices. (Emphasis added)

b) **Personal Jurisdiction**

"When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). To meet this burden, a plaintiff must demonstrate that personal jurisdiction over a defendant is (1) permitted under the applicable state's long-arm statute and (2) that the exercise of jurisdiction does not violate federal due process. Id. The Court must analyze whether personal jurisdiction exists over each defendant separately. *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1130 (9th Cir. 2003).

Here, the Court has jurisdiction because STATS is Temasek's and STS's *alter ego* and agent.

i)  Temasek and STS are STATS' Alter Ego

A "parent-subsidiary relationship alone is insufficient to attribute the contacts of subsidiary to the parent for jurisdictional purposes." *Harris Rutsky & Co. Ins. Servs.,* 328 F.3d

at 1134. However, a subsidiary's contacts may be imputed to its parent for personal jurisdiction purposes where the subsidiary is the parent's alter ego. Id.  To demonstrate a parent and its subsidiary are alter egos, the plaintiff must establish a prima facie case that the two companies share "such unity of interest and ownership" that the companies' separateness no longer exists and "failure to disregard [their separate identities] would result in fraud or injustice." *Doe v. Unocal Corp.*, 248 F.3d 926 (9th Cir. 2001) (quotation omitted). To demonstrate a unity of interest warranting disregard of corporate separateness, the plaintiff must show the parent controls its subsidiary to such a degree as to render the subsidiary a "mere instrumentality" of its parent. Typically, this would involve showing the parent controls the subsidiary's internal affairs or daily operations. *Kramer Motors, Inc. v. British Leyland*, 628 F.2d 1175, 1177 (9th Cir. 1980). *In re: Phenylpropanolamine Prod. Liab. Litig.,* 344 F.Supp.2d 686, 691 (W.D. Wash. 2003) ("An alter ego or agency relationship is typified by parental control of the subsidiary's internal affairs or daily operations.)

Thus, "a parental corporation may be directly involved in the activities of its subsidiaries without incurring liability so long as that involvement is `consistent with the parent's investor status[.]'" *Doe v. Unocal Corp.,* 248 F.3d 915, 926 (9th Cir. 2001) (citing *United States v. Bestfoods*, 524 U.S. 51, 72, 118 S.Ct. 1876, 141 L.Ed.2d 43 (1998). "Appropriate parental involvement includes: `monitoring of the subsidiary's performance, supervision of the subsidiary's finance and capital budge decisions, and articulation of the general policies and procedures[.]'" Id.  However, "if the parent and subsidiary are not really separate entities, or one acts as agent of the other, the local subsidiary's contacts with the forum may be imputed to the foreign parent corporation." *Unocal*, 248 F.3d at 926 (citation omitted). "An alter ego or

agency relationship is typified by parental control of the subsidiary's internal affairs or daily operations". Id.

Here, Temasek exercises not only the permissible "monitoring of [STATS'] performance, supervision of [STATS'] finance and capital budget decisions, and articulation of the general policies and procedures". Here, "Temasek controls our Company and its interests may conflict with the interests of our other shareholders". STATS admits in its Form 20-F SEC Annual Report that "The actions of Temasek … can affect our strategic decisions, our legal and capital structure and our day-to-day operations". This is sufficient for the exercise of personal jurisdiction over Temasek.

## 2) Subject Matter Jurisdiction

Temasek advances the view that since Temasek had not been named in the EEOC complaint, Plaintiff has not exhausted her remedies against it and the Court lacks subject matter jurisdiction. However, the question is not whether Temasek was named in the previously filed EEOC complaint, but whether Temasek "should have anticipated" that Plaintiff would name it in a Title VII suit even though they were not named in the EEOC charge. *Sosa v. Hiraoka*, 920 F.2d 1451, 1458-59 (9th Cir. 1990). In turn, the question whether Temasek "should have anticipated" being named in this Title VII suit depends "upon the scope of both the EEOC charge and the EEOC investigation." *EEOC v. Nat'l Educ. Ass'n of Alaska*, 422 F. 3rd 840, 847 (9th Cir. 2005) (quoting *Sosa v. Hiraoka*, 920 F.2d at 1456 (9th Cir. 1990) (internal quotation marks omitted). This is a question of factual proof. *Nat'l Educ. Ass'n of Alaska* ("These are fact-intensive questions that have not been addressed by the district court and as to which the record has not been fully developed.")

Here, Plaintiff has developed proof that STATS is and has been under Temasek's complete control with respect to its "strategic decisions, our legal and capital structure and our day-to-day operations" (Exhibit 1). Plaintiff has developed proof that STATS is Temasek's alter ego. Even without additional discovery, this in itself is sufficient to bestow subject matter jurisdiction over Temasek[2].

### 3) Plaintiff Sufficiently Pled Temasek's Liability under "alter ego", "instrumentality" and "control"

Temasek admits that Plaintiff alleged that STATS "is the alter ego of Temasek and STS" and a "mere instrumentality of Temasek and STS".

Temasek admits that a parent corporation may be liable under Title VII where "there is evidence that [the non-employer company] participated in or influenced the employment policies of [the employer company]" or where there is evidence "that the parent-subsidiary relationship is a 'sham' or that circumstances exist that would render the parent liable for the debts of its subsidiary". *Watson v. Gulf and Western Industries,* 650 F. 2nd 990, 993 (9th Cir. 1981). However, Temasek complains that Plaintiff has failed to plead the "special circumstances" under *Twomby.* Plaintiff admits that Plaintiff alleges in ¶12 that Temasek and STS "control the operations and day to day functions of STATS".[3]

---

[2] The 9th Circuit test of jurisdiction over the unnamed EEOC defendant is similar to that followed in other circuits. *Mayes v. Moore,* 419 F. Supp. 2nd 775, 782 (M.D.N.C. 2006). ("Substantial Identity" exception"). See also *Glus v. G.C. Murphy Co.,* 562 F.2d 880 (3d Cir.1977) ("identity of interest" or "substantial identity" exception)

[3] *See* Motion, Doc 124, at footnote 4.

All that is required to survive a Rule 12(b)(6) motion is "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). In pleading the grounds of the claim, the plaintiff need not provide "detailed factual allegations," id.; however, the plaintiff must plead enough facts "to raise a right to relief above the speculative level." Id. at 1965.

Here, Plaintiff alleged in the Second Amended Complaint - and now proved through STATS' Annual Report filed with the Securities and Exchange Commission - that Temasek controls STATS' "management", its "strategic decisions, legal and capital structure and day-to-day operations", and therefore the "special circumstances" are present.  Temasek's and STS's control began in May of 2007, which was prior to Plaintiff's demotion to special project and termination (Exhibit 1).  No more is required.

### III.  CONCLUSION AND PRAYER FOR RELIEF

For the foregoing reasons, Plaintiff respectfully requests that Temasek's and STS's Motion to Dismiss be denied.

RESPECTFULLY SUBMITTED this 5th day of May, 2009.

THE LAW FIRM OF PETER STROJNIK



_____
By:  Peter Kristofer Strojnik
Attorney for the Plaintiff