**GREENBERG TRAURIG, LLP**
ATTORNEYS AT LAW
SUITE 700
2375 EAST CAMELBACK ROAD
PHOENIX, ARIZONA 85016
(602) 445-8000

Lawrence J. Rosenfeld, SBN 004426
Michael C. Mason, SBN 021921
rosenfeldl@gtlaw.com
masonm@gtlaw.com
*Attorneys for Defendants Temasek Holdings Private Limited and Singapore Technologies Semiconductors Pte, Ltd.*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Diane Sahakian, a single woman,<br><br>Plaintiff,<br><br>v.<br><br>STATS ChipPAC, Inc., a foreign corporation; STATS ChipPAC, Ltd., a foreign corporation; Temasek Holdings Private Limited, a foreign corporation; Singapore Technologies Semiconductors Private Limited, a foreign corporation,<br><br>Defendants. | No.  CV-08-241-PHX-HRH<br><br>**DEFENDANTS TEMASEK HOLDINGS PRIVATE LIMITED AND SINGAPORE TECHNOLOGIES SEMICONDUCTORS PTE, LTD.'S REPLY IN SUPPORT OF THEIR MOTION TO DISMISS SECOND AMENDED COMPLAINT** |

Plaintiff's Response to Defendants Temasek Holdings Private Limited ("Temasek") and Singapore Technologies Semiconductors Pte, Ltd.'s ("STS") Motion to Dismiss falls far short of the minimum showing required to establish this Court's jurisdiction over Temasek and STS in this case. Indeed, the 20-F Report relied upon by Plaintiff as the sole "support" for her opposition to the Motion confirms that Temasek and STS have a typical intercorporate relationship with STATS ChipPac ("Stats"). Accordingly, the Court should grant the pending Motion to Dismiss.

**I.      INTRODUCTION.**

In our Motion to Dismiss, we set forth the specific tests to be applied in determining: that there is no alter-ego basis for the assertion of general or special jurisdiction over

TCO 357,909,564.1

Temasek or STS; that there is no alter ego basis for the assertion of liability, under Title VII, as to either of these parties; and that there is no basis for excusing Plaintiff from her failure to exhaust administrative remedies due to her not having filed a charge of discrimination against these parties. Underlying each of these contentions is the principle (unassailed by Plaintiff in her response) that the mere existence of an intercorporate, parent-subsidiary type relationship between these entities and Plaintiff's employer, Stats, is an insufficient basis upon which to refute any of our assertions – that is, that, in each instance, <u>something more than</u> the existence of that relationship must be shown.

In response to each of these assertions (and without even attempting to address the <u>distinct tests</u> that apply as to these separate – and separately sufficient – grounds for dismissal of the lawsuit as against Temasek and STS), Plaintiff relies solely on the 20-F Report filed by Stats with the Securities and Exchange Commission. As will be further discussed herein – and with particularity as to <u>each</u> of the grounds we assert in support of our Motion – that document does not serve to defeat our Motion, as to any – much less all – of the grounds upon which it rests.

## II. THE ALLEGATIONS DO NOT SUPPORT ALTER-EGO JURISDICTION OVER TEMASEK AND STS.

Plaintiff agrees in her Response that she must satisfy the prerequisite test for personal jurisdiction over Temasek and STS. She also concurs with the governing principle that "neither ownership nor control of a subsidiary corporation by a foreign parent corporation, <u>without more</u>, subjects the parent to the jurisdiction of the state where the subsidiary does business." *See Cannon Mfg. Co. v. Cudahy Packing Co.* 267 U.S. 333, 336 (1925) (emphasis added). Thus, to prove alter-ego jurisdiction over Temasek and STS based on the alleged conduct of Stats, Plaintiff must allege: "1) that there is such unity of interest and ownership that the separate personalities of [the defendants] no longer exist and (2) that failure to disregard their separate identities would result in fraud or injustice." *American Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 591 (9th Cir. 1996) (internal

TCO 357,909,564.1

citations omitted); *De Castro v. Sanifill, Inc.*, 198 F.3d 282, 283-84 (1st Cir. 1999) (requiring "strong and robust evidence of control by the parent company over the subsidiary").

