Peter Strojnik, 006464
3030 North Central Avenue, Suite 1401
Phoenix, Arizona 85012
Telephone: 602-524-6602
Facsimile: 602-296-0135
e-mail: *ps@strojnik.com*
Attorney for Ms. Sahakian

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| DIANE SAHAKIAN, a single woman,<br><br>Plaintiff,<br><br>vs.<br><br>STATS ChipPAC, Inc., a foreign corporation; STATS ChipPAC, Ltd., a foreign corporation; TEMASEK HOLDINGS PRIVATE LIMITED, a foreign corporation; SINGAPORE TECHNOLOGIES SEMICONDUCTORS PRIVATE LIMITED, a foreign corporation.<br><br>Defendants. | NO. CV-08-241-PHX-HRH<br><br>**MOTION TO AMEND SECOND AMENDED COMPLAINT TO ADD CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**<br><br>**(Newly Discovered Evidence)**<br><br>**ACCELERATED CONSIDERATION REQUESTED**<br><br>**(Statute of Limitations)** |

## SUMMARY OF MOTION

Plaintiff seeks to add a state cause of action for intentional infliction of emotional distress (IIED). While Plaintiff is authorized to bring the IIED claim against Defendants in a separate State Court proceeding, see *Ford v. Revlon, Inc.,* 153 Ariz. 38, 734 P.2d 580 (1987), Plaintiff recognizes the preferred policy of bringing pendent claims in the same proceeding. See *United Mine Workers of America v. Gibbs*, supra, 383 U.S. 715, 725, 86 S. Ct. 1130, 1139

(1966). No delay will be occasioned by adding this IIED claim; the facts supporting the IIED claim are the same as those supporting the Title VII claims for economic, psychological and punitive damages.

Plaintiff learned significant facts supporting her IIED claim during the discovery process in this matter, particularly during the deposition of Gail Uy ("Uy"), STATS Human Resources representative. The deposition was taken on May 27, 2009. The Uy deposition demonstrated that STATS' Human Resources is ill equipped to conduct an adequate investigation of a sexual harassment / hostile work environment claim; that STATS failed to follow its own sexual harassment policy; that STATS turned the investigation of sexual harassment into an investigation of Plaintiff; and that STATS ultimately decided to retain (and reward) the sexual harasser and fire Plaintiff. These elements support an IIED claim. *Ford*.

Plaintiff requests that this Court consider this Motion on an expedited basis for the reason that IIED claim is governed by a 2 year statute of limitations[1]. Plaintiff respectfully

---

[1] If this Court denies the Motion, Plaintiff will have to initiate a separate proceeding in the State Court. Such procedure is permissible in Arizona:

> Concurrent with her state tort claim, Ford filed a federal Title VII claim based upon the same facts; Revlon contends that the dual filing is inappropriate. As the trial court noted, the exercise of dual jurisdiction in federal Title VII and state tort claims is entirely appropriate. *Guyette v. Stauffer Chemical Co.*, 518 F.Supp. 521 (D.N.J.1981); *Stewart v. Thomas*, [538 F.Supp. 891 (D.D.C.1982)]. We find no error in bringing the action in both state and federal courts based upon two separate and distinct causes of action.

153 Ariz. at 44, n. 1, 734 P. 2nd at 586, n. 1.

While the Statute *may* or *may not* be an issue on the State proceedings, counsel must protect Plaintiff's cause of action against a potential for dismissal on procedural grounds. Therefore, in order to satisfy the two year Statute of Limitations for this cause of action, *Duhammel v. Star*, 133 Ariz. 558, 653 P.2d 15 (App. 1982), the action would have to be filed on or before June 22, 2009.

requests that the Court shorten the briefing time and render decision on this matter prior to June 20, 2009.

This Motion is more fully supported by the following Memorandum of Points and Authorities that is by this reference incorporated herein.

## MEMORANDUM OF POINTS AND AUTHORITIES

That tort of IIED requires proof of three elements: "'[F]irst, the conduct by the defendant must be "extreme" and "outrageous"; second, the defendant must either intend to cause emotional distress or recklessly disregard the near certainty that such distress will result from his conduct; and third, severe emotional distress must indeed occur as a result of defendant's conduct.'" *Citizen Publ'g Co. v. Miller*, 210 Ariz. 513, ¶ 11, 115 P.3d 107, 110 (2005), quoting *Ford v. Revlon, Inc.*, 153 Ariz. 38, 43, 734 P.2d 580, 585 (1987) (emphasis omitted; brackets in *Citizen Publ'g Co.*).

