L. Eric Dowell, SBN 011458
Caroline Larsen, SBN 022547
Monique Young, SBN 025121
Ogletree, Deakins, Nash, Smoak & Stewart, P.C., SBN 00504800
2415 East Camelback Road, Suite 800
Phoenix, Arizona 85016
Telephone:   (602) 778-3700
Facsimile:    (602) 778-3750
Eric.Dowell@ogletreedeakins.com
Caroline.Larsen@ogletreedeakins.com
Monique.Young@ogletreedeakins.com

Attorneys for Defendants STATS ChipPAC, Inc.
and STATS ChipPAC, Ltd.

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Diane Sahakian, a single woman,<br><br>                    Plaintiff,<br><br>vs.<br><br>STATS ChipPAC, Inc., a foreign corporation; STATS ChipPAC Ltd, a foreign corporation; Temasek Holdings Private Limited, a foreign corporation; Singapore Technologies Semiconductors Private Limited, a foreign corporation,<br><br>                    Defendants. | CV08-241-PHX-HRH<br><br>**DEFENDANTS STATS CHIPPAC, INC. AND STATS CHIPPAC LTD.'S MOTION TO COMPEL RESPONSE TO SUBPOENA SERVED ON NON-PARTY GOPALAN NAIR** |

Pursuant to Federal Rule of Civil Procedure 45(e), Defendants STATS ChipPAC, Inc. and STATS ChipPAC Ltd. (collectively "STATS ChipPAC") hereby move the Court for an Order finding non-party Gopalan Nair in contempt for failing to obey the subpoena duces tecum served upon him almost three months ago, and compelling Mr. Nair to immediately respond. The subpoena seeks documents that are relevant to this action and are not protected from discovery. Mr. Nair has never objected to responding to the subpoena, he has simply failed and refused to do so.

Mr. Nair, who is an attorney licensed in California, should be well aware of his obligations to respond to a subpoena and to comply with the Federal Rules of Civil Procedure. In light of Mr. Nair's complete disregard for his obligations pursuant to the Federal Rule of Civil Procedure 45, STATS ChipPAC further requests that the Court award STATS ChipPAC its attorneys' fees incurred in attempting to secure Mr. Nair's compliance with the subpoena, including the time spent drafting this Motion, as a sanction. This Motion is supported by the following Memorandum of Points and Authorities.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     PROCEDURAL BACKGROUND**

This action arises out of the Plaintiff Diane Sahakian's former employment relationship with STATS ChipPAC, Inc. On February 10, 2009, Plaintiff disclosed Gopalan Nair as a witness in the action. *See* Exhibit 1. In the disclosure statement, Plaintiff identified Mr. Nair as a witness to testify regarding the Singaporean corporate and business culture as it relates to abuse of women and minorities; the application of Singaporean defamation law in order to preserve the political and business power structure of Singapore, its economic structure, its oligarchy, and its public perception; the misapplication of Singaporean law to oppress and intimidate minorities and women; and the differences between Singaporean and American employment culture as it relates to the treatment of minorities and women. *Id.*

On February 13, 2009, Plaintiff noticed Mr. Nair's deposition for March 23, 2009, in Fremont, California, where Mr. Nair's law practice is located. *See* Doc. 63. On March 4, 2009, in anticipation of Mr. Nair's deposition, STATS ChipPAC served a subpoena duces tecum on Mr. Nair for documents related to the topics about which he was expected to testify. A true and accurate copy of the subpoena, with proof of service, is attached as Exhibit 2. Mr. Nair's response to the subpoena was due by March 18, 2009 (five days before his scheduled deposition). Mr. Nair responded to the subpoena with letters dated March 4 and March 6, 2009. *See* Exhibits 3 and 4. In both responses, Mr.

