Peter Strojnik, 006464
3030 North Central Avenue, Suite 1401
Phoenix, Arizona 85012
Telephone: 602-524-6602
Facsimile: 602-296-0135
e-mail: *ps@strojnik.com*
Attorney for Plaintiff

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| DIANE SAHAKIAN, a single woman, ) | NO. CV-08-241-PHX-HRH |
| ) | |
| Plaintiff, ) | **MOTION TO COMPLETE DEPOSITION** |
| ) | **OF GAIL UY AND FOR SANCTIONS** |
| vs. ) | |
| ) | (Defendants Walked Out Of Deposition) |
| STATS ChipPAC, Inc., a foreign ) | |
| corporation; STATS ChipPAC, Ltd., a ) | |
| foreign corporation; TEMASEK ) | |
| HOLDINGS PRIVATE LIMITED, a ) | |
| foreign corporation; SINGAPORE ) | |
| TECHNOLOGIES SEMICONDUCTORS ) | |
| PRIVATE LIMITED, a foreign ) | |
| corporation. ) | |
| ) | |
| Defendants. ) | |
| ) | |

## SUMMARY OF MOTION

On May 27, 2009, Plaintiff took the deposition of Gail Uy, STATS' Human Resources employee who was charged with the investigation of Eric Gongora's sexual harassment of Plaintiff. The deposition was taken in Fremont, California, at great expense to Plaintiff. Well prior to the conclusion of the Deposition, counsel for STATS and the deponent, Ms. Uy, simply stood up and left without an opportunity to meet and confer (Declaration of Counsel, Exhibit 1).

-1-

Plaintiff requests that the Court order Gail Uy to appear and conclude the deposition, and that Defendants pay all costs associated with the conclusion of the deposition, including travel expenses and the hourly fee for Plaintiff's attorney. This Motion is more fully supported by the following Memorandum of Points and Authorities that is by this reference incorporated herein.

## MEMORANDUM OF POINTS AND AUTHORITIES

Gail Uy is STATS Human Resources employee in charge of sexual harassment event commonly referred to as the "ketchup incident"[1]. During her deposition[2], it became clear that Ms. Uy was uniformed on the concepts of stereotyping, prejudice, rarity, priming, work group dynamics, "outsiders", "insiders", "group deviant" and other concepts relative to a dysfunctional work environment about which Defendants' paid-for expert witness – Dr. C. Brady Wilson – has wrote and researched extensively. One cannot investigate a sexual harassment / hostile work environment claim unless one understands the causes and work dynamics in a male-dominated company such as STATS where approximately 90% of the workforce is male.

### *Gail Uy's Cover of Eric Gongora*

---

[1] The "ketchup incident" involved placement of ketchup on Plaintiff's chair on a day she was wearing white pants. The ketchup was placed in a position that would result in a ketchup smudge on Plaintiff's pants in the vaginal area. The obvious intent was to humiliate Plaintiff by making it appear that she had bled through while on her menstrual cycle.

[2] The partial transcript will be provided once it has been prepared.

-2-

Ms. Uy recognized that the ketchup incident was a serious event and that whoever placed the ketchup on Plaintiff's chair "should not be working in this company" (Uy Email, Exhibit 2).

At the time of the ketchup incident, STATS management had already formed opinions of the primary suspect, Eric Gongora. STATS management knew that Gongora was a "big troublemaker". (Sahakian/Han email, Exhibit 3). Management was aware that Gongora was a master manipulator. (Sahakian/Han email, Exhibit 4). Others at STATS were also aware of Gongora's manipulations. (Ramakrishna Declaration, Exhibit 5). It appeared that the identification of the culprit would be easy to determine. In addition to STATS' knowledge of the above, Gongora's cubicle was a mere 6 feet away from Plaintiff's office (Cubicle Layout, Exhibit 6).

In fact, Ms. Uy's investigation disclosed that at least three people (Phil Wingate, Chris Shea and Ram Ramakrishna) fingered Gongora as the culprit. (Exhibit X STATS 1240) However, Gongora himself denied the allegations. Ms. Uy and STATS management concluded that "there is someone lying in Tempe". (Exhibit 2). But this is where the investigation ended.

Ms. Uy acknowledged that during Gongora's prior employment with Amkor, Gongora reported to Scott Jewler who, by the time of the ketchup incident, had also transferred from Amkor to STATS. (Amkor Employee Change Notice, Exhibit 7). Ms. Uy also admitted that Gongora was terminated by Amkor for cause and that he was not eligible for rehire at Amkor. (Id.) Ms. Uy further admitted that in his application for employment, Gongora stated that the reason for termination at Amkor was "R.I.F." (Reduction in Force) (Gongora ChipPAC Employment Application, Exhibit 8). She further admitted that Gongora's application denied

any criminal convictions when, in fact, Gongora had been convicted of a felony in Florida. (Gongora Florida court grand theft records, Exhibit 9).

The lying on his application for employment did not provide cause Ms. Uy to doubt Gongora's denials. Further, she did not find cause to doubt Mr. Gongora when confronted with the (known) fact that Gongora was fired from Amkor for the following *specific* reasons (Mike Gentry Declaration, Exhibit 10).

1. Making unwanted sexual advances to a female employee; and
2. Misusing company computers to view pornographic websites; and
3. Misusing company computers to exchange sexually explicit materials with female co-employees;
4. Attempting to transport illegal drugs from Arizona to the Philippines using Amkor's FedEx business account.

While Dr. Wilson – STATS' appointed and paid for expert witness – testified that "past actions are indication of future conduct" and that "past illegal conduct demonstrates a person's disregard for social norms"[3], the conglomeration of these facts did not cause Ms. Uy to doubt Mr. Gongora's involvement. The additional facts that two of Gongora's past wives petitioned for and received Orders of Protection for physical and mental abuse by Gongora did not sway

---

[3] Dr. Wilson deposition testimony to be provided when transcript is complete. Quotations based on memory and written recordation.

