THE LAW FIRM OF PETER STROJNIK
ATTORNEYS AT LAW
SUITE 1401
3030 North Central Avenue
Phoenix, Arizona 85012
(602) 297-3019

Peter Kristofer Strojnik AZBN 026082 CABN 242728
pksesq@aol.com
Attorney for Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| DIANE SAHAKIAN, a single woman, | ) NO. CV-08-241-PHX-HRH |
| Plaintiff, | ) DECLARATION OF JAY EWANICH |
| vs. | ) |
| STATS ChipPAC, Inc., a foreign corporation; STATS ChipPAC, Ltd., a foreign corporation; TEMASEK HOLDINGS PRIVATE LIMITED, a foreign corporation; SINGAPORE TECHNOLOGIES SEMICONDUCTORS PRIVATE LIMITED, a foreign corporation. | ) |
| Defendants. | ) |

I, Jay Ewanich, do hereby declare the following statements are true and correct, to the best of my knowledge and recollection, under the penalty of perjury under the laws of the State of Arizona.

1. My name is Jay Ewanich. I have personal knowledge of all statements made herein.

-1-

2. Those opinions and inferences expressed herein are rationally based on my perception while employed with STATS and my perception while being a manger in American and Asian-based companies for approximately 20 years.

3. In or around January of 2000, I began working for the STATS prior to the merger between STATS and ChipPAC. I was employed with STATS for approximately 17 months. During my employment with STATS, I reported to BJ Han for the last year of my employment.

4. I was Diane Sahakian's immediate supervisor while I was employed at STATS. Diane Sahakian was an excellent employee. She was technically sound, had an excellent relationship with other members within my group, and she was extremely keen on people sense. During my management of Ms. Sahakian, she was allowed to manage one other person – Jeremy Alonte. I always witnessed a positive relationship between Ms. Sahakian and Mr. Alonte.

5. I am aware of the "ketchup incident." I am aware that an employee at STATS ChipPAC placed ketchup on Ms. Sahakian's desk chair on a day when she was wearing white pants. As a manager for approximately 20 years, it is my opinion such action is sexual harassment. It is also my opinion that such action should be cause for dismissal (for the person who placed the ketchup on Ms. Sahakian's chair).

6. When I was employed at STATS, the Human Resources department was reluctant to fire STATS employees because they feared lawsuits. (Due in part, I believe, because there was a previous lawsuit against STATS by a former employee.)

7. When I discovered Ms. Sahakian's Vice President title was taken away, and she was given a "special project", I immediately thought that she was on her way out.

8. In my approximately 20 years of being a manager, it is standard practice for companies to take away their direct reports and re-assign an employee to a 'special project' if the company no longer wants the employee to work there any longer. This is a polite/subtle way of demoting the employee. I would characterize a special project as a demotion and career-limiting position at the company. A special project title basically gives notice to the employee that the employee should begin to find new employment or else they will ultimately be fired. (An exception being when it is a *mutual* decision – e.g., employee realizes they don't like management responsibility and gets moved to 'special project' until something else opens up.)

9. A special project is a fictional duty within the company used to politely force a person out of the particular company. It is standard practice to demote employees who no longer are desired by the company by putting them into a back room, taking their prior responsibilities away, and taking them out of the mainstream of the company without any real possibility of completing the fictional duty classified as the special project.

10. The special project given to Ms. Sahakian was clearly a demotion.

THE ABOVE IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE, INFORMATION AND BELIEF, AND I SO STATE UNDER THE PENALTY OF PERJURY

DATED this __6__ Day of __APRIL__, 2009.

*[signature]*
Jay Ewanich

THE LAW FIRM OF PETER STROJNIK
ATTORNEYS AT LAW
SUITE 1401
3030 North Central Avenue
Phoenix, Arizona 85012
(602) 297-3019

Peter Kristofer Strojnik AZBN 026082 CABN 242728
pksesq@aol.com
Attorney for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| DIANE SAHAKIAN, a single woman, | ) NO. 2:08-cv-241-PHX-HRH |
| Plaintiff, | ) DECLARATION OF RAM RAMAKRISHNA |
| vs. | ) |
| STATS ChipPAC, Inc., a foreign corporation; STATS ChipPAC, Ltd., a foreign corporation; TEMASEK HOLDINGS PRIVATE LIMITED, a foreign corporation; SINGAPORE TECHNOLOGIES SEMICONDUCTORS PRIVATE LIMITED, a foreign corporation. | ) |
| Defendants. | ) |

I, Kambhampati Ramakrishna, do hereby declare the following is true and correct to the best of my knowledge and belief under the penalty of perjury under the laws of the State of Arizona.

