1  L. Eric Dowell, SBN 011458
   Caroline Larsen, SBN 022547
2  Monique Young, SBN 025121
   Ogletree, Deakins, Nash, Smoak & Stewart, P.C., SBN 00504800
3  2415 East Camelback Road, Suite 800
4  Phoenix, Arizona 85016
   Telephone:    (602) 778-3700
5  Facsimile:    (602) 778-3750
6  Eric.Dowell@ogletreedeakins.com
   Caroline.Larsen@ogletreedeakins.com
7  Monique.Young@ogletreedeakins.com

8
   Attorneys for Defendants STATS ChipPAC, Inc.
9  and STATS ChipPAC Ltd.

10
                    UNITED STATES DISTRICT COURT
11
                    FOR THE DISTRICT OF ARIZONA
12

13  Diane Sahakian, a single woman,            | CV08-241-PHX-HRH

14                 Plaintiff,                   | **DEFENDANTS STATS CHIPPAC, INC.
                                                | AND STATS CHIPPAC LTD.'S
15        vs.                                   | RESPONSE TO PLAINTIFF'S MOTION
                                                | TO AMEND SECOND AMENDED
16  STATS ChipPAC, Inc., a foreign             | COMPLAINT**
    corporation; STATS ChipPAC Ltd, a
17  foreign corporation; Temasek Holdings      | (Assigned to the Hon. H. Russel Holland)
    Private Limited, a foreign corporation;
18  Singapore Technologies Semiconductors
    Private Limited, a foreign corporation,
19
20                 Defendants.

21
22        Defendants STATS ChipPAC, Inc. and STATS ChipPAC, Ltd. (collectively,

23  "STATS ChipPAC") ask the Court to deny Plaintiff's Motion to Amend Second

24  Amended Complaint (Doc. 153).  Discovery in this action has been ongoing for over a

25  year, however, Plaintiff delayed seeking leave to amend until the day after the deadline

26  for completing discovery in this action.  The deadline for amending the pleadings passed

27  eight months ago, and the Court already permitted Plaintiff one opportunity to amend her

28  complaint after the deadline.  Doc. 60.  Plaintiff has not presented good cause for

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
2415 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 364-7000

1   permitting her to amend her Complaint at this late juncture. Contrary to her claims,

2   Plaintiff has not discovered any "new evidence" to support a claim for intentional

3   infliction of emotional distress. Plaintiff has claimed that she suffered emotional distress

4   as a result of STATS ChipPAC's alleged conduct (subjecting her to a sexually hostile

5   work environment; removing her from her position as Vice President of Emerging

6   Technology; and terminating her employment) since the beginning of this lawsuit. The

7   new allegations that Plaintiff proffers to support her new claim are misstatements or

8   misrepresentations of the evidence discovered during this action. Finally, justice and

9   judicial efficiency require that Plaintiff's Motion to Amend be denied as futile. Plaintiff

10   has not, and cannot, allege facts sufficient to support a claim for intentional infliction of

11   emotional distress.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. PROCEDURAL BACKGROUND

14   Plaintiff Diane Sahakian filed suit against STATS ChipPAC, her former employer,

15   on February 6, 2008, asserting two claims for relief (sexually hostile work environment

16   and retaliation) under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq*.

17   ("Title VII"). Doc. 1. Plaintiff amended her Complaint, with Defendants' stipulation, on

18   October 16, 2008, after STATS ChipPAC terminated her employment. Doc. 31.

19   On January 13, 2009, Plaintiff filed a Motion to Amend her Complaint again to

20   name two new defendants – Temasek Holdings Private Limited ("Temasek") and Singapore

21   Technologies Semiconductors Private Limited ("STS"). Doc. 41. Plaintiff alleges these

22   corporations share liability for the acts of STATS ChipPAC because, she claims, STATS

23   ChipPAC is the alter ego of Temasek and STS. *See* Docs. 42, 43. The deadline to amend

24   the Complaint had passed four months earlier, on October 2, 2008, and Plaintiff's Motion

25   to Amend appeared to be futile. As such, STATS ChipPAC opposed Plaintiff's Motion

26   to Amend. Doc. 49. On February 12, 2009, the Court ruled that Plaintiff's delay in

27   seeking to amend her complaint a second time was not undue, since Plaintiff had changed

28   counsel shortly before seeking to amend her Complaint, and her new counsel embarked

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
2415 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 364-7000

1    upon a theory of the case different from that originally presented.  Doc. 60.  Accordingly,

2    the Court permitted Plaintiff to file a Second Amended Complaint.  Doc. 61.

