**THE LAW FIRM OF PETER STROJNIK**
ATTORNEYS AT LAW
SUITE 1401
3030 North Central Avenue
Phoenix, Arizona 85012
(602) 297-3019

Peter Kristofer Strojnik AZBN 026082 CABN 242728
pksesq@aol.com
Attorney for Plaintiffs

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| DIANE SAHAKIAN, a single woman, | NO. 2:08-cv-241-PHX-HRH |
| Plaintiff, | **REPLY TO RESPONSE TO MOTION TO AMEND SECOND AMENDED COMPLAINT** |
| vs. | |
| STATS ChipPAC, Inc., a foreign corporation; STATS ChipPAC, Ltd., a foreign corporation; TEMASEK HOLDINGS PRIVATE LIMITED, a foreign corporation; SINGAPORE TECHNOLOGIES SEMICONDUCTORS PRIVATE LIMITED, a foreign corporation. | |
| Defendants. | |

## I. INTRODUCTION

Plaintiff has been aware for several months of the facts surrounding the investigation of the ketchup incident.  But Plaintiff has not been aware of Dr. Wilson's "rarity", "group deviant" and "priming" theories.  Plaintiff has been aware for over a year that she has suffered emotional distress as a result of her being harassed by STATS.  But this is merely one element of the tort

that is the subject of these moving papers. It was only after the depositions of Gail Uy and STATS' favorable expert Dr. C. Brady Wilson that Plaintiff became aware that Ms. Uy's flagrant disregard and lack of knowledge of sexual harassment dynamics demonstrated that STATS "recklessly disregard[ed] the near certainty that such distress will result from" its conduct. *Citizen Publ'g Co. v. Miller*, 115 P.3d 107, 110 (Ariz. 2005). Gail Uy's testimony (yet to be transcribed) revealed that STATS was completely uninformed on the dynamics of sexual harassment as described by Dr. Wilson, which would have revealed, *inter alia*, the "priming" and portrayal of Ms. Sahakian as the "group deviant" and utterly failed to corroborate Gongora's story of being at his home's construction at the time the ketchup incident occurred notwithstanding the fact that several STATS employees pointed to Gongora as the culprit. Of course, STATS', a multi-billion dollar company with significant and powerful resources, recklessly disregarded the near certainty (by failing to educate themselves on gender harassment dynamics, which could have been achieved by simply hiring a Dr. Wilson for an afternoon) that their omissions caused Ms. Sahakian to take a 30-day medical leave and suffer emotional distress.

Parenthetically, Plaintiff is not adverse to bringing another action in the State Court. Independent state court litigation would aid, not harm, Plaintiff's ultimate likelihood of a substantial recovery viewed from a strictly cost-benefit and risk analyses. Plaintiff's suggestion to bring the additional cause of action in the present litigation is evidence of utmost good faith, restraint, comity and courtesy.

Plaintiff requested that the Court render the decision on or prior to June 20, 2009. The reason for this is that Ms. Sahakian went on a FMLA leave on June 23, 2007. Since the statute of limitations on a IIED claim is two years, Plaintiff wishes to avoid a statute of limitations argument in the event the IIED claim is ultimately brought in the state court.

## II.  REPLY

### A.  Plaintiff Discovered The Supportive Facts At The Gail Uy Deposition

Plaintiff is motivated to resolve this controversy as quickly as possible, but she cannot sacrifice additional new claims for the sake of expedience. Although Plaintiff was aware of facts surrounding the investigation of the ketchup incident, she only became aware of STATS flagrant lack of knowledge of the sexual harassment and hostile work environment dynamics explained by Dr. Wilson when she deposed Gail Uy – STATS human resources representation who also "investigated" the ketchup incident. Sure, Plaintiff has been aware that the investigation was limited to interviews and a sexual harassment training course (that did not discuss "priming" and "group deviant"), but Plaintiff did not discover STATS' lack of knowledge of the harassment dynamics until Ms. Uy alerted us to this revelation. The investigation itself does not rise to the level of a reckless disregard, but the added fact of STATS' flagrant lack of knowledge of sexual harassment dynamics and their failure to be aware that Ms. Sahakian was being targeted as the "group deviant" gives rise to the intent element of IIED.

### B.  STATS Will Not Encounter Any Prejudice

-3-

STATS states that they will suffer prejudice because these moving papers are made "all too conveniently one day after the deadline to complete of [sic] discovery." Rspns., P. 4. Notwithstanding the unacceptable implication of bad faith, no new discovery will be needed because no additional facts are needed to prove the claim, and no new facts are in existence to disprove the claim. Defendants are charged with intentionally causing emotional distress to Plaintiff for, *inter alia*, failing to properly investigate the ketchup incident, condoning the sexual harassment by failing to take any action against the known perpetrator, investigating Plaintiff instead of the perpetrator, and failing to inform themselves of the dynamics of sexual harassment and hostile work environment. During the discovery process in this litigation, Plaintiff has discovered that STATS management knew of Gongora's sexual harassment at his previous employment[1], and that STATS was completely unequipped to deal with the dynamics of sexual harassment and hostile work environment. There are no additional facts to be discovered from Plaintiff. STATS knows Plaintiff suffered emotional distress, have acquired all the medical records, and have examined Plaintiff concerning her emotional distress through Dr. Wilson. It is by now well known not only to Plaintiff, but also the Defendants, that STATS lacks all knowledge of the anatomy of a sexual harassment and hostile work environment case. STATS knows the extent of the ketchup investigation and the actions they took in furtherance thereof. STATS knows that Plaintiff was forced to take FMLA leave due to the distress. STATS knows that it failed to conduct a credible investigation of the matter, failed to take

---

[1] STATS' Vice president, Scott Jewler, was Gongora's supervisor at Amcor at the time when Gongora was terminated for, *inter alia,* sexual harassment.

corrective action, condoned the hostility in the workplace and ultimately fired Plaintiff and kept the perpetrator on.

### C. The IIED Claim Has Significant Merit And Will Survive STATS' Motions

STATS does not dispute Plaintiff has suffered severe emotional distress – crying, teeth-grinding, sleepless nights, anxiety, depression, etc. However, Plaintiff took advantage of STATS' "open door" policy and complained to a company that was not equipped to understand and handle sexual harassment complaints. Ultimately, the victim was transformed into the "group deviant." STATS protected Gongora and targeted the victim[2]. Plaintiff was not aware of these failures until she deposed STATS' expert, Dr. Wilson. Plaintiff then learned that STATS was not equipped to handle Ms. Sahakian's complaints after the Uy deposition. Had STATS been familiar with the sexual harassment dynamics, it would have taken more appropriate redress actions for Ms. Sahakian, and her emotional distress would not have occurred.

### III. CONCLUSION

For these reasons, Plaintiff respectfully requests this Motion be granted.

---

[2] In fact, during the deposition of Dr. Han yesterday, June 11, 2009, Dr. Han even suggested that *Ms Sahakian* was the sexual harasser and that *she*, not STATS, engaged in racially motivated misconduct!

RESPECTFULLY SUBMITTED this 12th Day of June, 2009.

THE LAW FIRM OF PETER STROJNIK

_____
Peter Kristofer Strojnik
Attorney for Plaintiff