Peter Strojnik, 006464
3030 North Central Avenue, Suite 1401
Phoenix, Arizona 85012
Telephone: 602-524-6602
Facsimile: 602-296-0135
e-mail: *ps@strojnik.com*
Attorney for Plaintiff

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| DIANE SAHAKIAN, a single woman, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>STATS ChipPAC, Inc., a foreign )<br>corporation; STATS ChipPAC, Ltd., a )<br>foreign corporation; TEMASEK )<br>HOLDINGS PRIVATE LIMITED, a )<br>foreign corporation; SINGAPORE )<br>TECHNOLOGIES SEMICONDUCTORS )<br>PRIVATE LIMITED, a foreign )<br>corporation. )<br>)<br>Defendants. )<br>_____ ) | NO. CV-08-241-PHX-HRH<br><br>**MOTION TO COMPLETE DEPOSITION**<br>**OF BJ HAN AND FOR SANCTIONS**<br><br>(Defendants Walked Out Of Deposition) |

## SUMMARY OF MOTION

On June 11, 2009, Plaintiff took the videotaped deposition of BJ Han. BJ Han was Plaintiff's immediate supervisor and the person responsible for taking adverse employment action, including ultimate firing, against her. BJ Han also contributed to the creation of a hostile work environment through his (i) failure to conduct a credible investigation of sexual misconduct on the part of Eric Gongora and others; (ii) failure to take any action against Eric

-1-

Gongora and others; (iii) ratification of sexual harassment by failure to take action; and (iv) his own racially motivated treatment of women and minorities[1].

BJ Han's testimony was not an exercise of open exchange of information, but an exercise in obfuscation, unnecessary delays, non-responsive answers and repetitive recitals of talking points. Nonetheless, as more fully described in the Memorandum of Points and Authorities, the answers that *were* provided proved devastating to STATS. When questioning turned to BJ Han's creation of a hostile work environment through his own racist statements about Jews, Indians, Chinese and his demeaning behavior toward women[2], counsel for STATS stood up in a fit of uncontrollable emotion, tore the videographer's microphone from his shirt, aimed it at Plaintiff, threw it at Plaintiff, and left the deposition room. BJ Han left with him.

This is neither the first time that Counsel for Defendant has been overwhelmed by temper nor is it the first time that he unilaterally terminated a deposition: During the 30(b)(6) deposition of Defendants STATS, counsel for Defendants, again overcome by rage, gratuitously referred to counsel for Defendants as "idiots", "cretins" and "morons", and challenged counsel to a fistfight[3]. Counsel for Defendant previously walked out of the deposition of Gail Uy, Defendant's Human Resources specialist, whose deposition was taken in

---

[1] An employer may be held liable for the actionable third-party harassment of its employees where it ratifies or condones the conduct by failing to investigate and remedy it after learning of it. *See Galdamez v. Potter*, 415 F.3d 1015, 1022 (9th Cir.2005). Title VII prohibits discrimination against any individual and makes no distinction between managers and other employees; both are entitled to its protection. *See id*.

[2] The pervasiveness of discriminatory conduct to women and other protected classes creating a "hostile work environment", see *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1117 (9th Cir. 2004) ("if racial hostility pervades a workplace, a plaintiff may establish a violation of Title VII, even if such hostility was not directly targeted at plaintiff."

[3] Counsel sought the advice from the State Bar regarding such misconduct. Counsel was advised to seek the assistance of the police if such conduct is repeated. Counsel hopes that this will not be necessary.

Fremont on May 27, 2009. That event is also subject of a Motion. See Doc. 157. Not only is Defendants' conduct deplorable, it is prejudicial.

Plaintiff requests that the Court order BJ Han to appear and conclude the deposition, and that Defendants pay all costs and attorney's fees associated with the conclusion of the deposition. This Motion is more fully supported by the following Memorandum of Points and Authorities that is by this reference incorporated herein.

