Peter Strojnik, 006464
3030 North Central Avenue, Suite 1401
Phoenix, Arizona 85012
Telephone: 602-524-6602
Facsimile: 602-296-0135
e-mail: *ps@strojnik.com*
Attorney for Plaintiff

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| DIANE SAHAKIAN, a single woman,<br><br>Plaintiff,<br><br>vs.<br><br>STATS ChipPAC, Inc., a foreign corporation; STATS ChipPAC, Ltd., a foreign corporation; TEMASEK HOLDINGS PRIVATE LIMITED, a foreign corporation; SINGAPORE TECHNOLOGIES SEMICONDUCTORS PRIVATE LIMITED, a foreign corporation.<br><br>Defendants. | NO. CV-08-241-PHX-HRH<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' APPLICATION FOR ATTORNEY'S FEES (Doc 160)** |

Plaintiff hereby responds to Defendants' Application for Attorney's Fees (Doc 16) and requests that the application be denied in its entirety for the reasons and on the bases more fully set forth in the following Memorandum of Points and Authorities that is by this reference incorporated herein.

-1-

# MEMORANDUM OF POINTS AND AUTHORITIES

**Status of Discovery**

Plaintiff's initial Rule 30(b)(6) Notice of Deposition of STATS included a description of "matters for examination" and the production of documents pursuant to Rule 30(b)(2). Defendants felt that the description of the "subjects for examination" and the request for production was overly broad. The parties discussed the matter in good faith and Plaintiff substantially reduced the scope of the examination; nonetheless, Defendants brought the matter to the attention of the Court, arguing, *inter alia*, that that Defendant should not be required to designate a Rule 30(b) (6) deponent to provide evidence "within the personal knowledge of an identifiable witness whom Plaintiff intends to depose" (Doc 75). Indeed, in its order dated March 24, 2001 (Doc 101), the Court noted that, "It appears to the court that plaintiff has endeavored to use a Rule 30(b)(6) notice as a vehicle for a 'fishing expedition'."; The Court further noted that "The court will entertain STATS' application for attorney fees".

In casting a wide net of discovery Plaintiff – a jobless, single mother – was simply mindful of the costs associated with the discovery of evidence through independent sources rather than through a Rule 30(b) (6) deposition. As a result of the Court Order (Doc 101), Plaintiff abandoned the Rule 30(b) (6) vehicle to document the creation of the hostile work environment created by STATS. Instead, Plaintiff interviewed at least 10 former STATS' employees, obtained 5 separate Declarations under the Penalty of Perjury, deposed 9 witnesses and sat in on depositions of 4 more. The discovery thus obtained confirmed that STATS and its management have created a hostile work environment not only in their direct relation to

Plaintiff, but also through discriminatory conduct against 3rd parties[1], see *McGinest v. GTE*

---

[1] Plaintiff's extensive investigation discovered that, indeed, STATS' management and *particularly* BJ Han have engaged in various forms of discriminatory misconduct. The following includes merely a portion of what Plaintiff discovered:

1) "[BJ Han] doesn't like Jews. He doesn't like anyone that's not Korean, quite frankly. That's how B.J. is, because he even puts Chinese down." (Sahakian 239);

2) "And Chinese, according to B.J., are the bottom of the cesspool there with Indians." (Sahakian at 170);

3) "Americans were fat, dumb, stupid, lazy according to Tan Lay Koon and B.J.[Han]" (Sahakian at 170);

4) BJ Han thinks that Koreans are better than Chinese and Indians (Anthony Kong);

5) BJ Han segregated Ram Ramakrishna, an Indian engineer, from company activities while in Yokohama ("I was segregated, I was part of the group, I was as the same level as others."; "Q: Do you feel you were segregated out intentionally? A: Yes"; Q: "You were segregated out by Dr. Han? A. Yes. That's how I feel") (Ramakrishna 131, 132)

6) STATS managers go to dinner, then to a "second place" and "sometimes get some girls" and then they go to a third place, but Ramakrishna has never been to a "Third Place". (Ramakrishna 133)

