L. Eric Dowell, SBN 011458
Caroline Larsen, SBN 022547
Monique Young, SBN 025121
Ogletree, Deakins, Nash, Smoak & Stewart, P.C., SBN 00504800
2415 East Camelback Road, Suite 800
Phoenix, Arizona 85016
Telephone:   (602) 778-3700
Facsimile:    (602) 778-3750
Eric.Dowell@ogletreedeakins.com
Caroline.Larsen@ogletreedeakins.com
Monique.Young@ogletreedeakins.com

Attorneys for Defendants STATS ChipPAC, Inc.
and STATS ChipPAC, Ltd.

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Diane Sahakian, a single woman,<br><br>            Plaintiff,<br><br>    vs.<br><br>STATS ChipPAC, Inc., a foreign corporation; STATS ChipPAC Ltd, a foreign corporation; Temasek Holdings Private Limited, a foreign corporation; Singapore Technologies Semiconductors Private Limited, a foreign corporation,<br><br>            Defendants. | CV08-241-PHX-HRH<br><br>**RESPONSE TO PLAINTIFF'S MOTION FOR *IN CAMERA* EXAMINATION OF GAIL UY BY DEFENDANTS STATS ChipPAC, INC. AND STATS ChipPAC LTD.** |

Plaintiff has not, and cannot, assert any legitimate basis for invading the sanctity of the attorney-client privilege by permitting STATS ChipPAC, Inc.'s Human Resources Manager, Gail Uy, to be examined *in camera* regarding a meeting between her, STATS ChipPAC, Ltd.'s General Counsel, Janet Taylor, and Plaintiff's direct supervisor, Dr. Han Byung Joon ("Dr. Han"). Plaintiff herself admits that this meeting concerned some of the facts giving rise to this litigation, and the possibility that Plaintiff might file suit

against STATS ChipPAC. The meeting falls squarely within the realm of attorney-client privilege, and no exception applies. Defendants STATS ChipPAC, Inc. and STATS ChipPAC, Ltd. (collectively, "STATS ChipPAC") respectfully request that the Court deny Plaintiff's Motion for *In Camera* Examination of Gail Uy Regarding the Meeting with Corporate Counsel (Doc. 159).

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### I.   FACTUAL BACKGROUND

Plaintiff deposed STATS ChipPAC's Human Resources Manager Gail Uy on May 27, 2009. During her deposition, Ms. Uy testified regarding a telephone call she received from Plaintiff. Exh. 1, excerpts from deposition of Gail Uy, taken May 27, 2009, pp. 150-163. Plaintiff relayed her version of a telephone conversation she had with her supervisor, Dr. Han, STATS ChipPAC's Chief Technology Officer. *Id.* Plaintiff told Ms. Uy that, during the telephone call, Dr. Han said he was "done" with Plaintiff and never wanted to see her again. *Id.* Plaintiff also told Ms. Uy that Dr. Han told Plaintiff she could "sue him," told Plaintiff she must apologize to him, and that Dr. Han would "take action" if Plaintiff did not apologize. *Id.*

During her deposition, Ms. Uy testified that she did not know what Dr. Han meant when he allegedly said he was "done" with Plaintiff, did not know why Plaintiff might have thought she could sue Dr. Han, and did not know why Dr. Han allegedly would have told Plaintiff she must apologize to him. Exh. 1. Recognizing there was another side to the conversation, Ms. Uy testified that she later discussed the information Plaintiff relayed to her with Dr. Han and STATS ChipPAC's General Counsel, Janet Taylor. *Id.* Despite repeated questions by Plaintiff's counsel about the substance of her conversation with Dr. Han and Ms. Taylor, Ms. Uy declined to answer any such questions based on the fact it would require her to reveal an attorney-client, privileged conversation. Nonetheless, Plaintiff's counsel persisted in asking Ms. Uy whether the conversation occurred in response to Plaintiff taking medical leave and whether Dr. Han provided Ms. Uy with his version of his telephone conversation with Plaintiff during this three-way

meeting. *Id.* In response to these numerous questions, STATS ChipPAC's counsel directed Ms. Uy not to answer on the basis that attorney-client privilege protected the substance of the discussion from disclosure. *Id.*

