L. Eric Dowell, SBN 011458
Caroline Larsen, SBN 022547
Monique Young, SBN 025121
Ogletree, Deakins, Nash, Smoak & Stewart, P.C., SBN 00504800
2415 East Camelback Road, Suite 800
Phoenix, Arizona 85016
Telephone: (602) 778-3700
Facsimile: (602) 778-3750
Eric.Dowell@ogletreedeakins.com
Caroline.Larsen@ogletreedeakins.com
Monique.Young@ogletreedeakins.com
Attorneys for Defendants STATS ChipPAC, Inc.
and STATS ChipPAC, Ltd.

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Diane Sahakian, a single woman,<br><br>Plaintiff,<br><br>vs.<br><br>STATS ChipPAC, Inc., a foreign corporation; STATS ChipPAC Ltd, a foreign corporation; Temasek Holdings Private Limited, a foreign corporation; Singapore Technologies Semiconductors Private Limited, a foreign corporation,<br><br>Defendants. | CV08-241-PHX-HRH<br><br>**DEFENDANTS' RESPONSE IN OPPOSITION TO MOTION TO COMPLETE DEPOSITION OF GAIL UY AND FOR SANCTIONS BY DEFENDANTS STATS ChipPAC INC. AND STATS ChipPAC, LTD** |

Defendants STATS ChipPAC, Inc. and STATS ChipPAC, Ltd. (collectively "STATS ChipPAC"), hereby submit their Response in Opposition to Plaintiff's Motion to Complete Deposition of Gail Uy and For Sanctions. (Doc. 157.) Plaintiff's Motion should be denied for at least three reasons: (1) the parties agreed to conduct the deposition within three hours; (2) Plaintiff does not meet the requirements under Rule 30(d)(1) to justify another full day of deposition; and (3) Plaintiff's Motion manipulates

the facts, creates a false impression for the Court and runs up STATS ChipPAC's costs and fees.

Plaintiff's counsel represented that he needed no more than three hours to reasonably complete Ms. Uy's deposition. Plaintiff deposed Ms. Uy for over three and a half hours and was fully able to explore the theories of his client's case; he then spent additional time questioning Ms. Uy about irrelevant matters that exceeded the boundary of Rule 26 and which were designed to harass Ms. Uy and waste time. When Plaintiff's counsel exceeded the agreed upon time to complete Ms. Uy's deposition and showed no signs of asking relevant questions, defense counsel terminated the deposition. Accordingly, Plaintiff's Motion to Complete Gail Uy's Deposition and for Sanctions should be denied.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION AND BACKGROUND

Three days before counsel deposed Gail Uy, STATS ChipPAC's Director of Human Resources in the United States, Plaintiff's counsel asked STATS ChipPAC's counsel to move the deposition from Freemont, California to Phoenix, Arizona. *See* correspondence between counsel dated Sunday, May 24, 2009, **Exhibit 1**. Because the request was first made the day after the Memorial Day holiday and travel arrangements were set, defense counsel suggested the request was unfeasible, but entertained Plaintiff's counsel's suggestion to move the start time of Ms. Uy's deposition from 9:30 a.m. to 10:00 a.m. to accommodate his flight. *See* correspondence between counsel dated May 25, 2009, **Exhibit 2**. Before defense counsel agreed to reschedule the time of Ms. Uy's deposition, defense counsel specifically asked Plaintiff's counsel how much time he reasonably needed to complete Ms. Uy's deposition. *See* **Exhibit 2.** Plaintiff's counsel expressly stated that he would need two to three hours. *See* **Exhibit 2.** Based on Plaintiff's counsel's representations that the deposition would conclude in two to three hours, defense counsel agreed to reschedule Ms. Uy's deposition for 10:00 a.m. *See* **Exhibit 2.**

2

The deposition of Ms. Uy occurred as scheduled in Freemont, California on May 27, 2009, at 10:00 a.m. **Exhibit 3.** Plaintiff's counsel spent at least the first hour of the deposition questioning Ms. Uy about hypothetical psychological theories which Plaintiff's counsel knew Ms. Uy could not answer. *See, e.g.*, Uy Dep. 8:15-32:18, attached as **Exhibit 4.** Specifically, Plaintiff's counsel quizzed Ms. Uy concerning her knowledge of the concepts of "rarity," "priming," "work group dynamics," "outsiders," "insiders," "group deviants," and other hypothetical concepts that are words and phrases within the parlance, knowledge, and vocabulary of an expert psychologist. For instance, Plaintiff's counsel asked Ms. Uy:

> Q. By Mr. Strojnik: Are you familiar with the concept of insider and outsider in the work environment?
>
> Mr. Dowell: Object to the form.
>
> The Witness: I don't know.
>
> Q. Are you familiar with the concept of rarity and priming?
>
> A. No.

