**THE LAW FIRM OF PETER STROJNIK**
ATTORNEYS AT LAW
SUITE 1401
3030 North Central Avenue
Phoenix, Arizona 85012
(602) 297-3019

Peter Kristofer Strojnik AZBN 026082 CABN 242728
pksesq@aol.com
Attorney for Plaintiffs

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| DIANE SAHAKIAN, a single woman, | NO. 2:08-cv-241-PHX-HRH |
| Plaintiff, | **PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE IN OPPOSITION TO MOTION TO COMPLETE DEPOSITION OF GAIL UY AND FOR SANCTIONS** |
| vs. | |
| STATS ChipPAC, Inc., a foreign corporation; STATS ChipPAC, Ltd., a foreign corporation; TEMASEK HOLDINGS PRIVATE LIMITED, a foreign corporation; SINGAPORE TECHNOLOGIES SEMICONDUCTORS PRIVATE LIMITED, a foreign corporation. | |
| Defendants. | |

## I. INTRODUCTION

In a 180-degree turn, STATS now creates new objections to the completion of Ms. Uy's testimony. Instead of arguing in support of its reasoning at the time of Ms. Uy's hasty departure, STATS now argues that Plaintiff went over the time to which the parties allegedly stipulated and that Plaintiff has had enough time to depose Ms. Uy.

-1-

In support of STATS' first argument, it argues that Plaintiff and Defendant agreed to limit the deposition to three hours. Yet, STATS cites only to a courtesy email from Plaintiff's counsel where he simply anticipates the deposition would last three hours. Plaintiff is puzzled how Plaintiff's anticipation can transmute into an agreement, and how this alleged agreement can transmute into the stipulation required under Rule 29(a).

STATS' second argument is that Plaintiff has had sufficient time to depose Ms. Uy, and therefore they were entitled to terminate the deposition. STATS attempts to impart the onus on Plaintiff to demonstrate good cause in accordance with Rule 30(d)(1). However, Rule 30(d)(1) applies only where the moving party has already exceeded the time permitted for the deposition under the Rules. Also, the onus is not on Plaintiff to demonstrate good cause; rather, STATS must demonstrate bad faith, annoyance, embarrassment or oppression in order to secure an Order in support of terminating the deposition. F.R.C.P. 30(d)(3). Not only has STATS failed to argue bad faith, annoyance, embarrassment or oppression, but it has failed to timely move to terminate the deposition. Instead, STATS argues relevance and alleged timing agreements.

## II.  REPLY AND SUPPORTING LAW

### A.  Plaintiff Never Stipulated to Time Limit the Deposition Pursuant to FRCP 29(a)

Rule 29(a) of the Federal Rules of Civil Procedure provides in relevant part:  [T]he parties may stipulate that … (a) a deposition may be taken before any person, at any time or place, on any notice, and in any manner specified …"

STATS *now* argues that Plaintiff allegedly agreed to limit the deposition of Ms. Uy to three hours, and therefore Ms. Uy was permitted to terminate the deposition well before the 7-hour time limit provided by the Rules. STATS cites to Plaintiff's counsel's email wherein he states that he anticipates the deposition will not last more than three hours. However, Plaintiff is puzzled how STATS can transmute Plaintiff's anticipation into an agreement and how this alleged agreement transmutes into the stipulation required under Rule 29(a). In fact, Plaintiff never stipulated to limit the deposition testimony to Ms. Uy. Plaintiff never agreed to limit her deposition testimony. Rather, Plaintiff merely extended a courtesy to STATS' local counsel as to how long he anticipated the deposition would last to assist him in arranging a flight back to Phoenix. Furthermore, had Ms. Uy not provided 155 "don't know" answers, 64 "it depends" answers, and 56 "maybe" answers, *See generally*, Uy Deposition (Exhibit 1), the deposition most likely would have been completed within three hours.[1]

