**THE LAW FIRM OF PETER STROJNIK**
ATTORNEYS AT LAW
SUITE 1401
3030 North Central Avenue
Phoenix, Arizona 85012
(602) 297-3019

Peter Kristofer Strojnik AZBN 026082 CABN 242728
pksesq@aol.com
Attorney for Plaintiffs

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| DIANE SAHAKIAN, a single woman, | NO. 2:08-cv-241-PHX-HRH |
| Plaintiff, | **PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT STATS CHIPPAC'S MOTION TO AMEND ANSWER TO ADD COUNTERCLAIM** |
| vs. | |
| STATS ChipPAC, Inc., a foreign corporation; STATS ChipPAC, Ltd., a foreign corporation; TEMASEK HOLDINGS PRIVATE LIMITED, a foreign corporation; SINGAPORE TECHNOLOGIES SEMICONDUCTORS PRIVATE LIMITED, a foreign corporation. | And **MOTION FOR ATTORNEYS' FEES 28 U.S.C. 1927** |
| Defendants. | |

### I. INTRODUCTION

Defendants seek to add a counterclaim for abuse of process, but fail to allege either an "ulterior purpose" or "a willful act in the use of judicial process not in the regular conduct of the proceeding." *Pochiro v. Prudential Ins. Co. of Am.,* infra. Defendants' attempt to insert an "abuse of process" claim into this litigation is a maladroit attempt to interfere with Plaintiff's selection of counsel – for clearly Defendants must know that if an "abuse of process" claim

based on the conduct of this litigation is allowed, Plaintiff's counsel will be forced to withdraw pursuant to ER 3.7.

In a disguised precursor to a Motion to Disqualify Plaintiff's current counsel, Defendant STATS ChipPAC has inserted itself into matters other than employment law and asserted the most legally insufficient attempt to amend their Answer to add a Counterclaim for abuse of process. **The basis?** *Among other things*, Plaintiff's counsel's [falsely alleged] failure to confer with STATS' on deposition dates; Plaintiff's [falsely] alleged failure to abide by the Rules of Civil Procedure; Plaintiff's act of amending her Trial Witness List; and many other acts and alleged acts that STATS unusually attempts to characterize as an abuse of process. To permit STATS to amend their Answer now would be to circumvent the first Federal Rule of Civil Procedure: To secure the "**just, speedy, and inexpensive determination of every action and proceeding**." (Emphasis Supplied).

STATS' Motion to Amend must be denied for several reasons. First, granting the Motion would be futile since Defendants not as much as state the elements of the tort. Defendants also fail to plead respondeat superior as it is clear Plaintiff did not do the acts complained of. Second, Defendants' Motion to Amend comes 8 months after the deadline for amendment of pleadings and 8 months after they became aware of the first act of alleged abuse of process. Defendants "good cause" for failing to timely move to amend is that they were hopeful that Plaintiff's alleged abuse would not continue, but this hope does not dispel the requirement that the Parties are expected to abide by this Court's Scheduling Order.

Third, permitting Defendants to amend their Answer would create extreme prejudice for Plaintiff because the discovery and expert witness deadlines have come and gone.

Notwithstanding Defendants' cut and dried analysis of its abuse of process claim that no additional discovery is needed, Plaintiff does not know Defendants' damages, does not know which documents were introduced at depositions but allegedly never produced, and does not know which subpoenas were allegedly never served on Defendants.  Furthermore, Plaintiff will not be permitted to consult an expert on the legal process to assist herself and the jury in making a proper determination of this claim.

Fourth, it is clear that Defendants' Motion is a disguised (but conspicuous) attempt to interfere with Plaintiff's selection of counsel[1].  No doubt Plaintiff's counsel will be forced to withdraw from this matter as an abuse of process claim would make them witnesses.  And Plaintiff is not surprised by this strategy.  Since Plaintiff's counsel appeared, several of STATS' mal acts have been uncovered to their severe detriment.

Finally, this Court does not have supplemental jurisdiction over this State law counterclaim as it is not compulsory.  The facts surrounding Plaintiff's harassment, demotion and termination are wholly different than the facts (and do not overlap) surrounding Plaintiff's attempt to redress such wrongs.

