Peter Strojnik, 006464
3030 North Central Avenue, Suite 1401
Phoenix, Arizona 85012
Telephone: 602-524-6602
Facsimile: 602-296-0135
e-mail: *ps@strojnik.com*
Attorney for Plaintiff

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| DIANE SAHAKIAN, a single woman, ) | NO.  CV-08-241-PHX-HRH |
| ) | |
| Plaintiff, ) | **PLAINTIFF'S MOTION FOR** |
| ) | **RECONSIDERATION OF COURT'S** |
| vs. ) | **DENIAL (DOC 245) OF PLAINTIFF'S** |
| ) | **MOTION FOR IN CAMERA INSPECTION** |
| STATS ChipPAC, Inc., a foreign ) | **(DOC 159)** |
| corporation; STATS ChipPAC, Ltd., a ) | |
| foreign corporation; TEMASEK ) | (Crime – Fraud Exception) |
| HOLDINGS PRIVATE LIMITED, a ) | |
| foreign corporation; SINGAPORE ) | |
| TECHNOLOGIES SEMICONDUCTORS ) | |
| PRIVATE LIMITED, a foreign ) | |
| corporation. ) | |
| ) | |
| Defendants. ) | |
| ) | |

**SUMMARY OF MOTION FOR RECONSIDERATION**

Following his avowed desire to "never see [Plaintiff] again" and to take "action" against Plaintiff, BJ Han met with Gail Uy and STATS' corporate counsel, Ms. Janet Taylor, to confer. Three (3) business days later, BJ Han took adverse employment action against Plaintiff, demoting her to "special projects". Plaintiff seeks to determine whether the demotion to "special projects" was a direct result of the Uy – Han – Taylor meeting. If so, the crime-fraud

-1-

exception to the attorney client privilege would subject Gail Uy, BJ Han and Janet Taylor to discovery.

Obviously, before a determination whether the Uy – Han – Taylor discussions are subject to the crime fraud exception, we must know what these discussions were. Thus, Court's requirement that Plaintiff must prove a "prima facie" evidence of crime-fraud before an in camera examination will be conducted is *not* the correct standard. See *United States v. Zolin*, discussed more fully below. Instead, Plaintiff must only make a *minimal* showing that the crime-fraud exception *could* apply before in-camera review becomes available to her. Id.

Second, after moving for the in camera inspection, Plaintiff learned from Mr. Daniels that a conspiratorial agreement between Uy, Han and Taylor to take adverse employment action in violation of law would be consistent with STATS general practice, and that Mr. Daniels "would not be surprised" if that actually happened during the Uy – Han – Taylor meeting.

This Motion also seeks to affirm that the timing of the demotion of Plaintiff to "special projects" (adverse employment action) occurred 3 business days after the Uy – Han – Taylor meeting.

This Motion is more fully supported by the original Motion (Docs 159) and Reply (Doc 178) and the following Memorandum of Points and Authorities that is by this reference incorporated herein.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**1) Original Motion**

In her original Motion, Plaintiff disclosed that on August 7, 2007, BJ Han threatened her with "action", advised her that he "never wanted to see her again", and that he was "done" with

her if she did not apologize to him for complaining about the manner in which the investigation was undertaken. Immediately thereafter, Gail Uy organized a meeting with BJ Han and Janet Taylor, STATS' corporate counsel. A few days following the meeting, on August 13, 2007, STATS took its adverse employment action by demoting Ms. Sahakian to "special projects".

In her original Motion, Plaintiff sought an in-camera inspection of Gail Uy to determine whether an illegal agreement was reached or advice given by Janet Taylor on how to terminate Plaintiff's employment without incurring corresponding Title VII liability. If such had occurred, it would constitute a crime fraud exception to the attorney-client privilege. Plaintiff cited to 18 U.S.C. § 241 (Conspiracy against rights) for the "crime" part of the crime-fraud exception, and the venerable case of *United Services Automobile Ass'n v. Werley*, 526 P.2d 28 (Alaska 1974) for the "fraud" part of the exception.

**2) The Order Denying Motion**

The Court denied Plaintiff's Motion on the basis that Plaintiff did not provide "prima facie" evidence of crime or fraud:

> Plaintiff contends that she is entitled to invoke the "crime fraud" exception to the attorney-client privilege. In order to pierce the privilege, plaintiff has the burden of establishing prima facie evidence of either a crime or civil fraud. If corporate counsel were involved in either a criminal conspiracy or fraud to violate plaintiff's civil rights, the STATS defendants would lose the attorney-client privilege with respect to the conduct of that attorney. In re Sealed Case, 754 F.2d 395, 399(D.C. Cir. 1985). Here, the plaintiff must demonstrate that there is some basis (<u>prima facie</u> evidence) for believing that there was an agreement amongst Uy, Han, and corporate counsel to deprive plaintiff of her civil rights or that those persons otherwise set about deceiving plaintiff concerning her civil rights. Plaintiff has come forward with no such evidence.

Plaintiff previously pointed to the clear temporal connection between (1) BJ Han's statement to Plaintiff that he was "done with her"; (2) the Uy – Han – Taylor meeting; and (3) the "adverse employment action" which occurred within *3 business days after the "I'm D-O-N-E with you"* threat by BJ Han. This initial adverse employment action ultimately led to Plaintiff's eventual termination 11 months later.

