L. Eric Dowell, SBN 011458
Caroline K. Larsen, SBN 022547
Monique D. Young, SBN 025121
Ogletree, Deakins, Nash, Smoak & Stewart, P.C., SBN 00504800
2415 East Camelback Road, Suite 800
Phoenix, Arizona 85016
Telephone:   (602) 778-3700
Facsimile:   (602) 778-3750
Eric.Dowell@ogletreedeakins.com
Caroline.Larsen@ogletreedeakins.com
Monique.Young@ogletreedeakins.com

Attorneys for Defendants STATS ChipPAC, Inc.
and STATS ChipPAC, Ltd.

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Diane Sahakian, a single woman,<br><br>            Plaintiff,<br><br>   vs.<br><br>STATS ChipPAC, Inc., a foreign corporation; STATS ChipPAC Ltd, a foreign corporation; Temasek Holdings Private Limited, a foreign corporation; Singapore Technologies Semiconductors Private Limited, a foreign corporation,<br><br>            Defendants. | CV08-241-PHX-HRH<br><br>**RESPONSE TO MOTION FOR RECONSIDERATION OF COURT'S DENIAL OF PLAINTIFF'S MOTION FOR IN CAMERA INSPECTION** |

      The STATS ChipPAC Defendants ("STATS ChipPAC") hereby file their Response in Opposition to Plaintiff's Motion for Reconsideration of Court's Denial of Plaintiff's Motion for *In Camera* Inspection of Gail Uy. (Doc. 248.) Plaintiff requests that this Court conduct an *in camera* inspection of Gail Uy, the Human Resources Manager for STATS ChipPAC, to determine whether the crime-fraud exception to the

attorney-client privilege applies to an attorney-client meeting between Ms. Uy, Plaintiff's former direct supervisor, Dr. Han Byung Joon ("Dr. Han") and STATS ChipPAC's General Counsel, Janet Taylor. (Doc. 248.) Plaintiff's Motion for Reconsideration implies that *in camera* examination of Ms. Uy is warranted simply because a lesser evidentiary standard applies to trigger *in camera* review of attorney-client privileged communications than is required to ultimately overcome the attorney-client privilege. Although the evidentiary standard for *in camera* review of attorney-client privileged information is less stringent than outright disclosure of attorney-client privileged communications, Plaintiff still fails to raise sufficient evidence for the Court to exercise its discretion and engage in *in camera* review. Plaintiff's justification for requesting *in camera* review is not based on specific evidence that may reveal that legal counsel was consulted in furtherance of a crime or fraud. Rather, Plaintiff offers speculation and suspicion in an effort to meet her threshold burden to demonstrate that *in camera* inspection in warranted. Because Plaintiff fails to make the requisite showing to justify *in camera* examination of Ms. Uy, Plaintiff's Motion for Reconsideration should be denied.

**I.     Plaintiff Fails To Make A Threshold Evidentiary Showing That An *In Camera* Review Of The Privileged Communications Is Warranted.**

As an initial matter, *in camera* review of attorney-client communications is generally disfavored, and a court should not conduct *in camera* review solely because a party begs it to do so. *Newport Pacific Inc., v. County of San Diego*, 200 F.R.D. 628, 632 (S.D. Cal. 2001); *United States v. Zolin*, 491 U.S. 554, 571 (1989). In *United States v. Zolin*, the United States Supreme Court made it clear that a party seeking *in camera* review must first establish a sufficient evidentiary showing that *in camera* review may reveal evidence to establish their claim that the crime-fraud exception applies, before a court can determine that *in camera* review is warranted. 491 U.S. at 572; *see also United States v. De La Jara*, 973 F.2d 746, 748 (9th Cir. 1992) ("[Defendant] correctly argues that under [*Zolin*], the district court could not consider the contents of a privileged letter

in assessing the government's prima facie case until the government had, as a threshold matter, presented non-privileged evidence 'sufficient to support a reasonable belief that in camera review may yield evidence that establishes the [crime-fraud] exception's applicability'" (quoting *Zolin*, 491 U.S. at 574-575)); *Medical Lab. Mgt. Consultants v. ABC, Inc.*, 30 F.Supp. 2d 1182, 1206 (D.Ariz. 1998) ("Where the movant seeks an in camera review of documents claimed to be privileged, he must demonstrate 'a factual basis adequate to support a good faith belief by a reasonable person . . . that an in camera review of the materials may reveal evidence to establish that the crime-fraud exception applies'" (quoting *Zolin*, 491 U.S. at 572)). The party seeking to undermine the attorney-client privilege may use non-privileged evidence to support its request for *in camera* review, however, mere allegations or suspicion are insufficient to invoke the exception. *Zolin*, 491 U.S. at 574-575; *In re Ditropan XL Antitrust Litig.*, 2007 WL 3256208 at *1 (N.D. Cal. Nov. 5, 2007) (citation omitted); *see also United States v. Martin*, 278 F.3d 988, 1001 (9th Cir. 2002).

