IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

```
DIANE SAHAKIAN, a single woman,      )
                                     )
                    Plaintiff,       )
                                     )
        vs.                          )
                                     )
STATS ChipPAC, INC., a foreign       )
corporation; STATS ChipPAC, Ltd.,    )
a foreign corporation; TEMASEK       )
HOLDINGS PRIVATE LIMITED, a          )
foreign corporation; SINGAPORE       )
TECHNOLOGIES SEMICONDUCTORS          )
PRIVATE LIMITED, a foreign           )
corporation,                         )
                                     )   No. 2:08-cv-0241-HRH
                    Defendants.      )
_____)
```

O R D E R

Motion to Dismiss

Defendants Temasek Holdings Private Limited and Singapore Technologies Semiconductors Private Limited move to dismiss plaintiff's second amended complaint against them.[1] This motion is opposed.[2] Counsel stipulated to dispense with oral argument which the court had scheduled for November 13, 2009.[3]

---

[1]Docket No. 124.

[2]Docket No. 132.

[3]Docket No. 310.

-1-

Facts

In this Title VII action, plaintiff Diane Sahakian alleges hostile work environment and retaliation claims against her former employer, defendants STATS ChipPAC, Inc. and STATS ChipPAC, Ltd.[4] Defendant Temasek Holdings Private Limited (Temasek) is alleged to be the parent corporation of defendant Singapore Technologies Semiconductors Private Limited (STS).[5] STS is alleged to be a wholly owned subsidiary of Temasek and STS is alleged to own "83% of the outstanding shares of Stats ChipPAC."[6] Both Temasek and STS are alleged to be foreign corporations with their principal place of business in Singapore.[7] The second amended complaint alleges that "Temasek and STS caused the voluntary delistment of Stats ChipPAC from the NASDAQ[,]" that "Temasek and STS are attempting to cause the delistment of Stats ChipPAC from the Singapore Exchange[,]" and that "Temasek and STS control the operations and day to day functions of Stats ChipPAC."[8]

---

[4]Plaintiff refers to the two STATS ChipPAC defendants collectively in her second amended complaint as "Stats ChipPAC." See Second Amended Complaint at 1, ¶ 2, Docket No. 61.

[5]Id. at 2, ¶ 3.

[6]Id. at ¶¶ 4 and 6.

[7]Id. at ¶¶ 3-4.

[8]Id. at 2-3, ¶¶ 10-12.

Pursuant to Rules 12(b)(1), (b)(2), and (b)(6), Federal Rules of Civil Procedure, Temasek and STS now move to dismiss plaintiff's second amended complaint against them.

## Discussion

Temasek and STS first argue that plaintiff's second amended complaint against them should be dismissed because the court lacks personal jurisdiction over them. Rule "12(b)(2) governs dismissal for lack of personal jurisdiction." Doe v. Unocal Corp., 248 F.3d 915, 921 (9th Cir. 2001). "It is the plaintiff's burden to establish the court's personal jurisdiction over a defendant." Id. at 922. If the court "'rel[ies] on ... discovery materials without holding an evidentiary hearing, dismissal is appropriate only if the plaintiff has not made a prima facie showing of personal jurisdiction.'" Bauman v. DaimlerChrysler Corp., 579 F.3d 1088, 1094 (9th Cir. 2009) (quoting Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert, 94 F.3d 586, 588 (9th Cir. 1996)). "[A]ny evidentiary materials submitted on the motion 'are construed in the light most favorable to the [plaintiff] and all doubts are resolved in [her] favor.'" Ochoa v. J.B. Martin and Sons Farms, Inc., 287 F.3d 1182, 1187 (9th Cir. 2002) (quoting Metro. Life Ins. Co. v. Neaves, 912 F.2d 1062, 1064 n.1 (9th Cir. 1990)).

"'Personal jurisdiction over a nonresident defendant is tested by a two-part analysis.'" Bauman, 579 F.3d at 1094 (quoting Chan v. Soc'y Expeditions, Inc., 39 F.3d 1398, 1404 (9th Cir. 1994)).

"'First, the exercise of jurisdiction must satisfy the requirements of the applicable state long-arm statute.'" Id. (quoting Chan, 39 F.3d at 1404). "'Second, the exercise of jurisdiction must comport with federal due process.'" Id. (quoting Chan, 39 F.3d at 1404-05). The court need only consider the requirements of due process because "'Arizona's long-arm rule permits the exercise of personal jurisdiction to the extent allowed by the due process clause of the United States Constitution.'" CE Distribution, LLC v. New Sensor Corp., 380 F.3d 1107, 1110 (9th Cir. 2004) (quoting Ochoa, 287 F.3d at 1188).