Despite her apparent understanding of this threshold burden, Plaintiff's sole argument in response is to produce a Stats SEC report that <u>confirms</u> that Stats is an independent corporate entity. Nothing in the 20-F Report indicates that the separate identities of Temasek, STS, and Stats are not maintained. Nor does Plaintiff contend that failure to disregard their separate identities would result in fraud or injustice. Plaintiff's speculative and conclusory allegations in the Second Amended Complaint that Stats is an alter ego or instrumentality of Temasek and STS are insufficient, as a matter of law, to establish personal jurisdiction. *See Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007). Indeed, just this week the Supreme Court expanded and confirmed the test for allegations to survive a motion to dismiss: "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, -- S.Ct. --, 2009 WL 1361536, 13 (May 18, 2009).

### III. PLAINTIFF HAS NOT ALLEGED SUFFICIENT FACTS TO DEMONSTRATE ALTER-EGO LIABILITY UNDER TITLE VII.

Under controlling Ninth Circuit law, to demonstrate alter-ego liability with respect to Temasek and STS, Plaintiff must show that Stats is a "sham," or that Plaintiff could not receive total relief from Stats (*i.e.*, that Stats is undercapitalized), or that Temasek or STS "influenced the employment policies" of Stats or otherwise played a role in the alleged discrimination. *Watson v. Gulf and Western Industries*, 650 F.2d 990, 993 (9th Cir. 1981). In the absence of such "special circumstances," "a parent corporation is not liable for the Title VII violations of its wholly owned subsidiary." *Id.*

This test has been straightforwardly applied for decades in the Ninth Circuit and elsewhere, resulting in a clear explication of the "special circumstances" required to assert jurisdiction over a defendant's corporate parent. Indeed, just weeks ago, this Court thoroughly analyzed and applied the test in an opinion authored by Judge McNamee. *See*

*EEOC v. Creative Networks, LLC*, 2009 WL 777189 (D.Ariz.); copy attached as **Exhibit 1** hereto.

In *Creative Networks*, the plaintiff argued that it met the "special circumstances" test under *Watson*, so as to impose Title VII liability on defendant Creative Network's corporate parent (Res-Care), because: (1) Res-Care authored and distributed employment policies for its wholly-owned subsidiary; (2) Res-Care had control over its subsidiary's policies and practices by virtue of its power to remove and discipline executive employees; and (3) Res-Care provided other services to its subsidiary, such as maintaining workers compensation and liability insurance, assisting with labor contracts, supplying legal advice, and developing and updating company procedures. *Id.* at *9. The court rejected all of these arguments, finding that even though Res-Care may have had *some* control and participation in the day-to-day activities and personnel policies of its subsidiary, it did not have complete control, such that the corporate separateness between the two entities should be disregarded. *Id.* at *10. Further, "the EEOC has offered no evidence that the parent-subsidiary relationship between Res-Care and Creative Networks is a "sham" or that Creative Networks is undercapitalized in a way that would prevent [plaintiff] from recovering any judgment awarded." *Id.* Accordingly, the court held that plaintiff had not demonstrated the "special circumstances" required to establish Title VII liability over defendant's corporate parent. *Id.*

Similarly, in *Wyatt v. Ford Motor Co.*, 2006 WL 1663676 (W.D.Wash.), the plaintiff argued that Ford Motor Company was subject to alter-ego liability for the Title VII violations of its subsidiary, based on its alleged control over the subsidiary. The court held:

> [H]aving FMC employees on the board of directors for PAF does not expose FMC to liability. "It is entirely appropriate for directors of a parent corporation to serve as directors of its subsidiary, and that fact alone may not serve to expose the parent corporation to liability for its subsidiary's acts." *United States v. Bestfoods*, 524 U.S. 51, 69 118 S.Ct. 1876 (1998). Courts generally presume that directors switch to their subsidiary hats and do not retain their parent hats when acting for the subsidiary. *Id; see also Harris Rutsky & Co. Ins. Serv., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122 (9th Cir.2003) . . . .
>
> Because FMC is not liable for the conduct of PAF or its employees, all of the Plaintiffs' claims against FMC are dismissed.

*Id.* at 4-5. *See also EEOC v. NCL America, Inc.*, 2008 WL 281524 (D. Haw.) (under Title VII, "[w]hen a subsidiary hires employees, there is a strong presumption that the parent company is not the employer"); *Branham v. Home Depot U.S.A., Inc.*, 225 F.Supp.2d 762, 766 (E.D.Mich. 2002) ("It is well-settled that, in the absence of special circumstances, a parent corporation is not liable for the Title VII violations of its wholly owned subsidiary.") (citing *Watson*).

Here, Plaintiff's single argument is that a 2008 20-F Report from Stats "demonstrates" that Temasek and STS are alter-egos of Stats. The Report shows Stats to be a fully-capitalized, stand-alone, independent corporation that has a typical relationship with its corporate majority shareholder, and further shows that none of the "special circumstances" required under *Watson* are present.