In discussing the sufficiency of the facts to support a claim for IIED, the Arizona Supreme Court stated:

> We believe that the conduct of Revlon met these requirements. First, Revlon's conduct can be classified as extreme or outrageous. Ford made numerous Revlon managers aware of Braun's activities at company functions. Ford did everything that could be done, both within the announced policies of Revlon and without, to bring this matter to Revlon's attention. Revlon ignored her and the situation she faced, dragging the matter out for months and leaving Ford without redress. Here is sufficient evidence that Revlon acted outrageously.
>
> Second, even if Revlon did not intend to cause emotional distress, Revlon's reckless disregard of Braun's conduct made it nearly certain that such emotional distress would in fact occur. Revlon knew that Braun had subjected Ford to physical assaults, vulgar remarks, that Ford continued to feel threatened by Braun, and that Ford was emotionally distraught, all of which led to a manifestation of physical problems. Despite Ford's complaints, Braun was not confronted for nine months, and then only upon Ford's demand for a group meeting. Another three

> months elapsed before Braun was censured. Revlon not only had actual knowledge of the situation but it also failed to conduct promptly any investigation of Ford's complaint.
>
> Third, it is obvious that emotional distress did occur. Ample evidence, both medical and otherwise, was presented describing Ford's emotional distress. Ford testified about her emotional distress and her development of physical complications caused by her stressful work environment. The evidence convinced the jury, which found that emotional distress had occurred.
>
> We also note that Revlon had set forth a specific policy and several guidelines for the handling of sexual harassment claims and other employee complaints, yet Revlon recklessly disregarded these policies and guidelines. Ford was entitled to rely on the policy statements made by Revlon. *Wagenseller v. Scottsdale Memorial Hosp.*, 147 Ariz. 370, 383, 710 P.2d 1025, 1038 (1985). Once an employer proclaims a policy, the employer may not treat the policy as illusory. *Leikvold v. Valley View Community Hosp.*, 141 Ariz. 544, 548, 688 P.2d 170, 174 (1984) (suit by at-will employee against employer for breach of employment contract and defamation). We hold that Revlon's failure to take appropriate action in response to Ford's complaint of sexual harassment by Braun constituted the tort of intentional infliction of emotional distress.

*Ford v. Revlon,* 153 Ariz. at 43-44.

Newly discovered facts incorporated into the IIED claim in the present case are set forth in Paragraphs 25 – 29 and 55 through 92 of the [Proposed] Third Amended Complaint which is appended hereto. The facts alleged show that:

1. STATS HR has no discernible background in the investigation of a sexual harassment / hostile work environment case; STATS' Gail Uy displayed a complete lack of knowledge of the anatomy of a sexual harassment / hostile work environment case.

2. STATS Gail Uy displayed a complete lack of knowledge of the primary investigative techniques, including the lack of familiarity with age old inquiry into "motive, means and opportunity" of the involved persons.

3. STATS Gail Uy displayed a complete separation from reality by blindly believing Eric Gongora denials of sexual harassment despite her knowledge that Eric Gongora:

   a. Had been convicted of a felony in Florida; and

   b. Was fired from his previous employer for the following reasons:

      i. Unwanted sexual advances to a female employee; and

      ii. The misuse of company computers to view pornographic websites; and

      iii. The misuse of company computers to exchange sexually explicit materials with female co-employees;

      iv. Attempt to Eric Gongora to transport illegal drugs from Arizona to the Philippines using Amkor's fed ex account.

   c. Had two orders of protection issued against him by two of his former spouses for, inter alia, physical abuse and the use of the "c___" word in referring to her; and

   d. The fact that Gongora lied on his employment application with STATS (twice); and

   e. The fact that Gongora had to take an anger management course in a criminal prosecution in Chandler, Arizona.

4. STATS' was unable to verbalize *any* of the elements discussed by Dr. Wilson's white papers; Dr. Wilson is Defendant-retained Independent Medical Examiner who offered his opinions in the May 26, 2009 deposition.

More disturbing is Plaintiffs discovery that upon complaints by Plaintiff, Defendants simply decided to terminate Plaintiff; create a paper trail to avoid a lawsuit, and retain (and reward) the sexual harasser, Eric Gongora:

1. STATS made a conscious decision to *not* investigate Eric Gongora, the alleged sexual harasser, but *to* investigate Plaintiff instead.

2. STATS decided to terminate Plaintiff at the very latest on August 7, 2007, and then created the "special projects" position for the sole purpose of deceiving Plaintiff that her continued employment with STATS was safe.

3. STATS created documentary and evidentiary trail "evidence" to use at trial in order to deceive the Plaintiff, the Court and the jury into believing that Plaintiff was terminated for reasons other than retaliation.

4. STATS created documents and paper trail "evidence" to use at trial in order to hide its preferential treatment of the sexual harasser Eric Gongora at the expense of Plaintiff.

5. STATS made a conscious decision to retain the alleged sexual harasser, Eric Gongora, and fire Plaintiff.

The significant event which leads to the discovery of this evidence is the meeting between Gail Uy (HR), BJ Han (Plaintiff's supervisor) and Janet Taylor (corporate counsel) on or about August 7, 2007. It was after this meeting that STATS started creating an evidentiary trail and documentary "evidence", allowed a lapse of time prior to termination of Plaintiff in order to lengthen the causal connection between the decision to affect retaliatory termination and the actual termination, and ultimately fired Plaintiff while retaining Gongora.

**CONCLUSION AND PRAYER FOR RELIEF**

For the foregoing reasons Plaintiff respectfully requests that the Court grant her Motion to Amend. Proposed Third Amended Complaint is appended hereto. Plaintiff also respectfully

requests that the court shorten the time for briefing and render decision no later than June 20, 2009.

RESPECTFULLY SUBMITTED this 2nd day of June, 2009.

**PETER STROJNIK, P.C.**

_____
Peter Strojnik
Attorney for the Ms. Sahakian