Nair stated that STATS ChipPAC was "at liberty to make copies of [the responsive documents] in [his] office by prior appointment and upon payment of [his] fees." *Id.*

On March 19, 2009, Cheri Lord, a paralegal in Defendants' counsel's office, telephoned Mr. Nair to coordinate a convenient date and time to accept his offer and send a third-party vendor to his office to copy the responsive documents. Mr. Nair then admitted that the photocopier in his office was not adequate to copy the volume of documents responsive to the subpoena, thus duplication could not be done at his office, despite the offer in his letters. As an alternative, Ms. Lord offered to arrange for a local Kinko's copy center to go to Mr. Nair's office, pick up the documents, copy them, and return the originals to him and the copies to STATS ChipPAC's counsel, at STATS ChipPAC's expense. *See* Declaration of Cheri M. Lord, attached as Exhibit 5. Mr. Nair confirmed there was a Kinko's near his office, but stated he was concerned about "someone running off with the documents." Ms. Lord reassured Mr. Nair that she had never experienced a problem with a reproduction service stealing or misplacing documents in her twelve years of work as a paralegal. Mr. Nair still would not agree to this arrangement. *Id.*

In light of Mr. Nair's uncooperativeness, Ms. Lord asked him to suggest how Defendants could obtain copies of the documents responsive to the subpoena, since he indicated the documents could not be copied at his office, and he would not permit a copying service to pick up the documents for copying. Mr. Nair stated that he would agree to have someone from Kinko's come to his office, pick up him *and* the documents, transport Mr. Nair to the copying center to oversee the duplication, return him and his documents to his office, and send the photocopies to STATS ChipPAC's counsel. *Id.* Ms. Lord suggested, alternatively, that Mr. Nair simply take the documents to the nearby Kinko's at his convenience and advised him that she would arrange for Kinko's to bill STATS ChipPAC directly for the copying costs. Again, Mr. Nair would not agree to this arrangement, insisting he would only agree only to the arrangement he proposed. Ms.

1   Lord agreed to contact Kinko's to see if they could provide this service and get back to
2   Mr. Nair. *Id.*

3   Ms. Lord contacted Kinko's and was advised that Kinko's would not agree to
4   transport Mr. Nair to its facility or to permit Mr. Nair to go behind the customer service
5   counter to oversee the duplication due to liability concerns.  The representative at
6   Kinko's instead suggested that Mr. Nair come to the copying center, where they would
7   allow him to use a public photocopy machine, show him how to use it, and let him make
8   the copies himself.  Otherwise, Kinko's would pick up the documents, copy them, and
9   return the originals to Mr. Nair, as they customarily do. *Id.*

10  Ms. Lord again contacted Mr. Nair and explained the options offered by Kinko's.
11  Mr. Nair disagreed that Kinko's had any liability issues and insisted that their statements
12  regarding same were simply untrue.  Ms. Lord reiterated that, regardless of whether Mr.
13  Nair agreed with Kinko's concerns, Kinko's would not agree to transport him to their
14  copying center or allow him to go behind the customer service counter to oversee the
15  duplication, so an alternative arrangement needed to be made.  Ms. Lord suggested that
16  Mr. Nair go to Kinko's to use one of their photocopiers to make the copies himself, but
17  Mr. Nair refused.  He said he was not getting paid for his appearance as a witness in this
18  action and, as such, he would not expend any time on it.  Ms. Lord again asked if the
19  documents could be copied at his office, but Mr. Nair again said "no." *Id.*

20  Ms. Lord advised Mr. Nair that Defendants had gone above and beyond their
21  obligation to be reasonable and to avoid imposing undue burden and expense upon him,
22  as required in Rule 45 of the Federal Rules of Civil Procedure.  Mr. Nair said he did not
23  know what Rule 45 was and he was not interested in looking it up.  Ms. Lord pointed out
24  that Mr. Nair had made no attempt to object to responding to the subpoena and advised
25  him that, if he would not comply with the subpoena, STATS ChipPAC would file a
26  motion to compel and seek an award of sanctions.  At that time, the call was
27  disconnected. *Id.*  Presumably, Mr. Nair hung up on Ms. Lord.

28

4

At Mr. Nair's March 23 deposition, STATS ChipPAC's counsel again raised the issue of obtaining documents responsive to the subpoena duces tecum served upon him. Mr. Nair stated, on the record, that he was willing to take the responsive documents to a copying center selected by STATS ChipPAC's counsel for copying. *See* Deposition of Gopalan Nair, pp. 92-94, attached as Exhibit 6.