Ms. Uy. (Karen Chu Order of Protection, Exhibit 11[4]). If Gongora says he did not do it, well, then, he did not do it.

However, STATS had sufficient information to commence an investigation of the *Plaintiff*. While Gongora's conduct was rewarded by continuing employment and bonuses, Plaintiff was demeaned, demoted, humiliated and ultimately fired. STATS attitude toward the Plaintiff is best summarized by STATS CEO commenting on Plaintiff's special project proposal, "Is she smoking dope?" (Koon/Han email, Exhibit 12).

### *Inquiry into STATS' Corporate Culture*

The second purpose of taking Uy's deposition was to glean an insight into STATS' corporate culture. Plaintiff's investigation disclosed, *inter alia*, that at STATS', segregation by race is an acceptable practice. Reference to Americans as a "necessary evil" is acceptable practice. Derogatory remarks about Jews is common practice. Derision of Indians is OK. Classification of Koreans and Japanese as "the best"; Chinese as "bad" and Indians as "the worst" is acceptable. Referring to American employees as "stupid" "fat" and "lazy" is common practice. Referring to employees as "monkeys" if fine. Referring to the management as a "Fucking Asshole" is common practice. One could easily conclude that STATS is a racially and gender-biased dysfunctional employment organization.

In questioning Plaintiff about these matters, Plaintiff intended to determine, *inter alia*, whether misconduct is tolerated only when committed by STATS, or whether it is tolerated

---

[4] Mr. Gongora's first ex-wife's Order of Protection (Ms. Mayuli Lamm) shall be provided when Plaintiff secures the certified records.

when committed by third parties – such as STATS vendors. Upon questioning Ms. Uy whether STATS would approve of a vendor referring to another person as an "idiot", she responded with a resounding "no"[5]. Thereafter, Gail Uy and her counsel stood up, declared the deposition terminated, and stormed out of the deposition.

All civility ends at STATS' doorsteps. It is acceptable for STATS management to classify the characteristics of victims in employment law and their reaction to a dysfunctional work environment. It became rather clear early on that Ms. Uy was utterly uninformed on any of these matters.

### *Inquiry Into STATS Complete Irreverence to American Customs and Laws*

Plaintiff took the deposition of Gail Uy, in part, to confirm the Declaration issued by Dennis Daniels, the former corporate HR director of STATS who was based at the STATS headquarters office in Singapore. In his Declaration, Mr. Daniels states, in part:

> 12. STATSChipPAC is run as a totalitarian monarchy. I believe this because honest mistakes, Tan Lay Koon's perception of employees not doing their jobs to his satisfaction, and style differences seen in Americans (and people in general) were not easily tolerated by Tan Lay Koon. In fact, employees are afraid to approach Tan Lay Koon with important information about the business (especially problems) because it is widely known that he will shoot the messenger.

> 15. Tan Lay Koon gives the impression that he harbors resentment against Americans. During staff meetings or at lunch, he has often lectured his executive staff on his opinion of American foreign policy, politics, culture and wealth, in unflattering terms. Even though he came to America for his MBA and launched

---

[5] In this case, STATS vendor and counsel burst out in uncontrollable anger during the STATS 30(b)(6) deposition. In front of his client, counsel for STATS yelled at both counsels for Plaintiff "you are idiots, cretins and morons"; thereafter, counsel for STATS wanted to engage in a physical fight with counsel for Plaintiff. Counsel for Plaintiff contacted the State Bar to inquire how to avoid such hostility; State Bar advised that counsel should call the police (Strojnik Jr. Declaration, Exhibit 13).

> his financial career in America, I have never, ever heard Tan Lay Koon say anything positive about America. He even complained about the crime infested neighborhoods around the campus of Wharton Business School.
>
> 16. I recognize there are differences between Singapore and the U.S., in terms of customs and laws of how employees and job candidates should be treated. I also understand that a global economy has to be in legal compliance in every country where it has operations. I believe sometimes, this didn't seem to matter a lot at STATSChipPAC. There are times when the General Counsel or I would have to remind Tan Lay Koon and others that he cannot disqualify a candidate for a position based on age or gender - particularly in the U.S.
>
> 17. The Singaporean Leadership, e.g. Tan Lay Koon, BJ Han and other STATSChipPAC directors, generally did not seem aware of, or interested in, any other national customs/laws other than their own.

(Daniels Declaration, Exhibit 14).  Plaintiff has already determined that STATS cares little about American law.  For instance, in its 2008 Form F20 filed with the Securities and Exchange Commission, (STATS Form 20-F, Exhibit 15) STATS failed to disclose the current litigation and the litigation commenced against STATS in California by one Steve Lynch. This is a felony. Additionally, we already know that STATS failed to follow its own harassment policy in connection with this matter.  With the sworn declaration by Mr. Daniels that STATS management "generally did not seem aware of, or interested in, any other national customs/laws other than their own", addresses not only liability but also punitive damages.

### CONCLUSION AND PRAYER FOR RELIEF

Plaintiff requests that the Court order Ms. Gail Uy to appear and provide testimony to conclude her deposition. Further, Plaintiff requests that the Court order STATS to pay Plaintiff's counsel's travel costs and expenses, and counsel's current hourly rate of $450.00 for one full day, or $3,600.00.

RESPECTFULLY SUBMITTED this 3rd day of June, 2009.

                                             **PETER STROJNIK, P.C.**

                                             _____
                                             Peter Strojnik
                                             Attorney for the Plaintiff