1. My name is Kambhampati Ramakrishna. I have personal knowledge of all statements made herein. Those opinions and inferences stated herein are rationally based on my perceptions while employed at STATSChipPAC.

-1-

2. In 2001, I started working for STATS. I resigned from STATSChipPAC in 2008. During my employment with STATS and STATSChipPAC, I was directly managed by Diane Sahakian in the Emerging Technology group for approximately four years.

3. While I was managed by Diane Sahakian, I learned that she was very attentive to detail. Generally, if someone, or I, followed her direction on a certain project, the ET group would function well and without disruption. However, I would sometimes disagree with Diane Sahakian's direction, but not her management style. As a professional engineer with more that 15 years experience, I learned that disagreements are normal and are resolved by understanding each others points.

4. I know who Scott Gooch is. While I had limited interaction with Mr. Gooch, I am aware that he worked in Diane Sahakian's group between June of 2006 and approximately February or March of 2007. Diane Sahakian was not Scott Gooch's direct supervisor. Rather, Diane Sahakian was the manager of the ET group, but two of her subordinates – Eric Gongora and Flynn Carson – directly managed Mr. Gooch.

5. Mr. Gongora, and Mr. Gooch were friends within the Company. It is my opinion that Mr. Gongora influenced Mr. Gooch's opinion about Diane Sahakian. Mr. Gongora is the type of person to use one's words and manipulate those words to make the person look in a bad way and to make Mr. Gongora either look good or avoid difficulty or trouble within the Company. It is my opinion, based on Mr. Gongora's overall behavior, that he would use and twist Diane Sahakian's words and relay different words to Mr. Gooch and others.

6. It is my opinion that Mr. Gongora placed the ketchup on Diane Sahakian's desk chair in April of 2008. Mr. Gongora was known throughout the Company, but specifically within the ET and PLM groups, as a practical jokester who took jokes too far. Mr. Gongora would often play what he believed were practical jokes on STATSChipPAC employees. For example, one time Mr. Gongora took the car keys of an employee and proceeded to move the employee's car to a separate inconspicuous place. When the employee noticed that his car was missing, he was suggested to call the police, but a few minutes later, Mr. Gongora informed him about where the car was. Mr. Gongora only told the employee he had played the "joke".

7. When I was employed with STATSChipPAC, I tried to avoid conversing with Mr. Gongora because of his reputation of using a person's words against that person. Mr. Gongora would repeat words that I, or others, would say for his benefit and to the detriment of me or that particular person.

8. It is my opinion that STATSChipPAC has an authoritarian management. BJ Han and Tan Lay Koon have berated myself and others, in public. BJ Han and Tan Lay Koon are very condescending to people.

9. Several years ago I was promoted to the position of Director. Shortly after the promotion, I was in Singapore and BJ Han approached me. He looked at me as if I was nothing, tauntingly laughed, and said "You're a director?" BJ Han said this in such a way that significantly lowered my self-esteem. One must have thick skin to work at STATSChipPAC.

10. If an employee would disagree with a directive given by BJ Han or Tan Lay Koon, that employee should not challenge the directive because it would put the employee in a career limiting position. BJ Han and Tan Lay Koon believe that what they say or do is correct even when there is evidence suggesting otherwise. BJ Han and Tan Lay Koon will not admit when they are wrong.

11. BJ Han and Tan Lay Koon believe that Asians are smarter and more intelligent, and they show it in their behavior. BJ Han and Tan Lay Koon believe that Americans are not hard workers, and are not as knowledgeable as Asians are. BJ Han and Tan Lay Koon believe they are better than Americans and treat them in such a manner.

12. I am aware that Diane Sahakian had her direct reports taken away after she took her FMLA leave in 2007 and was given a "special project." I am also aware that Diane Sahakian was terminated from STATSChipPAC. A "special project" has been clearly understood as a "kiss of death" at STATSChipPAC . It is my strong opinion that Diane Sahakian did not deserve to be demoted to a "special project" or to be terminated. In my opinion, management should have had a face to face meeting before taking such an action, because of its seriousness.

DATED this __22nd__ Day of March, 2009.

_____
Kambhampati Ramakrishna