3    On June 2, 2009, one day <u>after</u> the discovery deadline in this action, Plaintiff filed

4    another Motion to Amend, seeking to add a cause of action for intentional infliction of

5    emotional distress arising under state law.  Plaintiff alleges that she recently learned facts

6    to support this new claim during the discovery process in this action, particularly the May

7    27, 2009 deposition of STATS ChipPAC's Human Resources Manager Gail Uy.  Doc.

8    153 at p. 2.  Specifically, Plaintiff alleges that, during Ms. Uy's deposition, she learned

9    "that STATS' Human Resources is ill equipped to conduct an adequate investigation of a

10   sexual harassment / hostile work environment claim; that STATS failed to follow its own

11   sexual harassment policy; that STATS turned the investigation of sexual harassment into

12   an investigation of Plaintiff; and that STATS ultimately decided to retain (and reward)

13   the sexual harasser and fire Plaintiff."  *Id.*

14   None of these allegations are new, or supported by any citation to the record.

15   Plaintiff has been fully aware of <u>all</u> of these alleged newly discovered facts since she

16   filed this action on February 6, 2008.  Plaintiff has known about the provisions of STATS

17   ChipPAC's sexual harassment policy since her employment with STATS began in 1999,

18   as reflected by her signed receipt of the policy and confirmation of her attendance at

19   sexual harassment training.  *See* Exh. 1.  Plaintiff's communications with others at

20   STATS ChipPAC in April-May 2007 reflect that Plaintiff knew the steps Human

21   Resources took to investigate and respond to her complaint that someone placed ketchup

22   on her office chair.  *See* Exhs. 2 - 5.  Even if she was not aware, STATS ChipPAC

23   disclosed the records of its investigation of the so-called "ketchup incident" with its

24   Initial Disclosure Statement almost a year ago, on July 16, 2008, and in response to

25   Plaintiff's Requests for Production of Documents, on March 12, 2009.  *See* Exh. 6,

26   Defendant's Initial Disclosure Statement; Exh. 7, Defendant's First Supplemental

27   Response to Plaintiff's First Requests for Production of Documents; and Exhs. 8 - 12.

28   Plaintiff also has known, since approximately May 2007, that Human Resources

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
2415 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 364-7000

1  representatives spoke to Plaintiff's direct reports regarding Plaintiff's management style,

2  which Plaintiff alleges constitutes an "investigation" of her.  *See* Exh. 13.  Finally,

3  Plaintiff has known that STATS ChipPAC terminated her employment since the date of

4  her termination – July 1, 2008 – and knew the company continued to employ Eric

5  Gongora (whom she believes, without any proof, to be the "sexual harasser" who

6  allegedly emptied a packet of ketchup on her chair).  Plaintiff has not discovered a single

7  "new" fact that supports a claim for intentional infliction of emotional distress.  Rather,

8  she is attempting to refashion her existing allegations into a new claim, in a last-ditch and

9  futile effort to bolster the weaknesses of her Title VII claims.

10  **II.    LEGAL ARGUMENT**

11  **A.    Plaintiff is Not Entitled to Amend her Complaint a Third Time.**

12  None of the factors that weigh into the Court's consideration of whether to grant a

13  party leave to amend a pleading, under Federal Rule of Civil Procedure 15(a)(2), favor

14  allowing Plaintiff to amend her complaint a third time.  "Five factors are taken into

15  account to assess the propriety of a motion for leave to amend: bad faith, undue delay,

16  prejudice to the opposing party, futility of amendment, and whether the plaintiff has

17  previously amended the complaint."  *Johnson v. Buckley,* 356 F.3d 1067, 1077 (9th Cir.