## MEMORANDUM OF POINTS AND AUTHORITIES

### Prior Acts of Misconduct

The unilateral termination of BJ Han deposition is just the latest in a long string of discovery misconduct engaged by Defendants. First, there was the unnecessary delay in the deposition of Eric Gongora on April 15, 2009. Then, there was defense counsel's blowout at the 30(b)(6) deposition of Defendant STATS in which he referred to counsel for Plaintiff as "idiots", "morons" and "cretins" and desperately tried to engage counsel in a fist fight. (Doc. 157-14) And then there is reference to counsel as "certifiable". Then there was the walkout of the Gail Uy deposition. Doc. 157. Then there is the continued intimidation of Plaintiff by STATS' employee, Eric Gongora. Doc 161. Then there is the intimidation of Dr. Chu by STATS' employee, Eric Gongora. Id. There has been a conscious attempt to hide evidence - we now discover, through the deposition of BJ Han, (Exhibit 1, Code of Business Conduct and Ethics) that STATS maintains a set of "specific and detailed practices and procedures [for compliance with STATS Code of Business Conduct and Ethics] which can be found on STATS ChipPAC's intranet or STATS ChipPAC's policy manuals maintained by the Document Control Centre", but that this document was never produced. We discover that STATS

ChipPAC maintains a "disciplinary procedure", but this document was never produced. We discover that STATS ChipPAC maintains a "US Disciplinary Policy, per US labor laws, for employees in US", but this document was never produced.

**<u>The Context of BJ Han's Deposition</u>**

In March of this year, STATS argued in its Cross-Motion for a Protective Order[4] that Plaintiff's Rule 30(b)(6) deposition notice was overly broad, particularly as it related to specific instances of discriminatory conduct on the part of STATS individual high level managers, including BJ Han and Tan Lay Koon. Defendants argued, *inter alia*, that Defendant should not be required to designate a Rule 30(b)(6) deponent to provide evidence "within the personal knowledge of an identifiable witness whom Plaintiff intends to depose". Indeed, the Court agreed with Defendants and noted, Doc 101, that "It appears to the court that plaintiff has endeavored to use a Rule 30(b)(6) notice as a vehicle for a 'fishing expedition.'"

But evidence of discriminatory conduct against 3rd parties is relevant to a case involving "hostile work environment". The pervasiveness of discriminatory conduct to women and other protected classes creates a "hostile work environment", see *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1117 (9th Cir. 2004) ("if racial hostility pervades a workplace, a plaintiff may establish a violation of Title VII, even if such hostility was not directly targeted at plaintiff.") Therefore, Plaintiff abandoned the Rule 30(b)(6) vehicle to documents STATS' management's discriminatory conduct. Instead, Plaintiff interviewed at least 10 former STATS' employees, obtained 5 Declarations and deposed 9 witnesses. Plaintiff's extensive investigation discovered

---

[4] See Doc 75.

that, indeed, STATS' management and *particularly* BJ Han have engaged in various forms of discriminatory misconduct:

1) ("[BJ Han] doesn't like Jews.  He doesn't like anyone that's not Korean, quite frankly. That's how B.J. is, because he even puts Chinese down.") (Sahakian Depo. At 239, Doc. 161-14);

2) ("And Chinese, according to B.J., are the bottom of the cesspool there with Indians." (Id. at 170);

3) ("Americans were fat, dumb, stupid, lazy according to Tan Lay Koon and B.J.[Han] (Id.);

4) BJ Han thinks that Koreans are better than Chinese and Indians (Anthony Kong);

5) BJ Han segregated Ram Ramakrishna, an Indian engineer, from company activities while in Yokohama ("I was segregated, I was part of the group, I was as the same level as others."; "Q:  Do you feel you were segregated out intentionally? A:  Yes"; Q: "You were segregated out by Dr. Han? A. Yes. That's how I feel") (Ramakrishna Depo. At 131, 132, Exhibit 2)

6) STATS managers go to dinner, then to a "second place" and "sometimes get some girls" and then they go to a third place, but Ramakrishna has never been to a "Third Place") (Id. at 133)

7) The "Third Place" is a bad place in a moral sense; it could be a house of prostitution. (Id. at 134)

8) "STATS ChipPAC still in their mind they look at people from ethnicity point of view, this is what I believe." (Id.)