7) The "Third Place" is a bad place in a moral sense; it could be a house of prostitution. (Ramakrishna 134)

8) "STATS ChipPAC still in their mind they look at people from ethnicity point of view, this is what I believe." (Ramakrishna 134)

9) Ramakrishna was segregated in a ski resort with another Indian fellow: ("So the way it has been done, myself being put with another Indian fellow, I was not comfortable with that." (Ramakrishna 135)

10) STATS does not care about US Laws (Declaration of Dennis Daniels);

11) Tan Lay Koon sometimes made comments to the effect that American expatriate were an expensive, necessary evil, tolerated only in order to get the merger done between STATS and ChipPAC. (Id.)

12) Tan Lay Koon gives the impression that he harbors resentment against Americans. During staff meetings or at lunch, he has often lectured his executive staff on his opinion of American

*Serv. Corp.*, 360 F.3d 1103, 1117 (9th Cir. 2004) ("if racial hostility pervades a workplace, a plaintiff may establish a violation of Title VII, even if such hostility was not directly targeted at plaintiff.") Plaintiff discovered that STATS' management and particularly Plaintiff's immediate supervisor, BJ Han, contributed and indeed created a hostile work environment through (i) STATS' failure to conduct a credible investigation of sexual misconduct on the part of Eric Gongora and others; (ii) STATS' failure to take any action against Eric Gongora (the alleged harasser) and others ("the boys"); (iii) STATS ratification of sexual harassment by failure to take action; (iv) STATS' discriminatory treatment of other constitutionally protected groups[2];

---

    foreign policy, politics, culture and wealth, in unflattering terms. Even though he came to America for his MBA and launched his financial career in America, I have never, ever heard Tan Lay Koon say anything positive about America. He even complained about the .crime infested neighborhoods. around the campus off Wharton Business School. (Id.)

13) There are times when the General Counsel or Mr. Daniels would have to remind Tan Lay Koon and others that he cannot disqualify a candidate for a position based on age or gender particularly in the U.S. (Id.)

14) The Singaporean Leadership, e.g. Tan Lay Koon, BJ Han and other STATSChipPAC directors, generally did not seem aware of, or interested in, any other national customs/laws other than their own. (Id.)

15) BJ Han is closely connected to Tan Lay Koon and is perceived by many employees to be his closest confidant. Employees generally suspect that whatever BJ Han hears, Tan Lay Koon will also hear, so they watch what they say and do around BJ Han. I have witnessed BJ Han refer to other STATSChipPAC employees as naïve. Many opinions are that BJ Han is more of a rubber stamp follower of Tan Lay Koon's style and opinions and much less of an effective leader in his own right. (Id.)

16) STATS' employees in Tempe so disliked Tan Lay Koon that they would freely refer to him as a "f_ _ _ _ing a_ _ hole". (Deposition of Mike Schraeder)

[2] An employer may be held liable for the actionable third-party harassment of its employees where it ratifies or condones the conduct by failing to investigate and remedy it after learning of it. *See Galdamez v. Potter*, 415 F.3d 1015, 1022 (9th Cir.2005). Title VII prohibits discrimination against any

-4-

and (v) BJ Han's his own racially motivated treatment of women and minorities. See *McGintis*, supra.

At the time of the Order (doc 101), it may have appeared that Plaintiff was casting a wide net of discovery. However, as it turns out, the information Plaintiff sought through a Rule 30(b)(6) deposition confirmed Plaintiff's causes of action. Plaintiff did not act in bad faith.

While Plaintiff's quest for discovery has been chilled, Defendants have become emboldened. As previously documented, see e.g. Doc 166, Defendants have actively attempted to impede Plaintiff's discovery efforts, including delays in depositions (Gongora); walked out of the deposition of Gail Uy; walked out of the deposition of BJ Han; hid documents; misrepresented to the Court that BJ Han and Tan Lay Koon would not be in the US for depositions in May[3]; referred to Plaintiff's counsel as "idiots", "morons" and "cretins" during a deposition brake (Eric Dowell during Jeff Howell – STATS Rule 30(b)(6) deposition); attempted to engage counsel in a fist fight (same)[4]; referred to counsel as "certifiable" ("Dowell"); threatened bar investigations (Larsen, Dowell); hid documents; engaged in obfuscation (BJ Han); and the like.