From this limited information, Plaintiff now alleges that "a reasonable inference arises that the purpose of the meeting [between Dr. Han, Ms. Uy and STATS ChipPAC's General Counsel] was to determine *how* to fire Plaintiff without incurring corresponding Title VII liability." Doc. 159 at p. 3. This "reasonable inference" is nothing more than Plaintiff's wild conjecture and speculation. In fact, a *reasonable* inference would be that Dr. Han and Ms. Uy spoke with STATS ChipPAC's General Counsel to determine the most effective and *legal* way to address Plaintiff's complaint to Human Resources and her threat to file suit against the company and bring criminal action against Dr. Han.

On June 11, 2009, Plaintiff's counsel deposed Dr. Han for nearly seven hours. During Dr. Han's deposition, Plaintiff's counsel had a full and fair opportunity to ask Dr. Han about his side of the telephone conversation with Plaintiff. Dr. Han testified that, during their call, Plaintiff complained repeatedly that he and Human Resources had unlawfully and illegally "investigated Plaintiff" by asking her subordinates about her management style. Dr. Han advised Plaintiff that Human Resources had not investigated Plaintiff, but merely responded to the fact that several members of the Emerging Technology group that she managed requested transfers to other business groups, and one of her former direct reports subsequently resigned and gave an exit interview explaining that Plaintiff was one of the worst managers he had ever experienced. Dr. Han further testified that, during their call, Plaintiff repeatedly insisted these discussions between her current or former direct reports and Human Resources were "illegal" and she could sue Dr. Han. In light of the many concerns her direct reports raised, and Plaintiff's unwillingness to admit that she could and should improve her management style, Dr. Han had no option but to remove Plaintiff from her supervisory role as Vice President of Emerging Technology, and reassign her to the role of Vice President of Special Projects, in which she could work as an individual contributor, without managing others.

3

Plaintiff hypothesizes that the proximity of time between (1) Dr. Han's telephone conversation with Plaintiff, (2) the meeting between Dr. Han, Ms. Uy and Ms. Taylor, and (3) Plaintiff's reassignment to the position of Vice President of Special Projects leads to an inference that Ms. Taylor "provided a legal opinion on *how* to fire Plaintiff in violation of Title VII but minimize the risk of corresponding liability." Doc. 159 at p. 3. First, contrary to her allegations, Plaintiff has not established that the meeting between Dr. Han, Ms. Uy and Ms. Taylor occurred before Plaintiff's reassignment to the position of Vice President of Special Projects. Ms. Uy specifically testified that she could not recall when Plaintiff reported her telephone conversation with Dr. Han, or when her meeting with Dr. Han and Ms. Taylor occurred. *See* Exh. 1. Furthermore, Plaintiff's "inference" that Ms. Taylor provided advice about terminating Plaintiff completely disregards the fact that STATS ChipPAC did not terminate Plaintiff's employment until July 2008 – eleven months <u>after</u> Plaintiff alleges the meeting in question occurred.

Plaintiff's conjecture regarding the purpose and outcome of the meeting between Dr. Han, Ms. Uy and Ms. Taylor fails to demonstrate any valid basis for invading attorney-client privilege. STATS ChipPAC reassigned Plaintiff from her position managing the Emerging Technology group to a role as an individual contributor because her ongoing mismanagement of the group resulted in high employee turnover and employee dissatisfaction. Eleven months later, the company terminated Plaintiff's employment after she demonstrated a complete lack of initiative, a negative attitude, and a total inability and/or unwillingness to perform the special projects that Dr. Han assigned to her. STATS ChipPAC's decisions were motivated by legitimate business interests. Any discussions between STATS ChipPAC's Human Resources Manager, Chief Technology Officer, and General Counsel regarding these decisions cannot constitute either a crime or a fraud to overcome the sanctity of the attorney-client privilege.