*See* **Exhibit 4** at 15:24-16:6. Indeed, Plaintiff's counsel conceded he obtained such words and phrases after deposing Dr. C. Brady Wilson, the psychologist who conducted Plaintiff's Independent Medical Examination. *Id.* at 26:12-27:16. Although Ms. Uy did her best to answer Plaintiff's counsel's vague, obscure, and transcendental questions, she struggled to find them germane or apply them in context to Plaintiff's lawsuit. Based on her inability to answer, Plaintiff's counsel quickly concluded that Ms. Uy was unknowledgeable about human recourses. *Id.* at 31:19-32:14.

Ms. Uy is and was fully competent to testify about her specialty – human resources, as evidenced by her experience and training in human resources. *See* **Exhibit 4** at 7:4-8:2. Ms. Uy is not, however, competent to testify about abstract and hypothetical psychological theories as they may or may not apply in the workplace. *Id.* Thus, any answer that Ms. Uy provided could not lead to meaningful testimony.

After approximately two and a half hours of questioning, defense counsel discussed the possibility of taking a break for lunch. Plaintiff's counsel, however, asked if the parties would be amenable to work through lunch since he had less than an hour to finish his questions. Although the additional time would extend the deposition beyond the time previously agreed to by the parties, defense counsel complied based on the understanding that the deposition would conclude within the hour.

Rather than make efficient use of his remaining time, Plaintiff's counsel continued to ask Ms. Uy abstract, academic, and irrelevant questions that were not calculated to lead to the discovery of any admissible evidence. For example, Plaintiff's counsel asked questions concerning:

- Ms. Uy's knowledge of psychological theory, referenced in the academic white papers written by Dr. C. Brady Wilson, a board certified psychologist (*see* **Exhibit 4**; Uy Dep. 142:5-143:16, attached as **Exhibit 5**);
- whether Eric Gongora, a STATS ChipPAC engineer, B.J. Han, STATS ChipPAC's Executive V.P and Chief Technology Officer, or Tan Lay Koon, STATS ChipPAC's President, surfed pornographic websites (Uy Dep. 40:24-41:6, attached as **Exhibit 6**);
- why ChipPAC (the company STATS ChipPAC acquired in 2004) hired Eric Gongora and failed to do a background check on him or check his references even though Ms. Uy explained that Mr. Gongora was hired years before she joined STATS ChipPAC and before the companies merged (Uy Dep. 52:20-24, attached as **Exhibit 7**);
- if STATS ChipPAC's sales and managers treated women as servants, went to strip clubs, and solicited prostitutes (Uy Dep. 72:14-74:10, attached as **Exhibit 8**);
- whether Ms. Uy knew if the Republic of Singapore had any discrimination laws and whether she was aware of certain unidentified studies concerning

sexual harassment in Singapore (Uy Dep. 33:24-36:29, attached as **Exhibit 9**);

- whether people from Singapore allow cultural influences to effect their working relationships with other cultures (*see* **Exhibit 9** at 36:10-17);
- whether certain hypothetical situations constituted race, national origin and sex discrimination (Uy Dep. 32:19-53:14, 65:15-72:13, attached as **Exhibit 10**); and
- whether the company would condone or allow one of its vendors to refer to a third party as a moron or a cretin (Uy Dep. 168:1-169:22, attached as **Exhibit 11**).

The deposition became completely absurd and harassing shortly after the last break. On the record, Plaintiff's counsel began to ask Ms. Uy about a previous off-the record conversation that occurred between counsel during the 30(b)(6) deposition of Jeff Howell on May 21, 2009. *See* **Exhibit 11.** The subject matter of this past conversation had no relevance to Ms. Uy's deposition or any issue in this case. Moreover, Ms. Uy did not have any personal knowledge of this conversation. Twice, defense counsel warned Plaintiff's counsel to stop harassing Ms. Uy and ask legitimate questions or the deposition would be terminated. *Id.* When Plaintiff's counsel ignored these warnings, defense counsel was forced to terminate the deposition. *Id.* At the time Ms. Uy's deposition concluded, Plaintiff's counsel had been on the record 3 hours and 45 minutes. *See* **Exhibit 3**; **Exhibit 11** at 169:20-22.