STATS further states, "Based on Plaintiff's counsel's representations that the deposition would conclude in two to three hours, defense counsel agreed to reschedule Ms. Uy's deposition for 10:00 a.m." *See*, Doc. 175 at 2. The foregoing statement alludes to an argument that perhaps Ms. Uy had other pressing matters in the afternoon that could not be accommodated simply because the deposition was moved up a mere 30 minutes from 9:30 to 10:00. However, STATS does not state what pressing matters Ms. Uy had. In essence, STATS argues that since the deposition was moved up 30 minutes and Plaintiff anticipated a three-hour deposition, this excuses Ms. Uy from further testimony. Of course, these arguments were not mentioned when

---

[1] It has been a common theme for STATS current employees to provide such answers during depositions and to take an

STATS' local counsel and Ms. Uy stormed out of the deposition room, and indeed it seems to be a common theme for STATS to extend the slightest and most common of accommodations, e.g. moving deposition up 30 minutes and allegedly not taking extended breaks during deposition, and translate such into an excuse for several mal acts – termination of BJ Han deposition, termination of Gail Uy deposition, continuous speaking and suggestive objections, etc.

**B. STATS May Not Terminate a Deposition Unless Its Moves for a Protective Order Supported By a Showing of Bad Faith, Annoyance, Embarrassment or Oppression - FRCP 30(d)(3); STATS Argument That Plaintiff Must Demonstrate Good Cause Erroneously Puts the Onus on Plaintiff**

Rule 30(d)(3)(A) (*formerly (d)(4)*) of the Federal Rules of Civil Procedure states in relevant part:

> At any time during a deposition, the deponent or a party may move to terminate or limit it on the ground that it is being conducted in ***bad faith*** or in a manner that unreasonably ***annoys, embarrasses, or oppresses*** the deponent or party. The motion may be filed in the court where the action is pending or the deposition is being taken. If the objecting deponent or party so demands, the deposition must be suspended for the ***time necessary*** to obtain an order.

(Emphasis supplied)

Here, STATS attempts to put the onus on Plaintiff by arguing that Plaintiff must demonstrate good cause and citing to Rule 30(d)(1). Rule 30(d)(1) applies to procedural contexts where the moving party has already exceeded the time allotted for the deposition and seeks additional time. STATS' further cites to Fed.R.Civ.P. 30(d), which states, "Examples of grounds for granting an extension include whether a witness requires an interpreter, the examination covers events occurring over a long period of time or extensive documents, or if

---

unusually long time to review documents.

-4-

multiple parties are deposed." *See,* Doc. 175 at 8.  This advisory note demonstrates the purpose of Rule 30(d) is to grant an extension over the Rule-prescribed time allotment, e.g. use of interpreter will delay the normal flow of the deposition, extensive documents will require the introduction of and witness review of multiple exhibits thereby depriving the examiner of substantive examination time, and multiple deponents will result in less examination time for each deponent.  The case to which STATS cites – *Jensen v. AstraZeneca*, 2004 WL 2066837 (D.Minn. 2004) (holding moving party did not provide sufficient reason to extend deposition past 11 hours) – is a case in which the moving party was seeking deposition time allotment in excess of 7-hour limit and not in the procedural context of the termination of a deposition.

However, ***the onus is on STATS*** to properly move for a protective order in accordance with Rule 30(d)(3).  Instead, STATS will be exposing Plaintiff to increases costs and fees in the form of another flight to California and a full day of attorney's fees.

### i.   *Assuming STATS Did Move for a Protective Order, Its Arguments Are Set In Concrete and Appear to be Limited to Relevance, Prior Stipulation of Time, and Harassment*

"Rule 30(d)(4) is the only authority allowing the interruption of a deposition." *Warfield v. Gardner*, No. CV-04-0974-PHX-JAT (D. Ariz. 08/03/2006); *see also, Perrigon v. Bergen Brunswig Corp.*, 77 F.R.D. 455, 460-61 n. 4 (N.D. Cal. 1978).  Rule 30(d)(3) (*formerly (d)(4)*) is clear in that termination is only permitted for bad faith, oppression, embarrassment, or annoyance.

Here, assuming STATS had properly moved for a protective/termination order, STATS sole arguments are limited to: (1) Alleged prior time stipulation; (2) Relevance; and, (3) Harassment. The alleged stipulation has been addressed above.