The entirety of Defendants' Motion and lodged Answer is frivolous and entitles Plaintiff to attorneys' fees in accordance with 28 U.S.C. 1927.

## II.  RESPONSE AND SUPPORTING LAW

**A.  STATS' Amendment Is Futile**

---

[1] In fact, this is the type of "ulterior purpose" that the tort of abuse of process requires.  But the "ulterior purpose" here is that of the Defendants not Plaintiff.

"Five factors are taken into account to assess the propriety of a motion for leave to amend: bad faith, undue delay, prejudice to the opposing party, futility of the amendment, and whether the plaintiff has previously amended the complaint." *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004). "A motion for leave to amend may be denied if it appears to be futile or legally insufficient." *Miller v. Ryoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988). "A court properly exercises its discretion in denying leave to amend if the proposed amendment would be futile." *In re Dynamic Random Access Memory Antitrust Liti*gation, 546 F.3d 981, 987 (9th Cir. 2008). Refusal to grant leave to amend is proper where the legal basis for the cause of action is tenuous. *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990). Futility occurs where no set of facts can be proven under the proposed amendment that would constitute a valid claim. *Miller*, 845 F.2d at 214.

### i.    *Defendants' Averments Fail to State a Claim for Abuse of Process*

"The essential elements of an abuse of process claim are (1) 'an ulterior purpose' and (2) 'a willful act in the use of judicial process not in the regular conduct of the proceeding.'" *Pochiro v. Prudential Ins. Co. of Am.,* 827 F.2d 1246, 1252 (9th Cir. 1987) (quoting *Rondelli v. County of Pima*, 586 P.2d 1295, 1301 (Ariz. Ct. App. 1978)). It is well settled that "abuse of process requires some act beyond the initiation of the lawsuit." *Joseph v. Markowitz*, 551 P.2d 571, 575 (Ariz. Ct. App. 1976); *see also, Best Western International, Inc. v. Furber*, No. cv-06-1537-PHX-DGC (D.Ariz. 2008). "*Joseph* explicitly rejected the contention that the initiation of a lawsuit can constitute the necessary act" for abuse of process. *Blue Goose Growers, Inc. v. Yuma Groves, Inc.,* 641 F.2d 695, 697 (9th Cir. 1981). The "mere persistence in litigation, even

if based on an improper motive, does not sustain the tort" of abuse of process. *Crackel v. Allstate Ins. Co.*, 92 P.3d 882, 888 (Ariz. Ct. App. 2004). "[An] ulterior purpose alone cannot constitute abuse of process." *Bird v. Rothman*, 627 P.2d 1097, 1100 (Ariz. Ct. App. 1981). The "formal use of the [discovery] process is not sufficient to support an abuse of process." *Blue Goose Growers, Inc. v. Yuma Groves, Inc.*, 641 F.2d 695, 697 (9th Cir. 1981) (further explaining that the discovery was not used "to obtain a collateral advantage or used in any form of extortion"). "Generally, **proof that process was used to obtain or extort an unjustifiable collateral advantage is required; spite or ill will, or an intent to vex or harass, is insufficient** to establish abuse of process." Revised Arizona Jury Instructions 18, comment.; *Morn v. City of Phoenix*, 152 Ariz. 164, 730 P.2d 873 (1986).

Here, STATS' avers that "Sahakian and her counsel have initiated two additional lawsuits, added additional parties to this action…" Doc. 180 #27. However, Sahakian's initiation of two lawsuits is insufficient to state a claim for abuse of process. Defendants' entire lodged Answer fails to ever mention the words "ulterior purpose", but instead avers that Plaintiff had improper motives, intended to harass, and intended to increase STATS' fees and costs. But such intentions and motives are not sufficient. And Defendants cannot alter the lodged Answer as their hand has already been played. Defendants have already committed to the belief that Plaintiff had improper motives and intended to harass Defendants and their witnesses. Defendants have already committed to the belief that Plaintiff's motivation was to increase Defendants' costs and fees.