**3) Plaintiff Has Demonstrated A Minimal Showing That the Crime-Fraud Exception Could Apply Under *Zolin***

In *United States v. Zolin*, 491 U.S. 554, 565, 105 L. Ed. 2d 469, 109 S. Ct. 2619, 63 A.F.T.R.2d (P-H) 1483 (1989), the Supreme Court held that in camera review of privileged information may be used to establish whether the crime-fraud exception applies. The standard for allowing an in-camera inspection is a *minimal* showing that the crime-fraud exception *could* apply. Id. at 572. The threshold showing is not "a stringent one". Id. All that is required is "'a showing of a factual basis adequate to support a good faith belief by a reasonable person,' *Caldwell v. District Court*, 644 P.2d 26, 33 (Colo. 1982), that in camera review of the materials may reveal evidence to establish the claim that the crime fraud exception applies." Id.

*Caldwell* further explains the threshold selected by the Court, noting that "requiring a strict prima facie case may not be possible at the discovery stage, and would result in an overzealous protection of the attorney-client privilege in a context where the rationale for that privilege may be inapplicable." *Caldwell*, 644 P.2d at 33. The *Zolin* threshold is set sufficiently low to discourage abuse of privilege and to ensure that mere assertions of the attorney-client

-4-

privilege will not become sacrosanct. *In Re Grand Jury Investigation*, 974 F.2d 1068 (9th Cir. 1992).

The *Zolin* threshold must be applied in light of the well-established practice of conducting in camera review to prevent abuses of the attorney-client privilege. See *Zolin*, 491 U.S. at 568-69 (citing *In re Grand Jury Witness*, 695 F.2d 359, 362 (9th Cir. 1982)). Because "disclosure of allegedly privileged materials to the district court for purposes of determining the merits of a claim of privilege does not have the legal effect of terminating the privilege," the in camera inspection can be an effective means to ensure that the attorney-client privilege is not abused. *Zolin*, 491 U.S. at 568. At the same time, use of the in camera review process must be conducted with respect for the attorney-client privilege. The threshold set out in *Zolin* strikes a balance between the intrusion imposed on the privilege by the review process and the likelihood that in camera review may reveal evidence to show that the crime-fraud exception applies.

The Court in *Zolin* set forth several factors to guide district courts in exercising their discretion in conducting in camera review. Once the threshold showing is made to allow in camera review, courts should make the decision to review in light of the amount of material they have been asked to review, the relevance of the alleged privilege material to the case, and the likelihood that in camera review will reveal evidence to establish the applicability of the crime-fraud exception. Id. at 572.

Here, the information provided by Mr. Daniels – former VP of HR at STATS – combined with Dr. Han's "done" diatribe, quickly followed by the adverse employment action, the declarations of several former employees stating under oath that special projects is fictitious

–5–

and a kiss of death, and Ms. Sahakian's ultimate termination in part due to her alleged inability to complete the fictitious special projects raises this matter beyond speculation. Furthermore, the in camera review would be a simple examination of Ms. Uy as to the content of the meeting, and once the deprivation of rights is proven to be true, the relevance is case-breaking. The *Zolin* test has been satisfied, especially at this discovery stage. *Caldwell*.

**4) Subsequent Discussion with Mr. Daniels – Offer of Proof**

Subsequently to the filing of the Motion, Plaintiff's counsel discussed the Uy – Han – Taylor meeting and the immediate subsequent action against the Plaintiff with Mr. Daniels. Mr. Daniels is known to the Court as the former head of STATS' Human Resources. Mr. Daniels has previously submitted to the Court his Declaration; see e.g. Doc 218-26, where he expressed his view of just how reluctant BJ Han is to follow American laws:

> 16. I recognize there are differences between Singapore and the U.S., in terms of customs and laws of how employees and job candidates should be treated. I also understand that a global economy has to be in legal compliance in every country where it has operations. I believe sometimes, this didn't seem to matter a lot at STATS ChipPAC. There are times when the General Counsel or I would have to remind Tan Lay Koon and others that he cannot disqualify a candidate for a position based on age or gender particularly in the U.S.
>
> 17. The Singaporean Leadership, e.g. Tan Lay Koon, BJ Han and other STATS ChipPAC directors, generally did not seem aware of, or interested in, any other national customs/laws other than their own.

Subsequent to the Motion for In Camera Inspection, Plaintiff's counsel again discussed the Sahakian case with Mr. Daniels. On the basis of these discussions and Mr. Daniels' Declaration, Doc 218-26, Plaintiff offers proof of the fact that entering a conspiratorial agreement with counsel would be consistent with STATS *modus operandi*, and that Mr. Daniels is expected to personally testify that, based on his experience and knowledge of

-6-

STATS Human Resources and the legal department, he "would not be surprised" if Uy, Han and Taylor cooked up a scheme to take illegal adverse employment action against Plaintiff, as they did on August 13, 2007. Plaintiff also offers proof that such action would be consistent with STATS' general practice.

## CONCLUSION AND PRAYER FOR RELIEF

For the foregoing reasons Plaintiff respectfully requests that this Court reconsider its Order denying Plaintiff's Motion for In Camera Review and conduct such review.

RESPECTFULLY SUBMITTED this 27th day of July, 2009.

**PETER STROJNIK, P.C.**

_____
Peter Strojnik
Attorney for the Plaintiff