If, and <u>only</u> if, the Court determines that Plaintiff has met her initial evidentiary threshold may the court then exercise its discretion to conduct an *in camera* review of the privileged communication. *Zolin*, 491 at U.S. 572. In deciding whether to exercise its discretion, the court may consider the facts and circumstances of the particular case, including: (1) the relative importance to the case of the alleged privileged information; and (2) the likelihood that the evidence produced through *in camera* review, together with other available evidence then before the court, will establish that the crime-fraud exception applies. *Id.*

**II.  Plaintiff Has Failed To Demonstrate That An *In Camera* Review Is Warranted.**

    **A.  Plaintiff Presents No Evidence Sufficient To Support A Reasonable Belief That *In Camera* Review May Yield Evidence That Establishes The Crime-Fraud Exception's Applicability.**

As argued in STATS ChipPAC's Response to Plaintiff's Motion for *In Camera* Examination of Gail Uy, Plaintiff has not, and cannot, assert any legitimate basis for

3

invading the sanctity of the attorney-client privilege. Plaintiff merely offers her and other former employees' general theory that a fraud vis-à-vis Plaintiff occurred and asserts that any communications with the company's General Counsel must have aided the fraud. The law, however, has never held that a party seeking *in camera* review meets their evidentiary burden by rank speculation. *In re Heritage Bond Litig.*, CV-20-1475-DT, 2004 WL 1970058 at *4 (C.D.Cal. July 23, 2004) (citation omitted); *see In re Bank of America Corp. Sec. Litig.*, 270 F.3d 639, 642, (8th Cir. 2001) ("Plaintiffs cannot satisfy their threshold burden by alleging that a fraud occurred and asserting that disclosure of any privileged communications may help prove the fraud."); *United States v. Martin*, 278 F.3d 988, 1001 (9th Cir. 2002) ("It is not enough to have a sneaking suspicion the client was engaging in or intending to engage in a crime or fraud when it consulted the attorney."). Moreover, the scant evidence that Plaintiff proffers to justify *in camera* review fails to provide any credence to substantiate her speculation.

Plaintiff's argument is premised on one basic theory: following a heated exchange between B.J. Han and Plaintiff on August 7, 2007, Dr. Han immediately met with Ms. Uy and General Counsel to devise a plan to unlawfully demote Plaintiff to Vice President of Special Projects. (Doc. 248.) To support this theory, Plaintiff offers only the following evidence: (1) the August 7, 2007 telephone conversation between Dr. Han and Plaintiff; (2) Plaintiff's August 13, 2007 reassignment to Vice President of Special Products; and (3) a meeting between Dr. Han, Ms. Uy and Ms. Taylor to discuss Plaintiff's threats to sue STATS ChipPAC and her supervisor, Dr. Han, which occurred at some undefined point in time. *Id.* Though Plaintiff argues that she has established a "clear temporal connection" between "the meeting" between Ms. Uy, Dr. Han and Ms. Taylor and Plaintiff's August 13, 2007 reassignment to Vice President of Special Projects, her evidence does not remotely suggest a legal conspiracy to deprive Plaintiff of her Title VII rights.

Plaintiff's counsel deposed Ms. Uy on May 25, 2009. During that deposition, Ms. Uy testified that she could not recall the date when she met with Dr. Han and

Ms. Taylor concerning Dr. Han's August 7, 2007 telephone conversation with Plaintiff.[1] *See, e.g.*, Uy Depo. 164:7-12, attached as **Exhibit 1**. Likewise, during his deposition, Dr. Han testified that he also could not recall the date or time when he spoke with Ms. Uy and Ms. Taylor. *See, e.g.*, Han Depo. 279:2-280:21, attached as **Exhibit 2**. According to his affidavit, however, Dr. Han affirmatively states that he did <u>not</u> consult with Ms. Taylor or Ms. Uy until <u>after</u> August 13, 2007, the date he announced the business decision to reassign Plaintiff from Vice President of Emerging Technology to Vice President of Special Projects. *See* Affidavit of B.J. Han attached as **Exhibit 3**. While Dr. Han did consult with Ms. Uy and Ms. Taylor regarding Plaintiff's threats against the company, he did not confer with them regarding STATS ChipPAC's decision to reassign Plaintiff. Plaintiff has failed to show that any meeting occurred after the August 7, 2008 telephone call, but before her August 13, 2007 reassignment to Vice President of Special Projects. Accordingly, Plaintiff's theory that Dr. Han consulted with legal counsel to "unlawfully" demote Plaintiff cannot be substantiated and consequently does not form a reasonable basis to justify *in camera* review. *See In re Grand Jury Subpoena*, 31 F.3d 826, 831 (9th Cir. 1994) (stating that the district court erred when it conducted an *in camera* review of privileged documents generated after the last possible date that attorney-client communications to further a criminal scheme could have taken place).