"For due process to be satisfied, a defendant, if not present in the forum, must have 'minimum contacts' with the forum state such that the assertion of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1155 (9th Cir. 2006) (quoting Int'l Shoe Co. v. Wash., 326 U.S. 310, 315 (1945)).  A "parent-subsidiary relationship alone is insufficient to attribute the contacts of the subsidiary to the parent for jurisdictional purposes." Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd., 328 F.3d 1112, 1134 (9th Cir. 2003).  However, a subsidiary's contacts may be imputed to its parent for personal jurisdiction purposes where the subsidiary is the parent's alter ego.  Id.  "To satisfy the alter ego exception to the general rule that a subsidiary and the parent are separate entities, the plaintiff must make out a prima

facie case '(1) that there is such unity of interest and ownership that the separate personalities [of the two entities] no longer exist and (2) that failure to disregard [their separate identities] would result in fraud or injustice.'" Id. at 1134-35 (quoting Doe, 248 F.3d at 926). "An alter ego ... relationship is typified by parental control of the subsidiary's internal affairs or daily operations." Doe, 248 F.3d at 926. "Appropriate parental involvement includes: monitoring of the subsidiary's performance, supervision of the subsidiary's finance and capital budget decisions, and articulation of general policies and procedures." Id. (citations omitted).

Plaintiff argues that Temasek and STS control Stats ChipPAC in such a manner that the contacts of the STATS ChipPac defendants can be imputed to Temasek and STS. To support her argument, plaintiff offers STATS ChipPAC Ltd.'s annual Form 20-F report for 2008, which was filed with the SEC on March 9, 2009. In that report, there is a section entitled "Risk Factors" and one of the risks listed is that "Temasek controls our Company and its interests may conflict with the interests of our other shareholders."[9] The report explains that

> Temasek and [STS] have disclosed .... that they
> may seek to cause our Company to voluntarily

---

[9]STATS ChipPAC, Ltd. Form 20-F at 18, Exhibit 1, Plaintiff's Response in Opposition to Defendants' Temasek Holdings Private Limited and Singapore Technologies Semiconductors Private Limited's Motion to Dismiss Second Amended Complaint, Docket No. 132.

> delist our ordinary shares from the SGX-ST and to deregister under the Exchange Act if it becomes eligible to do so. In addition, Temasek and [STS] have disclosed ... that they and their affiliates may from time to time hold discussions with our management or directors or other parties regarding any or all of the following, and [STS] and Temasek have specifically reserved the right to change their intention with respect to any or all of such matters:
>
> - the acquisition by any person of additional securities of our Company, or the disposition of securities of our Company;
> - an extraordinary corporate transaction, such as a merger, reorganization or liquidation, involving our Company or any of our subsidiaries;
> - a sale or transfer of a material amount of assets of our Company or any of our subsidiaries;
> - any change in our present Board of Directors or management of our Company, including plans or proposals to change the number or term of directors to fill any existing vacancies on our Board of Directors;
> - any material change in the present capitalization or dividend policy of our Company;
> - any other material change in our Company's business or corporate structure;
> - changes in our Company's charter or bylaws or other actions which may impede the acquisition of control of our Company by any person;
> - causing a class of securities of our Company to be delisted from a national securities exchange or to cease to be authorized to be quoted in an inter-dealer quotation system of a registered national securities association;
> - causing a class of equity securities of our Company to become eligible for termination of registration pursuant to Section 12(g)(4) of the Exchange Act; or

- any action similar to any of those enumerated above.[10]

The report also stated:

> The actions of Temasek and [STS], particularly through the election of directors and subsequent selection of management by those directors, can affect our strategic decisions, our legal and capital structure and our day-to-day operations. This concentration of ownership may also delay, deter or prevent acts that would result in a change of control which may be against the interests of holders of our ordinary shares, or reduce the liquidity of our ordinary shares and adversely affect their trading prices.[11]

Plaintiff argues that the fact that the Form 20-F report states that the actions of Temasek and STS can affect STATS ChipPAC Ltd.'s strategic decisions, its legal and capital structure, and its day-to-day operations is sufficient to make a prima facie showing of personal jurisdiction.

Plaintiff has not made out a prima facie case that Temasek and STS are the alter egos of either STATS ChipPAC defendant. Plaintiff's allegations in her second amended complaint that Temasek and STS control the operations and day to day functions of the STATS ChipPAC defendants are insufficient to establish personal jurisdiction based on an alter ego theory. These allegations are similar to those in American Telephone, 94 F.3d 586, and Kramer Motors, Inc. v. British Leyland, Ltd., 628 F.2d 1175 (9th Cir. 1980). In

---

[10]Id. at 18-19.

[11]Id. at 19.

American Telephone, the plaintiff alleged that the parent company controlled the subsidiary because it had filed a consolidated tax return and voted to approve purchases. Amer. Tele., 94 F.3d at 591. The Ninth Circuit found these allegations insufficient for personal jurisdiction purposes noting that the plaintiff had alleged nothing "more than a normal parent-subsidiary relationship." Id. In Kramer, the court "found no alter ego relationship ... even though the parent guaranteed loans for the subsidiary, reviewed and approved the subsidiary's major decisions, placed several of its own directors on the subsidiary's board, and was closely involved in the subsidiary's pricing decisions." Amer. Tele., 94 F.3d at 591.