Indeed, a company's description of a majority shareholder's rights in the "Risk Factors" section of a 20-F Report is standard SEC practice. (For example, the 20-F Report must include a disclosure of "[a]ny arrangement or understanding with major shareholders, customers, suppliers or others, pursuant to which any [Director or senior manager] was selected as a director or member of senior management." WGL SEC Accounting and Reporting Manual § 16.45, 2008 WL 3416658.) And Stats' disclosure on pages 18-19 of the Report regarding Temasek's ownership stake is a typical (and required) description of a majority shareholder's interest and rights. *Id.*, § 16.46. As a general principle of corporate law, "a parent or holding corporation is not liable for the acts, contracts, or obligations of its subsidiary corporation even though the two corporations have directors and officers in common or engage in interrelated dealings." 15 N.Y. Jur. 2d Business Relationships § 971 (2009).

Moreover, the most that the 20-F Report indicates here is that the acts of Temasek or STS "*can* affect" certain of Stats' activities. *See* Report at p. 19 (emphasis added). Again, this is not an unusual assertion as to a majority shareholder's rights. Equally importantly, considering that this sentence serves as the linchpin for Plaintiff's entire argument, the bare

assertion that Temasek *can* influence Stats is simply insufficient as a matter of law. At the very least, Plaintiff must allege that Temasek *does* influence Stats in relevant ways sufficient to meet the *Watson* test.[1] Plaintiff's allegation that Temasek *could* elect members of the board of directors who *could* in turn influence the selection of managers for Stats who *could* as a result affect Stats' day-to-day operations is far too speculative to satisfy *Watson*.

It is telling indeed that, notwithstanding the clearly-articulated elements of the *Watson* test, <u>nowhere</u> in her Response does Plaintiff argue that Temasek or STS had <u>anything</u> to do with Stats' personnel policies at issue in the case, or that Temasek or STS played <u>any</u> part in the employment decisions that are the subject of Plaintiff's underlying Title VII claims, or that Temasek or STS had <u>any</u> supervisory role over the Stats employees who are alleged to have participated in the unlawful conduct.

Finally, Plaintiff does not allege that Stats is undercapitalized or that she could not fully recover from Stats if she is successful in her claim against that company. In fact, pages 3-4 of the 20-F Report demonstrate that Stats is a fully capitalized and profitable corporate entity that does not rely on capital contributions from Temasek or STS. This is yet another textbook factor indicating Stats is a stand-alone subsidiary – and thus not a "sham." *See Creative Networks, supra.*

In sum, the *Watson* test for alter-ego liability under Title VII (which Plaintiff does not dispute) demands that Plaintiff show that: (1) Stats is a sham or is undercapitalized; or (2) Temasek or STS participated in the underlying conduct; or (3) Temasek or STS controlled the employment policies of Stats. Plaintiff seems to understand the test in her Response, but then just asserts that the 20-F Report satisfies it, with no further explanation. Nothing in that Report shows that Stats is undercapitalized or a sham; nothing indicates that Temasek or STS participated in the underlying conduct that is the subject of Plaintiff's claims; and nothing in the Report says anything about Stats' employment policies. In the

---

[1] Indeed, page 23 of the Report confirms that some of the ways Temasek *could* influence Stats are strictly hypothetical. For example, Temasek would have to purchase additional shares in Stats before it could take certain actions, such as delisting Stats' shares.

absence of such evidence or allegations, Plaintiff fails to meet the "special circumstances" test under *Watson* and the Court should therefore dismiss her claims.

### IV. THE COURT LACKS SUBJECT MATTER JURISDICTION AS TO TEMASEK AND STS BECAUSE PLAINTIFF FAILED TO EXHAUST ADMINISTRATIVE REMEDIES.

Plaintiff admits that she did not name Temasek and STS in her EEOC charge of discrimination, but argues that these entities nevertheless "should have anticipated" being named as defendants.[2] Again, there are no allegations sufficient to meet this well-established test of subject matter jurisdiction. *Ortez v. Washington County*, 88 F.3d 804, 808 (9th Cir. 1996); *Sosa v. Hiraoka*, 920 F.2d 1451, 1458-59 (9th Cir. 1990).