On March 30, 2009, STATS ChipPAC's counsel sent a letter to Mr. Nair, advising that she had arranged to have the documents responsive to the subpoena reproduced at a Kinko's in Fremont near his office. *See* Exhibit 7. The letter advised that Kinko's would bill the costs of reproduction directly to STATS ChipPAC. The letter further stated that Kinko's had been advised that Mr. Nair would prefer to supervise the copying of his documents, and Kinko's was prepared to make copies in their general customer service area, in Mr. Nair's clear view. Finally, the letter advised Mr. Nair who to ask for when he arrived at Kinko's, and asked him to take the documents, which he was supposed to have produced almost two weeks earlier, for copying within the next week. *Id.*

In April 2009, counsel for STATS ChipPAC still had not received any responsive documents or heard anything from Mr. Nair. On April 24, 2009, Patricia Simon, a paralegal in Defendants' counsel's office, called Mr. Nair's office to inquire about the status of his response to the subpoena duces tecum. *See* Declaration of Patricia L. Simon, attached as Exhibit 8. Mr. Nair's assistant indicated that he was not available, so Ms. Simon left a message, but Mr. Nair did not return the call. *Id.* On April 27, 2009, Ms. Simon again called Mr. Nair's office. His assistant stated that Mr. Nair would be responding to Ms. Simon shortly. Ms. Simon tried to clarify whether Mr. Nair would be responding by producing documents pursuant to STATS ChipPAC's subpoena, however, his assistant did not know. *Id.* On April 28, 2009, Mr. Nair sent Ms. Simon an email, on which he copied Plaintiff's counsel, demanding compensation in the amount of $1,600 to respond to STATS ChipPAC's subpoena duces tecum. *See* Exhibit 8, attachment B. Mr. Nair stated that this amount represented his hourly billing rate (presumably for his

services as an attorney), multiplied by the number of hours he estimated it would take for him to deliver the documents to a third-party vendor and wait for them to be copied. *Id.*

On May 22, 2009, STATS ChipPAC's counsel sent an email to Plaintiff's counsel, forwarding Mr. Nair's email and asking whether Plaintiff's counsel intended to call Mr. Nair as a witness at trial, since he was not listed on either of Plaintiff's trial witness lists (Docs. 122, 131). *See* Exhibit 9. Counsel for STATS ChipPAC explained that, if Plaintiff did not intend to call Mr. Nair as a witness or use his deposition transcript at trial, then STATS ChipPAC would not continue to pursue production of documents responsive to its subpoena to Mr. Nair. *Id.* Plaintiff's counsel responded that Plaintiff planned to add Mr. Nair to her trial witness list, and agreed to contact Mr. Nair to try to secure his compliance with the subpoena. *See* Exhibit 10. Plaintiff's counsel emailed and called Mr. Nair, but was similarly unsuccessful at securing Mr. Nair's cooperation in responding to the subpoena. Accordingly, Plaintiff has no choice but to proceed with this motion to compel Mr. Nair's response to the subpoena duces tecum.

## II.   DISCUSSION

### A.   Mr. Nair waived any opportunity to object to the subpoena.

The Federal Rules of Civil Procedure authorized STATS ChipPAC's to issue a subpoena to Mr. Nair "to produce documents, electronically stored information, or tangible things" for inspection and copying. Fed. R. Civ. P. 45(a)(1)(D), (a)(3)(A). Mr. Nair has never objected to producing the documents identified in the subpoena. If he wished to object, he had to do so by March 18, 2009 - the earlier of the time specified for compliance or 14 days after the subpoena was served. Fed. R. Civ. P. 45(c)(2)(B). Mr. Nair has never indicated that the subpoena did not permit reasonable time to respond, that it requested the disclosure of privileged or other protected matter, or that it subjected him to undue burden. *See* Fed. R. Civ. P. 45(c)(3)(A). Accordingly, there is no excuse for Mr. Nair's failure to timely respond to the subpoena.

Not only did Mr. Nair not object to the subpoena, he initially invited STATS ChipPAC to come to his office to copy the responsive documents. He later admitted that

his office could not actually handle the volume of copying. As an alternative, STATS ChipPAC has been more than reasonable in trying to establish an efficient and convenient way to have the documents copied by a third party, without imposing unreasonable burden or expense upon Mr. Nair. *See* Fed. R. Civ. P. 45(c)(1). Mr. Nair has rejected all of these efforts, choosing instead to ignore his obligation to respond to the subpoena.