18  2004) (citing *Nunes v. Ashcroft,* 348 F.3d 815, 818 (9th Cir. 2003)); *accord Leadsinger,*

19  *Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008).  Denial of a motion for

20  leave to amend also is justified when a plaintiff seeks to assert new theories that would

21  require proof of different facts and unfairly impose potentially high, additional litigation

22  costs on the defendant.  *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946,

23  953-54 (9th Cir. 2006).

24  First, the unfounded nature of Plaintiff's allegations demonstrates a lack of good

25  faith behind her Motion to Amend.  Second, Plaintiff's request to amend her Complaint

26  comes far too late, 16 months after she initiated this action, eight months after the

27  deadline to amend the pleadings, and, all too conveniently, one day after the deadline to

28  complete of discovery.  Plaintiff has known of the facts that she alleges support her new

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
2415 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 364-7000

1  claim for months, if not longer, therefore, her delay is inexcusable. Third, additional

2  discovery could be required to disprove Plaintiff's new, baseless allegations. This

3  discovery would further increase costs for STATS ChipPAC and delay the trial and

4  resolution of this case, which already has been pending for close to a year and a half.

5  Additional delay and increased costs would impose undue prejudice upon STATS

6  ChipPAC. Fourth, this Court has already permitted Plaintiff to amend her complaint

7  twice, yet she failed to add a claim for intentional infliction of emotional distress, even

8  though she has alleged, since the outset of this action, that she suffered mental and

9  emotional distress as a result of the sexually hostile work environment at STATS

10  ChipPAC. Finally, Plaintiff seeks to add a new claim that is insufficient on its face. In

11  light of the incurable defects in Plaintiff's claim for intentional infliction of emotional

12  distress, permitting Plaintiff to amend her complaint a third time would be futile.

### B. Plaintiff's Motion to Amend Demonstrates a Dilatory Motive and Bad Faith.

15  "[A] court may deny a motion for leave to amend if the party demonstrates a

16  dilatory motive or bad faith." *Williams v. Savage*, 569 F. Supp. 2d 99, 107 (D.D.C. 2008)

17  (citing *Foman v. Davis,* 371 U.S. 178, 182 (1962)). Attempting to amend a complaint to

18  add a new cause of action late in the litigation may exhibit bad faith, when the plaintiff

19  was aware of the facts supporting the new theory of liability from the beginning of the

20  action. *Aloe Vera of America, Inc. v. U.S.*, 233 F.R.D. 532, 535-36 (D. Ariz. 2005); *see*

21  *also Williams*, 569 F. Supp. 2d at 108 (finding that plaintiff had relevant information to

22  support the new claim, but failed to include those allegations in an earlier version of the

23  complaint, without justifying the delay, which demonstrated plaintiff's dilatory motive

24  and bad faith) (citing *Gov't Relations Inc. v. Howe,* 2007 WL 201264, at *5 (D.D.C. Jan.

25  24, 2007)). Plaintiff bases her new claim for intentional infliction of emotional distress

26  on alleged facts that she knew many months ago, and on misstatements of the facts as

27  revealed by discovery in this action. Plaintiff's delay and misrepresentations demonstrate

28  her dilatory motive and lack of good faith in seeking to amend.

5

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
2415 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 364-7000

1    For example, Plaintiff has alleged, since she filed her initial Complaint, that she

2    suffered, and continues to suffer, mental and emotional distress, pain and suffering,

3    anger, depression, and anxiety as a result of the hostile work environment and retaliation

4    she allegedly experienced at STATS ChipPAC.  (Complaint, Doc. 1, at ¶¶ 19, 23; First

5    Amended Complaint, Doc. 31, at ¶¶ 24, 28; Seconded Amended Complaint, Doc. 61, at

6    ¶¶ 38, 45).  Plaintiff has attributed such physical symptoms as teeth grinding, muscle

7    aches, insomnia, hair loss, weight gain, and elevated blood pressure to her work

8    environment at STATS ChipPAC.  *See* Doc. 67-2, Declaration of Caroline Larsen in

9    Support of Defendants' Motion for Order for Psychological Examination, Exh. 9 thereto,

10    letter from Peter Strojnik dated Feb. 3, 2009, at p. 20.  Plaintiff identified several treating

11    physicians, Drs. David Mickus, Paul Thomas, and David Warman, to testify regarding

12    her alleged emotional distress and accompanying physical ailments.  *See* Exh. 15,

13    Plaintiff's Initial Disclosure Statement.  The Court itself already determined that Plaintiff

14    has placed her mental condition at issue, and asserted "numerous claims having an

15    obvious mental status nexus." Doc. 96 at p. 2.  Plaintiff's emotional distress is not a new

16    allegation, and her failure to allege a claim for intentional infliction of emotional distress

17    earlier in this action reflects her dilatory motive.