9) Ramakrishna was segregated in a ski resort with another Indian fellow: ("So the way it has been done, myself being put with another Indian fellow, I was not comfortable with that." (Id. at 135)

Plaintiff also discovered that STATS and STATS' management finds Americans to be a "necessary evil", cared little about American Laws, and harbored resentment against Americans. Dennis Daniels, STATS' former VP of Human Resources, issued a Declaration which stated, in part (Doc. 157-15):

> 14. Tan Lay Koon sometimes made comments to the effect that American expatriate were an expensive, necessary evil, tolerated only in order to get the merger done between STATS and ChipPAC.
>
> 15. Tan Lay Koon gives the impression that he harbors resentment against Americans. During staff meetings or at lunch, he has often lectured his executive staff on his opinion of American foreign policy, politics, culture and wealth, in unflattering terms. Even though he came to America for his MBA and launched his financial career in America, I have never, ever heard Tan Lay Koon say anything positive about America. He even complained about the .crime infested neighborhoods. around the campus off Wharton Business School.
>
> 16. I recognize there are differences between Singapore and the U.S., in terms of customs and laws of how employees and job candidates should be treated. I also understand that a global economy has to be in legal compliance in every country where it has operations. I believe sometimes, this didn't seem to matter a lot at STATSChipPAC. There are times when the General Counsel or I would have to remind Tan Lay Koon and others that he cannot disqualify a candidate for a position based on age or gender particularly in the U.S.
>
> 17. The Singaporean Leadership, e.g. Tan Lay Koon, BJ Han and other STATSChipPAC directors, generally did not seem aware of, or interested in, any other national customs/laws other than their own.
>
> 18. BJ Han is closely connected to Tan Lay Koon and is perceived by many employees to be his closest confidant. Employees generally suspect that whatever BJ Han hears, Tan Lay Koon will also hear, so they watch what they say and do around BJ Han. I have witnessed BJ Han refer to other STATSChipPAC employees as naïve. Many opinions are that BJ Han is more of a rubber stamp

follower of Tan Lay Koon's style and opinions and much less of an effective leader in his own right.

It was in the context of this known racially and sexually charged narratives that Plaintiff took BJ Han's deposition.

**Deposition of BJ Han was an Exercise in Avoidance, Delay and Evasion**

BJ Han is clearly an important witness. His handling of the investigation of Plaintiff's complaint, his racial comments and views, his dislike for the Jews, Chinese and Indians, his maltreatment of women, and his overall dislike for Americans are important issues. But his deposition (Exhibit 3, Draft transcript of BJ Deposition) was an exercise in avoidance, delay and evasion. There was no need to take several minutes to determine whether a memorandum authored by the witness is indeed a memorandum authored by the witness, but BJ Han took several minutes to ascertain whether he authored a one page document. There is no need to give a talking points answer lasting several minutes to a simple question.

When questioning turned on BJ Han's and STATS' discriminatory animus, counsel lost his composure, aimed and threw the microphone at Plaintiff, and stormed out of the conference room thereby leaving a perplexed Plaintiff asking in disbelief, "Do you have to throw the microphone?" Id.

**CONCLUSION AND PRAYER FOR RELIEF**

Plaintiff requests that the Court order BJ Han to appear and conclude the deposition. Alternatively, Plaintiff requests that the court enter an Order prohibiting introduction of any evidence relative to BJ Han's discriminatory animus and the specific instances of his discriminatory and gender based misconduct. Further, Plaintiff requests that the Court order

1 STATS to pay Plaintiff's counsel's costs and expenses, and counsel's current hourly rate of

2 $450.00 for one full day, or $3,600.00.

RESPECTFULLY SUBMITTED this 15th day of June, 2009.

                                        **PETER STROJNIK, P.C.**

_____
Peter Strojnik
Attorney for the Plaintiff