---

individual and makes no distinction between managers and other employees; both are entitled to its protection. *See id.*

[3] Jeff Howell, STATS' 30(b)(6) representative and BJ Han both testified that BJ Han and Tan Lay Koon were in the US in May, 2009; they could have given depositions at that time. Now, however, as a result of the misstatement to the Court regarding Tan Lay Koon's presence in the United States, Plaintiff had to undertake the expensive, inconvenient and completely unnecessary remote videographic deposition of Tan Lay Koon.

**Imposition of Sanctions is Inappropriate Under Court's Authority to Impose Sanctions Pursuant to the Rules of Civil Procedure**

Sanctions available to a party for violation of the rules of deposition are limited to those listed in 30(d)(2):

> **(2) Sanction.**
>
> The court may impose an appropriate sanction — including the reasonable expenses and attorney's fees incurred by any party — on a person who impedes, delays, or frustrates the fair examination of the deponent.

30(d)(2) does not apply here. Rule 37, Failure to Make Disclosures or to Cooperate in Discovery, is likewise inapplicable.

**Imposition of Sanctions pursuant to Court′s Inherent Power to Sanction is Likewise Inappropriate because Plaintiff Acted In Good Faith**

This Court has the inherent power to sanction for conduct undertaken in *bad faith*, *wantonly* or *for oppressive reasons"* . *Chambers v. NASCO*, Inc., 501 U.S. 32, 44, 111 S.Ct. 2123 (1991) The Chambers Court observed that:

> [A] court may assess attorney's fees when a party has " 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.' " *Alyeska* [*Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240,] 258-259 [(1975)] (quoting *F. D. Rich Co. v. United States ex rel. Industrial Lumber Co*., 417 U.S. 116, 129, 40 L. Ed. 2d 703, 94 S. Ct. 2157 (1974)). See also *Hall v. Cole*, 412 U.S. 1, 5, 36 L. Ed. 2d 702, 93 S. Ct. 1943 (1973); *Newman v. Piggie Park Enterprises, Inc.,* 390 U.S. 400, 402, n. 4, 19 L. Ed. 2d 1263, 88 S. Ct. 964 (1968) (per curiam). In this regard, if a court finds "that fraud has been practiced upon it, or that the very temple of justice has been defiled," it may assess attorney's fees against the responsible party, *Universal Oil* [*Products Co. v. Root Refining Co.,* 328 U.S. 575,] 580 [(1946)], as it may

---

[4] Counsel discussed this matter with the State Bar; the advice given was to call the police next time Mr. Dowell threatens a fist fight.

when a party "shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order," *Hutto* [*v. Finney*, 437 U.S. 678,] 689, n. 14 [(1978)]. The imposition of sanctions in this instance transcends a court's equitable power concerning relations between the parties and reaches a court's inherent power to police itself, thus serving the dual purpose of "vindicating judicial authority without resort to the more drastic sanctions available for contempt of court and making the prevailing party whole for expenses caused by his opponent's obstinacy." Ibid.

Id. at 45-46 (footnote omitted).

Plaintiff has not acted in bad faith; Plaintiff is merely attempting to reduce her costs associated with this litigation.

**Conclusion and Prayer for Relief**

Plaintiff respectfully requests that the Court deny Defendants Application in its entirety. Alternatively, the attorneys fees sought are clearly excessive. Therefore, Plaintiff requests that the Court assess fees commensurate with the legal work performed by Defendants, the Plaintiff's out-of-work status, the level of good faith displayed by Plaintiff in this entire proceeding; and the level of Defendants' misconduct in this proceeding.

RESPECTFULLY SUBMITTED this 17th day of June, 2009.

**PETER STROJNIK, P.C.**

_____
Peter Strojnik
Attorney for the Plaintiff