4

## II. PLAINTIFF HAS ALLEGED NO "CRIME" OR "FRAUD" SUFFICIENT TO DEFEAT THE ATTORNEY-CLIENT PRIVILEGE.

As an initial matter, Plaintiff does not suggest that the attorney-client privilege does not apply to the meeting between Dr. Han, Ms. Uy and Ms. Taylor. In fact, the meeting in question embodies the purpose of the attorney-client privilege: to "protect[] the disclosures that a client makes to his attorney, in confidence, for the purpose of securing legal advice or assistance." *Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1414 (11th Cir. 1994) (citing *In re Grand Jury (G.J. No. 87-03-A)*, 845 F.2d 896, 897 (11th Cir. 1988)). "Based on the theory that 'sound legal advice or advocacy . . . depends upon the lawyer's being fully informed by the client,' the privilege is designed 'to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice.'" *Id.* (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)).

Accordingly, Plaintiff recognizes that disclosure of the matters discussed during the meeting in question is protected by attorney-client privilege, but argues that the Court should apply the "crime-fraud" exception to overcome privilege. The crime-fraud exception, as the name suggests, only applies to very limited situations where the party seeking to defeat the privilege has made a *prima facie* showing that the client was engaged in criminal or fraudulent conduct and sought the advice of counsel to further the scheme. *In re Sealed Case*, 754 F.2d 395, 399 (D.C. Cir. 1985) (citing *In re Murphy,* 560 F.2d 326, 337 (8th Cir.1977); *In re Sealed Case,* 676 F.2d 793, 814-15 (D.C. Cir. 1982)). "The mere allegation of a crime or civil fraud will generally not suffice to defeat the attorney-client privilege." *United Servs. Auto. Ass'n v. Werley*, 526 R.2d 28, 32 (Alaska 1974). A party satisfies its burden of proof by offering evidence that, if believed by the trier of fact, would establish the elements of an ongoing or imminent crime or fraud. *In re Sealed Case*, 754 F.2d at 399 (citation omitted). The determination whether a *prima facie* showing has been made lies within the sound discretion of the court. *Id.* at 399-400 (citing *In re Berkley & Co.*, 629 F.2d 548, 553 (8th Cir. 1980); *In re September 1975 Grand Jury Term*, 532 F.2d 734, 737 (10th Cir. 1976)).

5

"Before engaging in *in camera* review to determine the applicability of the crime-fraud exception, 'the judge should require a showing of a factual basis adequate to support a good faith belief by a reasonable person' that *in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies." *U.S. v. Zolin*, 491 U.S. 554, 572 (U.S. 1989) (quoting *Caldwell v. District Court*, 644 P.2d 26, 33 (Colo. 1982)). The applicable standard is not whether "[t]he evidence might support a good-faith belief by a *suspicious* person, but [rather] a *reasonable* person." *Berroth v. Kansas Farm Bureau Mut. Ins. Co., Inc.*, 205 F.R.D. 586, 592 (D. Kan. 2002). Plaintiff has failed to offer <u>any</u> showing that an *in camera* inspection of Ms. Uy would establish that STATS ChipPAC sought the advice of counsel in furtherance of any crime or fraud.

### A. Plaintiff's argument that a meeting between a STATS ChipPAC's Manager, Officer and General Counsel constitutes a criminal conspiracy is unfounded and absurd.

To invade the attorney-client privilege applicable to the meeting between Dr. Han, Ms. Uy and Ms. Taylor, Plaintiff attempts to refashion her Title VII allegations of gender discrimination and retaliation into a criminal matter or a claim for fraud. Plaintiff relies on 18 U.S.C. § 241, a statute designed to punish criminal conspiracies to commit crimes such as kidnapping, aggravated sexual abuse or attempted murder. This position goes beyond the ridiculous into the realm of harassing, frivolous, and unfounded allegations barred by Rule 11 of the Federal Rules of Civil Procedure.