Even after Ms. Uy's deposition terminated, Plaintiff's counsel continued to harass Ms. Uy. On the record, Plaintiff's counsel stated that her superior, B.J. Han, would be unhappy with certain portions of Ms. Uy's testimony. Uy Dep. 105:6-17, attached as **Exhibit 12.** After the deposition terminated, Plaintiff's counsel continued to badger Ms. Uy, suggesting that her job at STATS ChipPAC now would be in jeopardy. Plaintiff's counsel told Ms. Uy that he hoped she would not be retaliated against or faced with a hostile work environment due to her involvement in Diane Sahakian's lawsuit.

5

1  Since the deposition had terminated and any further discussion with Ms. Uy was
2  unauthorized, defense counsel directed Plaintiff's counsel to refrain from speaking to
3  Ms. Uy. Plaintiff's counsel refused – ending any possibility that the parties could meet
4  and confer about the deposition.

5  Now, Plaintiff argues that she needs some additional, unspecified time to complete
6  Ms. Uy's deposition solely because defense counsel ended the deposition. However, the
7  parties had previously agreed to limit the deposition to three hours. Therefore, Plaintiff's
8  argument does not warrant extending Ms. Uy's deposition at all and certainly not for
9  another full day.

## II. ARGUMENT

### A. The Parties Agreed To Conduct The Deposition Within Three Hours

"The rules specifically authorize the use of agreements between parties to govern the conduct of discovery." *Pescia v. Auburn Ford-Lincoln Mercury Inc.*, 177 F.R.D. 509, 510 (M.D.Ala. 1997); *AT&T Corporation* v. *MRO Communications Inc.,* 205 F.3d 1350, 1999WL 1178965 at *3 (9th Cir. 1999); *Wayne v. Central Gulf Towing,* 2004 WL 2988478 at *2 (E.D.La. December 9, 2004); *Dabbs v. Cutler*, 19 F.3d 18, 1994 WL 64671 at *1 (6th Cir. 1994). Rule 29 expressly states that "[u]nless otherwise directed by the court, the parties may by written stipulation provide that depositions may be taken . . . at any time or place, upon any notice, and in any manner." Fed.R.Civ.P. 29(a). Rule 30(d)(1) provides that a deposition is limited to 1 day of 7 hours *unless otherwise stipulated* or ordered by the court. Fed.R.Civ.P. 30(d)(1) (emphasis added). "The self-evident purpose of [these rules] is to encourage agreed-upon, lawyer-managed discovery and to eliminate the cost, effort, and expense involved in court intervention in discovery through motion practice." *Wayne v. Central Gulf Towing*, 2004 WL 2988478 at *2 (E.D.La. December 9, 2004).

*AT&T Corporation* v. *MRO Communications Inc.* provides an example of the legal effect discovery agreements have on the discovery procedure. 205 F.3d 1350, 1999 WL 1178965 at *3. In *AT&T Corporation,* MRO appealed from an order granting

summary judgment to AT&T Corp. for $188,870.71 in unpaid tariff charges. *Id.* MRO argued that it was unable to create a genuine issue of material fact because the district court had denied MRO the opportunity to conduct further discovery into whether MRO was correctly billed for AT&T Corp's services. *Id.* However, the record showed that AT&T and MRO entered into a stipulation staying all discovery until after the district court's decision of AT&T's summary judgment motion. *Id.* Accordingly, the Ninth Circuit affirmed the district court's decision based on the agreement between the parties. *Id.*

Likewise, in *Wayne v. Central Gulf Towing*, plaintiff brought a motion to compel the production of certain discovery relating to his accident, in preparation for his deposition. *Id.* at *1. Defendants refused to produce the discovery based on a previous agreement between counsel wherein both parties stated that this discovery would be withheld until after completion of plaintiff's deposition. *Id.* at *2. Though the court ordinarily would have required the production of this discovery according to the Federal Rules of Civil Procedure, the court denied plaintiff's request based on the previous agreement. *Id.* ("[E]xcept for one peculiar but overriding and important circumstance in this case, I would require the production of both the statement of plaintiff and the surveillance materials. . . . That compelling, significant circumstance is that counsel jointly *agreed* to a different procedure concerning depositions"). Accordingly, the time to depose a witness can be expanded or limited by agreement, despite the presumptive limits stated in Rule 30(d)(1), just like any other discovery procedure.