STATS further claims that Plaintiff has had sufficient time to examine Ms. Uy on substantive topics and "irrelevant", "impertinent" and "academic" topics. *See generally*, Doc. 175. As noted by Rule 30(d)(3), irrelevance is not one of the grounds upon which a Party may terminate a deposition.

As for STATS' "harassment" argument, such does not fit within the categories set forth in Rule 30(d)(3) either. Assuming "harassment" fell into the category of "annoyance" or "oppression", it is difficult to believe the examination fell into these categories when STATS local counsel only objected on the basis of harassment on the second from the last page of the deposition.

At page 165 of page 169 of the Uy Depostion, Plaintiff was examing Ms. Uy on the differences between Scott Gooch's claims of bad management by Ms. Sahakian and the result of STATS Human Resources' investigation and conclusion thereto that Ms. Sahakian was a good manager, which is expressed in an July 11, 2007 email from Human Resources, to wit:

```
Q    This email is inconsistent with the statements made by
     Scott Gooch in his exit interview, is it not?
     MR. DOWELL:   Object to the form of the question.
     THE WITNESS:  I can't tell.
```

Q    BY MR. STROJNIK:  Well, we do know that he said in his exit interview that Diane is the worst manager that he's ever had; correct?

A    Yes

Q    Do you see anything consistent with that statement in Exhibit 31?[2]

A    Not in the same words.

Q    Are there different words expressing the same meaning somewhere in Exhibit 31?

A    I think there's a line on here that says one of them said that she was constantly calling them to check up on whether or not Scott was working, saying he didn't seem that busy.

Q    Scott Gooch; right?

A    Yes.

Q    Where is the consistency in Scott Gooch's statement that Diane is the worst manager he has ever had, and defining Diane was constantly checking on Scott Gooch to make sure he was working?

     MR. DOWELL:  Object to the form of the question.

     THE WITNESS:  I don't know.

Q    BY MR. STROJNIK:  Actually, there are some statements that are entirely inconsistent with Scott Gooch's statement, aren't there?

A    Maybe.

Q    Which statements to you find to be maybe entirely inconsistent with Scott Gooch's statement?

*See*, Uy Deposition 165:6-166:14 (Exhibit 1).

STATS' local counsel objects to the foregoing question:

```
        MR. DOWELL:  Object to the form of the question.  I
believe the witness needs to read this exhibit because this
is not Scott Gooch's statement.  This is the statement of
two other employees concerning their feelings of Scott
Gooch.³  So I don't want counsel to mislead the witness.

Q    BY MR. STROJNIK:  Do you feel I am misleading you?

A    I don't know.
```

Id. at 166:15-20.

Plaintiff's counsel never had the opportunity to continue his line of questioning concerning Mr. Gooch's opinion that Ms. Sahakian is a bad manager as compared to the result of the HR investigation concluding otherwise. Instead, Plaintiff's counsel set aside that line of questioning for later in the deposition, and began a line of questioning as to whether STATS condones derogatory remarks by its vendors on Page 168 of 169:

```
Q    Are you aware that during Diane Sahakian's deposition
your counsel, the man sitting to your left, came into the
room and began laughing at Diane Sahakian when he didn't
like the answers that she was giving?

     MR. DOWELL:  Object to the form of the question.
Completely misstates the event.  This witness was not there
at the event.  These questions are harassing.  Counsel, I
suggest you move on to some other legitimate questions or
we'll be finished here.

Q    BY MR. STROJNIK:  Are you aware that - -
```

---

[2] Exhibit 31 refers to a July 11, 2007 email, which is attached hereto as Exhibit 2.

[3] In actuality, Exhibit 31 (Exhibit 2 attached hereto) does not refer to feelings about Scott Gooch, but refers to feelings about Ms. Sahakian contrary to what STATS' local counsel represents. This is yet another one of STATS' local counsel's suggestive speaking objections.

  MR. DOWELL: One more question - -

Q BY MR. STROJNIK: Are you aware that your counsel has called me and my son two idiots, cretins and morons? Is that how your vendors conduct business?

  MR. DOWELL: We are off the record.

  MR. STROJNIK: No, we are not.

  MR. DOWELL: Oh, we're leaving, Counsel. Gail, let's go.