### ii.     *Defendants Fail to Plead Respondeat Superior*

-5-

"Arizona cases have reiterated that the attorney-client relationship is one of agent and principal, and that the rules of agency apply to the relationship." *Green Acres Trust v. London*, 688 P.2d 658, 663 (Ariz. Ct. App. 1983); *Balmer v. Gagnon*, 19 Ariz. App. 55, 504 P.2d 1278 (1973); *Arizona Title Ins. And Trust Co. v. Pace*, 8 Ariz. App. 269, 445 P.2d 471 (1968); *accord*, Restatement (Second) of Agency § 1, comment e. Vicarious liability "rests upon the employment of the servant by the master and the master's right to exercise direction and control over his work in the conduct of his business." *Ray v. Tucson Medical Ctr.*, 72 Ariz. 22, 33, 230 P.2d 220, 227 (1951). "Vicarious liability is not based upon the defendant's own fault. Rather, it is based upon the principle that he must stand good for the wrong of another person." 2 Dan B. Dobbs, The Law of Torts, § 333, at 906 (2001). "Those whose liability is only vicarious are fault free – someone else's fault is imputed to them by operation of law." *Wiggs v. City of Phoenix*, 198 Ariz. 367, ¶13, 10 P.3d 625, 629 (2000).

Here, it is clear that Plaintiff did not do the acts averred in Defendants' lodged Answer; rather, it was Plaintiff's counsel – her agent. Nowhere within Defendants' lodged Answer do they aver that Plaintiff's counsel took the actions complained of, that Plaintiff's counsel is Plaintiff's agent, or that Plaintiff allegedly may be liable for the tort based on Plaintiff's counsel's actions. It would be futile to permit amendment.

**B.  Defendants' Motion Is Extremely Untimely**

"Where the party seeking amendment knows or should know of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend may be denied." *De Saracho v. Custom Food Mach., Inc.*, 206 F. 3d 874, 878 (9th Cir. 2000).

Here, the Rule 16 Scheduling Order required amendment of the pleadings by October 2, 2008, which is approximately 8 months ago. This Court will permit amendments after the deadline "for good cause shown." (Doc. 13). The "good cause" set forth by Defendants is the "hope that Plaintiff's litigation conduct would improve." *See*, Doc. 179 at 5. It indeed appears that Defendants' "courtesy" in this respect takes precedence over the Court's orders. Defendants have had several months to amend their pleadings with the knowledge of Plaintiff's [wrongly] alleged abuse of process. For example, Defendants cite to Plaintiff' service of a Rule 30(b)(6) deposition, but this occurred at the beginning of this year. Defendants cite to Plaintiff's failure to appear at an Independent Medical Examination, but this also was at the beginning of this year. Many of the proffered bases STATS sets down for the abuse of process claim were within its and their local counsel's knowledge as long as 8 months ago, yet they did nothing to redress these [wrongfully] alleged wrongs. Even STATS admits it has had sufficient knowledge of the acts: "Plaintiff's abuse of the legal process has been ongoing for nearly eight months…" *See*, Doc. 179 at 4. Furthermore, STATS may argue that some of the proffered bases were not within their knowledge until only a month ago, but the tort of abuse of process does not require quantity (numerous factual bases); rather, it requires quality (at least one valid factual basis). There is no excuse for Defendants' lack of timeliness.

## C.  Defendants' Lack of Timeliness Will Cause Plaintiff Extreme Prejudice

The lack of timeliness will preclude Plaintiff from obtaining an expert witness and propounding any discovery to determine the legitimacy of Defendants' claims. Defendants argue that its proposed counterclaim "will not require any additional written discovery or

-7-

depositions." *See*, Doc. 179 at 5. However, Plaintiff is unaware of Defendants' damages and what they did to mitigate said damages. Furthermore, defending against a claim for abuse of process is not as cut and dried as having a "full record of all proceedings in this litigation…" Id. Plaintiff must discover which persons were the deponents in the "numerous depositions" that were allegedly set unilaterally. Doc. 180 at ¶17. Plaintiff must discover which of these subpoenas were allegedly never served on Defendants. Plaintiff must discover which documents were presented to deponent that were allegedly not previously produced. Id. Plaintiff must discover what this "ongoing, repeated abuse of the legal process" is. Id. at ¶11. It should also be noted that STATS only gives *examples* of the alleged abuse of process in the lodged Answer. STATS prefaces "examples" of the abuse of process with, "For example…" Plaintiff is unaware of what other acts Defendants contend are the "ongoing, repeated abuse of the legal process" as Plaintiff merely has examples set forth on the lodged Answer. Furthermore, STATS' Motion (Doc. 179) simply states the abuse of process "*includes*" the bulleted acts. Plaintiff will not be permitted to propound any written discovery or depose any STATS' agent to determine what the full range of acts alleged to be abuse are, what documents were allegedly never produced but introduced at depositions, what subpoenas were allegedly never served on STATS, and what depositions were set unilaterally.