In addition, the prior declaration of Dennis Daniels and the alleged newly-discovered allegations of Plaintiff's counsel's undocumented conversation[2] with Mr. Daniels do not aid Plaintiff in meeting her threshold burden for an *in camera*

---

[1] Ms. Uy is currently on vacation from July 29, 2009 to August 10, 2009. STATS ChipPAC requests the opportunity to supplement this Response with an Affidavit from Ms. Uy regarding her knowledge, or lack thereof, of Plaintiff's reassignment prior to the announcement by Dr. Han once Ms. Uy returns from vacation.

[2] Considering Plaintiff's counsel's propensity for dramatically misstating and overstating the evidence in this matter, STATS ChipPAC encourages the Court to regard Mr. Daniels' alleged hearsay statements with skepticism, particularly as there is no record evidence to support them.

inspection of Ms. Uy.[3] Even if Mr. Daniels at some point, while employed with STATS ChipPAC as a human resources employee, counseled STATS ChipPAC's management about the applicability of U.S. employment laws, that is consistent with what any human resources person would be expected to do – i.e., provide knowledge and expertise in employment relations to aid employers in complying with employment laws. In any event, Mr. Daniels was not an employee of STATS ChipPAC during any relevant time period that gives rise to Plaintiff's claims and, as a result, he cannot possess any personal knowledge of any attorney-client communication between Ms. Uy, Dr. Han and Ms. Taylor. Therefore, Mr. Daniels' statement that a "conspiratorial agreement" between Ms. Uy, Dr. Han and Ms. Taylor would be consistent with STATS ChipPAC's general practice is nothing more than mere hearsay conjecture and speculation by an apparently disgruntled former employee. Similarly, any allegations from other former STATS ChipPAC employees that did not work at STATS ChipPAC during any time relevant to Plaintiff's claims that attempt to opine and analogize Plaintiff's reassignment to Vice President of Special Projects to a "demotion" also are hearsay, conjecture and speculation. None of these former employees had any involvement in STATS ChipPAC's business decision to reassign Plaintiff.

**B.  This Court Should Decline To Use Its Discretion To Conduct *In Camera* Review.**

Even if this Court were to determine that Plaintiff has met the threshold to establish an *in camera* inspection of Ms. Uy, which she has not, this Court should still decline to conduct an *in camera* review. *In camera* inspection of Ms. Uy will not shed any more light on the reasons for Plaintiff's reassignment to Vice President of Special

---

[3] On a related note, Plaintiff should be estopped from using Mr. Daniels' testimony since she has deprived STATS ChipPAC of any opportunity to contact Mr. Daniels regarding information he allegedly shared with Plaintiff. As pointed out in STATS ChipPAC's Reply to Motion in Limine 6 (Doc. 236), Plaintiff failed to properly or timely disclose Mr. Daniels and still has not disclosed any contact information for him as required by Rule 26.

Projects or her subsequent termination than what the substantial amount of non-privileged evidence already demonstrates. In other words, an *in camera* inspection of Ms. Uy is cumulative and a waste of this Court's time.

### C. The Meeting Between Ms. Uy, Dr. Han And Ms. Taylor Is Protected By The Attorney-Client Privilege.

Finally, even if Dr. Han and Ms. Uy consulted with the Company's General Counsel to discuss ways to terminate Plaintiff without incurring Title VII liability, the attorney-client privilege would protect those communications. "Corporations consistently go to lawyers to find out how to obey the law," and the purpose of counsel is to bring their clients into compliance with the law in the least burdensome way possible. *United States v. Chen*, 99 F.3d 1495, 1499-1502 (9th Cir. 1996). Thus, any communications between employees of STATS ChipPAC and the company's General Counsel regarding avoiding or minimizing potential Title VII liability "was not a nefarious purpose, but a legitimate one." (Doc. 250.) As such, the attorney-client communications between Ms. Uy, Dr. Han and Ms. Taylor are protected and should remain inviolate. *Id.*

### III. Conclusion.

For the foregoing reasons, STATS ChipPAC respectfully request that the Court deny Plaintiff's Motion for Reconsideration of Court's Denial of Plaintiff's Motion for *In Camera* Inspection of Gail Uy.

RESPECTFULLY SUBMITTED this 6th day of August 2009.

>                    OGLETREE, DEAKINS, NASH,
>                    SMOAK & STEWART, P.C.
>
>                    By:   s/ Caroline Larsen
>                       L. Eric Dowell
>                       Caroline K. Larsen
>                       Monique D. Young
>                       2415 East Camelback Road, Suite 800
>                       Phoenix, Arizona 85016
>                       Attorneys for Defendants STATS ChipPAC,
>                       Inc. and STATS ChipPAC, Ltd.

7

**CERTIFICATE OF SERVICE**

I hereby certify that on the 6th day of August 2009, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Peter Strojnik
Peter Strojnik, P.C.
3030 North Central Avenue, Suite 1401
Phoenix, Arizona 85012
Attorney for Plaintiff

Peter K. Strojnik
The Law Firm of Peter Strojnik
3030 North Central Avenue, Suite 1401B
Phoenix, Arizona 85012

 s/ Debra Perkins

7572685.2 (OGLETREE)

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
2415 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 778-3700