    The evidence that plaintiff has submitted also fails to suggest that Temasek and STS were the alter egos of either of the STATS ChipPAC defendants. Nothing in STATS ChipPAC Ltd.'s Form 20-F suggest that STATS ChipPAC Ltd. is not an independent corporate entity. Rather, the Form 20-F report confirms that STATS ChipPAC Ltd. is an independent corporate entity and that the separate identities of STATS ChipPAC Ltd., Temasek, and STS have been maintained. Viewing the evidence in the light most favorable to plaintiff, as the court must on a Rule 12(b)(1) motion, plaintiff has not shown "that there is such unity of interest and ownership that the separate personalities [of the two entities] no longer exist[.]" Harris Rutsky, 328 F.3d at 1134 (citations omitted). Thus, this court lacks personal jurisdiction over Temasek and STS.

The court also lacks subject matter jurisdiction over plaintiff's claims against Temasek and STS. "'Unless the jurisdictional issue is inextricable from the merits of a case, the court may determine [subject matter] jurisdiction on a motion to dismiss for lack of jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure.'" Robinson v. U.S., --- F.3d ----, 2009 WL 3525634, at *1 (9th Cir. 2009) (quoting Kingman Reef Atoll Invs., L.L.C. v. U.S., 541 F.3d 1189, 1195 (9th Cir. 2008)). "A district court may 'hear evidence regarding jurisdiction' and 'resolv[e] factual disputes where necessary.'" Id. (quoting Augustine v. U.S., 704 F.2d 1074, 1077 (9th Cir. 1983)).

Temasek and STS contend that the court does not have subject matter jurisdiction as to plaintiff's Title VII claims against them because plaintiff failed to exhaust her administrative remedies as to them. "To establish federal subject matter jurisdiction, a plaintiff is required to exhaust his or her administrative remedies before seeking adjudication of a Title VII claim." Lyons v. England, 307 F.3d 1092, 1103 (9th Cir. 2002). "Exhaustion of administrative remedies under Title VII requires that the complainant file a timely charge with the EEOC, thereby allowing the agency time to investigate the charge." Id. at 1104.

Plaintiff has not alleged that she filed an EEOC charge against Temasek and STS. Rather, she alleges that she only filed EEOC

charges against the STATS ChipPAC defendants.[12]  Defendants who are not named in an EEOC complaint can only be sued under Title VII if "they were involved in the acts giving rise to the E.E.O.C. claims" or if they "should have anticipated" that they would be named in a Title VII suit.  Sosa v. Hiraoka, 920 F.2d 1451, 1458-59 (9th Cir. 1990) (citations omitted).

It is undisputed that Temasek and STS were not involved in the acts giving rise to plaintiff's Title VII claims.  Plaintiff argues that whether Temasek and STS should have anticipated being named in a Title VII suit is a question of fact that cannot be resolved on motion to dismiss.  Plaintiff contends that the Form 20-F report indicates that the STATS ChipPac defendants are controlled by Temasek and STS and if this evidence is viewed in the light most favorable to her, it is sufficient to show that Temasek and STS should have anticipated being named in a Title VII suit.  Plaintiff also suggests that Temasek and STS should have anticipated that they would be sued because plaintiff attempted to resolve this matter with them prior to naming them as defendants.

There is no evidence that suggests that Temasek and STS should have anticipated being named as defendants in this Title VII suit.  As discussed above, nothing in the Form 20-F report indicates that either STATS ChipPAC defendant was the alter ego of Temasek or STS.  Plaintiff's contention that Temasek and STS should have anticipated

---

[12]Second Amended Complaint at 3, ¶ 15, Docket No. 61.

being sued because plaintiff sent a demand letter to them is nonsensical. If this contention were correct, a plaintiff's lawyer would be the one who could determine whether a company should anticipate being sued, regardless of how tenuous the company's connection was with the plaintiff's actual employer. In sum, the court lacks subject matter jurisdiction as to plaintiff's claims against Temasek and STS as plaintiff did not exhaust her administrative remedies as to these defendants.

Temasek and STS also move to dismiss plaintiff's second amended complaint against them because plaintiff has failed to state a claim upon which relief can be granted. However, because the court lacks personal jurisdiction over Temasek and STS and subject matter jurisdiction over the claims asserted against them, the court has no jurisdiction to determine the Rule 12(b)(6) portion of the motion to dismiss.

## Conclusion

Temasek and STS's motion to dismiss[13] is granted. Plaintiff's second amended complaint against Temasek and STS is dismissed with prejudice.

DATED at Anchorage, Alaska, this  23rd  day of November, 2009.

/s/ H. Russel Holland
United States District Judge

---

[13]Docket No. 124.