Applying this test in *Nowick v. Gammell*, 351 F.Supp.2d 1025 (D. Haw. 2004), the court granted a motion to dismiss plaintiff's claims against a corporate defendant which had an ownership interest in the defendant against whom she had filed an EEOC charge. Plaintiff argued that the related corporation "should have anticipated" being named in a Title VII suit. The court summarily rejected this argument, as Plaintiff did not allege that the related corporation had any direct involvement in the alleged discriminatory acts, and plaintiff had failed to show any "special circumstances" that would warrant attribution of the subsidiary corporation's liability under Title VII. *Id.* at 1037. Likewise here, Plaintiff does not allege that Temasek or STS had any role in the underlying conduct, and, as previously discussed, she fails the "special circumstances" test for alter-ego liability under Title VII.

Faced with this uncomfortable circumstance, Plaintiff nonsensically argues that Temasek and STS should have anticipated being sued, as Plaintiff's counsel sent them a demand letter.[3] By this rather perverted logic, it is a <u>plaintiff's lawyer</u> who gets to determine whether or not a company not identified in an EEOC charge should have anticipated being named in the lawsuit arising out of that charge, irrespective of how attenuated the non-named

---

[2] As discussed in our Motion, the other basis upon which a party can avoid the necessity of naming an entity in an EEOC charge incident to fulfilling its exhaustion obligation is by asserting that this non-named entity was involved in the acts giving rise to her claims. In her Response, Plaintiff does not so argue.

[3] In this regard, it bears noting that the demand letter was not sent until well <u>after</u> the EEOC closed its file in this matter.

party's relationship is to the charging party's employer, and irrespective of how far-fetched the attempt to connect the named and non-named corporations is. If <u>that</u> were the test, the exhaustion requirement in Title VII litigation would be all but eviscerated. Applying the <u>relevant</u> test, it is clear that Plaintiff has failed, abjectly, to allege facts sufficient to excuse it from satisfying the administrative exhaustion requirement as against Temasek and STS. *Nowick*, 351 F.Supp.2d at 1037.

## V. CONCLUSION.

In order to establish personal jurisdiction over Temasek and STS, on the basis of an alter-ego relationship, Plaintiff must show that there is a unity of interest and ownership between them and Stats, <u>and</u> that fraud or injustice would result if their separate identities were not disregarded. Plaintiff has made no such claim.

In order to establish that Temasek and STS could be held liable for the acts of Plaintiff's employer (Stats), under Title VII, Plaintiff must show that "special circumstances" exist – *i.e.*, either that Temasek and STS participated in or influenced Stats' employment policies, or that the intercorporate relationship between these entities is a sham, or that circumstances exist so as to render Temasek and STS liable for Stats' debts. Plaintiff has made no such claim.

In order to establish subject matter jurisdiction over Temasek and STS despite her failure to exhaust statutorily-mandated administrative remedies, Plaintiff must show that Temasek and STS were involved in the acts giving rise to Plaintiff's claims, or that Temasek and STS should have anticipated being named as parties to the Title VII lawsuit. Plaintiff has made no such claim (other than misguidedly arguing that it suffices that her lawyer sent a demand letter to these two companies).

A determination by the Court that Temasek and STS is entitled to prevail on <u>any</u> of these assertions necessitates dismissal of the lawsuit as to these entities. We respectfully submit that Plaintiff's claims founder on <u>all three</u> of these bases, and we therefore respectfully request that this Motion be granted, on each and all of these grounds.

1   RESPECTFULLY SUBMITTED this 22nd day of May, 2009.

2                  GREENBERG TRAURIG, LLP

3

4           By:   *s/Lawrence J. Rosenfeld*
5                 Lawrence J. Rosenfeld
              Michael C. Mason
6                 2375 East Camelback Road, Ste. 700
              Phoenix, Arizona  85016
7                 *Attorneys for Defendants Temasek Holdings Private Limited and Singapore Technologies Semiconductors Pte, Ltd.*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TCO 357,909,564_1

**CERTIFICATE OF SERVICE**

☒ I hereby certify that on May 22, 2009, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing and Order to the following CM/ECF registrants:

Peter Strojnik, Esq.
3030 North Central Avenue
Suite 1401
Phoenix, Arizona 85012
ps@strojnik.com
*Attorney for Plaintiff*

L. Eric Dowell, Esq.
Caroline Larsen, Esq.
Monique Young, Esq.
Ogletree Deakins Nash Smoak Stewart, PC
2415 E. Camelback Rd., Ste. 800
Phoenix, AZ 85016-0001
*Attorneys for Defendants STATS ChipPAC*
Eric.Dowell@ogletreedeakins.com
Caroline.Larsen@ogletreedeakins.com
Monique.Young@ogletreedeakins.com

            s/Colleen B. Mantz