**B.    STATS ChipPAC has a legitimate need for the subpoenaed documents to support its defenses in this action.**

STATS ChipPAC needs the subpoenaed documents to explore whether Mr. Nair is qualified to testify as to the topics identified in Plaintiff's Disclosure Statement. Specifically, Plaintiff identified Mr. Nair as a witness to testify regarding the Singaporean corporate and business culture as it relates to abuse of women and minorities; the application of Singaporean defamation law in order to preserve the political and business power structure of Singapore, its economic structure, its oligarchy, and its public perception; the misapplication of Singaporean law to oppress and intimidate minorities and women; and the differences between Singaporean and American employment culture as it relates to the treatment of minorities and women. Exhibit 1. Accordingly, STATS ChipPAC issued a subpoena requiring Mr. Nair to disclose, among other items, all documents he relied upon or reviewed in formulating his opinions on these subjects; all documents that he relied upon or reviewed in connection with his involvement in the present action; all documents in his possession relating or pertaining to Plaintiff or STATS ChipPAC; and all documents or communications exchanged between Mr. Nair and Plaintiff or her counsel. Exhibit 2. Mr. Nair has not disclosed a single, responsive document, although he admits he has "voluminous" responsive documents in his possession.

Without the subpoenaed documents, STATS ChipPAC cannot determine whether Mr. Nair's opinions are (a) rationally based on his perceptions; (b) helpful to the determination of any fact in issue; and (c) not based on scientific, technical, or other specialized knowledge for the purpose of challenging whether Mr. Nair is qualified to

offer opinion testimony pursuant to Federal Rule of Evidence 701. *See* Exhibit 11, Feb. 13, 2009 letter from Plaintiff's counsel discussing Mr. Nair's proposed testimony. Furthermore, without the subpoenaed documents, STATS ChipPAC cannot defend itself against Mr. Nair's broad, sweeping opinions about Singaporean business culture – which Plaintiff apparently intends to offer to support her allegation that STATS ChipPAC, like other Singaporean companies, has a practice of demonstrating preference for Singaporean employees over American employees. *Id.* There is no credible argument that the subpoenaed douments are irrelevant, and there is no valid basis for Mr. Nair's refusal to produce them as required by Federal Rule of Civil Procedure 45.

### III.    CONCLUSION

STATS ChipPAC's subpoena to Mr. Nair is reasonable, not unduly burdensome, and relevant to the above-captioned case. Moreover, Mr. Nair has never objected to responding to the subpoena and the time for him to do so has long since passed. For the foregoing reasons, STATS ChipPAC requests that the Court (1) find Mr. Nair in contempt for his failure to obey the subpoena duces tecum; (2) order Mr. Nair to immediately produce all documents requested in the subpoena served upon him by STATS ChipPAC on March 4, 2009; and (3) award STATS its reasonable attorneys' fees incurred in attempting to secure Mr. Nair's compliance with the subpeoan, including the time spent drafting this Motion to Compel.

DATED this 2nd day of June, 2009.

                OGLETREE, DEAKINS, NASH,
                SMOAK & STEWART, P.C.


                By:s/ Caroline Larsen
                   L. Eric Dowell
                   Caroline Larsen
                   Monique Young
                   2415 East Camelback Road, Suite 800
                   Phoenix, Arizona 85016
                   Attorneys for Defendants STATS ChipPAC,
                   Inc. and STATS ChipPAC, Ltd.

# CERTIFICATE OF SERVICE

I hereby certify that on June 2, 2009, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Peter Strojnik
Peter Strojnik, P.C.
3030 North Central Avenue, Suite 1401
Phoenix, Arizona 85012
Attorney for Plaintiff

Peter K. Strojnik
The Law Firm of Peter Strojnik
3030 North Central Avenue, Suite 1401B
Phoenix, Arizona 85012

I hereby certify that on this 2nd day of June 2009, I served the foregoing document by first-class mail, postage prepaid, on the following:

Gopalan Nair
39737 Paseo Padre Parkway, #A1
Fremont, CA  94538


s/ Debra A. Perkins

7368326.1 (OGLETREE)

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
2415 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 778-3700