18    Plaintiff's Motion to Amend also relies upon numerous allegations that are wholly

19    unsupported by the evidence, demonstrating Plaintiff's bad faith in seeking to amend.

20    For example, Plaintiff alleges that STATS ChipPAC's Human Resources department

21    lacked sufficient skills to conduct an investigation of a sexual harassment complaint.  On

22    the contrary, Gail Uy, STATS ChipPAC's Human Resources Manager, testified

23    regarding a college course she took that covered sexual harassment topics; her experience

24    working in human resources functions at other companies; seminars and training she has

25    taken regarding sexual harassment; and her general understanding of what constitutes

26    sexual harassment.  *See* Exh. 15, excerpts from deposition of Gail Uy, taken May 27,

27    2009.

28

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
2415 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 364-7000

1   Furthermore, Plaintiff alleges that Ms. Uy, who investigated Plaintiff's report that

2   someone placed ketchup on her chair, chose to believe Eric Gongora when he denied

3   putting ketchup on Plaintiff's chair, despite Ms. Uy's alleged knowledge of various

4   incidents or allegations related to Mr. Gongora's past.  Doc. 153 at p. 5.  In fact, as

5   Plaintiff is well aware, STATS ChipPAC's thorough investigation failed to reveal any

6   evidence of who, if anyone, allegedly put ketchup on Plaintiff's chair.  *See* Exhs. 8 - 10.

7   Moreover, Ms. Uy expressly testified that she was not aware of Mr. Gongora's prior

8   alleged conduct, such as whether Mr. Gongora had ever been convicted of any crime or

9   why his employment at his prior employer ended.  *See* Exh. 15.  Plaintiff's counsel never

10  asked Ms. Uy whether she had knowledge of alleged orders of protection sought against

11  Mr. Gongora by his former spouse, nor did he ask Ms. Uy whether she had any

12  knowledge Mr. Gongora allegedly took an anger management course.    Plaintiff's

13  statements regarding Ms. Uy's testimony are false and misleading.

14  Furthermore, Plaintiff's speculative theory that STATS ChipPAC decided to

15  terminate her employment in August 2007, then "created" documents evidence in order

16  to deceive the Plaintiff, the Court and the jury into believing that Plaintiff was terminated

17  for reasons other than retaliation is defamatory and wholly unsupported by any evidence.

18  Plaintiff has created these new allegations out of whole cloth and completely distorts and

19  misstates the actual facts as revealed by discovery.  Her efforts to mislead the Court

20  evidence her bad faith and warrant denial of Plaintiff's Motion to Amend.

21      **C.    Plaintiff Missed the Deadline to Amend by Eight Months.**

22  In assessing timeliness of a motion to amend a pleading, the Court does not merely

23  review whether a motion was filed within the period of time allotted by the district court

24  in a Rule 16 scheduling order, which it was not in this case.  Rather, in evaluating undue

25  delay, the Court also inquires whether the moving party knew or should have known the

26  facts and theories raised by the amendment at the time of the original pleading.

27  *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 953 (9th Cir. 2006)

28  (citations omitted); *accord De Saracho v. Custom Food Mach., Inc.*, 206 F.3d 874, 878

1    (9th Cir. 2000) ("Where the party seeking amendment knows or should know of the facts

2    upon which the proposed amendment is based but fails to include them in the original

3    complaint, the motion to amend may be denied.")   In addition, "[a] district court may

4    deny [a motion for leave to amend a pleading] if it will cause unfair delay." *De Saracho*,

5    206 F.3d at 878 (citations omitted).

6              As explained in section B above, Plaintiff knew the facts and theories raised by the

7    proposed Third Amended Complaint at the time she filed her original Complaint.   She

8    cannot truthfully blame her delay in seeking to amend on newly discovered information.