The statute upon which Plaintiff relies bars conspiracies against rights, in which two or more persons conspire to injure, oppress, threaten, or intimidate any person in the free exercise or enjoyment of any right or privilege secured to him/her by the Constitution or laws of the United States, or because of his/her having so exercised the same. 18 U.S.C. § 241. "The essential element of a conspiracy is proof of an unlawful agreement. Under § 241, there must be proof of an unlawful agreement to deprive certain litigants of a constitutional right." *U.S. v. Cross*, 899 F. Supp. 1410, 1413 (W.D. Pa. 1995). Plaintiff fails to cite a single case in which a defendant-employer has been indicted or convicted for violating 18 U.S.C. § 241 in the context of a Title VII

6

employment case. In fact, at least one district court declined to extend the conspiracy statute to an employment matter. *U.S. v. Berke Cake Co.*, 50 F. Supp. 311 (E.D.N.Y. 1943). The employer engaged in an alleged conspiracy against employees who complained of violations of the Fair Labor Standards Act. *Id.* The court found that the intent of 18 U.S.C. § 241 was to punish offenses against rights secured by the Fourteenth and Fifteenth Amendments to the United States Constitution, and more specifically, rights created by the Constitution and laws of the United States in favor of citizens on the basis of their status as citizens. *Id.* at 313. The court further found that, "[i]f Congress intended that violations of the Fair Labor Standards Act should be penalized through resort to other statutes in addition to the Act itself, appropriate language to embody that intention would have been adopted." *Id.*

Plaintiff has failed to proffer <u>any</u> evidence to demonstrate that there was any conspiracy on the part of STATS ChipPAC to deprive her of any legal right. Plaintiff has merely demonstrated that she contacted Ms. Uy, the Human Resources Manager, about a telephone conversation she had with her direct supervisor, Dr. Han. Thereafter, Ms. Uy and Dr. Han discussed the telephone call, including Plaintiff's threat to file suit against the company, with STATS ChipPAC's General Counsel, Janet Taylor. There was no conspiracy, there was no deprivation of any of Plaintiff's rights, and there certainly was no crime such as needed to breach the attorney-client privilege.

**B.      There is no evidence to support Plaintiff's allegation that the meeting between STATS ChipPAC's Manager, Officer and General Counsel was fraudulent or wrongful.**

Rather than comprising fraudulent or criminal activity, Dr. Han and Ms. Uy's consultation with counsel to decide how to handle Plaintiff's complaint and threat is the very kind of communication that the attorney-client privilege was designed to protect. "The attorney-client privilege is strongest where a client seeks counsel's advice to determine the legality of conduct before taking action." *In re BankAmerica Corp. Sec. Litig.*, 270 F.3d 639, 641 (8th Cir. 2001) (*citing Upjohn Co. v. United States*, 449 U.S. 383, 392 (1981)).

Courts have found the attorney-client privilege applicable to just the kind of communications at issue here. As the Supreme Court has noted, "the [attorney-client] privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." *Upjohn Co. v. United States*, 449 U.S. 383, 390 (1981). For example, in *Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355, 1371-72 (10th Cir. 1997), the plaintiff in a Title VII and Equal Pay Act case sought discovery of a memorandum prepared by her employer's in-house counsel regarding concerns about the company's disparate pay practices towards women. 129 F.3d at 1371-72. The Court found that the memorandum was protected by the attorney-client privilege because it was prepared for higher management by in-house counsel, acting within the scope of his employment, and it related to the rendition of legal services and advice. *Id.* at 1370. Despite the connection between the contents of the memorandum and plaintiff's claim that the defendant-employer failed to promote her and pay her at a rate equal to that of the male employees, the Court found no evidence to support plaintiff's contention that the in-house attorney's advice was sought to perpetuate a crime, fraud or tort. *Id.* at 1371-72. Accordingly, the Court of Appeals upheld the trial court's denial of plaintiff's motion to compel production of the memorandum. *Id.*; *see also Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1552 (10th Cir. 1995) (upholding trial court's refusal to require defendant-employer to disclose memorandum setting forth guidelines for reduction in force in case alleging racial discrimination as to the layoffs); *Kovacs v. Hershey Co.*, Civ. Action No. 04-CV-01881-WYD-BNB, 2006 WL 2781591, *9 (D. Colo. Sept. 26, 2006) (upholding finding that plaintiffs did not meet their burden of showing that the evidence substantiated a planned decision to not comply with the mandates of the Older Worker's Benefit Protection Act and to defraud plaintiffs and, thus, failed to present a *prima facie* case that employer engaged in a fraud or crime with its counsel). "[T]he crime-fraud exception does not extend to tortious conduct generally, but is limited to attorney advice