In this case, the parties mutually agreed to complete Ms. Uy's deposition within three hours based on Plaintiff's counsel's representation that he would complete the deposition within that time. *See* **Exhibit 1** and **2**. Defense counsel should be able to rely upon the agreement that the parties previously made and the court should enforce this agreement. *Id*. at *2 (E.D.La. December 9, 2004) (parties "must be able to rely on the agreements they make"). As a result, the Court should deny Plaintiff any additional time to further depose Ms. Uy as it flies in the face of the parties' agreement.

7

### B.   No Additional Deposition Time Is Justified Under Rule 30(d)(1)

Plaintiff has not provided good cause for obtaining additional time to continue Ms. Uy's deposition beyond the three-hour time agreed to by the parties or the presumptive limits of Rule 30(d)(1). *See* Fed.R.Civ.P. 30(d) advisory committee note (The "party seeking a court order to extend the examination, or otherwise alter the limitations, is expected to show good cause to justify such an order"); *Jensen v. AstraZeneca*, 2004 WL 2066837 at *3 (D.Minn. 2004) (affirming denial of motion for extension of deposition for lack of good cause). Rule 30(d)(1) provides that additional time is allowable "if needed for a fair examination of the deponent or if the deponent or another person, or other circumstance, impedes or delays the examination." Examples of grounds for granting an extension include whether a witness requires an interpreter, the examination covers events occurring over a long period of time or extensive documents, or if multiple parties are deposed. *See* Fed.R.Civ.P. 30(d) advisory committee note.

Although Plaintiff's counsel agreed that he would complete Ms. Uy's deposition in two to three hours, Plaintiff deposed Ms. Uy for 3 hours and 45 minutes. *See* **Exhibit 3**; **Exhibit 11** at 169:20-22. Now, Plaintiff is asking for an additional 7 hours of deposition which, if granted, would allow Plaintiff the opportunity to depose Ms. Uy for 10 hours and 45 minutes. This amount of time greatly exceeds the two to three hour limit agreed to by the parties and the presumptive limit contemplated by the Rule of Federal Procedure 30(d)(1). Yet, Plaintiff's Motion does not demonstrate any basis for requesting additional time.

   *1.   Plaintiff Had The Opportunity To Conduct A Full And Fair Examination Of Ms. Uy.*

Plaintiff fully explored the theories of her case during Ms. Uy's deposition. Ms. Uy answered questions concerning her training, background, experience and education in human resources; her employment with STATS ChipPAC, her knowledge of discrimination policies and anti-discrimination practices of STATS ChipPAC, her knowledge of FMLA, her knowledge of Eric Gongora's employment with STATS

ChipPAC, her investigation into the alleged "ketchup incident" and all other matters which purport to relate to Plaintiff's claims of a sexually hostile work environment and retaliation. *See Insurance Company of Hartford v. Trustmark Insurance Company*, 218 F.2d 29, 32 (D.Conn. 2003) (Defendant would not be granted additional time to conduct deposition because deponent had engaged in extensive discussion concerning his investigative findings").

Plaintiff's counsel not only had sufficient time to depose Ms. Uy, but also additional time to inquire into unfair, impertinent and irrelevant topics far beyond Ms. Uy's personal knowledge. *See* **Exhibits 4-11**. If three hours was not sufficient time to depose Ms. Uy, then Plaintiff's counsel should not have wasted time by asking irrelevant, academic and hypothetical questions concerning (1) Ms. Uy's knowledge of psychological terms; (2) what hypothetically may constitute sexual harassment; and (3) what the predecessor company (ChipPAC) did or did not do when it hired Eric Gongora.

### 2. *Plaintiff's Motion Does Not Identify Any Basis For Continuing The Deposition.*

Plaintiff's Motion is completely devoid of any basis for continuing Ms. Uy's deposition. Plaintiff demands some unspecified additional time to depose Ms. Uy on the sole basis that defense counsel terminated the deposition after over 3 hours and 45 minutes on the record. Plaintiff argues that he "intended to determine whether misconduct is tolerated only when committed by STATS or whether it is tolerated when committed by third parties – such as STATS vendors," when "Gail Uy and her counsel stood-up, declared the deposition terminated, and stormed out of the deposition." Plaintiff also fails to mention that his questions to Ms. Uy regarding whether the company condones misconduct by its vendors (i.e., its lawyers) was only a façade for accusing defense counsel of misconduct at a prior deposition taken weeks earlier. *See* **Exhibit 11**. Rather than question Ms. Uy about relevant matters within her personal

knowledge, Plaintiff's counsel reiterated accusations that he has made against defense counsel throughout the entire course of discovery. *Id.*