  MR. STROJNIK: Let the record reflect the witness and counsel have stood up without authorization and they've left.
  MR. DOWELL: I don't need your authorization. I told you can ask legitimate questions. You refused to do so. And we're done.

Id. at 168:18-169:19.

Obviously, the above questioning refers to STATS general acceptance of a hostile work environment through racial epithets, tolerance of known sexual abusers in their employment pool and general hostility toward pretty much everybody else[4]. But counsel for STATS did not terminate the deposition to seek a protective/termination order based on annoyance of Ms. Uy.

---

[4] Examples of STATS' acceptance of hostility toward minorities, women and people in general – and thus the creation of a hostile work environment - are found throughout this discovery. *See*, e.g. Docs 161, 164 and 171. At STATS' it is no offense to display prejudice toward Jews, Chinese and Indians. It is accepted practice to continue employment of a known sexual abuser and a convicted felon, a physical abuser of pregnant women, a man who puts a gun to a woman's head and tries to run her over with a car, a man who refers to women as "c\_\_\_t" and a man who harassed a single mother - Ms. Sahakian. This type of a conflict is resolved at STATS by firing the single mother. It is common practice to refer to STATS' CEO Tan Lay Koon as a "f\_\_\_ing a\_\_hole". Apparently, it is also accepted practice to refer to opposing counsel as "idiots", "cretins", "morons" and to want to engage in a fist fight.

-9-

*Ms. Uy was not annoyed.* Mr. Dowell was annoyed because Mr. Strojnik asked whether STATS finds it acceptable for its vendors – such as attorneys – to refer to others as "idiots", "morons" and "cretins", and to want to engage in a physical fistfight.[5]

### C.  Plaintiff Is Entitled To Sanctions

In *Hackett v. Segerblom,* No. 2:06-cv-01081-JCM-GWF (D.Nev. 08/02/2007), counsel for Plaintiff terminated a deposition when counsel for Defendant asked the deponent questions concerning lost wages. Defendant was forced to file a Motion to Compel and for Sanctions to complete the deposition of Plaintiff. The Court noted:

> [T]he Court is authorized to award Defendant his attorney's fees and costs in connection with a successful motion to compel a deponent to answer questions. The Court also has the inherent power to sanction a party for abusive discovery conduct, such as occurred here, where a party improperly terminates her deposition, fails to seek relief under Rule 30(d)(4) and unreasonably delays the discovery process.
>
> \*          \*          \*          \*          \*          \*          \*
>
> After terminating the deposition, Plaintiff's counsel did not move for a protective order under Rule 30(d)(4) even though Defendant's counsel notified her in writing that it was her responsibility to seek relief under the rule…Plaintiff's conduct in this regard has unreasonably delayed resolution of the deposition dispute and the conduct of discovery in this case."

The Court in *Hackett* concluded:

> IT IS FURTHER ORDERED,  pursuant to Rule 37(a)(4), that Defendant recover its reasonable attorney's fees and costs incurred in filing this motion.  The Court

---

[5] If *counsel* wishes not to be annoyed, he should not put himself into the path of discovery; better yet, he should try to conduct himself appropriately.

-10-

**will grant an award of a reasonable attorney's fees and costs as it relates to the reasonable time and expense that Defendant incurred in an order that Plaintiff be required to again attend her deposition**…

(Emphasis Supplied)

Here, STATS has the audacity to argue that Plaintiff "runs up STATS ChipPAC costs and fees." *See*, Doc. 175 at 2. In fact, STATS has run up its own costs and fees by terminating the deposition without authorization or proper legal basis, failing to file a Motion to Terminate, and interfering with and delaying this discovery process even further. Plaintiff seeks a full day of attorney's fees and the costs of airfare and rental car for the trip to the Bay Area.[6] STATS cannot be permitted to walk out of a deposition without penalty.

### III.  CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests her Motion to Complete the Deposition of Gail Uy be granted.

RESPECTFULLY SUBMITTED this 25th Day of June, 2009.

THE LAW FIRM OF PETER STROJNIK

_____
Peter Kristofer Strojnik
Attorney for Diane Sahakian

---

[6] Receipts shall be provided should the Court entertain sanctions. Counsel's fees are set forth in the original moving papers. Doc. 157.