Also, Plaintiff would be precluded from obtaining an expert witness on the legal process and procedure. Plaintiff cannot vigorously defend an abuse of process claim without the ability to consult with an expert who will offer his/her opinion on whether the acts alleged to be abuse are in fact an abuse of process. Instead, Plaintiff will be forced to rely on a lay jury to make an

uninformed decision on the Rules of Civil Procedure without the benefit of a learned expert on procedure and the legal process.

**D. Defendants' Motion Is Made In Bad Faith. It is a Thinly Disguised Attempt to Interfere with Plaintiff's Choice of Counsel**

It is clear from the utter and complete lack of any basis for filing the Motion to Amend that defendants' and their counsel's true motive was to affect a withdrawal of counsel for the Plaintiff. STATS' ulterior purpose is understandable. Plaintiff's counsel conducted thorough due diligence in the preparation of the case, caught Defendants' star witness Mr. Gongora in perjury, established that Defendants CEO – by his own admission – does not know what "sexual harassment" is, does not know what "hostile work environment" is, nor does he know what "retaliatory discharge" is. Plaintiff's counsel has determined that the reason for Plaintiff's demotion to "special projects" was her supervisor's BJ Han's frenzied demand that she apologize to him for complaining about the harassment in the so called "**I am done D-O-N-E with you; I never want to see you again**" speech on August 7, 2007. Defendants are motivated to remove Plaintiff's counsel by creating this phantom abuse of process claim because Plaintiff's counsel has established proof that in response to a complaint of harassment by a single mother, STATS will fire the single mother, and not the harasser whose history discloses that he is (i) convicted felon, (ii) known sexual abuser, (iii) known intimidator of women, (iv) put a gun to a woman's head to exercise his power over her, (v) kicked a pregnant woman in the back against the wall, (vi) assaulted a woman, (vii) ran a pregnant woman down with a car in the parking lot, (viii) lied on his application for employment (twice), (ix) tried to smuggle drugs from the US to the Philippines using his employer's Fed Ex account, (x) used

employer's computers to surf porn sites, (xii) used employer's computers to exchange pornographic e-mails, and (xiii) committed perjury when testifying for STATS in the current case. The filing of the Motion to ad a phantom abuse of process counterclaim is the last line of defense against the discovery of STATS' anti-Jewish, anti-Chinese, anti-Indian and anti-women culture. Clearly, if the unsupportable counterclaim for abuse of process were allowed, Plaintiff's counsel would become witnesses, necessitating their withdrawal. See ER 3.7[2]. The improper purpose is discernible not only from the wealth of evidence against STATS, but also by its choice of bringing the motion late in the case in federal litigation when it could easily be brought in the State Court litigation without any adverse impact on representation.

**E.   Supplemental Jurisdiction Is Not Appropriate – Facts Surrounding *Sahakian's Termination* Are Not "So Related" To Facts Surrounding *Sahakian's Attempt to Redress the Termination***

Title 28 U.S.C. § 1367(a) allows district courts to have "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III…"   "[E]ven under section

---

[2] **ER 3.7.   Lawyer as Witness**

(a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:

(1) the testimony relates to an uncontested issue;

(2) the testimony relates to the nature and value of legal services rendered in the case; or

(3) disqualification of the lawyer would work substantial hardship on the client.

(b) A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by ER 1.7 or ER 1.9.