9    This action has been pending for a year and four months, and the deadline for amending

10   the pleadings passed eight months ago.  *See* Complaint, Doc. 1, filed February 6, 2008.

11   The Court allowed the parties 120 days from the date of the Order, June 4, 2008, to serve

12   and file motions to amend the pleadings.   Doc. 13.   Hence, the deadline to amend the

13   pleadings was October 2, 2008, or eight months ago.  *See* Doc. 60, p. 2.   As the Court

14   previously noted, Plaintiff must show good cause to amend her Complaint after that date.

15   Docs. 13, 60.   Plaintiff's failure to amend the Complaint until eight months after the

16   deadline to amend passed, and one day after the deadline for completing discovery,

17   constitutes undue delay.   Plaintiff has not demonstrated good cause for seeking to amend

18   her Complaint at this late date.

19             **D.      Plaintiff is Asserting New, Baseless Allegations that Could Require**
                        **Additional Discovery to Disprove.**
20

21             Plaintiff's proposed Third Amended Complaint contains 35 paragraphs of new

22   allegations, virtually all of which are made for the first time.   Plaintiff's argument that

23   there will be no delay by adding a claim for intentional infliction of emotional distress,

24   because the claim is supported by the same facts as those supporting Plaintiff's Title VII

25   claims, completely contradicts Plaintiff's claim the Third Amended Complaint is

26   necessitated by newly discovered facts.   In *Aloe Vera of America, Inc. v. U.S.*, the

27   plaintiffs waited until 12 of defendant's 13 witnesses had been deposed before seeking

28   leave to amend the complaint.  233 F.R.D. 532, 535-36 (D. Ariz. 2005).   The Court found

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
2415 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 364-7000

8

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
2415 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 364-7000

1    that this delay showed that plaintiffs were acting in bad faith, since plaintiffs could show

2    no reason why they could not have at least sought leave to amend before taking the

3    depositions of the majority of defendant's witnesses, other than to gain an unfair

4    litigation advantage.  *Id.*  The Court found this undue delay weighed against permitting

5    plaintiffs to amend their complaint, particularly where the amendment would require

6    additional discovery as to the new theory of liability and would require portions of

7    discovery to be prolonged or to be re-done.  *Aloe Vera of America*, 233 F.R.D. at 536.

8    The same is true in this action.

9         Permitting Plaintiff to amend the Complaint at this late stage would require

10   reopening the discovery phase of the case to permit STATS ChipPAC to gather evidence

11   to disprove these new allegations.  Additional discovery, of course, will prejudice STATS

12   ChipPAC by causing STATS ChipPAC to incur additional attorneys' fees and by further

13   delaying the resolution of this action.

14         **E.     Plaintiff's Motion to Amend Should Be Denied As Futile.**

15        "A motion for leave to amend may be denied if it appears to be futile or legally

16   insufficient." *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988) (citation

17   omitted); *accord Johnson v. Buckley,* 356 F.3d 1067, 1077 (9th Cir. 2004) ("Futility

18   alone can justify the denial of a motion to amend.").  A proposed amendment is futile if

19   no set of facts can be proved under the amendment to the pleadings that would constitute

20   a valid and sufficient claim or defense.  *Miller*, 845 F.2d at 214 (citation omitted); *see*

21   *also Savoy v. White*, 139 F.R.D. 265, 267 (D. Mass. 1991) ("A proposed amendment is

22   futile if it serves no legitimate purpose or is without legal merit.") (citations omitted).

23   "[A] district court is justified in denying an amendment if the proposed amendment could

24   not withstand a motion to dismiss."  *Glick v. Koenig*, 766 F.2d 265, 268 (7th Cir. 1985)

25   (citing *Holloway v. Dobbs,* 715 F.2d 390, 392-93 (8th Cir.1983); *NDK Corp. v. Local*

26   *1550 of the United Food & Commercial Workers Int'l Union,* 709 F.2d 491, 493 (7th

27   Cir.1983)); *accord Aloe Vera of America, Inc. v. U.S.*, 233 F.R.D. 532, 536 (D. Ariz.

28   2005) ("Futility exists where there is a tenuous legal basis for a cause of action.") (citing

1   *Lockheed Martin Corp. v. Network Solutions, Inc.,* 194 F.3d 980, 986 (9th Cir.1999)).   In

2   the present action, Plaintiff's allegations of conduct causing emotional distress are neither

3   extreme nor outrageous.   Thus, Plaintiff's Motion to Amend the complaint to add a claim

4   for intentional infliction of emotional distress should be denied as futile.