in furtherance of a crime or fraud," which does not include providing advice regarding employment issues, such as occurred in this case. *See Motley*, 71 F.3d at 1552.

Similarly, in *Jinks-Umstead v. England*, 232 F.R.D. 142 (D. D.C. 2005), the court found that plaintiff failed to meet her burden to make a *prima facie* showing that the Navy, the defendant-employer in a race discrimination and retaliation action, engaged in conduct encompassed by the crime-fraud exception. 232 F.R.D. at 145-46. Plaintiff demonstrated that the Navy made statements in discovery that were incorrect regarding the availability of certain documents plaintiff sought, however, she presented no evidence that the Navy's conduct was part of a cover-up. *Id.* Plaintiff argued that the Navy made misrepresentations during the discovery process in an attempt to cover-up its previous discriminatory and retaliatory conduct against her. *Id.* The court had cautioned plaintiff that, if she alleged that defendant engaged in fraud or bad faith, she must make a *prima facie* showing of defendant's fraud or bad faith, and could not argue that she needed access to the privileged documents in order to make her *prima facie* showing. *Id.* In light of plaintiff's failure to make such a showing, the court found that the protected status of the documents in question remained inviolate. *Id.*

There is simply no support for Plaintiff's allegation that Ms. Uy, Dr. Han and Ms. Taylor engaged in some kind of misconduct, fraud, or abuse of the attorney-client privilege by discussing how to respond to Plaintiff's poor performance and threats of litigation. Plaintiff's self-serving arguments and speculative, paranoid assumptions do not satisfy her burden of making a *prima facie* showing that the crime-fraud exception applies. Accepting Plaintiff's arguments would eviscerate the attorney-client privilege by precluding supervisors and members of a company's human resources department from having privileged communications with counsel about how to deal with problematic employees, or how to respond to threats of discrimination charges and/or litigation made by existing employees.

### III. CONCLUSION

For all of the foregoing reasons, Defendants STATS ChipPAC, Inc. and STATS

1  ChipPAC, Ltd. respectfully request that the Court deny Plaintiff's Motion for *In Camera*
2  Examination of Gail Uy Regarding the Meeting with Corporate Counsel (Doc. 159).

4  DATED this 22nd day of June 2009.

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.


By:s/ Caroline Larsen
   L. Eric Dowell
   Caroline Larsen
   Monique Young
   2415 East Camelback Road, Suite 800
   Phoenix, Arizona 85016
   Attorneys for Defendants STATS ChipPAC,
   Inc. and STATS ChipPAC, Ltd.

**CERTIFICATE OF SERVICE**

I hereby certify that on June 22, 2009, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Peter Strojnik
Peter Strojnik, P.C.
3030 North Central Avenue, Suite 1401
Phoenix, Arizona 85012
Attorney for Plaintiff

Peter K. Strojnik
The Law Firm of Peter Strojnik
3030 North Central Avenue, Suite 1401B
Phoenix, Arizona 85012


s/ Debra Perkins

6463512.1 (OGLETREE)

11