In addition, Plaintiff states that she took Ms. Uy's deposition, "in part, to confirm the Declaration issued by Dennis Daniels, the former corporate HR director of STATS." Doc. 157 at 6:11-14. However, the majority of Dennis Daniels' declaration involves allegations of discrimination which are not remotely relevant to Plaintiff's allegations of a <u>sexually</u> hostile work environment. Indeed, Plaintiff has not asserted any claim of race or national origin discrimination or discrimination based on any other protected category. Evidence of <u>other</u> types of alleged discrimination, particularly directed at employees other than Plaintiff, has no relevance here. Regardless, Plaintiff did in fact question Ms. Uy extensively about allegations of discrimination other than the sexually hostile environment she claims she endured. *See* **Exhibit 10**. Therefore, additional time to "confirm" Dennis Daniels' declaration is unnecessary.

Though Plaintiff desires additional time to harass and annoy STATS ChipPAC, this is not a justifiable basis for extending the presumptive limits of Rule 30(d)(1) or the agreement of the parties. Because Plaintiff cannot identify any basis to extend the time to complete Ms. Uy's deposition, Plaintiff has no legitimate argument that she was prejudiced by the termination of the deposition after 3 hours and 45 minutes.

       3.    *Defense counsel Did Not Impede The Deposition And Sanctions Are Unwarranted.*

Defense counsel did not direct Ms. Uy to refrain from answering any legitimate questions or use excessive objections to impede the deposition. The deposition transcript will speak for itself. When Plaintiff's counsel pursued an inappropriate line of questions, in excess of three hours, defense counsel twice warned Plaintiff's counsel of his misconduct before he terminated the deposition. *See* **Exhibit 11.** As such, defense counsel's conduct falls far short of conduct which has resulted in sanctions in other cases. *See O'Brien v. Amtrak*, 163 F.R.D. 232 (E.D.Pa. 1995) (defendant's counsel spoke almost as much if not more than deponent did); *Van Pilsum v. Iowa State University of*

10

*Science and Technology*, 152 F.R.D. 179 (S.D. Iowa) (20 percent of deponents deposition was monopolized by defending attorney's frivolous objections); *American Directory Service Agency, Inc. v. Beam*, 131 F.R.D. 15 (D.D.C. 1990) (counsel's repeated objections, puerile arguments with opposing counsel and vexatious requests for clarification prevented the elicitation of meaningful testimony and needlessly added to the expense of this litigation); *Thomas v. Hoffmann-LaRoche, Inc.*, 126 F.R.D. 522 (N.D.Miss. 1989) (Counsel disrupted the depositions with repeated objections and attempts to control the proceedings.)

To the contrary, defense counsel did exactly what he agreed to do – produce Gail Uy for a deposition within the time period previously agreed to by the parties. *See* **Exhibit 3**. STATS ChipPAC never took the position that it would not produce Ms. Uy for deposition. Rather, STATS ChipPAC rescheduled Ms. Uy's deposition for a time that would accommodate Plaintiff's counsels' schedule. During the deposition, minimal breaks were taken. And the parties worked through lunch based on Plaintiff's counsel's representation that he only needed an additional hour to complete the deposition. Therefore, Plaintiff's counsel was given a full and fair opportunity to depose Ms. Uy and was even allowed to do so outside the scope of Rule 26, before his conduct became wasteful and abusive.

### C.    Plaintiff's Motion Misrepresents The Facts

Plaintiff's Motion actually is not a legitimate request to complete Ms. Uy's deposition. Rather, it is an attempt to impress this Court with her false characterization of the facts and to needlessly run-up costs and fees. Plaintiff's Motion states: "Ms. Uy admitted that [Eric] Gongora was terminated by Amkor [his prior employer] for cause and that he was not eligible for rehire at Amkor." Doc. 157 at 3:21. As an initial matter, Plaintiff' Motion does not cite to Ms. Uy's deposition transcript to support any of these alleged statements. Plaintiff cannot provide a citation to the record because Ms. Uy never gave such testimony. In fact, the record shows that Ms. Uy did not know why Eric Gongora left the employ of Amkor more than a year before she even joined STATS

ChipPAC. Uy Dep. 60:9-19, attached as **Exhibit 13**. Further, Ms. Uy explained that because Mr. Gongora was hired by a predecessor company, ChipPAC, more than a year before STATS and ChipPAC merged, she was not involved in hiring Mr. Gongora. *See* **Exhibit 7** at 52:20-24.