1367(a), courts must still distinguish between compulsory and permissive counterclaims: federal courts have supplemental jurisdiction over compulsory counterclaims, but permissive counterclaims require their own jurisdictional basis." *Hunt v. Clayton-Parker & Assocs.*, 869 F.Supp. 774, 778 (D.Ariz. 1994); *see also, Unique Concepts Inc. v. Manuel*, 930 F.2d 573, 574 (7th Cir. 1991); *Shamblin v. City of Colchester*, 793 F.Supp. 831, 833 (C.D. Ill. 1992); *and see*, 6 Charles Alan Wright, Arthur Miller and Mary Kay Kane, Federal Practice and Procedure, § 1422 (1989) (noting that while federal courts have jurisdiction over counterclaims, permissive counterclaims must be supported by independent grounds for federal jurisdiction). "[S]ection 1367(a) itself implicitly recognizes that only a compulsory counterclaim forms a part of the same case or controversy of the claim giving rise to federal jurisdiction." *Hunt*, 869 F.Supp. at 778. Thus, the wrongfully alleged abuse of process claim is *not* a compulsory counterclaim.

Rule 13(a) of the Federal Rules of Civil Procedure states that a compulsory counterclaim "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim…" The Ninth Circuit applies the "logical relationship" test to determine whether a counterclaim is compulsory. *In re Pinkstaff*, 974 F.2d 113, 115 (9th Cir. 1992). The "logical relationship" test centers around "whether the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." *Pochiro v. Prudential Life Ins. Co. of America*, 827 F.2d 1246, 1249 (9th Cir. 1987). Therefore, "courts should consider whether the facts necessary to prove the claim and counterclaim substantially overlap." *Hunt*, 869 F.Supp. at 778; *Pochiro*,

827 F.2d at 1251; *Grumman Sys. Support Corp. v. Data General Corp.*, 125 F.R.D. 160, 162 (N.D. Cal. 1988).

Here, the "facts necessary" to prove Plaintiff's claims surround her employment, harassment, demotion and termination. The "facts necessary" to prove Defendants' proposed abuse of process counterclaim are whether Plaintiff filed certain motions, served certain subpoenas, and noticed particular depositions. To argue the "facts necessary" to prove the claim and counterclaim overlap is curious. It is foreseeable that examination of Ms. Sahakian at trial will begin with "**what happened after your FMLA leave?**", followed by "**what motivated you to serve a subpoena on Mr. Gongora's ex-wife?**"[3] One deals with Plaintiff's employment while the other deals with Mr. Gongora's and STATS' witness intimidation. Not only do the facts surrounding the two claims not *substantially* overlap, *they do not overlap at all*.

It should also be noted that this Court does not have diversity of citizenship jurisdiction as Defendants' failed to plead the amount in controversy exceeding $75,000.

**F.  Plaintiff is Entitled to Attorneys' Fees for Defendants' Frivolous Motion to Amend**

Title 28 U.S.C. 1927 states that any lawyer "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

It is clear that Defendants do not have a leg to stand on with their frivolous Motion and lodged Answer. Allegations such as unilateral setting of depositions, using the discovery process, serving multiple subpoenas, failing to serve third party subpoenas on Defendants, and

making additions to the Preliminary Trial Witness List are utterly lacking in any substance and would appear so to any lawyer practicing before this Court.  Indeed, the complete lack of any valid allegations within the lodged Answer requires the conclusion that Defendants have filed this Motion in an attempt to break the unemployed Plaintiff even further…*and to disqualify Plaintiff's counsel*.   Plaintiff incurred ten hours of fees for the research, preparation and submission of this Response.  At $450.00 per hour, Plaintiff requests $4,500.00.

### III.  CONCLUSION

For these reasons, Plaintiff respectfully requests Defendants' Motion for Leave to Amend be denied and that the Court award Plaintiff $4,500.00.

RESPECTFULLY SUBMITTED this 3rd Day of July, 2009.

THE LAW FIRM OF PETER STROJNIK



_____
Peter Kristofer Strojnik
Attorney for Plaintiff

---

[3] On another note, Ms. Sahakian is not involved with the strategy of amending Trial Witness Lists, serving subpoenas, noticing depositions, or filing Motions.  This is another reason why this claim cannot be added as only Ms. Sahakian's counsel can testify to these acts.