5         The proposed Third Amended Complaint fails to plead facts sufficient to state a

6   claim for intentional infliction of emotional distress.   To state a claim, Plaintiff must

7   establish three elements: 1) the defendants' conduct was extreme and outrageous; 2) the

8   defendants either intended to cause emotional distress or recklessly disregarded the near

9   certainty that such distress would occur; and 3) that severe emotional distress did in fact

10   occur as a result of defendants' actions.   *Huey v. Honeywell, Inc.*, 82 F.3d 327, 333 (9th

11   Cir. 1996); *Mintz v. Bell Atl. Sys. Leasing Int'l.*, 183 Ariz. 550, 553-54 (1995).   Under

12   Arizona law, "it is for the court to determine, in the first instance, whether the

13   defendant's conduct may reasonably be regarded as so extreme and outrageous as to

14   permit recovery for intentional infliction of emotional distress."   *Lucchesi v. Frederic N.*

15   *Stimmell, M.D., Ltd.*, 149 Ariz. 76, 79 (1986); *see also Wallace v. Casa Grande Union*

16   *High Sch. Dist. No. 82 Bd. of Governors*, 184 Ariz. 419, 428 (1995); *Mintz*, 183 Ariz. at

17   554; *Spratt v. Northern Auto Corp.*, 958 F. Supp.. 456, 461 (D. Ariz. 1996).

18         Arizona law also is clear that "it is <u>extremely</u> rare to find conduct in the

19   employment context that will rise to the level of outrageousness necessary to provide a

20   basis for recovery for the tort of intentional infliction of emotional distress."   *Mintz*, 183

21   Ariz. at 554 (emphasis added) (quoting *Cox v. Keystone Carbon Co.*, 861 F.2d 390 (3rd

22   Cir. 1988)); *see also Craig v. M & O Agencies, Inc.*, 496 F.3d 1047 (9th Cir. 2007).   To

23   be considered sufficiently extreme and outrageous, conduct must be "so outrageous in

24   character and so extreme in degree, as to go beyond all possible bounds of decency, and

25   to be regarded as atrocious and utterly intolerable in a civilized community."   *Mintz*, 183

26   Ariz. at 554.   "Conduct necessary to sustain an [emotional distress] claim falls at the very

27   extreme edge of possible conduct."   *Watts v. Golden Age Nursing Home*, 127 Ariz. 255,

28   258 (1980); *see also St. George v. Home Depot U.S.A.*, 2007 WL 604925 (D. Ariz. 2007)

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
2415 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 364-7000

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
2415 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 364-7000

1  (slip copy) (dismissing emotional distress claim even where alleged conduct, if true,

2  might have been "rude, sophomoric, crude, disrespectful and even deplorable or

3  criminal").

4           Disregarding the fact that Plaintiff's new allegations lack any support by the

5  evidence in this case, courts have ruled that conduct far more severe than that alleged in

6  Plaintiff's proposed Third Amended Complaint failed to meet the high standard for an

7  intentional infliction of emotional distress claim against an employer.  For example, in

8  *Craig v. M & O Agencies, Inc.*, the Ninth Circuit upheld dismissal of Plaintiff's

9  intentional infliction of emotional distress claim against her employer where she claimed

10  that her direct supervisor sexually assaulted her.  *Craig*, 496 F.3d at 1059.  Despite

11  Plaintiff's allegations that her supervisor repeatedly propositioned her inside and outside

12  of office, the Court held that "Arizona law is clear, however, that an employer is rarely

13  liable for intentional infliction of emotional distress when one employee sexually

14  harasses another.  Liability for the employer typically attaches only when a company

15  utterly fails to investigate or remedy the situation." *Id.* (citing *Ford v. Revlon, Inc.*, 153

16  Ariz. 38, 734 P.2d 580, 585-86 (1987); *Smith v. Am. Express Travel Related Servs. Co.,*

17  *Inc.*, 179 Ariz. 131, 876 P.2d 1166, 1173-74 (App.1994)).  Since the employer fulfilled

18  its duty to investigate and took remedial measures once Plaintiff reported her supervisor's

19  conduct, the Court concluded that Plaintiff has not met the high standard under Arizona

20  law and affirmed the district court's grant of summary judgment in favor of the employer

21  on Plaintiff's claim for intentional infliction of emotional distress. *Id*. at 1059-60.