Plaintiff also represents that: "[Ms. Uy] admitted that Gongora's application denied any criminal convictions when, in fact, Gongora has been convicted of a felony in Florida." Doc. 157 at 3:25-4:2. Further, Plaintiff represents that: "[Ms. Uy] did not find cause to doubt Mr. Gongora when confronted with the (known) fact that Gongora was fired from Amkor for . . . : (1) making unwanted sexual advances to a female employee; (2) misusing company computers to view pornographic websites; (3) misusing company computers to exchange sexually explicit materials with female co-employees; and (4) attempting to transport illegal drugs from Arizona to the Philippines using Amkor's FedEx business account." Doc. 157 at 4:4-13. Plaintiff's statements falsely suggest that Ms. Uy knew of these alleged misdeeds of Mr. Gongora at the time she investigated the alleged "ketchup incident" in April 2007.[1] Again, Ms. Uy never gave any such testimony. In fact, the record is devoid of any inquiry into Ms. Uy's knowledge of Mr. Gongora's prior alleged misconduct at his prior employer. Instead, Plaintiff's counsel raised these accusations about Mr. Gongora as if they were fact and asked Ms. Uy if she was ever made aware of them. Ms. Uy testified that she was not made aware of these alleged misdeeds by Mr. Gongora until she prepared for her deposition in this litigation. Uy Dep. 41:7-45:24, attached as **Exhibit 14**.

---

[1] The ketchup incident refers to Plaintiff's complaint to human recourses that someone put a dab of ketchup in her chair. To investigate Plaintiff's allegations, Ms. Uy traveled from STATS ChipPAC Inc.'s headquarters in Fremont, California to Phoenix, Arizona, where Plaintiff worked. Plaintiff did not sit in the chair.

1  Indeed, Plaintiff takes great liberty with this Court when exaggerating the record.[2]
2  Plaintiff's statements are not only misrepresentations, but they also are completely
3  irrelevant to her request for additional deposition time with Ms. Uy. Even if Plaintiff's
4  statements were true, which they are not, they do not provide a legal basis for requesting
5  additional deposition time under Rule 30(d)(1) or for requesting sanctions under Rule
6  30(d)(2). Therefore, the sole purpose of these misrepresentations must be to impress
7  upon the Court Plaintiff's mischaracterization of facts.

### III. CONCLUSION

For the foregoing reasons, STATS ChipPAC respectfully request that this Court deny Plaintiff's Motion to Complete Gail Uy's Deposition and For Sanctions.

RESPECTFULLY SUBMITTED this 22nd day of June 2009.

> OGLETREE, DEAKINS, NASH,
> SMOAK & STEWART, P.C.
>
>
> By: s/ Monique D. Young
>   L. Eric Dowell
>   Caroline K. Larsen
>   Monique D. Young
>   2415 East Camelback Road, Suite 800
>   Phoenix, Arizona 85016
>   Attorneys for Defendants STATS ChipPAC,
>   Inc. and STATS ChipPAC, Ltd.

---

[2] Plaintiff misrepresents the testimony in Michael Gentry's declaration when she states that Eric Gongora was fired for "attempting to transport illegal drugs from Arizona to the Philippines." Doc. 157 at 4:12-13. Mike Gentry's declaration expressly states that "[he] does not know if the drug was illicit or not. . . ." *See* Doc. 157, Exhibit 10 at 2:25-3:2. Plaintiff's Motion also states that Eric Gongora was fired for making unwanted sexual advances to a female employee. Doc. 157 at 4:8. However, Michael Gentry's declaration states that Eric Gongora was fired for being "too friendly" with a female employee and that she did not welcome his requests for dates.

**CERTIFICATE OF SERVICE**

I hereby certify that on the 22nd day of June 2009, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Peter Strojnik
Peter Strojnik, P.C.
3030 North Central Avenue, Suite 1401
Phoenix, Arizona 85012
Attorney for Plaintiff

Peter K. Strojnik
The Law Firm of Peter Strojnik
3030 North Central Avenue, Suite 1401B
Phoenix, Arizona 85012


s/ Debra A. Perkins


7388641.1 (OGLETREE)