22           Similarly, in *St. George v. Home Depot U.S.A.*, one plaintiff based her emotional

23  distress claim on allegations that her male co-workers said, "shut the f--- up bitch, I'll

24  beat the s--- out of you," told her, "f--- you" or "f--- you, bitch," flipped her off and

25  called her derogatory names. *St. George*, 2007 WL 604925, *8.  Plaintiff alleged that she

26  reported this conduct to her managers who told her to "leave it alone" and ignored her

27  complaints. *Id.*  Another plaintiff in *St. George* alleged that a male coworker rubbed

28  against her from behind and touched her breasts, ran his hands through her hair and

11

1   massaged her while making moaning sounds. *Id.* at 11.   Again, the court found the

2   plaintiffs' allegations failed to meet both the high thresholds for extreme and outrageous

3   conduct and severe emotional distress required under Arizona law to create a jury

4   question of whether the conduct constituted intentional infliction of emotional distress.

5   *Id.* at 12.

6           Here, Plaintiff alleges that STATS ChipPAC was not properly equipped to

7   conduct a sexual harassment investigation; failed to adequately investigate employee Eric

8   Gongora's background to determine whether he had engaged in past instances of sexual

9   harassment; turned its investigation of Plaintiff's complaint that someone put ketchup on

10  her office chair into an investigation of Plaintiff; and reassigned Plaintiff to a Special

11  Project role, with the intent to eventually terminate her employment. [Proposed Third

12  Amended Complaint ¶¶ 59, 62, 65, 73-87.]   These allegations plead nothing more than

13  purported sexual harassment and retaliation.   Even if these allegations were true, which

14  they are not, the alleged conduct is not sufficiently severe, extreme or outrageous to

15  support a claim for intentional infliction of emotional distress.   Because Plaintiff's

16  allegations do not meet the rigorous standard required to state a claim for intentional

17  infliction of emotional distress, Plaintiff should not be permitted to amend her Complaint

18  a third time to assert this futile claim.

19  **III.   CONCLUSION**

20          For all of the foregoing reasons, Defendants STATS ChipPAC, Inc. and STATS

21  ChipPAC, Ltd. respectfully request that the Court deny Plaintiff's Motion to Amend

22  Second Amended Complaint.

23  / / /

24  / / /

25  / / /

26

27

28

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
2415 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 364-7000

1      DATED this 10th day of June, 2009.

2                                 OGLETREE, DEAKINS, NASH,

3                                 SMOAK & STEWART, P.C.

4

5                                 By: s/ Caroline Larsen

6                                    L. Eric Dowell

                                        Caroline Larsen

7                                       Monique Young

                                      2415 East Camelback Road, Suite 800

8                                       Phoenix, Arizona 85016

                                      Attorneys for Defendants STATS

9                                       ChipPAC, Inc. and STATS ChipPAC

                                      Ltd.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
2415 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 364-7000

1

**CERTIFICATE OF SERVICE**

2

I hereby certify that on June 10, 2009, I electronically transmitted the attached

3

document to the Clerk's Office using the CM/ECF System for filing and transmittal of a
Notice of Electronic Filing to the following CM/ECF registrants:

4

5

Peter Strojnik
Peter Strojnik, P.C.

6

3030 North Central Avenue, Suite 1401
Phoenix, Arizona 85012

7

Attorney for Plaintiff

8

Peter K. Strojnik

9

The Law Firm of Peter Strojnik
3030 North Central Avenue, Suite 1401B

10

Phoenix, Arizona 85012

11

 s/ Debra Perkins

12

13

7389605.1 (OGLETREE)

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
2415 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 364-7000